# EXHIBIT B

Motion for Preliminary Injunction and
Order Shortening Time

**OST**
Samuel Castor, Esq.
Nevada Bar No. 11532
**SWITCH, LTD.**
7135 S. Decatur Blvd.
Las Vegas, Nevada 89118

F. Christopher Austin (Nevada Bar No. 6559)
caustin@weidemiller.com
Ryan Gile (Nevada Bar No. 8807)
rgile@weidemiller.com
**WEIDE & MILLER, LTD.**
Bank of Nevada Bldg., 5th Floor
7251 West Lake Mead Blvd., Ste. 530
Las Vegas, Nevada 89128

*Attorneys for Plaintiff*
SWITCH, LTD.

## DISTRICT COURT

## CLARK COUNTY, NEVADA

| | |
|---|---|
| SWITCH, LTD. a Nevada limited liability company, | Case No.:  A-17-761382-C |
| Plaintiff, | Dept.:  29 |
| vs. | |
| STEPHEN FAIRFAX; MTECHNOLOGY; and DOES  1 through 10; ROE ENTITIES 11 through 20, inclusive, | Date of Hearing:  10/19/2017 |
| | Time of Hearing:  9:00 AM |
| Defendants. | |

## <u>NOTICE OF MOTION; ORDER SHORTENING TIME</u>

Upon good cause shown, the following motion for preliminary injunction shall be heard on a shortened time in the above-entitled Court on the _19th_ day of _October_, 201_7_, at the hour of _9:00_ A.m. in Department _29_.

_____
HONORABLE DAVID JONES
DISTRICT COURT JUDGE

SAMUEL CASTOR, ESQ.
SWITCH, LTD.
6795 Decatur Blvd.
Las Vegas, NV 89118
Telephone: (702) 715-6566

1

## AFFIDAVIT IN SUPPORT OF REQUEST FOR ORDER SHORTENING TIME

Affiant, F. Christopher Austin, being first duly sworn, deposes and says:

1.      That he is the attorney at law, duly licensed to practice before this court and is counsel for Plaintiff in the above entitled case, and has personal knowledge of, or is otherwise informed and believes the facts asserted herein.

2.      That he makes this affidavit in support of his request for an order shortening time of the hearing on the following motion:  Motion for Preliminary Injunction ("Motion").

3.      That Plaintiff will suffer damage or injury if its Motion is heard in the ordinary course in that Defendants have and are using and disclosing confidential trade secrets obtained by Defendants by signing non-disclosure agreements with Plaintiff prohibiting Defendants from disclosing the same and by promising Plaintiff Defendants would not engage in the design or building of data centers, the same business as that in which Plaintiff is engaged.  For the reasons set forth in the Motion, Defendants' actions have and are causing Plaintiff irreparable harm.  Defendants disclosed such confidential information and trade secrets to Alligned Data Centers who built a data center incorporating said confidential information and trade secrets. Defendants actions have cost Plaintiff known clients and likely others unknown to Plaintiffs, which losses are unquantifiable.

4.      That the request of Plaintiff for an Order Shortening Time of the hearing on his Motion is necessitated by the following facts and circumstances: Defendants boast on their websites that they are the authors and originators of the confidential information and trade secrets that Defendants learned from Plaintiff, and are presently engaged in the business of consulting on the building of data centers employing such confidential information and trade secrets all in violation of the non-disclosure agreements Defendants signed and the promise not to engage in the designing or building of data centers.

/ / /

/ / /

/ / /

/ / /

2

5.     Every day Defendants are not enjoined from violating the non-disclosure agreements, the confidential information and trade secrets of Plaintiff risk further dissemination and Plaintiffs suffer irreparable harm.  For these reasons, Plaintiffs request this matter be heard on an order shortening time.

DATED this 11ᵗʰ day of October, 2017.

BRIANNA SHOW
NOTARY PUBLIC
STATE OF NEVADA
Appt. No. 17-2921-1
My Appt. Expires May 31, 2021

F. CHRISTOPHER AUSTIN

SUBSCRIBED AND SWORN to before me this

11 day of October , 2017 .

Notary Public

3

**MPRI**
Samuel Castor, Esq.
Nevada Bar No. 11532
**SWITCH, LTD.**
7135 S. Decatur Blvd.
Las Vegas, Nevada 89118

F. Christopher Austin (Nevada Bar No. 6559)
caustin@weidemiller.com
Ryan Gile (Nevada Bar No. 8807)
rgile@weidemiller.com
**WEIDE & MILLER, LTD.**
Bank of Nevada Bldg., 5th Floor
7251 West Lake Mead Blvd., Ste. 530
Las Vegas, Nevada 89128
Telephone: (702) 382-4804
Facsimile: (702) 382-4805

*Attorneys for Plaintiff*
SWITCH, LTD.

