Samuel Castor, Esq.
Nevada Bar No. 11532
**SWITCH, LTD.**
7135 S. Decatur Blvd.
Las Vegas, Nevada 89118

F. Christopher Austin (Nevada Bar No. 6559)
caustin@weidemiller.com
Ryan Gile (Nevada Bar No. 8807)
rgile@weidemiller.com
**WEIDE & MILLER, LTD.**
Bank of Nevada Bldg., 5th Floor
7251 West Lake Mead Blvd., Ste. 530
Las Vegas, Nevada 89128
Telephone: (702) 382-4804
Facsimile: (702) 382-4805

*Attorneys for Plaintiff*
SWITCH, LTD.

SAMUEL CASTOR, ESQ.
*SWITCH, LTD.*
6795 Decatur Blvd.
Las Vegas, NV 89118
Telephone: (702) 333-6566

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| SWITCH, LTD. a Nevada limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>STEPHEN FAIRFAX; MTECHNOLOGY; and DOES 1 through 10; ROE ENTITIES 11 through 20, inclusive,<br><br>Defendants. | Case No.: 2:17-cv-2651<br><br>**MOTION FOR PRELIMINARY INJUNCTION** |

Pursuant to FRCP 65, Plaintiff Switch, Ltd., a Nevada limited liability company ("Switch") hereby submits this Motion for Preliminary Injunction (the "Motion") to stop the hemorrhaging of Defendants' ongoing misappropriation of trade secrets and breaches of contract, hereby requesting the following:

(1) a preliminary injunction requiring Defendants to cease and desist all design of any data center;

(2) a preliminary injunction requiring Defendants to remove all promotional materials on MTechnology.net, and any other social media account, or webpage over which Defendant exercises any control (e.g. YouTube) regarding their design efforts for Aligned Data Centers ("Aligned"); and

(3) an order granting the immediate delivery to Switch of all documents, contracts and emails exchanged between Defendants and Aligned.

This Motion is being reasserted as a result of the removal of this action from the Nevada Eighth District Court, where the court granted this Motion before learning that the case, days earlier, had been removed.[1]

This Motion is made pursuant to FRCP 65 with the following Memorandum of Points and Authorities, the supporting exhibits attached hereto, the papers and pleadings on file herein, and any oral argument that this Court may allow.

Dated this 31st day of October, 2017.

**WEIDE & MILLER, LTD.**

By: */s/ F. Christopher Austin*
F. Christopher Austin
caustin@weidemiller.com
Ryan Gile
rgile@weidemiller.com
Bank of Nevada Bldg., 5th Floor
7251 W. Lake Mead Blvd., Ste. 530
Las Vegas, NV 89128

*Attorneys for Plaintiff SWITCH, LTD.*

[1] *See* Court Minutes, Case A-17-761382-C, Switch v. Fairfax (Oct. 19, 2017), granting Motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION AND STATEMENT OF GOOD CAUSE

This Motion is brought under Switch's claims for breach of contract, violation of the Defend Trade Secrets Act of 2016, and Misappropriation of Trade Secrets under N.R.S. 600A. Defendants publicly promote Switch's confidential and trade secret information for the benefit of Defendants and Aligned Data Centers in spite of Defendants signing strict non-disclosure agreements ("NDAs") with Switch. Namely, Defendant Fairfax *personally* promotes his blank page stage[2] involvement in designing Aligned Data Center ("Aligned") technology in videos and blog posts. Mr. Fairfax did this *after* assuring Switch, verbally and in writing, that he would never compete or design a data center.

Switch, in reliance on Mr. Fairfax's promise and the NDAs, disclosed the highly confidential and trade secret protected information Mr. Fairfax requested, and gave Mr. Fairfax a uniquely in-depth tour of Switch's facilities so that he might better understand the import of such highly confidential disclosures. But for Mr. Fairfax's promise that he would never design a data center, Switch would not have made the requested disclosures. After signing strict NDAs and then thoroughly and repeatedly inspected Switch's facilities, Fairfax designed the Aligned facilities in breach of his confidentiality agreements with Switch.

Switch's has *already* been tortiously impacted by Defendants unlawful actions and Switch will continue to be damaged unless this Motion is granted. Defendants' actions have irreparably harmed Switch. Fairfax's unlawful and ongoing disclosure of Switch's trade secrets destroys the value of such trade secrets, rendering the technological innovations taught by them commonplace and damaging Switch's reputation as an innovator solely in possession of cutting edge technology. As such damage is *per se* incapable of being remedied by any monetary sum, it is irreparable under the law.

