Marc J. Randazza (NV Bar No. 12265)
Ronald D. Green (NV Bar No. 7360)
Alex J. Shepard (NV Bar No. 13582)
**RANDAZZA LEGAL GROUP, PLLC**
4035 S. El Capitan Way
Las Vegas, NV 89147
Telephone: 702-420-2001
Facsimile: 305-437-7662
ecf@randazza.com

*Attorneys for Defendants,*
*Stephen Fairfax and MTechnology*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| SWITCH, LTD., a Nevada limited liability company, | Case No.: 2:17-cv-02651-GMN-VCF |
| Plaintiff, | **DEFENDANTS' MOTION TO DISMISS** |
| vs. | |
| STEPHEN FAIRFAX; MTECHNOLOGY, INC.; DOES 1 through 10; and ROE ENTITIES 11 through 20, inclusive, | |
| Defendants. | |

Defendants Stephen Fairfax and MTechnology, Inc. ("MTech") (collectively, "Defendants") hereby file their Motion to Dismiss all claims for relief asserted in Plaintiff Switch, Ltd.'s ("Plaintiff" or "Switch") Complaint, pursuant to Fed. R. Civ. P. 12(b)(6).

## MEMORANDUM OF POINTS AND AUTHORITIES

**1.0   INTRODUCTION**

Plaintiff's Complaint is based on vague and indistinct allegations accusing Defendants of misappropriating trade secrets without specifying the trade secrets allegedly misappropriated, or how or when the trade secrets were allegedly misappropriated. The Complaint alleges that Mr. Fairfax toured Plaintiff's data centers a few times, then later did some consulting work for a competitor, Aligned Data Centers LLC ("Aligned"), who designed data centers similar to Plaintiff's.

While Aligned is not a party in this action, it is an important figure in the story Plaintiff tells. It is also important for the Court to consider that, prior to filing this now-removed action in Nevada state court, Plaintiff filed a suit for patent infringement in the U.S. District Court for the Eastern District of Texas against Aligned and MTech, Case No. 2:17-cv-00574 (the "Patent Action") (*See* Complaint in Patent Action, attached as **Exhibit 1**.)[1] A comparison of the Patent Action complaint and the Complaint here shows that the two suits are based on nearly identical factual allegations, and that many of the allegations in the Complaint allege patent infringement based on disclosure of publicly available information, rather than trade secret misappropriation.

Claims for patent infringement and trade secret infringement based upon the same set of facts cannot co-exist. Once the United States Patent and Trademark Office has issued a patent, the material covered by that patent is public and cannot be a trade secret. Switch's trade secret misappropriation claims must be dismissed, or at least Plaintiff must specify which allegations refer to misappropriation of information that is not the subject of Plaintiff's registered patents. The tort claims must also be dismissed as duplicative of the

---

[1] Plaintiff voluntarily dismissed MTech from the Patent Action on October 12, 2017. (*See* Patent Action ECF No. 36.)

misappropriation claims, and Mr. Fairfax must be dismissed from the contract claims, as he was not a party to the contracts at issue.

## 2.0   FACTUAL BACKGROUND

Plaintiff filed this action on September 12, 2017 in the Eighth Judicial District Court for Clark County, Nevada, Case No. A-17-761382-C.  (*See* ECF No. 1-1.)  The Complaint alleges causes of action against both MTech and Mr. Fairfax for (1) breach of contract; (2) breach of implied covenant of good faith and fair dealing; (3) tortious breach of implied covenant of good faith and fair dealing; (4) unjust enrichment; (5) conversion; (6) violation of 18 U.S.C. § 1836, *et seq.*; (7) violation of NRS 600A; and (8) misappropriation of licensable commercial properties.  All these claims arise from the same factual nexus of Mr. Fairfax, as MTech's President, touring Plaintiff's data center facility as part of an audit for a mutual customer and then allegedly disclosing Switch's trade secrets to Aligned years after the fact.  Switch alleges that Aligned used this information to design its own data centers.

The Complaint alleges that Mr. Fairfax toured Plaintiff's facility in May 2011 (ECF No. 1-1 at ¶ 28) and August 2015 (ECF No. 1-1 at ¶ 41).  The Complaint does not specify when Defendants allegedly disclosed information learned from these alleged tours to Aligned.  Rather, it alleges that around November or December 2015, "Defendants failed to keep their contractual commitment."  (ECF No 1-1 at ¶¶ 44-45.)  It also alleges that Mr. Fairfax "was introduced to Aligned . . . [a]round or before 2015," that "Mr. Fairfax was retained by Aligned Data Centers and asked to design their data centers," and that "a litigation attorney for Aligned Data Center's [sic] did acknowledge that Aligned had retained Mr. Fairfax in 2013."  (ECF No. 1-1 at ¶¶ 53, 54, 64.)  The Complaint appears to literally allege that disclosure of information did not occur until around December 2015, but

even a charitable reading shows that it does not allege any disclosure of information prior to 2013.

