Marc J. Randazza (NV Bar No. 12265)
Ronald D. Green (NV Bar No. 7360)
Alex J. Shepard (NV Bar No. 13582)
**RANDAZZA LEGAL GROUP, PLLC**
4035 S. El Capitan Way
Las Vegas, NV 89147
Telephone: 702-420-2001
Facsimile: 305-437-7662
ecf@randazza.com

*Attorneys for Defendants,*
*Stephen Fairfax and MTechnology*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| SWITCH, LTD., a Nevada limited liability company, | Case No.: 2:17-cv-02651-GMN-VCF |
| Plaintiff, | |
| vs. | |
| STEPHEN FAIRFAX; MTECHNOLOGY, INC.; DOES 1 through 10; and ROE ENTITIES 11 through 20, inclusive, | |
| Defendants. | |

## DEFENDANTS' MEMORANDUM IN OPPOSITION TO

## PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

**1.0     INTRODUCTION**

Plaintiff asks this Court for an incredibly broad, poorly defined injunction based upon vague and indistinct allegations accusing Defendants of misappropriating unidentified trade secrets that are actually protected by patent. Plaintiff's request is based upon its incorrect assumption that Defendant MTechnology, Inc. ("MTech"), a risk assessment consulting company, and its principal, Stephen Fairfax, designed a data center for Aligned Data Centers, LLC ("Aligned"), one of Switch's competitors. While Defendants and Aligned have both repeatedly assured Switch that Defendants did not design Aligned's data center, Plaintiff Switch still seeks injunctive relief that, given how broadly and unartfully its request is drafted, could serve to shut down MTech's operations.

While Aligned is not a party to this action, it is an essential figure in the false narrative that Plaintiff has crafted. Prior to filing this suit against MTech and Mr. Fairfax in Nevada, Plaintiff sued MTech and Aligned for patent infringement in the U.S. District Court for the Eastern District of Texas, Case No. 2:17-cv-00574 (the "Patent Action"). The Patent Action and this suit are premised on nearly identical factual allegations. In other words, the very same things that Switch has identified as trade secrets in this litigation are identified as patent protected in the Patent Action.

Claims for patent infringement and trade secret misappropriation based upon the same facts cannot co-exist. Once the U.S. Patent and Trademark Office ("USPTO") has issued a patent, the material covered by that patent is public and, by definition, cannot be a trade secret. Thus, Plaintiff Switch cannot show the likelihood of success required for issuance of injunctive relief. Even if Defendants were responsible for every misdeed that Switch ascribes to them (which they are not), Plaintiff's claims for relief are untenable.

Moreover, Switch cannot show irreparable injury. It proffers no evidence of irreparable harm and relies upon long-overruled case law to incorrectly argue that it is entitled to a presumption of irreparable harm. Finally, Switch provides no evidence that MTech is currently designing, or even threatening to design, data centers using Switch's undefined trade secrets. It cannot do so, given that Defendants have never participated in the design of data centers and most of Switch's so-called "trade secrets" are protected by patent and thus readily available to any member of the public.

Switch's demands for injunctive relief are designed to: (1) adversely impact the business of Aligned, one of its competitors and a non-party to this case; (2) subvert federal discovery rules, as it demands that all documents between MTech and Aligned be produced without regard to the Federal Rules of Civil Procedure or this Court's local rules; (3) stop Defendants from engaging in activity that they have never engaged in; and (4) adversely impact the business of MTech.  None of these reasons are sufficient for injunctive relief, and this Motion should be denied.

## 2.0    STATEMENT OF RELEVANT FACTS

Plaintiff Switch filed this action on September 12, 2017 in the Eighth Judicial District Court for Clark County, Nevada, Case No. A-17-761382-C.  (*See* ECF No. 1-1.)  The Complaint alleges causes of action against both MTech and Mr. Fairfax for: (1) breach of contract; (2) breach of implied covenant of good faith and fair dealing; (3) tortious breach of implied covenant of good faith and fair dealing; (4) unjust enrichment; (5) conversion; (6) violation of 18 U.S.C. § 1836, *et seq.*; (7) violation of NRS 600A; and (8) misappropriation of licensable commercial properties.  All these claims arise from the same factual nexus of Mr. Fairfax, as MTech's President, touring Plaintiff's data center facility as part of an audit for a mutual customer and then allegedly disclosing Switch's trade secrets to Aligned several years after the fact.  Switch alleges that Aligned used this information to design its own data centers and/or that Defendants designed Aligned's data center for Aligned using information gleaned from Mr. Fairfax's tour of the Switch facilities.

### 2.1    MTech's tour of Switch's facility

Plaintiff's Complaint alleges that Mr. Fairfax toured Plaintiff's facility in May 2011 (ECF No. 1-1, at ¶ 28) and August 2015 (ECF No. 1-1, at ¶ 41).  However, this is incorrect, and Mr. Fairfax only visited Switch's facilities once.  Mr. Fairfax toured a Switch facility on May 9, 2011 on behalf of eBay, one of MTech's clients.  (*See* Declaration of Stephen Fairfax ("Fairfax Decl."), attached as **Exhibit 1**, at ¶¶ 9-10.)  eBay had asked MTech to calculate the reliability of Switch's data center, and Mr. Fairfax undertook the task in his capacity as MTech's President.  (*See id.*, at ¶ 12.)  Before touring the facility, Mr. Fairfax signed a non-disclosure agreement ("NDA") on behalf of MTech, which provided that MTech could not disclose confidential information but was under no obligation not to

disclose or use information that "is or becomes generally known in the relevant industry without fault of recipient." (ECF No. 1-1, at ¶¶ 28, 36.)