## DISTRICT COURT

## CLARK COUNTY, NEVADA

| | |
|---|---|
| SWITCH, LTD. a Nevada limited liability company, | Case No.:  A-17-761382-C |
| Plaintiff, | Dept.:  29 |
| vs. | Oral Argument Requested |
| STEPHEN FAIRFAX; MTECHNOLOGY; and DOES  1 through 10; ROE ENTITIES 11 through 20, inclusive, | |
| Defendants. | |

## <u>MOTION FOR PRELIMINARY INJUNCTION</u>

Switch, Ltd., a Nevada limited liability company ("Switch"), to stop the hemorrhaging of Defendants' ongoing misappropriation of trade secrets  and breaches of contract, hereby moves the Court for the following: (1) a preliminary injunction requiring Defendants to cease and desist all design of any data center; (2) a preliminary injunction requiring Defendants to remove all promotional materials on MTechnology.net, and any other social media account, or webpage over which Defendant exercises any control (e.g. YouTube) regarding their design

1

efforts; and (3) an order granting the immediate delivery to Switch of all documents, contracts and emails exchanged between Defendants and Aligned Data Centers.

This Motion is made pursuant to NRCP Rule 65 with the following Memorandum of Points and Authorities, the supporting exhibits attached hereto, the papers and pleadings on file herein, and any oral argument that this Court may allow.

Dated this 11$^h$ day of October, 2017.

WEIDE & MILLER, LTD.

By: /s/ F. Christopher Austin
F. Christopher Austin
caustin@weidemiller.com
Ryan Gile
rgile@weidemiller.com
Bank of Nevada Bldg., 5th Floor
7251 W. Lake Mead Blvd., Ste. 530
Las Vegas, NV 89128

*Attorneys for Plaintiff SWITCH, LTD.*

**NOTICE OF MOTION**

TO:   ALL PARTIES and THEIR RESPECTIVE COUNSEL.

PLEASE TAKE NOTICE that the undersigned will bring the above and foregoing **MOTION FOR PRELIMINARY INJUNCTION** on for hearing before above-entitled court on the 19th day of October 2017, at the hour of 9:00 a.m. in Department 29, or as soon thereafter as counsel can be heard.

Dated this 11th day of October, 2017.

WEIDE & MILLER, LTD.

By: /s/ F. Christopher Austin
F. Christopher Austin
caustin@weidemiller.com
Ryan Gile
rgile@weidemiller.com
Bank of Nevada Bldg., 5th Floor
7251 W. Lake Mead Blvd., Ste. 530
Las Vegas, NV 89128

*Attorneys for Plaintiff SWITCH, LTD.*

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION AND STATEMENT OF GOOD CAUSE

This Motion is brought under Switch's claims for violation of The Defend Trade Secrets Act of 2016, Misappropriation of Trade Secrets under N.R.S. 600A, and breach of contract. Defendants continue to publicly promote Switch's confidential and trade secret information for the benefit of Defendants and Aligned Data Centers in spite of Defendants signing strict non-disclosure agreements ("NDAs") with Switch. Namely, Defendant Fairfax *personally* promotes his blank page stage[1] involvement in designing Aligned Data Center ("Aligned") technology in videos and blog posts.  Mr. Fairfax did this *after* assuring Switch, verbally and in writing, that he would never design a data center.  Switch, in reliance on Mr. Fairfax's promise and the NDAs, disclosed the highly confidential and trade secret protected information Mr. Fairfax requested, and gave Mr. Fairfax a uniquely in-depth tour of Switch's facilities so that he might better understand the import of such highly confidential disclosures. But for Mr. Fairfax's promise that he would never design a data center, Switch would not have made the requested disclosures.  After signing strict confidentiality agreements and then thoroughly inspecting Switch's facilities, Fairfax designed the Aligned facilities in breach of his confidentiality agreements with Switch.