[2] *See* **Exhibit 1** which includes screen shots of the videos at issue where Fairfax admits, publicly and in his own words, that he was integral in the design of the Aligned Facilities.

In addition, because of Defendants unlawful actions, Switch has already lost contracts. Switch is currently negotiating a contract with a customer who is entertaining offers from Aligned. Unless this Motion is granted, Defendants and Defendants' clients, Aligned, will continue to promote Switch's technology as their own and unlawfully force Switch to compete against its own technology, further irreparably harming Switch.

Switch brought this Motion on an *ex parte* basis in state court because Defendants appeared to be avoiding service, as the server reported that individuals at Defendants place of business reported they were neither officers nor authorized to accept service. Switch has subsequently learned that service has been effectuated and, therefore, brings this Motion with notice.

Switch has separately filed an action against Aligned Data Centers for patent infringement and related claims in the Eastern District of Texas; however, given recent U.S. Supreme Court and U.S. Circuit Court decisions regarding venue, it appears unlikely that Switch could seek the relief requested in this action against Fairfax in Texas. Thus, this action and this Motion have been brought in Nevada. *Id.*

## II. STATEMENT OF FACTS

### A. Switch Has Unique Data Center Technologies and Trade Secrets.

Data centers are the heart of the internet. As technology has become increasingly integral to our daily lives, the need for data centers (particularly, efficient and reliable data centers) has increased, exponentially. Central to Switch's innovative technologies are Rob Roy's designs. Switch's novel technology and trade secrets has allowed Switch to build and operate their data centers dramatically more cost efficiently than their competitors. Because of these technologies, various groups have applauded Switch's data centers as superior to those built by Apple, Google, Facebook, Amazon, Microsoft, and other technology giants.[3]

[3] *See http://www.greenpeace.org/international/en/publications/Campaign-reports/Climate-Reports/clicking-clean-2017/. See also http://datacenterfrontier.com/top-10-cloud-campuses/.*

Switch is a Nevada limited liability company organized and existing under the laws of the State of Nevada. Switch is a Las Vegas-based company that designs, constructs, and operates the world's most powerful telecommunication offerings, data centers and service technology ecosystems. Switch's facilities sustainably power, cool, and protect the physical infrastructure and networks necessary to run the Internet.

In addition to being well-known for its innovative technologies and confidential approach to its services, Switch is also recognized for providing military grade physical security to protect its customers and Switch's intellectual property. Visitors to Switch's facilities must first sign non-disclosure agreements and agree to comply with Switch's security protocols. This high degree of physical security and constant presence of security personnel allows Switch to limit access to its trade secrets, patent-pending technologies, confidential designs and protocols, and to preserve the integrity of its mission critical operations that power the Internet.

**B. Stephen Fairfax Has Publicly Admitted to Designing Aligned's Facilities.**

On or about May 2011 and again on August 2015, Switch permitted Stephen Fairfax to conduct and in-depth investigation of Switch's facilities. Switch gave Fairfax special access to Switch's confidential and trade secret information to conduct a thorough audit and assessment of Switch's technologies for the benefit of a Switch customer. Like all other visitors to Switch facilities, Mr. Fairfax signed strict nondisclosure agreements in which he committed not to disclose or use any of Switch's confidential information. As a necessary precondition to disclosure of highly confidential information, Mr. Fairfax also confirmed verbally and in writing, that he would never build a data center.

Unbeknownst to Switch, Fairfax was hired in 2013 by Aligned, a provider of new data centers in Arizona and Phoenix, at or around the same time he reassured Switch he had "no interest in building and operating data centers." Roughly twelve (12) months thereafter, Fairfax personally and publicly started promoting his integral involvement in designing Aligned's facilities "while the paper was literally still blank."[4] A simple side-by-side

[4] (*https://www.aligneddatacenters.com/video/steve-fairfax-mtechnology-aligned-data-centers at 1:09).*

comparison of Aligned's technology versus Switch's technology reveals the facial similarities. The obvious duplication is not happenstance[5]:

**Switch T-SCIF**
Side View




**Aligned "Customer Pod"**
Side View



**Switch T-SCIF**
Front View



**Aligned "Customer Pod"**
Front View



**Switch T-SCIF**
Top View Showing the Heat Shield



**Aligned "Customer Pod"**
Top View Showing the Heat Shield



[5] *The Aligned images are from www.aligneddatacenters.com*, last visited on 10/01/17. The red labeling on the last four images titled "Aligned Data Center - Cross-Section of Entire Facility" is provided for clarity.