Plaintiff alleges that Mr. Fairfax was required to sign a non-disclosure agreement ("NDA") prior to his tour of Plaintiff's facility in 2011 and his planned tour in 2015.  (*See* ECF No. 1-1 at ¶¶ 32, 41.)  Each of these NDAs provides that Defendants were under no obligation not to disclose or use confidential information that "is or becomes generally known in the relevant industry without fault of Recipient." (ECF No. 1-1 at 28, 36.)

Mr. Fairfax made the 2011 visit to Switch on behalf of eBay, one of MTech's clients.  (*See* Declaration of Stephen Fairfax ["Fairfax Decl."], attached as **Exhibit 2**, at ¶ 7.)  eBay asked MTech to calculate the reliability of Switch's data center, a task that Mr. Fairfax undertook in his capacity as MTech's President. (*See id*. at ¶¶ 6-10.)  Plaintiff refused to provide any technical documents during the 2011 tour and, as a result of this refusal, MTech was unable to complete this task, resulting in a loss of income to MTech.  (*See id*. at ¶ 10.)  In 2015, MTech entered into another Non-Disclosure Agreement with Switch at the request of eBay. (*See id*. at ¶¶ 11-12.)  However, the anticipated visit to Switch's data center did not occur.  Switch refused to cooperate with eBay and MTech regarding the visit, eBay issued a stop-work order to MTech before Mr. Fairfax or another MTech representative could visit that data center.  (*See id*. at ¶ 13.)

Plaintiff initiated the Patent Action in the Eastern District of Texas on August 7, 2017, alleging causes of action for direct and indirect patent infringement against Aligned, and indirect infringement against MTech.  In the Patent Action, Plaintiff alleges infringement of three patents, issued December 6, 2011 (the "780 Patent"), May 15, 2012 (the "495 Patent"), and April 11, 2017 (the "389 Patent"). (*See* **Exhibit 1** at ¶¶ 15-20.)  Both the Patent Action and this action are based on alleged infringement/misappropriation of Plaintiff's "hot aisle containment

technology" and its "T-SCIF Technology," particularly how this technology helps manage power usage in data centers. (Compare ECF No. 1-1 at ¶¶ 14-27 and **Exhibit 1** at ¶¶ 33.) A side-by-side comparison of the images Plaintiff provides as examples of infringement show that the two suits are based on at least some of the exact same technology. (Compare ECF No. 1-1 at 6-8 and **Exhibit 1** at ¶ 7.) The Patent Action claims that Aligned's use of "an apparatus with 'support brackets,' 'cabinets,' a 'thermal shield,' 'tiered ladder racks supports,' and 'conduit holders'" infringes on the 780 Patent. (**Exhibit 1** at ¶ 59.) It claims that Aligned's alleged use of "an apparatus with 'vertical support brackets,' 'horizontal support brackets,' 'tiered ladder rack supports,' a 'thermal barrier ceiling,' and 'thermal shield'" infringes the 389 Patent. (**Exhibit 1** at ¶ 61.) It also claims that Aligned's alleged use of "an apparatus with 'cabinets,' a 'hot air containment chamber,' and a 'warm air escape gap,'" as well as a '"control system'" infringes the 495 Patent. (**Exhibit 1** at ¶¶ 63-64.)

The Patent Action complaint and the Complaint here allege essentially the same facts regarding Mr. Fairfax's touring of Plaintiff's facility. (Compare ECF No. 1-1 at ¶¶ 28-46 and **Exhibit 1** at ¶¶ 45-52.) They contain essentially the same allegations regarding Defendants' relationship with Aligned. (Compare ECF No. 1-1 at ¶¶ 53-56 and **Exhibit 1** at ¶¶ 53-54.) And they contain essentially the same allegations regarding how Aligned's data center designs allegedly mimic Plaintiff's designs. (Compare ECF No. 1-1 at ¶¶ 57-58 and **Exhibit 1** at ¶¶ 55-56.) Overall, it appears that Plaintiff alleges in these separate suits that essentially the same conduct simultaneously constitutes both patent infringement and trade secret misappropriation.