Plaintiff Switch frustrated the purpose of the 2011 tour of its facility. It refused to provide MTech with any technical documents, leaving MTech unable to complete the task that eBay had assigned to it. (*See* Fairfax Decl., at ¶ 13.) Switch additionally forbade Mr. Fairfax from taking any notes or photographs during his visit. (*See id.*, at ¶ 14.) Switch's refusal to cooperate with Defendants and eBay regarding the visit rendered MTech unable to complete its assigned tasks for eBay. (*See id.*, at ¶ 13.) As a result, eBay terminated the project, resulting in a loss of income to MTech. (*See id.*, at ¶ 13.)

However, MTech's alleged 2015 visit to Switch never occurred. eBay did retain MTech to conduct the tour, and Mr. Fairfax, on behalf of MTech, executed an NDA. (*See id.*, at ¶¶ 15-16.) However, Switch refused to cooperate with eBay and MTech regarding the visit. (*See id.*, at ¶ 17.) Switch's conduct frustrated eBay, causing MTech's client to issue a stop-work order prior to any visitation by MTech. (*See id.*, at ¶ 17.)

## 2.2    MTech's alleged relationship with Aligned

Aligned designs data centers. It is one of Switch's competitors and has been MTech's client since 2015. (*See* Fairfax Decl., at ¶ 19.) In 2015, Aligned retained MTech to perform risk analysis on a data center it was constructing in Plano, Texas. (*See id.*) With no supporting evidence, Plaintiff Switch falsely alleges that "Mr. Fairfax improperly used Switch's Confidential Information to influence the design and makeup of the Aligned Data Centers." (ECF No. 1-1, at ¶ 57.)

Switch does not define "Confidential Information." It does not specify what "Confidential Information" Defendants supposedly provided to Aligned and is vague regarding when MTech and/or Mr. Fairfax supposedly provided "Confidential Information" to Aligned. Switch appears to allege that it occurred in November or December of 2015. (*See id.*, at ¶¶ 44-45, 53.) However, it also alleges that Aligned retained Defendants in 2013. (*See id.*, at ¶ 64.) In any case, even the most charitable reading of Plaintiff's Complaint shows that Switch does not allege any disclosure of information prior to 2013.

However, Defendants did not disclose any "Confidential Information" to Aligned. Defendants' only visit to a Switch facility occurred in 2011. During that visit, Switch refused to provide technical documents to Mr. Fairfax and forbade Mr. Fairfax from taking notes or photos. Thus, even if Defendants had learned "Confidential Information" from Mr. Fairfax's tour of Switch's facility, they would not have had any way to retain that technically complex information for a period of several years until Aligned retained Defendants.

Moreover, Defendants do not, and have never, designed data centers. (*See* Fairfax Decl., at ¶ 22.) MTech is a small company with 6 employees that specializes in calculating the reliability of data centers according to a national standard, IEEE-3006.7, *IEEE Recommended Practice for Determining the Reliability of 7x24 Continuous Power Systems in Industrial and Commercial Facilities.* (*See id.*, at ¶ 6.) It does not have the capacity to undertake such a massive, time-intensive project. (*See id.*, at ¶ 7.) Moreover, designing data centers would put MTech in direct competition with its most lucrative customers. (*See id.*, at ¶ 8.)

In this case, the only thing that Defendants have done with respect to the Aligned data centers at issue is provide reliability calculations. (*See id.*, at ¶ 22; *see also* Declaration of Jakob Carnemark ["Carnemark Decl."], attached as **Exhibit 2**, at ¶ 9.) Neither MTech nor Mr. Fairfax had any hand in the design of the data centers. (*See* Carnemark Decl. at ¶ 9; *see also* Fairfax Decl. at ¶ 22.) MTech and Mr. Fairfax have repeatedly told Switch that they had no hand in the design of Aligned's data centers. (*See* Fairfax Decl., at ¶ 23.) Aligned has informed Switch that neither MTech nor Mr. Fairfax assisted in the design of Aligned's data centers. (*See* Carnemark Decl. at ¶ 10.) Defendants did not engage in the conduct that makes up the entirety of Plaintiff's Complaint. The current Motion is meritless.

## 3.0   PROCEDURAL HISTORY

Switch first filed suit against MTech and Aligned in the U.S. District Court for the Eastern District of Texas on August 7, 2017. (*See* ECF No. 8-1.) In that case, it alleged that defendants were infringing upon Switch's patents. Switch did not request injunctive relief against MTech or Aligned in that case. MTech moved to dismiss the Texas complaint on September 29, 2017 for improper

venue pursuant to Fed. R. Civ. P. 12(b)(3).  After MTech moved to dismiss, Switch agreed to dismiss MTech from the lawsuit, which is still pending against Aligned.

Before proceeding to the procedural history of this action, it is worth noting the extraordinary similarities between the Patent Action and this case and how the claims made in the Patent Action render the claims in this case untenable.  In the Patent Action, Plaintiff alleges infringement of three patents, issued December 6, 2011 (the "780 Patent"), May 15, 2012 (the "495 Patent"), and April 11, 2017 (the "389 Patent").  (*See id.* at ¶¶ 15-20.)  Both the Patent Action and this action are based on alleged infringement/misappropriation of Plaintiff's "hot aisle containment technology" and its "T-SCIF Technology," particularly how this technology helps manage power usage in data centers. (Compare ECF No. 1-1 at ¶¶ 14-27 and ECF No. 8-1 at ¶¶ 33.)  A side-by-side comparison of the images Plaintiff provides as examples of infringement show that the two suits are based on at least some, and likely most, of the exact same technology.  (Compare ECF No. 1-1 at ¶ 6-8 and ECF No. 8-1 at ¶ 7.)  The Patent Action claims that Aligned's use of "an apparatus with 'support brackets,' 'cabinets,' a 'thermal shield,' 'tiered ladder racks supports,' and 'conduit holders'" infringes on the 780 Patent.  (ECF No. 8-1 at ¶ 59.)  It claims that Aligned's alleged use of "an apparatus with 'vertical support brackets,' 'horizontal support brackets,' 'tiered ladder rack supports,' a 'thermal barrier ceiling,' and 'thermal shield'" infringes the 389 Patent.  (*Id.* at ¶ 61.)  It also claims that Aligned's alleged use of "an apparatus with 'cabinets,' a 'hot air containment chamber,' and a 'warm air escape gap,'" as well as a "'control system'" infringes the 495 Patent.  (*Id.* at ¶¶ 63-64.)