Switch's has *already* been tortiously impacted by Defendants unlawful actions and Switch will continue to be damaged unless this Motion is granted. Defendants' actions have irreparably harmed Switch.  Fairfax's unlawful and ongoing disclosure of Switch's trade secrets destroys the value of such trade secrets, rendering the technological innovations taught by them commonplace and damaging Switch's reputation as an innovator solely in possession of cutting edge technology.  As such damage is per se incapable of being remedied by any monetary sum, it is irreparable under the law.  In addition, because of Defendants unlawful actions, Switch has already lost contracts. Switch is currently negotiating a contract with a

---

[1] *See* **Exhibit 1** which includes screen shots of the videos at issue where Fairfax admits, publicly and in his own words, that he was integral in the design of the Aligned Facilities.

customer who is entertaining offers from Aligned.    Unless this Motion is granted, Defendants will continue to promote Switch's technology as their own and unlawfully force Switch to compete against its own technology, irreparably harming Switch.  Therefore, time is of the essence.

Switch first sought to file this Motion in the ordinary course after service on Defendants; however, as Defendants, who have counsel in a related patent infringement action in Texas, appear to be intentionally avoiding service, Switch has been obligated to bring this Motion *ex parte*.  *See* Declaration of Samuel Castor, attached hereto as Exhibit 3.  Switch has expended significant resources and has repeatedly attempted to serve Defendants, to no avail. *Id.* Despite exchanging several emails, about service and Switch's simultaneous patent infringement lawsuit in Texas against Aligned and Defendants, Defendants' counsel has insisted that Defendants be dismissed from the Texas matter for lack of jurisdiction and have refused to accept service of this Nevada matter.  *Id.*

After receiving this response from Defendants' counsel *on Friday*, it appears Defendants are evading service.[2] *Id.*   Given very recent U.S. Supreme Court and U.S. Circuit Court decisions, it appears unlikely that Switch could seek the relief requested in this action in Texas.  Thus, this Motion, in this Court, at this time, is critical and all the more urgent.  *Id.*

## II.    STATEMENT OF FACTS

### A.    Switch Has Unique Data Center Technologies and Trade Secrets.

Data centers are the heart of the internet.  As technology has become increasingly integral to our daily lives, the need for data centers (particularly, efficient and reliable data centers) has increased, exponentially.  Central to Switch's innovative technologies are Rob Roy's designs. Switch's novel technology and trade secrets has allowed Switch to build and operate their data centers dramatically more cost efficiently than their competitors.  Because of these technologies, various groups have applauded Switch's data centers as superior to those built

---

[2] *See* **Exhibit 2** which includes several email exchanges between Switch's Texas and Nevada counsel attempting to serve Defendants in this matter and resolve jurisdictional debates in the patent suit in Texas.

by Apple, Google, Facebook, Amazon, Microsoft, and other technology giants.[3]

Switch is a Nevada limited liability company organized and existing under the laws of the State of Nevada. Switch is a Las Vegas-based company that designs, constructs, and operates the world's most powerful telecommunication offerings, data centers and service technology ecosystems. Switch's facilities sustainably power, cool, and protect the physical infrastructure and networks necessary to run the Internet.

In addition to being well-known for its innovative technologies and confidential approach to its services, Switch is also recognized for providing military grade physical security to protect its customers and Switch's intellectual property. Visitors to Switch's facilities must first sign non-disclosure agreements and agree to comply with Switch's security protocols. This high degree of physical security and constant presence of security personnel allows Switch to limit access to its trade secrets, patent-pending technologies, confidential designs and protocols, and to preserve the integrity of its mission critical operations that power the Internet.

**B.    Stephen Fairfax Has Publicly Admitted to Designing Aligned's Facilities.**

On or about May 2011 and again on August 2015, Switch permitted Stephen Fairfax to conduct and in-depth investigation of Switch's facilities. Switch gave Fairfax special access to Switch's confidential and trade secret information to conduct a thorough audit and assessment of Switch's technologies for the benefit of a Switch customer. Like all other visitors to Switch facilities, Mr. Fairfax signed strict nondisclosure agreements in which he committed not to disclose or use any of Switch's confidential information. As a necessary precondition to disclosure of highly confidential information, Mr. Fairfax also confirmed verbally and in writing, that he would never build a data center.

Unbeknownst to Switch, Fairfax was hired in 2013 by Aligned, a provider of new data centers in Arizona and Phoenix, at or around the same time he reassured Switch he had "no interest in building and operating data centers." Roughly twelve (12) months thereafter,

---

[3] *See* http://www.greenpeace.org/international/en/publications/Campaign-reports/Climate-Reports/clicking-clean-2017/. *See* also http://datacenterfrontier.com/top-10-cloud-campuses/.