**Switch T-SCIF**
Side View




**Aligned "Customer Pod"**
Side View



**Switch T-SCIF**
Diagram




**Aligned "Customer Pod"**
Diagram



**Switch Data Center**
Cross-Section of Entire Facility



**Aligned Data Center**
Cross-Section of Entire Facility



**Switch Data Center**
Cross-Section of Entire Facility




**Aligned Data Center**
Cross-Section of Entire Facility



**Switch Data Center**
Cross-Sections of Entire Facility




**Aligned Data Center**
Cross-Sections of Entire Facility




**Switch Data Center**
Cross-Section of Entire Facility




**Aligned Data Center**
Cross-Section of Entire Facility




**Switch Data Center**
Cross-Section of Entire Facility




**Aligned Data Center**
Cross-Section of Entire Facility




The mimickery is painfully obvious. Current and potential customers have continued to comment to Switch that Aligned's facilities look just like Switch's. Declaration of Anne-Marie Birk at ¶6.

## III. ARGUMENT

To obtain a preliminary injunction in Nevada, the following must be considered:

1. A party must demonstrate that it has a reasonable probability of success on the merits of its underlying claims;

2. Without injunctive relief, plaintiff will suffer irreparable harm for which compensatory damages are inadequate;

3. The court may weigh the public's interest in seeing the harm stopped, as well as the relative hardships of the parties should the court take or refuse to take action; and

4. The purpose of the restraining order/injunction is to preserve the status quo, or to "preserve a business or property interest." *Winter v. Natural Resources Defense Council, Inc.,* 555 U.S. 7, 20 (2008) (reasserting traditional four- factor test: (i) likely to succeed on the merits, (ii) likely to suffer irreparable harm, (iii) the balance of equities favor moving party, and (iv) an injunction is in the public interest); *Guion v. Terra Mktg. of Nev., Inc.*, 90 Nev. 237, 240 (1974).

5. A Bond as required by FRCP 65(c), to the extent required by the Court.

Switch is entitled to a preliminary injunction and temporary restraining order for the following reasons:

### A. Switch is likely to succeed on the merits of the relevant claims.

To obtain injunctive relief, a party must demonstrate that it will likely succeed on the merits of its underlying relevant claims. *Winter*, at 20. Here, it is likely that Switch will succeed on the merits of the case because the Defendant has personally and publicly admitted to breaching his contracts with Switch. As explained above, Stephen Fairfax and MTechnology were retained by a Switch client and permitted, subject to a stringent Non-Disclosure Agreement to view Switch's trade secret information. After assuring Switch *in writing* that he had no interest in building data centers, Switch permitted Fairfax to return a second time to inspect Switch's trade secrets.

Despite Defendants' contractual commitments and repeated verbal assurances regarding those commitments, Mr. Fairfax then touts his doing the very thing he assured Switch he would not do: he designed a competing facility. A comparison between Switch facilities and Aligned facilities reveal uncanny likeness. Aligned even named the electrical cabling of its facility a "power spline" in blatant imitation of Switch's "power spine."[6] Except for superficial differences, the facilities and the technology appear identical. These striking similarities are not the result of coincidence but rather demonstrate clearly that Stephen Fairfax and MTechnology misappropriated confidential and trade secret information in the design of Aligned Data Centers. Given the obvious misappropriation coupled with Stephen Fairfax's admission that he participated in the design from the "blank page" stage, it is likely that Switch will prevail on the merits of its misappropriation of trade secrets claim and related claims, satisfying the first factor for the imposition of injunctive relief.

### B. Without injunctive relief, Switch will suffer irreparable harm for which compensatory damages are inadequate.

In order for an injunction to be granted, a party must show irreparable harm. *Winter* at 20-24. Here, the misappropriation of trade secrets has and continues to cause irreparable harm to Switch. In additional to monetary damages,[7] Switch's reputation and good will are being undermined. As discussed above, Switch's trade secrets give it a competitive edge in the market, set it apart from its competitors, and uniquely identify it as at the cutting edge in data center innovation only to the degree such trade secrets are not generally known. Thus, the value of Switch's trade secrets is inexorably connected to its reputation and good will, neither of which can be reduced to a dollar amount or calculated as a monetary damage. Customers, both potential and actual, have commented to Switch that the facilities look just like each other. The harm is irreparable.