**3.0  LEGAL STANDARD**

Fed. R. Civ. P. 12(b)(6) requires dismissal of a party's claims "where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to

state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 623 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully . . . When a complaint pleads facts that are merely consistent with a Defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

Leave to amend defective claims must be denied if the court "determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citation and quotation omitted). Dismissal with prejudice is appropriate where amendment would be futile. *See Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996).

For purposes of a motion to dismiss the Court must analyze Plaintiff's state law claims under the default rule that federal courts "must apply the state law that would be applied by the state court of the state in which it sits." *Shannon-Vail Five, Inc. v. Bunch*, 270 F.3d 1207, 1210 (9th Cir. 2001). Accordingly, for purposes of this Motion the Court should apply Nevada law for the state law claims.

**4.0   ARGUMENT**

    **4.1   Plaintiff Fails to State any Claim Based on Disclosure of the Subject Matter of the 780 Patent or the 495 Patent.**

A comparison of the complaint in the Patent Action and the Complaint here shows that Plaintiff alleges essentially the same conduct by Defendants simultaneously constitutes contributory patent infringement and misappropriation of trade secrets. (Compare ECF No. 1-1 at ¶¶ 14-46, 53-58 with **Exhibit 1** at ¶¶ 33, 45-56.) This is a legal impossibility. "[T]he protection afforded by the trade secret and patent regimes is mutually exclusive." *B.E. Meyers & Co. v. United States*, 47

Fed. Cl. 375, 378 (2000).  "[D]isclosure of a trade secret in a patent places the information comprising the secret into the public domain."  *Stutz Motor Car of Am., Inc. v. Reebok Int'l, Ltd.*, 909 F. Supp. 1353, 1359 (C.D. Cal. 1995).  A trade secret misappropriation claim can only co-exist with a patent infringement claim where the plaintiff "reveals 'implementation details and techniques' beyond what was disclosed in his patent."  *Aqua-Lung Am., Inc. v. Am. Underwater Products, Inc.*, 709 F. Supp. 2d 773, 788 (N.D. Cal. 2010) (citing *Celeritas Techs., Ltd. v. Rockwell Int'l Corp.*, 150 F.3d 1354, 1358 (Fed. Cir. 1998)).

In the Patent Action, Plaintiff alleges infringement of the 780 Patent, the 495 Patent, and the 389 Patent.  (*See* **Exhibit 1** at ¶¶ 15-20.)  The USPTO issued the 780 Patent on December 6, 2011, and issued the 495 Patent on May 15, 2012. (*See* **Exhibit 1** at ¶¶ 15, 17.)  The subject matter of these two patents thus became public knowledge in 2011 and 2012.  Plaintiff is purposely vague as to when Defendants allegedly disclosed information they obtained while touring Plaintiff's facility, but even the most charitable reading of the Complaint alleges the earliest possible disclosure occurred in 2013, after the subject matter of these patents became public.  (*See* ECF No. 1-1 at ¶¶ 45, 53-54, 64.)  Accordingly, Plaintiff's Sixth and Seventh claims, alleging violation of the Defend Trade Secrets Act of 2016 ("DTSA") and trade secret misappropriation under the Nevada Uniform Trade Secrets Act ("NUTSA") must necessarily fail to the extent they attempt to premise liability on disclosure of information that is the subject of the 780 Patent or the 495 Patent.

Plaintiff's contract claims also fail to this extent.  These claims all premise liability on alleged disclosure of information to Aligned that Defendants allegedly had an obligation to keep confidential.  However, both the 2011 and 2015 NDAs did not impose any such obligations regarding "information [that] is or becomes generally known in the relevant industry without fault of Recipient."  (ECF No. 1-1

at 28, 36.) The subject matter of the 780 Patent and 495 Patent was publicly available for years prior to the earliest possible disclosure Plaintiff alleges, and thus was generally known in the relevant industry by virtue of the USPTO issuing these patents at the time of Defendants' alleged disclosure. Thus, pursuant to the plain language of the NDAs, Defendants were under no contractual obligation to keep the information confidential. Counts 1-3 of the Complaint fail to the extent they are premised on disclosure of the subject matter of the 780 Patent or 495 Patent.

For the same reasons, Plaintiff's tort claims must fail to the extent they are premised on disclosure of the subject matter of the 780 Patent or 495 Patent. The fourth, fifth, and eighth causes of action are all premised on alleged misappropriation and use of Plaintiff's alleged "confidential information." No tortious use is possible, however, where the information in question was publicly available and Defendants had no legal obligation not to disclose the information.