The Patent Action complaint and the Complaint here allege essentially the same facts regarding Mr. Fairfax's touring of Plaintiff's facility.  (Compare ECF No. 1-1 at ¶¶ 28-46 and ECF No. 8-1 at ¶¶ 45-52.)  They contain essentially the same allegations regarding Defendants' relationship with Aligned.  (Compare ECF No. 1-1 at ¶¶ 53-56 and ECF No. 8-1 at ¶¶ 53-54.)  And they contain essentially the same allegations regarding how Aligned's data center designs allegedly mimic Plaintiff's designs.  (Compare ECF No. 1-1 at ¶¶ 57-58 and ECF No. 8-1 at ¶¶ 55-56.)  Overall, it appears that Plaintiff alleges in these separate suits that essentially the same conduct simultaneously constitutes both patent infringement and trade secret misappropriation.  This is untenable.

On September 12, 2017, Switch filed this lawsuit in Clark County District Court against MTech and its principal, Stephen Fairfax.  (*See* ECF No. 1, at ¶ 1.)  Switch served MTech and Mr. Fairfax on or about September 25, 2017.  (*See id.* at ¶ 10.)

About a month after filing this case, on October 11, 2017, Switch moved for a Preliminary Injunction on an Order Shortening Time in Nevada state court.  (*See* ECF No. 1-2.)  Switch insisted that its Motion needed to be heard on an order shortening time even though it never requested injunctive relief in the factually identical Texas case and waited one month after filing the Nevada case to move for injunctive relief.  Switch additionally justified its request for an order shortening time by misrepresenting to the state court that MTech and Mr. Fairfax were avoiding service, even though they had been served over 2 weeks prior to Plaintiff's filing of the Motion.  (*See* ECF No. 1-2 at 8.)

MTech removed this case to the U.S. District Court for the District of Nevada on October 12, 2017.  It provided the required notice to Switch and the state court on that date, and the state court case was closed pursuant to 28 U.S.C. § 1446(d).  Nevertheless, on October 19, 2017, the state court inexplicably granted Switch's Motion for Preliminary Injunction, even though the docket stated that the matter was closed, the Motion had not been fully briefed, and neither Plaintiff nor Defendants attended the hearing.  The Court has since vacated its Order.

Switch did not refile its Motion for Preliminary Injunction in this Court until October 31, 2017, nearly three weeks after the case was removed.[1]  Despite Switch's delay, the refiled Motion is substantively identical to the Motion filed in state court.  In its refiled Motion, Switch falsely implied to this Court that the state court had granted Switch's request for injunctive relief on its merits.[2]

---

[1]   The instant Motion was thus filed nearly three months after the initiation of the Patent Action, which relies upon virtually identical factual allegations.  It was filed over one and one-half months after the filing of this case in state court.

[2]   Given Switch's demonstrated willingness to misrepresent the proceedings in state court, Defendants requested that the state court judge correct his improper decision on that Motion.  (*See* Correspondence from Marc Randazza to state court, dated November 6, 2017, attached as **Exhibit 3**.)  The state court agreed and vacated the improperly granted injunction on November 7, 2017.  (*See* Order Vacating State Preliminary Injunction, attached as **Exhibit 4**.)

1   (*See* ECF No. 7, at 2.)  It additionally repeated its misrepresentation that MTech and Mr. Fairfax were

2   avoiding service.  (*See id.*, at 4.)

3   **4.0    LEGAL ARGUMENT**

4        **4.1    Standard of Review**

5        To obtain a preliminary injunction, a plaintiff must establish that "he is likely to succeed on

6   the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the

7   balance of equities tips in his favor, and that an injunction is in the public interest."  *Alliance for the*

8   *Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (*quoting Winter v. NRDC*, 555 U.S. 7, 129

9   S.Ct. 365, 374 (2008)).  Courts within the U.S. Court of Appeals for the Ninth Circuit may also apply

10  a "sliding scale" formulation of this test, in which "the elements of the preliminary injunction test are

11  balanced, so that a stronger showing of one element may offset a weaker showing of another."

12  *Cottrell*, 632 F.3d at 1131.

13       Injunctive relief is "an extraordinary remedy never awarded as of right."  *Id.*  Injunctions

14  should only be granted "in limited circumstances and where the merits of the case *clearly* favor one

15  party over the other."  *Stark v. Diageo Chateau & Estate Wines Co.*, 907 F. Supp. 2d 1042, 1049 (N.D.

16  Cal. 2012) (emphasis in original).  The burden of showing a likelihood of success on the merits is

17  "placed on the party seeking to demonstrate entitlement to the extraordinary remedy of a preliminary

18  injunction."  *Stark*, 907 F. Supp. 2d at 1050 (*quoting Perfect 10, Inc. v. Amazon.com, Inc.*, 487 F.3d 701,

19  714 *opinion amended on reh'g* 508 F.3d 1146 (9th Cir. 2007).