Fairfax personally and publicly started promoting his integral involvement in designing Aligned's facilities "while the paper was literally still blank."[4]   A simple side-by-side comparison of Aligned's technology versus Switch's technology reveals the facial similarities. The obvious duplication is not happenstance[5]:

**Switch T-SCIF**
Side View

**Aligned "Customer Pod"**
Side View





**Switch T-SCIF**
Front View

**Aligned "Customer Pod"**
Front View





---

[4] (https://www.aligneddatacenters.com/video/steve-fairfax-mtechnology-aligned-data-centers  at 1:09).
[5] The Aligned images are from www.aligneddatacenters.com, last visited on 10/01/17.  The red labeling on the last four images titled "Aligned Data Center - Cross-Section of Entire Facility" is provided for clarity.

**Switch T-SCIF**
Top View Showing the Heat Shield

**Aligned "Customer Pod"**
Top View Showing the Heat Shield





Side View

Side View




**Switch T-SCIF**
Diagram

**Aligned "Customer Pod"**
Diagram




**Switch Data Center**
Cross-Section of Entire Facility

**Aligned Data Center**
Cross-Section of Entire Facility




7

**Switch Data Center**
Cross-Section of Entire Facility



**Aligned Data Center**
Cross-Section of Entire Facility



**Switch Data Center**
Cross-Sections of Entire Facility



**Aligned Data Center**
Cross-Sections of Entire Facility



Cross-Section of Entire Facility



Cross-Section of Entire Facility



**Switch Data Center**
Cross-Section of Entire Facility



**Aligned Data Center**
Cross-Section of Entire Facility



## III.   ARGUMENT

To obtain a temporary restraining order, preliminary injunction, or permanent injunction in Nevada, the following must be considered:

1.      A party must demonstrate that it has a reasonable probability of success on the merits of its underlying claims;

2.      Without injunctive relief, plaintiff will suffer irreparable harm for which compensatory damages are inadequate;

3.      The court may weigh the public's interest in seeing the harm stopped, as well as the relative hardships of the parties should the court take or refuse to take action; and

4.      The purpose of the restraining order/injunction is to preserve the status quo, or to "preserve a business or property interest." *Guion v. Terra Mktg. of Nev., Inc.*, 90 Nev. 237, 240 (1974).

5.      A Bond as required by NRCP 65(c), to the extent required by the Court.  *See Boulder Oaks Cmty. Ass'n v. B&J Andrews Enters., LLC*, 125 Nev. 397, 403 (2009); *Dept. of Conservation & Natural Res., Div. of Water Res. v. Foley*, 121 Nev. 77, 80 (2005); *S.O.C., Inc. v. The Mirage Casino-Hotel*, 117 Nev. 403, 408 (2001); *Kaldi v. Farmers Insur. Exch.*, 117 Nev. 273 (2001); *Camco, Inc. v. Baker*, 113 Nev. 512, 516 (1997); *Clark County School Dist. v. Buchanan*, 112 Nev. 1146, 1150 (1996); *Sobol v. Capital Mgmt. Consultants, Inc.*, 102 Nev. 444 (1986); *Coronet Homes, Inc. v. Mylan*, 84 Nev. 435 (1968); NRCP 65; NRS 33.010.

Switch is entitled to a preliminary injunction and temporary restraining order for the following reasons:

### A.   Switch has a reasonable probability of success on the merits of its underlying claims.

To obtain injunctive relief, a party must demonstrate that it has a reasonable probability of success on the merits of its underlying claims. Here, it is not only probably, but likely that Switch will succeed on the merits of the case because the Defendant has personally and publicly admitted to breaching his contracts with Switch.  As explained above, Stephen Fairfax and MTechnology were retained by a Switch client and permitted, subject to a stringent Non-

9

Disclosure Agreement to view Switch's trade secret information. After assuring Switch *in writing* that he had no interest in building data centers, Switch permitted Fairfax to return a second time to inspect Switch's trade secrets.

Despite Defendants' contractual commitments and repeated verbal assurances regarding those commitments, Mr. Fairfax then touts his doing the very thing he assured Switch he would not do: he designed a competing facility. A comparison between Switch facilities and Aligned facilities reveal uncanny likeness. Aligned even named the electrical cabling of its facility a "power spline" in blatant imitation of Switch's "power spine."[6] Except for superficial differences, the facilities and the technology appear identical. These striking similarities are not the result of coincidence but rather demonstrate clearly that Stephen Fairfax and MTechnology misappropriated confidential and trade secret information in the design of Aligned Data Centers. Given the obvious misappropriation coupled with Stephen Fairfax's admission that he participated in the design from the "blank page" stage, it is likely that Switch will prevail on the merits of this case, meeting the first element for the imposition of injunctive relief.