---

[6] *See* http://www.datacenterknowledge.com/archives/2015/10/19/modular-cooling-system-enables-demand-data-center-capacity (where Aligned promotes its "spline" in the center section of the facility).

[7] Switch has already lost contracts with at least one very large potential client and at this time a multimillion-dollar potential client is deciding whether to contract with Switch or Aligned. There would have been no loss, no injury to Switch, but for Fairfax's breach of his agreement.

Pursuant to both state and federal law, Fairfax has caused Switch irreparable harm. Irreparable harm is presumed in situations where a confidentiality agreement or restrictive covenant has been breached or trade secrets have been misappropriated. *See EchoMail, Inc. v. Am. Express Co.,* 378 F. Supp. 2d 1, 4 (D. Mass. 2005); *Storage Tech. Corp. v. Custom Hardware Eng'g & Consulting, Inc.*, 2004 WL 1497688 (D. Mass. 2004); *FMC Corp v. Taiwan Tainan Giant Indus. Co., Ltd.*, 730 F.2d 61, 63 (2nd Cir. 1984) (trade secrets, once lost, are lost forever; such loss cannot be measured in money damages); *Ivy Mar Co. v. C.R. Seasons, Ltd.*, 907 F. Supp. 547, 566 (E.D.N.Y. 1995); *Computer Assoc. Int'l, Inc. v. Bryan*, 784 F. Supp. 982, 986 (E.D. N.Y. 1992); *Refractory Technology, Inc. v. Koski*, 1990 WL 119560, at *3 (N.D. Ill. 1990) (loss of trade secret would cause plaintiff immediate, irreparable harm); *ISC-Bunker Ramo Corp. V. Altech, Inc.*, 765 F. Supp. 1310, 1338 (N.D. Ill. 1990) ("it is often difficult to …. [d]etermine the monetary damages suffered thereby"); *CPG Prods. Corp. v. Mego Corp.*, 214 U.S.P.Q. 206, 214-15 (S.D. Ohio 1981) (the threat of disclosure, destruction, or dilution of trade secret constitutes irreparable injury justifying injunctive relief); *Donald McElroy, Inc. v. Delany*, 389 N.E.2d 1300, 1308 (1st Dist. 1979) (Once a protectable interest has been established, injury to plaintiff will presumably follow if that interest is not protected; threat of irreparable harm sufficient where former employee violated the terms of a non-disclosure agreement and was about to use confidential information against the plaintiff, irreparable injury was shown and preliminary injunction was properly granted).

Fairfax's unlawful and ongoing disclosure of Switch's trade secrets destroys the value of such trade secrets, rendering the technological innovations taught by them commonplace and damaging Switch's reputation as an innovator solely in possession of cutting edge technology. As such damage is *per se* incapable of being remedied by any monetary sum, it is irreparable under the law.

Switch has built its reputation as a leader in the data colocation industry. This reputation is built on the technology and trade secrets developed by Rob Roy. Now this technology is being misappropriated by Stephen Fairfax and MTechnology in the design and development of Switch competitors. Because Fairfax's unlawful disclosure of Switch's

confidential information and trade secrets has and is presently causing irreparable harm to Switch, a preliminary injunction is proper and warranted under the law.

**C. The public interest and the relative hardships all weigh in favor of Switch.**

The public has an interest in preserving trade secret and confidential information. The preservation of confidential and trade secret protects small and large business alike. Without a recourse in the event of misappropriation, business owners would be unprotected and lose any the ability to compete. Switch provides employment for hundreds of individuals in the Las Vegas metropolitan area. Switch has taken all possible measures to protect its trade secret information, including requiring anyone entering any Switch facility to sign non-disclosure agreements and shielding its trade secrets from public view. Allowing Fairfax to continue to disclose Switch's misappropriated trade secrets and confidential information damages the public's interest in protecting such information and encouraging innovation. Absent robust preliminary enforcement of such trade secrets and confidential information, such trade secrets and confidentiality would be lost forever. Even should a party prevail at trial, the harm would already have been done. The party would have lost the competitive edge the public intends for such confidential information and trade secrets to provide. The public interest therefore favors preserving confidential information and trade secrets generally and in the present action by enjoining misappropriation and continuing disclosure of such confidential information and trade secrets.