### 4.2  Any Claim Not Based on Disclosure of the Subject Matter of the 780 Patent or the 495 Patent Must be Pled with Greater Specificity.

All of Plaintiff's claims stem from its misappropriation claim. To state a claim for misappropriation under [NUTSA], a plaintiff must allege (1) misappropriation through use, disclosure, or nondisclosure of use, of (2) a valuable trade secret, (3) made in breach of an express or implied contract or by a party with a duty not to disclose. *See Frantz v. Johnson*, 116 Nev. 455, 466 (2000). A claim for misappropriation under the DTSA has substantially the same elements. *See* 18 U.S.C. § 1839; *see also Singer v. Stuerke*, 2017 U.S. Dist. LEXIS 92773, *6-7 (D. Nev. June 14, 2017). As already explained, once a patent issues, the subject matter of that patent becomes public knowledge and can no longer be a trade secret. *See Reebok*, 909 F. Supp. at 1359.

Plaintiff's Complaint is defective because Plaintiff alleges that essentially the same conduct constitutes both patent infringement and trade secret

misappropriation. The Complaint makes no attempt to distinguish between what information is the subject matter of the 780 Patent or 495 Patent, which were publicly available at the time Defendants allegedly disclosed information to Aligned. The DTSA claim (incorporated by the NUTSA claim) alleges only that Defendants misappropriated "Confidential Information, including confidential information and trade secrets relating to Switch's T-SCIF Technology, data center designs, operations, electrical pathways, and other confidential information." (ECF No. 1-1 at ¶ 101. All the other claims are based on the alleged use and disclosure of similarly-described information, including "Confidential Information" as defined in the NDAs Defendants allegedly signed. The Complaint makes no mention of what "Confidential Information" is or was the subject of Plaintiff's patents.

Given that (1) Plaintiff alleges substantially identical conduct also constitutes patent infringement,[2] (2) two of the three patents in the Patent Case were publicly available at the earliest possible point of alleged disclosure to Aligned; and (3) Defendants were under no legal obligation not to disclose publicly available information, it is impossible to determine from the Complaint what allegations are legally sufficient. Some allegations must necessarily fail because they do not involve trade secrets or non-public information, and thus no misappropriation could have occurred and no breach of the NDAs could have occurred. The Complaint, however, lumps all the alleged "confidential information" together, such that neither Defendants nor the Court can determine what allegations fall within the realm of a patent infringement claim, and thus

---

[2]  A side-by-side comparison of the images Plaintiff provides as examples of infringement show that the two suits are based on at least some of the exact same technology. (Compare ECF No. 1-1 at 6-8 and **Exhibit 1** at ¶ 7.)

must be dismissed, and what allegations properly allege trade secret misappropriation.

Vague, conclusory allegations of misappropriation are not sufficient to meet a plaintiff's burden under Fed. R. Civ. P. 8. *See Veronica Foods Co. v. Ecklin*, 2017 U.S. Dist. LEXIS 101325, *45 (N.D. Cal. June 29, 2017) (finding that "an everything-but-the-kitchen-sink assertion that Defendants 'have made improper and unauthorized use of Veronica Foods's Customer List, Supplier List, and Confidential Business Information' to solicit customers'" are "not the sort of factual allegations that the Court must accept as true at the pleading stage"). Plaintiff need not disclose at the pleading stage all information regarding its alleged trade secrets, but it must meaningfully distinguish between information that is actually secret and information that has been publicly disclosed in its patents.

### 4.3   Plaintiff's Fourth, Fifth, and Eighth Causes of Action are Superseded and Must be Dismissed with Prejudice.

Plaintiff's fourth, fifth, and eighth causes of action allege the common-law torts of unjust enrichment, conversion, and misappropriation of licensable commercial properties, respectively. Each of these causes of action is superseded by NUTSA. NRS 600A.090(1) provides that "this chapter displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret." Exceptions to this rule exist for contractual remedies, "other civil remedies that are not based upon misappropriation of a trade secret," or criminal sanctions. NRS 600A.090(2). A tort claim is barred if it relies on misappropriation of a trade secret to prevail. *See Octaform Sys. V. Johnston*, 2017 U.S. Dist. LEXIS 90330, *7-8 (D. Nev. June 12, 2017). And due to the

breadth of NRS 600A's definitions for "trade secret"[3] and "misappropriation,"[4] "if [Plaintiff's] tort claims hinge on the allegation that the defendants used or disclosed [Plaintiff's] secret 'information,' NUTSA precludes the claims." *Id*. at *8.