20       **4.2    Plaintiff cannot demonstrate a likelihood of success on the merits.**

21       To obtain injunctive relief, Plaintiff Switch must first demonstrate that it is likely to succeed

22  on the merits of each claim it uses to demand an injunction.  *See Conair Corp. v. LeAngelique, Inc.*, 2014

23  U.S. Dist. LEXIS 128758, at *8 (D. Nev. Sept. 15, 2014).  This is the most important showing a

24  plaintiff must make to obtain injunctive relief.  *See Garcia v. Google, Inc.*, 78 F.3d 733, 740 (9th Cir.

25  2015).  To show a likelihood of success, Switch must, at the very least, show that there is a probability

26  that it can prove the necessary facts at trial to prevail under each claim.  *See Sierra On-Line, Inc. v.*

27  *Phoenix Software, Inc.*, 739 F.2d 1415, 1423 (9th Cir. 1984).  This is a threshold inquiry.  In other words,

if Switch cannot show a likelihood of success on the merits, then the Court does not need to consider the remaining elements required for injunctive relief. *See Garcia*, 78 F.3d at 740.

In this case, Plaintiff has asserted eight claims for relief, but the "likelihood of success" analysis in its Motion covers significantly less than one page. (*See* ECF No. 7 at 9-10.) Switch does not address a purported likelihood of success regarding any specific claim. Instead, it makes the blanket statement that it "will likely succeed on the merits of its underlying relevant claims." (*Id.* at 9.) "Relevant claims" is not a defined term in the Motion.

Switch briefly references some, but not all, of its claims for relief in its likelihood of success argument. Given that it states that it will prevail on its "claims" multiple times, Defendants assume that Switch is attempting to allege a likelihood of success on each of its claims for relief. However, Switch does not provide this Court with the elements it must establish to prevail on any of its claims for relief or the factual assertions in its Complaint that purportedly prove those elements. Given the vagueness of Switch's request and the inexplicable brevity of its likelihood of success argument, Switch's Motion should immediately fail without further analysis. *See Conair Corp.*, 2014 U.S. Dist. LEXIS 128758, at *8. However, Defendants will demonstrate why Switch is unlikely to succeed on any of its claims for relief.[3]

### 4.2.1   Switch is unlikely to succeed on its trade secret claims

Plaintiff's Sixth and Seventh Claims for Relief are for misappropriation of trade secrets under the federal Defend Trade Secrets Act of 2016 ("DTSA") and trade secret misappropriation under the Nevada Uniform Trade Secrets Act ("NUTSA"). Both statutes permit the owner of a trade secret to bring a civil action against parties that misappropriate those trade secrets and to request that the court grant an injunction against the defendant. The Nevada statute specifies that there should be no injunction if "the trade secret has ceased to exist." NRS 600A.040(1). While the federal statute does not have an explicitly corresponding provision as the state statute, it is clear that a plaintiff may only

---

[3]   For a more comprehensive analysis of the failure of each of Plaintiff's claims for relief, Defendants refer the Court to their Motion to Dismiss and incorporate the arguments made in that Motion regarding the deficiencies in Plaintiff's claims.

RANDAZZA | LEGAL GROUP

assert a civil claim under the statute if it owns an actual, protectable trade secret.   *See* 18 U.S.C. § 1836(b)(1).

Here, Plaintiff does not specify what trade secrets it alleges Defendants have misappropriated. However, a comparison of the complaint in the Patent Action and the Complaint in this matter demonstrates that Plaintiff has alleged that essentially the same conduct by Defendants simultaneously constitutes patent infringement and misappropriation of trade secrets.   (Compare ECF No. 1-1 at ¶¶ 14-46, 53-58 with ECF No. 8-1 at ¶¶ 33, 45-56.)   This is a legal impossibility.

"[T]he protection afforded by the trade secret and patent regimes is mutually exclusive." *B.E. Meyers & Co. v. United States*, 47 Fed. Cl. 375, 378 (2000).   "[D]isclosure of a trade secret in a patent places the information comprising the secret into the public domain." *Stutz Motor Car of Am., Inc. v. Reebok Int'l, Ltd.*, 909 F. Supp. 1353, 1359 (C.D. Cal. 1995).   A trade secret misappropriation claim can only co-exist with a patent infringement claim where the plaintiff "reveals 'implementation details and techniques' beyond what was disclosed in his patent." *Aqua-Lung Am., Inc. v. Am. Underwater Products, Inc.*, 709 F. Supp. 2d 773, 788 (N.D. Cal. 2010) (citing *Celeritas Techs., Ltd. v. Rockwell Int'l Corp.*, 150 F.3d 1354, 1358 (Fed. Cir. 1998)).

In the Patent Action, Plaintiff alleges infringement of the 780 Patent, the 495 Patent, and the 389 Patent.   (*See* ECF No. 8-1 at ¶¶ 15-20.)   The USPTO issued the 780 Patent on December 6, 2011 and the 495 Patent on May 15, 2012.   (*See id.* at ¶¶ 15, 17.)   The subject matter of these two patents thus became public knowledge in 2011 and 2012.   Plaintiff is purposely vague as to when Defendants allegedly disclosed information they obtained while touring Plaintiff's facility, but even the most charitable reading of the Complaint alleges the earliest possible disclosure occurred in 2013, after the subject matter of these patents became public.   (*See* ECF No. 1-1 at ¶¶ 45, 53-54, 64.)   Accordingly, Plaintiff cannot have a likelihood of success on its Sixth and Seventh claims.   The majority of the allegations in those claims relate to the subject matter of the 780 Patent or the 495 Patent.   Because patented material is not protected by trade secret, Plaintiff not only has failed to demonstrate a likelihood of success, but those claims should be dismissed for failure to state a claim.