### B. Without injunctive relief, Switch will suffer irreparable harm for which compensatory damages are inadequate.

In order for an injunction or a temporary restraining order to be granted, a party must show irreparable harm. Here, the misappropriation of trade secrets has and continues to cause irreparable harm to Switch. In additional to monetary damages,[7] Switch's reputation and good will are being undermined. As discussed above, Switch's trade secrets give it a competitive edge in the market, set it apart from its competitors, and uniquely identify it as at the cutting edge in data center innovation only to the degree such trade secrets are not generally known. Thus, the value of Switch's trade secrets is inexorably connected to its reputation and good

---

[6] *See* http://www.datacenterknowledge.com/archives/2015/10/19/modular-cooling-system-enables-demand-data-center-capacity (where Aligned promotes its "spline" in the center section of the facility).

[7] Switch has already lost contracts with at least one very large potential client and at this time a multimillion-dollar potential client is deciding whether to contract with Switch or Aligned. There would have been no loss, no injury to Switch, but for Fairfax's breach of his agreement.

will, neither of which can be reduced to a dollar amount or calculated as a monetary damage. The harm is irreparable.

Pursuant to both state and federal law, Fairfax has caused Switch irreparable harm. Irreparable harm is presumed in situations where a confidentiality agreement or restrictive covenant has been breached or trade secrets have been misappropriated.  *See EchoMail, Inc. v. Am. Express Co.,* 378 F. Supp. 2d 1, 4 (D. Mass. 2005);  *Storage Tech. Corp. v. Custom Hardware Eng'g & Consulting, Inc.*, 2004 WL 1497688 (D. Mass. 2004); *FMC Corp v. Taiwan Tainan Giant Indus. Co., Ltd.*, 730 F.2d 61, 63 (2nd Cir. 1984) (trade secrets, once lost, are lost forever; such loss cannot be measured in money damages); *Ivy Mar Co. v. C.R. Seasons, Ltd.*, 907 F. Supp. 547, 566 (E.D.N.Y. 1995); *Computer Assoc. Int'l, Inc. v. Bryan*, 784 F. Supp. 982, 986 (E.D. N.Y. 1992); *Refractory Technology, Inc. v. Koski*, 1990 WL 119560, at *3 (N.D. Ill. 1990) (loss of trade secret would cause plaintiff immediate, irreparable harm); *ISC-Bunker Ramo Corp. V. Altech, Inc.*, 765 F. Supp. 1310, 1338 (N.D. Ill. 1990) ("it is often difficult to …. [d]etermine the monetary damages suffered thereby"); *CPG Prods. Corp. v. Mego Corp.*, 214 U.S.P.Q. 206, 214-15 (S.D. Ohio 1981) (the threat of disclosure, destruction, or dilution of trade secret constitutes irreparable injury justifying injunctive relief); *Donald McElroy, Inc. v. Delany*, 389 N.E.2d 1300, 1308 (1st Dist. 1979) (Once a protectable interest has been established, injury to plaintiff will presumably follow if that interest is not protected; threat of irreparable harm sufficient where former employee violated the terms of a non-disclosure agreement and was about to use confidential information against the plaintiff, irreparable injury was shown and preliminary injunction was properly granted).

Fairfax's unlawful and ongoing disclosure of Switch's trade secrets destroys the value of such trade secrets, rendering the technological innovations taught by them commonplace and damaging Switch's reputation as an innovator solely in possession of cutting edge technology.  As such damage is per se incapable of being remedied by any monetary sum, it is irreparable under the law.

Switch has built its reputation as a leader in the data colocation industry.  This reputation is built on the technology and trade secrets developed by Rob Roy.  Now this

technology is being misappropriated by Stephen Fairfax and MTechnology in the design and development of Switch competitors.   Because Fairfax's unlawful disclosure of Switch's confidential information and trade secrets has and is presently causing irreparable harm to Switch, a preliminary injunction is proper and warranted under the law.

**C.     The public interest and the relative hardships all weigh in favor of Switch.**

As noted above, this Court may weigh the public interest as well as the relative hardships of the parties should the Court take or refuse to take action.  The public has an interest in preserving trade secret and confidential information. The preservation of confidential and trade secret protects small and large business alike.   Without a recourse in the event of misappropriation, business owners would be unprotected and lose any the ability to compete. Switch provides employment for hundreds of individuals in the Las Vegas metropolitan area. Switch has taken all possible measures to protect its trade secret information, including requiring anyone entering any Switch facility to sign non-disclosure agreements and shielding its trade secrets from public view. Allowing Fairfax to continue to disclose Switch's misappropriated trade secrets and confidential information damages the public's interest in protecting such information and encouraging innovation.   Absent robust preliminary enforcement of such trade secrets and confidential information, such trade secrets and confidentiality would be lost forever.  Even should a party prevail at trial, the harm would already have been done.  The party would have lost the competitive edge the public intends for such confidential information and trade secrets to provide.  The public interest therefore favors preserving confidential information and trade secrets generally and in the present action by enjoining misappropriation and continuing disclosure of such confidential information and trade secrets.