Here, the relative hardships all weigh in favor of Switch because, as discussed, irreparable harm has occurred and will continue to occur if Switch's trade secrets continue to be misappropriated and disclosed by Stephen Fairfax and MTechnology. There is no harm to Fairfax and MTechnology because they insisted they were not in the business of designing data centers. Thus, Defendants will not be harmed by requiring Defendants to honor their promise not to be in the business of designing or auditing business.

Accordingly, there is no harm to Defendants. In 2011, and again as late as May of 2013, Mr. Fairfax himself noted that he had no interest in building or operating data centers. Prior to learning Switch's confidential information and trade secrets, no part of Defendants'

business involved the designing or building of data centers. In fact, according to MTechnology's own webpage, MTechnology is focused on "applying the science of Probabilistic Risk Assessment…"[8] No reference is made to the design and/or construction of data centers. Only after Defendants obtained Switch's confidential information and trade secrets did Fairfax and MTechnology commence such a business and they did so by unlawfully misappropriating and using Switch's confidential information and trade secrets in direct violation of the promises, covenants and agreements Defendants had made not to do those very things.

The *status quo ante* that the injunction requests, therefore, is a return to the status of Defendants prior to their violations, misappropriations and unlawful disclosures. Because this Motion properly seeks to restore the parties only to their respective positions prior to the complained of departures from that *status quo* by Defendants, this Motion, on balance, imposes little or no hardship on Defendants. It leaves them in the position they were in prior to their wrongful conduct, harming them not at all. It does not prohibit either Defendant from engaging in the businesses they were engaged in prior to their sanctionable conduct; nor does is prevent Defendants from obtaining an income or profits from any prior-established lawful pursuits. It merely enjoins them from continuing to harm Switch by their recent, unlawful actions. To do this, Switch respectfully request the Court enjoin Stephen Fairfax and MTechnology from continuing to design data center facilities and require them to remove any videos, blogs, or promotional materials involving Fairfax and his design involvement with Aligned Data Centers. While such an injunction would have little or no impact on their Defendants' lawful and existing business, *status quo ante*, the absence of such an injunction—as discussed infra—would result in the permanent, irreparable loss of Switch's trade secrets, confidential information, and the intangible good will and reputation Switch has built upon such intellectual property assets. Clearly the balancing of harms favors Switch, and a preliminary injunction is warranted.

/ / /

[8] *http://www.mtechnology.net/about_us.htm*

**D. This Court should only require nominal security.**

As explained above, it is anticipated that Defendants will suffer no financial consequences should the Court enter the requested preliminary injunction. Moreover, by Defendant's own admission, he has done what he promised Switch he would not do, design data centers. Therefore, a bond is unnecessary. However, in the event that the Court requires that a bond or other security be posted by Switch, Switch requests that the Court set an amount that is no greater than $1,000.00.

## IV. CONCLUSION

Fairfax did something he contractually promised he would not do; he used Switch's trade secrets to design a competing facility, and then promoted that unlawful activity. Based upon the foregoing, Switch has shown it meets the standard for injunctive relief. Switch has demonstrated it is likely to succeed on the merits, it will suffer irreparable harm if an injunction does not issue, the balance of hardships tips in its favor, and an injunction is in the public's best interest. Therefore, Switch respectfully asks this Court to grant this Motion for a Preliminary Injunction pending adjudication of this matter on the merits.

Dated this 31st day of October, 2017.

**WEIDE & MILLER, LTD.**

By: */s/ F. Christopher Austin*
F. Christopher Austin
caustin@weidemiller.com
Ryan Gile
rgile@weidemiller.com
Bank of Nevada Bldg., 5th Floor
7251 W. Lake Mead Blvd., Ste. 530
Las Vegas, NV 89128

Samuel Castor, Esq.
Anne-Marie Birk, Esq.
**SWITCH, LTD.**
7135 S. Decatur Blvd.
Las Vegas, Nevada 89118

*Attorneys for Plaintiff SWITCH, LTD.*

Samuel Castor, Esq.
Nevada Bar No. 11532
**SWITCH, LTD.**
7135 S. Decatur Blvd.
Las Vegas, Nevada 89118

F. Christopher Austin (Nevada Bar No. 6559)
caustin@weidemiller.com
Ryan Gile (Nevada Bar No. 8807)
rgile@weidemiller.com
**WEIDE & MILLER, LTD.**
Bank of Nevada Bldg., 5th Floor
7251 West Lake Mead Blvd., Ste. 530
Las Vegas, Nevada 89128
Telephone: (702) 382-4804
Facsimile: (702) 382-4805

*Attorneys for Plaintiff*
SWITCH, LTD.