Plaintiff's fourth, fifth, and eighth causes of action are all premised on the same allegations as its trade secret claims, i.e., Plaintiff provided confidential trade-secret information to Defendants, and then Defendants allegedly disclosed this information to Aligned. The unjust enrichment claim specifically premises

---

[3] The statute defines "trade secret" as:

> information . . . that: (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by the public or any other persons who can obtain commercial or economic value from its disclosure or use; and (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

NRS 600A.030(5).

[4] The statute defines "misappropriation" as:

> (a) Acquisition of the trade secret of another by a person by improper means;
> (b) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
> (c) Disclosure or use of a trade secret of another without express or implied consent by a person who:
>   (1) Used improper means to acquire knowledge of the trade secret;
>   (2) At the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was:
>     (I) Derived from or through a person who had used improper means to acquire it;
>     (II) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or
>     (III) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or
>   (3) Before a material change of his or her position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

NRS 600A.030(2).

- 11 -
Defendants' Motion to Dismiss
2:17-cv-02651-GMN-VCF

liability on Defendants' alleged use of "[t]he Confidential Information disclosed to Defendants . . . related to the T-SCIF, Switch's data center designs, trade secrets, and other confidential information . . . ." (ECF No. 1-1 at ¶ 88.) The "property" identified in the conversion claim includes "Confidential Information about Switch's T-SCIF Technology, data center designs, trade secrets, and other confidential information . . . ." (ECF No. 1-1 at ¶ 94.)[5] And the misappropriation of licensable commercial properties claim is premised on Defendants' alleged "misappropriation" of Plaintiff's "data center storage designs and related intellectual property associated with Switch's T-SCIF Technology." (ECF No. 1-1 at ¶¶ 114, 116.)

As these claims are all premised on misappropriation of trade secrets, they are thus superseded by statute and must be dismissed with prejudice. *See Global Advanced Metals USA, Inc. v. Kemet Blue Powder Corp.*, 2012 U.S. Dist. LEXIS 126550, *11-12 (granting judgment on the pleadings and dismissing tort claims as preempted by NUTSA because they were based on alleged misappropriation of trade secrets); *Hutchison v. KFC Corp.*, 809 F. Supp. 68, 71 (D. Nev. 1992) (holding that claims for unjust enrichment and unfair competition were precluded by NUTSA because the claims were duplicative of trade secret claims).

### 4.4   The Court Must Dismiss Plaintiff's Contract Claims as to Mr. Fairfax

In its First, Second, and Third Claims for Relief, Switch demands that the Court find Defendants MTech and Fairfax liable for breach of contract, breach of the implied covenant of good faith and fair dealing, and tortious breach of the

---

[5] To the extent Plaintiff may attempt to argue that the conversion claim involves information beyond the broad definition of "trade secret" in NUTSA, the claim still fails. This Court has declined to expand the scope of conversion claims beyond tangible property rights, and the conversion claim does not mention any converted tangible property. *See Custom Teleconnect, Inc. v. Int'l Tele-Services, Inc.*, 254 F. Supp. 2d 1173, 1182 (D. Nev. 2003).

implied covenant of good faith and fair dealing. Each claim relates to MTech's alleged breach of the NDAs entered into in 2011 and 2015 between Switch and MTech. While MTech did not breach either agreement, these claims cannot stand with respect to Defendant Fairfax, as he is not a party to either of them.

Privity of contract is a basic tenet of contract law, stating that contracts only "give rights and impose liabilities on the concerned parties" and that only the parties to a contract "are given the right to sue each other according to the contract terms." (Definition of *privity of contract*, Black's Law Dictionary, attached as **Exhibit 3**.)[6] As a long-accepted rule, there must be privity of contract between the plaintiff and the defendant "in order to render the defendant liable on the contract." *White Pine Cty. Bank v. Sadler*, 6 P. 941, 943 (Nev. 1885).