Regarding any alleged trade secrets that are allegedly not already covered by the 780 or 495 Patents, Plaintiff cannot show a likelihood of success for two reasons.  First, Defendants did not disclose those trade secrets to Aligned. Defendants and Aligned have repeatedly told Switch that neither MTech nor Stephen Fairfax were involved in the design of Aligned's data centers and that Defendants did not reveal trade secrets to Aligned.  Switch cannot demonstrate that it can prove the necessary facts at trial to prevail on this claim, and its demanded injunction must be denied.  *See Sierra On-Line, Inc.*, 739 F.2d at 1423.

Secondly, Plaintiff Switch makes no attempt to distinguish between what information is the subject matter of the 780 Patent or 495 Patent, which were publicly available at the time Defendants allegedly disclosed information to Aligned, and what is not subject to those patents. The Complaint simply states that Defendants allegedly misappropriated "Confidential Information" without identifying that information or revealing that there are patent considerations in this case at all.

Given that (1) Plaintiff alleges substantially identical conduct also constitutes patent infringement,[4] (2) two of the three patents in the Patent Case were publicly available at the earliest possible point of alleged disclosure to Aligned; and (3) Defendants were under no legal obligation not to disclose publicly available information, it is impossible to determine from the Complaint what allegations are legally sufficient.  Some allegations must necessarily fail because they do not involve trade secrets or non-public information, and thus no misappropriation could have occurred and no breach of the NDAs could have occurred.  The Complaint, however, lumps all the alleged "confidential information" together, such that neither Defendants nor the Court can determine what allegations fall within the realm of a patent infringement claim and which solely relate to alleged trade secrets.

Vague, conclusory allegations of misappropriation are not sufficient to meet a plaintiff's burden under Fed. R. Civ. P. 8.  *See Veronica Foods Co. v. Ecklin*, 2017 U.S. Dist. LEXIS 101325, *45

---

[4]   A side-by-side comparison of the images Plaintiff provides as examples of infringement show that the two suits are based on at least some of the exact same technology.  (Compare ECF No. 1-1 at 6-8 and ECF No. 8-1 at ¶ 7.)

1    (N.D. Cal. June 29, 2017) (finding that "an everything-but-the-kitchen-sink assertion that Defendants

2    'have made improper and unauthorized use of Veronica Foods's Customer List, Supplier List, and

3    Confidential Business Information' to solicit customers'" are "not the sort of factual allegations that

4    the Court must accept as true at the pleading stage"). Plaintiff has requested extraordinary relief from

5    this Court in the form of an injunction and must show a likelihood of success on the merits. It is

6    impossible for Plaintiff to do so when neither its Complaint nor its Motion for Preliminary Injunction

7    differentiate between patent protected information, which is publicly available, and actual trade

8    secrets.

### 4.2.2   Plaintiff is unlikely to succeed on its tort claims

10    Plaintiff's Fourth, Fifth, and Eighth Claims for Relief allege the common-law torts of unjust

11    enrichment, conversion, and misappropriation of licensable commercial properties, respectively.

12    Plaintiff cannot show a likelihood of success on any of these claims. In fact, it is impossible for it to

13    succeed on these claims because each is superseded by NUTSA.

14    NRS 600A.090(1) provides that "this chapter displaces conflicting tort, restitutionary, and

15    other law of this state providing civil remedies for misappropriation of a trade secret." Exceptions

16    to this rule exist for contractual remedies, "other civil remedies that are not based upon

17    misappropriation of a trade secret," or criminal sanctions. NRS 600A.090(2). A tort claim is barred

18    if it relies on misappropriation of a trade secret to prevail. *See Octaform Sys. v. Johnston*, 2017 U.S. Dist.

19    LEXIS 90330, *7-8 (D. Nev. June 12, 2017). And due to the breadth of NRS 600A's definitions for

20    "trade secret"[5] and "misappropriation,"[6] "if [Plaintiff's] tort claims hinge on the allegation that the

21    

_____

22    [5]   The statute defines "trade secret" as:

23    information … that: (a) Derives independent economic value, actual or potential, from not
      being generally known to, and not being readily ascertainable by proper means by the public
24    or any other persons who can obtain commercial or economic value from its disclosure or
      use; and (b) Is the subject of efforts that are reasonable under the circumstances to maintain
25    its secrecy.

NRS 600A.030(5).

26    [6]   The statute defines "misappropriation" as:

27    (a)   Acquisition of the trade secret of another by a person by improper means;

RANDAZZA | LEGAL GROUP

1    defendants used or disclosed [Plaintiff's] secret 'information,' NUTSA precludes the claims." *Id.*
2    at *8.

3            Plaintiff's Fourth, Fifth, and Eighth Claims for Relief are all premised on the same allegations
4    as its trade secret claims, i.e., Plaintiff provided confidential trade-secret information to Defendants,
5    and then Defendants allegedly disclosed this information to Aligned.  The unjust enrichment claim
6    specifically premises liability on Defendants' alleged use of "[t]he Confidential Information disclosed
7    to Defendants … related to the T-SCIF, Switch's data center designs, trade secrets, and other
8    confidential information …." (ECF No. 1-1 at ¶ 88.)  The "property" identified in the conversion
9    claim includes "Confidential Information about Switch's T-SCIF Technology, data center designs,
10   trade secrets, and other confidential information …." (ECF No. 1-1 at ¶ 94.)[7]  And the
11   misappropriation of licensable commercial properties claim is premised on Defendants' alleged
12   "misappropriation" of Plaintiff's "data center storage designs and related intellectual property
13   associated with Switch's T-SCIF Technology." (ECF No. 1-1 at ¶¶ 114, 116.)