Here, the relative hardships all weigh in favor of Switch because, as discussed, irreparable harm has occurred and will continue to occur if Switch's trade secrets continue to be misappropriated and disclosed by Stephen Fairfax and MTechnology.  There is no harm to Fairfax and MTechnology because they insisted they were not in the business of designing data

centers.    Defendants will not be harmed by requiring Defendants to honor their promise not to be in the business of designing or auditing business.

Accordingly, there is no harm to Defendants.  In 2011, and again as late as May of 2013, Mr. Fairfax himself noted that he had no interest in building or operating data centers. Prior to learning Switch's confidential information and trade secrets, no part of Defendants' business involved the designing or building of data centers.    In fact, according to MTechnology's own webpage, MTechnology is focused on "applying the science of Probabilistic Risk Assessment…"[8] No reference is made to the design and/or construction of data centers.  Only after Defendants obtained Switch's confidential information and trade secrets did Fairfax and MTechnology commence such a business and they did so by unlawfully misappropriating and using Switch's confidential information and trade secrets in direct violation of the promises, covenants and agreements Defendants had made not to do those very things.

The *status quo ante* that the injunction requests, therefore, is a return to the status of Defendants prior to their violations, misappropriations and unlawful disclosures.  Because this Motion properly seeks to restore the parties only to their respective positions prior to the complained of departures from that *status quo* by Defendants, this Motion, on balance, imposes little or no hardship on Defendants.  It leaves them in the position they were in prior to their wrongful conduct, harming them not at all.  It does not prohibit either Defendant from engaging in the businesses they were engaged in prior to their sanctionable conduct; nor does is prevent Defendants from obtaining an income or profits from any prior-established lawful pursuits.  It merely enjoins them from continuing to harm Switch by their recent, unlawful actions.  To do this, Switch respectfully request the Court enjoin Stephen Fairfax and MTechnology from continuing to design data center facilities and require them to remove any videos, blogs, or promotional materials involving Fairfax and his design involvement with Aligned Data Centers.  While such an injunction would have little or no impact on their Defendants' lawful and existing business, *status quo ante*, the absence of such an injunction—as discussed infra—

---

[8] http://www.mtechnology.net/about_us.htm

would result in the permanent, irreparable loss of Switch's trade secrets, confidential information, and the intangible good will and reputation Switch has built upon such intellectual property assets.  Clearly the balancing of harms favors Switch, and a preliminary injunction is warranted.

       **D.**      **This Court should only require nominal security, if any.**

      As explained above, it is anticipated that Defendants will suffer no financial consequences should the Court enter the requested preliminary injunction.  Moreover, by Defendant's own admission, he has done what he promised Switch he would not do, design data centers.  Therefore, a bond is unnecessary.  However, in the event that the Court requires that a bond or other security be posted by Switch, Switch requests that the Court set an amount that is no greater than $1,000.00.

## IV.  CONCLUSION

      Fairfax did something he contractually promised he would not do; he used Switch's trade secrets to design a competing facility, and then promoted that unlawful activity.  Now Fairfax is evading justice.  Based upon the foregoing, Switch has shown it meets the standard for injunctive relief.  Switch has demonstrated it is likely to succeed on the merits, it will suffer irreparable harm if an injunction does not issue, the balance of hardships tips in its favor, and

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

an injunction is in the public's best interest. Therefore, Switch respectfully asks this Court to grant this Motion for a Preliminary Injunction pending adjudication of this matter on the merits.

Dated this 11ʰ day of October, 2017.

WEIDE & MILLER, LTD.