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| SWITCH, LTD. a Nevada limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>STEPHEN FAIRFAX; MTECHNOLOGY; and DOES 1 through 10; ROE ENTITIES 11 through 20, inclusive,<br><br>Defendants. | Case No.: 2:17-CV-2651 |

**DECLARATION OF ANNE-MARIE BIRK IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

I, Anne-Marie Birk, declare under penalty of perjury under the laws of the United States as follows:

1. The undersigned, being warned that willful or false statements and the like, are punishable by fine or imprisonment, or both, under 18 U.S.C. 1001, and that such willful false statements and the like may jeopardize the validity of the application or document or any registration resulting therefrom, declares that all statements made of his own knowledge are

true; and all statements made on information and belief are believed to be true.

2. This declaration is submitted in support of Switch Ltd.'s Motion for Preliminary Injunction.

3. I am Associate General Counsel for Switch, Ltd. and have acted in that capacity since May of 2017.

4. Switch is a Nevada limited liability company organized and existing under the laws of the State of Nevada.

5. Applicant is a Las Vegas-based company that designs, constructs, and operates the world's most powerful data centers and technology ecosystems.

6. I am informed, believe, and have reviewed documents showing current and potential customers—who having viewed the data centers of Switch and Aligned—have commented that Aligned's later constructed data center look just like Switch's.

7. Through the Constable in Massachusetts, Switch attempted to effectuate service starting September 12, 2017. Even though the summons and complaint were left with employees at Defendants' place of business, the Constable reported that service was not effectuated as the employees stated they were not officers or agents of Defendants and not authorized to accept service.

8. The parties were simultaneously involved in parallel litigation for patent infringement in Texas. In the course of that patent infringement litigation, counsel for the parties have discussed this pending matter and the service issues related to it.

9. Switch emailed a copy of the complaint to counsel for Defendants and requested that Counsel for Defendants accept service on behalf of their client. However, Defense Counsel refused to accept service.

10. Based on those fact, Switch was of the impression that Defendants were evading service, so Switch originally filed this as an Ex Parte Motion for a Preliminary Injunction in State Court.

/ / /

/ / /

11. Switch has subsequently been informed by Defendant's counsel that service was effectuated earlier.

Executed this 31st day of October, 2017.

*/s/ Anne-Marie Birk*
ANNE-MARIE BIRK, ESQ.

**Exhibit 1**




Mr. Fairfax explains that Aligned retained him to assist in the design of their data center "while the paper was literally still blank". *See* https://www.aligneddatacenters.com/video/steve-fairfax-mtechnology-aligned-data-centers at 1:11. *See also* https://www.youtube.com/watch?v=KZRwktOCvdo&list=PLQ-RIHgVtTDInqq_HLtYGWz-jr3Se1xfg.




Mr. Fairfax also emphasizes that Aligned "told us their reliability target … and gave us a seat at the table to participate in the design process in order to ensure that they achieved that goal." See https://www.aligneddatacenters.com/video/steve-fairfax-mtechnology-aligned-data-centers at 1:26. *See also* https://www.youtube.com/watch?v=KZRwktOCvdo&list=PLQ-RIHgVtTDInqq_HLtYGWz-jr3Se1xfg.

**CERTIFICATE OF SERVICE**

I hereby certify that I am an employee of WEIDE & MILLER, LTD. and that on October 31, 2017, I served a full, true and correct copy of the foregoing **MOTION FOR PRELIMINARY INJUNCTION** via CM-ECF to the addressees listed below:

Marc J. Randazza, Esq.
Ronald D. Green, Esq.
Alex J. Shepard, Esq.
Randazza Legal Group, PLLC
4035 S. El. Capitan Way
Las Vegas, NV 89147
702-420-2001
efc@randazza.com

Attorneys for Defendants STEPHEN FAIRFAX and MTECHNOLOGY

*/s/ James L. Morris*
An employee of Weide & Miller, Ltd.