Here, Plaintiff insists that Mr. Fairfax is liable to it for the alleged breach of two NDAs, even though he is not personally a party to either agreement. Even if MTech had breached the NDAs (which it did not), Mr. Fairfax could not be liable for that breach. It is well-settled that a corporation's officers and directors are not individually liable for the corporation's breach of a contract. *See, e.g., B&M Linen Corp. v. Kannegiesser, USA, Corp.*, 679 F. Supp. 2d 474, (S.D. N.Y. 2010) (holding that a "corporate officer acting in his official capacity is not personally liable for the corporation's breach of contract"); *In re Wolf*, 556 B.R. 676, 684 (Bankr. E.D. Pa. 2016), *citing Daniel Adams Assoc., Inc. v. Rimbach Pub., Inc.*, 519 A.2d 997, 1000-01 (Pa. Super 1987) (holding that "when a party contracts with a corporation through its agent, the corporation alone is liable [for] breach of contract"); *Grosvenor Prop., Ltd. v. Southmark Corp.*, 896 P.2d 1149, 1153-54 (9th Cir. 1990); *Smoot v. B & J Restoration Serv.*, 279 P.3d 805, 812 (Ok. Civ. App. 2012); *Winkler v. V.G. Reed & Sons*, 638 N.E. 2d 1228, 1231-32 (Ind. 1994).

---

[6] Available at: <thelawdictionary.org/privity-of-contract> (last accessed Nov. 2, 2017).

Here, Switch asks this Court to hold Mr. Fairfax liable for alleged breaches of the NDAs that he allegedly signed in 2011 and 2015. Plaintiff has no legitimate basis to do so. Mr. Fairfax clearly signed the 2011 Non-Disclosure Agreement in his capacity as "President, MTechnology, Inc." and not in his individual capacity. (*See* Doc. No. 1-1 at 29.) The 2015 NDA is even more explicit regarding whether Mr. Fairfax was signing on behalf of MTech, as MTech is explicitly listed as the contracting party. (*See* Doc. No. 1-1 at 37.)

Mr. Fairfax made the 2011 visit to Switch on behalf of eBay, one of MTech's clients. (*See* Fairfax Decl. at ¶ 7.) eBay asked MTech to calculate the reliability of Switch's data center, a task that Mr. Fairfax undertook in his capacity as MTech's President. (*See id*. at ¶¶ 6-9.) In 2015, MTech entered into another Non-Disclosure Agreement with Switch at the request of eBay. (*See id*. at ¶ 11-12.) However, the anticipated visit to Switch's data center did not occur; because Switch refused to cooperate with eBay and MTech regarding the visit, eBay issued a stop-work order to MTech before Mr. Fairfax or another MTech representative could visit that data center. (*See id*. at ¶ 13.)

Defendants are confident that MTech did not breach either Non-Disclosure Agreement. In fact, it did not even have a chance to breach the 2015 agreement. However, even if it had, Mr. Fairfax cannot be held individually liable for any breach or for the related implied covenant of good faith and fair dealing claims. He is not a party to either Non-Disclosure Agreement. Plaintiff does not have privity of contract with Mr. Fairfax, and he must be dismissed from the First, Second, and Third Claims for Relief.

## 5.0   CONCLUSION

For the foregoing reasons, Defendants request that the Court dismiss all of Plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(6). The Court should dismiss Plaintiff's first, second, and third causes of action as to Defendant Stephen Fairfax

with prejudice. The Court should dismiss Plaintiff's fourth, fifth, and eighth causes of action as to all Defendants with prejudice.

Dated: November 2, 2017.

Respectfully submitted,

/s/ Ronald D. Green
Marc J. Randazza (NV Bar No. 12265)
Ronald D. Green (NV Bar No. 7360)
Alex J. Shepard (NV Bar No. 13582)
**RANDAZZA LEGAL GROUP, PLLC**
4035 S. El Capitan Way
Las Vegas, NV 89147

*Attorneys for Defendants
Stephen Fairfax and MTechnology, Inc.*

Case No. 2:17-cv-02651-GMN-VCF

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 2, 2017, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I further certify that a true and correct copy of the foregoing document being served via electronic mail and U.S. Mail to the attorneys listed below:

Samuel Castor, Esq.
**SWITCH, LTD.**
7135 S. Decatur Blvd.
Las Vegas, NV 89118
sam@switch.com
scastor@switchlv.com

F. Christopher Austin, Esq.
Ryan Gile, Esq.
**WEIDE & MILLER, LTD.**
Bank of Nevada Bldg., 5th Floor
7251 West Lake Mead Blvd., Ste. 530
Las Vegas, NV 89128
caustin@weidemiller.com
rgile@weidemiller.com

*Attorney for Plaintiff, Switch, Ltd.*

Respectfully Submitted,

_____
Employee,
Randazza Legal Group, PLLC