14

15   _____

16       (b)  Acquisition of a trade secret of another by a person who knows or has reason to know
            that the trade secret was acquired by improper means; or
17       (c)  Disclosure or use of a trade secret of another without express or implied consent by a
            person who:
18       (1)  Used improper means to acquire knowledge of the trade secret; or
19       (2)  At the time of disclosure or use, knew or had reason to know that his or her knowledge
            of the trade secret was:
20       (I)   Derived from or through a person who had used improper means to acquire it;
21       (II)  Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its
            use; or
22       (III) Derived from or through a person who owed a duty to the person seeking relief to
            maintain its secrecy or limit its use; or
23       (3)  Before a material change of his or her position, knew or had reason to know that it was
            a trade secret and that knowledge of it had been acquired by accident or mistake.
24   NRS 600A.030(2).

25   [7]   To the extent Plaintiff may attempt to argue that the conversion claim involves information
26   beyond the broad definition of "trade secret" in NUTSA, the claim still fails. This Court has declined
     to expand the scope of conversion claims beyond tangible property rights, and the conversion claim
27   does not mention any converted tangible property. *See Custom Teleconnect, Inc. v. Int'l Tele-Services, Inc.*,
     254 F. Supp. 2d 1173, 1182 (D. Nev. 2003).

RANDAZZA | LEGAL GROUP

Moreover, all of Plaintiff's claims involve their cooling system patents and T-SCIF technology, but MTech did not participate in the design of Aligned's Plano data center cooling systems.  (*See* Fairfax Decl. at ¶ 19.)  MTech was retained in May 2016 to calculate the reliability of the Plano facility's cooling system.  (*See id.* at 20.)  This was long after the data center was built; the center's launch event was held November 19, 2015.  (*See id.* at 21.)  This event was the first time Mr. Fairfax or anyone at MTech saw the cooling systems for the Plano data center.  (*See id.*)

As these claims are all premised on misappropriation of trade secrets, they are thus superseded by statute and should be dismissed with prejudice.  *See Global Advanced Metals USA, Inc. v. Kemet Blue Powder Corp.*, 2012 U.S. Dist. LEXIS 126550, *11-12 (granting judgment on the pleadings and dismissing tort claims as preempted by NUTSA because they were based on alleged misappropriation of trade secrets); *Hutchison v. KFC Corp.*, 809 F. Supp. 68, 71 (D. Nev. 1992) (holding that claims for unjust enrichment and unfair competition were precluded by NUTSA because the claims were duplicative of trade secret claims).  Given that these claims are not viable, Plaintiff cannot show a likelihood of success on the merits.

### 4.2.3   Plaintiff cannot show a likelihood of success on its contract claims

Plaintiff's First, Second, and Third Claims for Relief are for breach of contract, breach of the implied covenant of good faith and fair dealing, and tortious breach of the covenant of good faith and fair dealing.  Plaintiff Switch is unlikely to succeed on the merits of these claims, which are each premised upon Defendants' supposed disclosure of trade secrets in contravention of the NDAs executed in 2011 and 2015.

First and foremost, Defendants MTech and Stephen Fairfax did not share any confidential information with Aligned or with anyone.  (*See* **Exhibits 1 & 2**.)  Regarding the 2015 NDA, contrary to Plaintiff's allegations, MTech was not even permitted to enter Switch's premises after the parties executed it, rendering it impossible for Defendants to disclose confidential information.

These claims also fail because it is unclear and impossible to determine what allegedly confidential information Defendants allegedly disclosed to Aligned.  These claims all premise liability on alleged disclosure of information to Aligned that Defendants allegedly had an obligation to keep

confidential.  However, both the 2011 and 2015 NDAs did not impose any such obligations regarding "information [that] is or becomes generally known in the relevant industry without fault of Recipient."  (ECF No. 1-1 at 28, 36.)  The subject matter of the 780 Patent and 495 Patent was publicly available for years prior to the earliest possible disclosure Plaintiff alleges, and thus was generally known in the relevant industry by virtue of the USPTO issuing these patents before Defendants' alleged disclosure.  Pursuant to the plain language of the NDAs, Defendants were under no contractual obligation to keep the information confidential.  Plaintiff cannot succeed on its contract claims when it refuses to plead what the alleged breaches of those contracts actually were.

Finally, Plaintiff cannot succeed on these claims for relief with respect to Mr. Fairfax because he is not a party to the underlying NDAs. Privity of contract is a basic tenet of contract law, stating that contracts only "give rights and impose liabilities on the concerned parties" and that only the parties to a contract "are given the right to sue each other according to the contract terms."  (ECF No. 8-3.)[8]  As a long-accepted rule, there must be privity of contract between the plaintiff and the defendant "in order to render the defendant liable on the contract." *White Pine Cty. Bank v. Sadler*, 6 P. 941, 943 (Nev. 1885).

Even if MTech breached the NDAs (which it did not), Mr. Fairfax could not be liable for that breach.  It is well-settled that a corporation's officers and directors are not individually liable for the corporation's breach of a contract. *See, e.g., B&M Linen Corp. v. Kannegiesser, USA, Corp.*, 679 F. Supp. 2d 474, (S.D. N.Y. 2010) (holding that a "corporate officer acting in his official capacity is not personally liable for the corporation's breach of contract"); *In re Wolf*, 556 B.R. 676, 684 (Bankr. E.D. Pa. 2016), *citing Daniel Adams Assoc., Inc. v. Rimbach Pub., Inc.*, 519 A.2d 997, 1000-01 (Pa. Super 1987) (holding that "when a party contracts with a corporation through its agent, the corporation alone is liable [for] breach of contract"); *Grosvenor Prop., Ltd. v. Southmark Corp.*, 896 P.2d 1149, 1153-54 (9th Cir. 1990); *Smoot v. B & J Restoration Serv.*, 279 P.3d 805, 812 (Ok. Civ. App. 2012); *Winkler v. V.G. Reed & Sons*, 638 N.E. 2d 1228, 1231-32 (Ind. 1994).