By: */s/ F. Christopher Austin*
F. Christopher Austin
caustin@weidemiller.com
Ryan Gile
rgile@weidemiller.com
Bank of Nevada Bldg., 5th Floor
7251 W. Lake Mead Blvd., Ste. 530
Las Vegas, NV 89128

Samuel Castor, Esq.
Nevada Bar No. 11532
**SWITCH, LTD.**
7135 S. Decatur Blvd.
Las Vegas, Nevada 89118

*Attorneys for Plaintiff SWITCH, LTD.*

15

## CERTIFICATE OF SERVICE

I hereby certify that I am an employee of WEIDE & MILLER, LTD. and that on October 11, 2017, I served a full, true and correct copy of the foregoing **MOTION FOR PRELIMINARY INJUNCTION** via First Class Mail and deposited with the United States Postal Service and also by email transmission to the e-mail address listed below:

Safraz W. Ishmael, Senior Counsel
Proskauer
One International Place
Boston, MA 02110-2600
d 617.526.9712
f 617.526.9899
sishmael@proskauer.com

Attorneys for Defendants STEPHEN
FAIRFAX and MTECHNOLOGY

                                        /s/ James L. Morris
                                        An employee of Weide & Miller, Ltd.

# EXHIBIT 1

# EXHIBIT 1

**Exhibit 1**



Mr. Fairfax explains that Aligned retained him to assist in the design of their data center "while the paper was literally still blank".  *See* https://www.aligneddatacenters.com/video/steve-fairfax-mtechnology-aligned-data-centers at 1:11.  *See also* https://www.youtube.com/watch?v=KZRwktOCvdo&list=PLQ-RIHgVtTDInqq_HLtYGWz-jr3Se1xfg.



Mr. Fairfax also emphasizes that Aligned "told us their reliability target … and gave us a seat at the table to participate in the design process in order to ensure that they achieved that goal."  <u>See</u> https://www.aligneddatacenters.com/video/steve-fairfax-mtechnology-aligned-data-centers at 1:26. *See also* https://www.youtube.com/watch?v=KZRwktOCvdo&list=PLQ-RIHgVtTDInqq_HLtYGWz-jr3Se1xfg.

# EXHIBIT 2

# EXHIBIT 2

**From:** Ishmael, Safraz W. [mailto:SIshmael@proskauer.com]
**Sent:** Friday, October 06, 2017 9:48 AM
**To:** Brad Caldwell <bcaldwell@caldwellcc.com>; Bauer, Steven M. <SBauer@proskauer.com>
**Cc:** Austin Curry <acurry@caldwellcc.com>; John Summers <jsummers@caldwellcc.com>; F. Christopher Austin <caustin@weidemiller.com>; Melissa Smith <melissa@gillamsmithlaw.com>
**Subject:** RE: Switch, Ltd. v. Aligned Data Centers and MTechnology

Brad:

You misunderstood my email.  When I wrote that we will see if we can provide you the requested information, "before you have to oppose our motion" – I meant exactly that.  Your opposition is not yet due.

In response to your factual questions, here are the details:

1. MTechnology has a consulting relationship with Aligned whereby MTechnology consults to Aligned in exchange for a fee, billed by the hour.

2. MTechnology has no partnership with Aligned and does not hold equity in Aligned.

3. MTechnology has no ownership interest in Aligned's facility in Plano, Texas.

4. MTechnology does not control Aligned's facility in Plano, Texas.

As there is no basis here for venue, we ask yet again that you voluntarily dismiss the complaint.  Otherwise, as I mentioned initially, we intend to move for an attorneys' fees award should we prevail on this issue.

With respect to the case filed in Nevada, we checked with our client, and we have no authority to accept service at this point.

Safraz.

**Safraz W. Ishmael**
Senior Counsel

Proskauer
One International Place
Boston, MA 02110-2600
d 617.526.9712
f 617.526.9899
sishmael@proskauer.com

Bio: http://www.proskauer.com/professionals/safraz-ishmael/

**From:** Brad Caldwell [mailto:bcaldwell@caldwellcc.com]
**Sent:** Friday, October 06, 2017 8:59 AM
**To:** Ishmael, Safraz W.; Bauer, Steven M.
**Cc:** Austin Curry; John Summers; F. Christopher Austin; Melissa Smith
**Subject:** Re: Switch, Ltd. v. Aligned Data Centers and MTechnology

Safraz,

Please respond on the issues below promptly . This is pressing given our response timeline, and even more urgent if you aren't going to engage on our few questions and we might be left to take formal discovery.

Similarly, are you agreeing you've accepted service of the Nevada complaint?

Pleases try to address these points this morning.

Brad Caldwell
(Sent from a mobile device -- please excuse typos.)