---

[8]    Available at: <thelawdictionary.org/privity-of-contract> (last accessed Nov. 2, 2017).

As with the other claims for relief asserted in Plaintiff Switch's Complaint, Plaintiff is unlikely to succeed on the merits of its contract claims. Its Motion should fail, and injunctive relief should not issue.

### 4.3 Plaintiff cannot demonstrate irreparable harm.

Plaintiff fails to provide any evidence of irreparable harm in its Motion. Instead, it incorrectly argues that it is entitled to a presumption of irreparable harm in trade secret cases. (*See* Motion at 11.) To justify its assertion that it is entitled to a presumption of irreparable harm, Switch exclusively cites out-of-circuit cases that predate decisions by the United States Supreme Court in *eBay v. Merc Exchange, LLC*, 547 U.S. 388 (2006) and *Winter v. NRDC*, 555 U.S. 7 (2008). These cases overruled the prior presumption that a plaintiff in an intellectual property infringement case would suffer irreparable harm in the absence of injunctive relief.[9]

*eBay* and *Winter* deal with the presumption of harm in patent and copyright infringement cases. However, Plaintiff cannot argue that *eBay* and *Winter* only apply to intellectual property cases involving copyright or patent. Numerous federal courts have held that there is no presumption of irreparable harm in any intellectual property case, and this Court has expressly held that there is no presumption of irreparable harm in trade secret misappropriation cases. *See V'Guara, Inc. v. Dec*, 925 F. Supp. 2d 1120, 1126 (D. Nev. 2013) (declining to apply a presumption of irreparable harm in a trade secret case); *Bartech Sys. Int'l, Inc. v. Mobile Simple Solutions, Inc.*, 2016 U.S. Dist. LEXIS 68030, at *8 (D. Nev. May 24, 2016) (finding that there was no presumption of irreparable harm in trade secret cases).

Without a presumption of irreparable harm, Plaintiff "must proffer evidence sufficient to establish a likelihood of irreparable harm." *Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239, 1251 (9th Cir. 2013). In certain circumstances, evidence of a loss of customers or goodwill may satisfy this requirement, but the plaintiff is required to offer "evidence that the claimed loss of

---

[9]    Plaintiff Switch relies heavily upon the *Winter* case in its Motion. (*See* ECF No. 7 at 9, 10.) In fact, it cites *Winter* for the proposition that it needs to demonstrate irreparable harm to be entitled to injunctive relief. Thus, Plaintiff argues that it is entitled to a presumption of irreparable harm while citing one of the cases that expressly overruled that presumption.

RANDAZZA | LEGAL GROUP

customers or goodwill is real and imminent, not just speculative and potential." *Giftango, LLC v. Rosenberg*, 925 F. Supp. 2d 1128, 1140 (D. Or. 2013).  Here, Plaintiff proffers no evidence.  Instead, it relies upon one vague statement by Switch's associate general counsel, who testifies that she is "informed, believe[s], and ha[s] reviewed documents showing current and potential customers—who having viewed the data centers of Switch and Aligned—have commented that Aligned's later constructed data center look *[sic]* just like Switch's."  (*See* Declaration of Anne-Marie Birk, ECF No.7, at 16, ¶ 6.)

Counsel's testimony is wholly inadequate to demonstrate likely irreparable harm.  First, Switch has not disclosed the documents that Ms. Birk allegedly relied upon to make her declaration. Instead, it relies solely upon her statement, which is not only hearsay but violates the best evidence rule.  (*See* Fed. R. Evid. 1002.)

More importantly, Ms. Birk's statement does not show any likelihood of irreparable harm. She does not testify that any customers or potential customers took or threatened to take their business to Aligned (or any other competitor) instead of Switch due to this alleged data center similarity.  She does not testify that any customers or potential customers took or threatened to take their business to aligned or any other competitor because of MTech's calculations of the Aligned data center's reliability.  She does not indicate how the requested injunction is going to alleviate Switch's alleged irreparable harm given that Aligned' data centers are completed and Switch does not ask to have them shut down in its injunction.[10]  Finally, she does not testify that Switch has any evidence that Defendants plan to continue the alleged illicit activity that they never engaged in the first place.

Switch fails to allege or place any evidence on the record as to what Plaintiff's alleged trade secrets are, what the value of its trade secrets are, what Defendants allegedly disclosed to Aligned, why that allegedly disclosed information is protected by trade secret rather than patent law, or any other indicia of likely harm.  There is no basis for a preliminary injunction, and this Motion must fail.

---

[10]   Indeed, this Court would not possess jurisdiction to shut the data centers down.

### 4.4     The balance of hardships favors Defendants

When determining whether to grant a motion for preliminary injunction, the Court must also consider the balance of hardships to the parties.  *See Abbott Labs v. Andrx Pharms, Inc.*, 452 F.3d 1331, (Fed. Cir. 2006).   Specifically, the Court should "balance the competing claims of injury" and "consider the effect on each party of the granting or withholding of the requested relief."  *Winter*, 555 U.S. at 24 (*quoting Amoco Prod. Co. v. Gambeil*, 480 U.S. 531, 542 (1987)).   When doing so, the Court should remember that granting a "preliminary injunction is a drastic remedy."  *Open Text, S.A. v. Box, Inc.*, 36 F. Supp. 3d 885, 910 (N.D. Cal. 2014) (*citing Illinois Tool Works, Inc. v. Grip-Pak, Inc.*, 906 F.2d 679, 683 (Fed. Cir. 2014)).