# EXHIBIT 3

# EXHIBIT 3

**DECL**
Samuel Castor, Esq.
Nevada Bar No. 11532
**SWITCH, LTD.**
7135 S. Decatur Blvd.
Las Vegas, Nevada 89118

F. Christopher Austin (Nevada Bar No. 6559)
caustin@weidemiller.com
Ryan Gile (Nevada Bar No. 8807)
rgile@weidemiller.com
**WEIDE & MILLER, LTD.**
Bank of Nevada Bldg., 5th Floor
7251 West Lake Mead Blvd., Ste. 530
Las Vegas, Nevada 89128
Telephone: (702) 382-4804
Facsimile: (702) 382-4805

*Attorneys for Plaintiff*
SWITCH, LTD.

## DISTRICT COURT

## CLARK COUNTY, NEVADA

| | |
|---|---|
| SWITCH, LTD. a Nevada limited liability company,<br><br>                Plaintiff,<br><br>vs.<br><br>STEPHEN FAIRFAX; MTECHNOLOGY; and DOES 1 through 10; ROE ENTITIES 11 through 20, inclusive,<br><br>                Defendants. | Case No.: A-17-761382-C<br><br>Dept.: 29 |

## <u>DECLARATION OF ANNE-MARIE BIRK IN SUPPORT OF PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR PRELIMINARY INJUNCTION</u>

I, Anne-Marie Birk, declare under penalty of perjury under the laws of the United States as follows:

1.    The undersigned, being warned that willful or false statements and the like, are punishable by fine or imprisonment, or both, under 18 U.S.C. 1001, and that such willful false

1

statements and the like may jeopardize the validity of the application or document or any registration resulting therefrom, declares that all statements made of his own knowledge are true; and all statements made on information and belief are believed to be true.

2.     This declaration is submitted in support of Switch Ltd.'s Ex Parte Motion for Temporary Restraining Order and Motion Preliminary Injunction.

3.     I am Associate General Counsel for Switch, Ltd. and have acted in that capacity since May of 2017.

4.     Switch is a Nevada limited liability company organized and existing under the laws of the State of Nevada.

5.     Applicant is a Las Vegas-based company that designs, constructs, and operates the world's most powerful data centers and technology ecosystems.

6.     Through the Constable in Massachusetts, Switch has Switch has attempted to effectuate service since September 12, 2017, but has been unable to locate any person at the business authorized to accept service or any person at all at the home of Defendant Fairfax.

7.     The parties are simultaneously involved in parallel litigation for patent infringement in Texas, but because this matter involves agreements setting Nevada as the venue, this matter can only be brought here.

8.     In the course of the patent infringement litigation counsel for the parties have discussed this pending matter and the service issues related to it.

9.     Switch has emailed a copy of the complaint to counsel for Defendants and has requested that Counsel for Defendants accept service on behalf of their client. However, Defense Counsel has refused to accept service.

10.    Based on the fact that it appears that Defendants are evading service, Switch has had no other choice but to file this Ex Parte Motion for Temporary Restraining Order and Motion Preliminary Injunction.

11.    Switch will suffer damage or injury absent a Temporary Restraining Order because Defendants have and are using and disclosing confidential trade secrets obtained by Defendants by signing non-disclosure agreements with Plaintiff prohibiting Defendants from

disclosing the same and by promising Plaintiff Defendants would not engage in the design or building of data centers, the same business as that in which Plaintiff is engaged.

12.     For the reasons set forth in the Motion, Defendants' actions have and are causing Switch irreparable harm.  Defendants disclosed such confidential information and trade secrets to Aligned Data Centers who built a data center incorporating said confidential information and trade secrets.  Defendants actions have cost Plaintiff known clients and likely others unknown to Plaintiffs, which losses are unquantifiable.

13.     A Temporary Restraining Order is necessitated by the following facts and circumstances: Defendants boast on their website that they designed competitor data centers (i.e. Aligned Data Centers) which designs Defendants learned from Plaintiff, and Defendants are presently engaged in the business of consulting on the building of data centers employing such confidential information and trade secrets all in violation of the non-disclosure agreements Defendants signed and the promise not to engage in the designing or building of data centers.

14.     Every day Defendants are not enjoined from violating the non-disclosure agreements, the confidential information and trade secrets of Plaintiff risk further dissemination and Plaintiffs suffer irreparable harm.  For these reasons, Plaintiffs request the court enter a temporary restraining order enjoining further disclosure by Defendants of the confidential information and trade secrets Defendants are contractually barred from disclosing, requiring Defendants to cease any involvement in the designing, construction or operation of any data center, and requiring Defendants to remove all content on any media, including webpages, relating to any confidential information or trade secrets obtained from Plaintiffs.

Executed this 11th day of October, 2017.

/s/ Anne-Marie Birk
ANNE-MARIE BIRK, ESQ.