In this case, the balance of hardships clearly favors MTech and Stephen Fairfax.   Switch demands an injunction "requiring Defendants to cease and desist all design of any data center." (ECF No. 7 at 1.)   However, it makes no attempt to define what this means and has worded the demand broadly enough that Switch could conceivably argue that it bars Defendants from doing any work of any kind regarding data centers.   That would effectively put MTech out of business. Meanwhile, denying the injunction will not cause any hardship to Switch because Defendants have not engaged in the conduct Switch describes in its Complaint.

Similarly, Switch seeks to enjoin MTech from promoting the risk analysis work that it did for Aligned.  (*See id.* at 2.)   If the Court grants Switch's request, it will be forbidding MTech from marketing, promoting, and growing its business with regard to potential customers who seek similar services.   Meanwhile, Switch will not suffer at all if MTech is permitted to continue advertising its services to third parties.

Switch demands that the injunction order "the immediate delivery to Switch of all documents, contracts, and emails exchanged between Defendants and Aligned." (*Id.* at 2.)   Switch does not even attempt to justify this attempt to bypass the Federal Rules of Civil Procedure and this Court's local rules regarding discovery.   Moreover, it provides no authority showing why it would be entitled to a full document production from Defendants before discovery has commenced.   This demand was designed to give Switch an unfair advantage in this case and in the Patent Action.

RANDAZZA | LEGAL GROUP

Finally, Switch's sole argument regarding the balance of hardships is its interest in protecting its "confidential and trade secrets." (ECF No. 7 at 12-13.)  These so-called trade secrets are left undefined.  As noted above, at least some, if not most, of the information that Switch defines as "trade secrets" in its Complaint and Motion are protected by patent and are public information.  As a matter of law, they cannot be considered trade secrets.

There is no hardship to Switch if the Court denies this Motion.  However, issuing an injunction, even though Switch cannot demonstrate a likelihood of success or irreparable injury, would likely put MTech out of business.  The Motion should be denied.

### 4.5    There is no public interest in granting the Motion

In matters that invoke public interest, the Court should not grant an injunction if the public interest in denying the Motion outweighs the public interest in granting it.  *See Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1138 (9th Cir. 2011).  An injunction concerns the public interest where "the impact of an injunction reaches beyond the parties, carrying with it a potential for public consequences." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1139 (9th Cir. 2009).  The plaintiff bears the burden of demonstrating that the injunction is in the public interest.  *See Winter*, 555 U.S. at 20.

To the extent that Plaintiff Switch's Motion invokes the public interest, that interest favors Defendants.  Plaintiff Switch asserts that the "public has an interest in preserving trade secret and confidential information." (ECF No. 7 at 12.)  However, Switch ignores that most of the information that it claims is a "trade secret" is actually patented and publicly available.  The strongest public interest highlighted by Switch's Motion is to ensure that intellectual property owners do not misrepresent the protected status of that property to assert false claims or obtain unnecessary, unwarranted injunctive relief.  The Motion should be denied.

### 4.6    In the event that the Court issues an injunction, the bond must be significant

If the Court grants an injunction, the Federal Rules of Civil Procedure require the posting of a bond by the moving party "to make funds available 'for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained.'" *Sionix Corp. v. Moorehead*, 299 F. Supp. 2d 1082, 1086 (S.D. Cal. 2003) (*quoting* Fed. R.

Civ. P. 65(c)).  A party is wrongfully enjoined when it was entitled to do what it was enjoined from doing.  *See Nintendo of Am., Inc. v. Lewis Galoob Toys, Inc.*, 16 F.3d 1032, 1036 (9th Cir. 1994). This requirement serves to ensure that plaintiffs do not request injunctions on tenuous grounds and that defendants will be compensated for their damages if they are wrongfully enjoined.  *Newspaper & Periodical Drivers' & Helpers' Union, Local 921 v. San Francisco Newspaper Agency*, 89 F.3d 629. 631 (9th Cir. 1996).

Here, Plaintiff Switch demands an injunction that is incredibly broad and which would allow it to interpret virtually anything that Defendants do as assisting in the "design of any data center." (ECF No. 7 at 1.)  It additionally demands that it be permitted to disregard the discovery process in both this case and the Patent Action with no justification whatsoever.  Given the scope of Switch's demanded injunction, it will effectively cause MTech to cease business operations if granted.  This will put its employees out of work and cause it to breach existing agreements with its customers.  If the injunction is granted, the Court should order Switch to post a $5,000,000 bond given the likelihood that it will determine that Defendants were wrongfully enjoined at the conclusion of the case.

**5.0    CONCLUSION**

For each and every reason argued in this Motion, Defendants MTech and Stephen Fairfax respectfully request that the Court deny Plaintiff's Motion for Preliminary Injunction.

Dated: November 24, 2017.            Respectfully submitted,

/s/ Ronald D. Green
Marc J. Randazza (NV Bar No. 12265)
Ronald D. Green (NV Bar No. 7360)
Alex J. Shepard (NV Bar No. 13582)
**RANDAZZA LEGAL GROUP, PLLC**
4035 S. El Capitan Way
Las Vegas, NV 89147

*Attorneys for Defendants*
*Stephen Fairfax and MTechnology, Inc.*

Case No. 2:17-cv-02651-GMN-VCF

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 24, 2017, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I further certify that a true and correct copy of the foregoing document being served via transmission of Notices of Electronic Filing generated by CM/ECF.

Respectfully Submitted,

Employee,
Randazza Legal Group, PLLC