Marc J. Randazza (NV Bar No. 12265)
Ronald D. Green (NV Bar No. 7360)
Alex J. Shepard (NV Bar No. 13582)
**RANDAZZA LEGAL GROUP, PLLC**
4035 S. El Capitan Way
Las Vegas, NV 89147
Telephone: 702-420-2001
Facsimile: 305-437-7662
ecf@randazza.com

*Attorneys for Defendants,*
*Stephen Fairfax and MTechnology*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| SWITCH, LTD., a Nevada limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>STEPHEN FAIRFAX; MTECHNOLOGY, INC.; DOES 1 through 10; and ROE ENTITIES 11 through 20, inclusive,<br><br>Defendants. | Case No.: 2:17-cv-02651-GMN-VCF<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS** |

Defendants Stephen Fairfax and MTechnology, Inc. ("MTech") hereby file their reply in support of their Motion to Dismiss the Complaint filed by Plaintiff Switch, Ltd. ("Switch").

**MEMORANDUM OF POINTS AND AUTHORITIES**

**1.0  INTRODUCTION AND STATEMENT OF RELEVANT FACTS**

Plaintiff Switch filed suit against Defendants Stephen Fairfax and MTech, alleging that Defendants improperly shared Switch's trade secrets with Aligned Data Centers, Inc. ("Aligned"). Simultaneously, Switch sued Aligned for patent infringement in the U.S. District Court for the

Eastern District of Texas (the "Patent Action").[1]  The allegations in the Patent Action are virtually identical to the allegations in this action.  In other words, Switch is claiming that the same set of facts constitute both patent infringement and misappropriation of trade secrets, which is a legal impossibility.  Patents are public records, and thus any information in patent records, by definition, cannot be "trade secrets."  Defendants request that the Court dismiss the misappropriation claims (the Sixth, Seventh, and Eighth Claims for Relief) for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

Plaintiff additionally asserted tort claims and contract claims against MTech and Stephen Fairfax.  Defendants asked the Court to dismiss the contract claims as to Mr. Fairfax and the tort claims as to Mr. Fairfax and MTech.  Switch agreed to voluntarily dismiss its tort claims after Defendants filed their Motion to Dismiss and demonstrated that each tort claim was superseded by Plaintiff's misappropriation claims.[2]  However, Switch refused to dismiss the contract claims as to Mr. Fairfax, even though Mr. Fairfax did not sign the Non-Disclosure Agreements (the "NDAs") in his individual capacity and, thus, is not a party to them.  Since Switch has refused to voluntarily dismiss those claims, Defendants request that the Court dismiss the contract claims (the First, Second, and Third Claims for Relief) with prejudice as to Mr. Fairfax.

Finally, Plaintiff Switch requests leave to amend its Complaint to cure the defects in its Complaint.  However, Switch provides no indication or analysis regarding what it wishes to add (or subtract) from the Complaint to cure the deficiencies contained therein.  It merely concludes with no analysis that the amendments it wants "are not without merit or futile."  (Opposition, at 13.)  The Court should not grant its request to amend without additional, proper briefing from Switch regarding what it intends to amend.

---

[1]   MTech was initially a party to the Patent Action. Switch dismissed it from that case after MTech filed a motion to dismiss for improper venue.

[2]   Defendants requested that the Court dismiss the tort claims with prejudice.  In its Opposition, Switch merely states that it will "remove [them] in a pending amendment to its Complaint." (Opposition, at 2.)  Given that Switch acknowledges that the tort claims were "subsumed" by its trade secret claims, Defendants reiterate their request that the tort claims be dismissed with prejudice. *Id.*

## 2.0 THE MOTION TO DISMISS DOES NOT RELY UPON OUTSIDE MATERIAL

Under Federal Rule of Civil Procedure Rule 12(b)(6), the court may dismiss a claim that fails to state a claim for relief upon which relief can be granted. Normally when deciding a motion brought pursuant to the rule, the court is limited to the allegations contained in the complaint, and if the court considers material outside of the complaint, the motion to dismiss should be treated as a motion for summary judgment. *See* Fed. R. Civ. P. 12(d). However, there are exceptions to this rule. Documents attached to the complaint may be considered without converting the motion to dismiss to a motion for summary judgment. *See Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994). Documents that are not attached to the complaint may be considered if their "authenticity is not contested" and the "plaintiff necessarily relies" on them. *Parrino v. FHP, Inc.*, 146 F.3d 699, 705-706 (9th Cir. 1998).

Finally, the court may take judicial notice of "matters of public record." *Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986); *see also* FRE 201(b)(2) (stating that judicial notice may be taken for documents that "can be accurately and readily determined from sources whose authenticity cannot reasonably be questioned"). A court's decision to take judicial notice is reviewed for abuse of discretion. *See Ritter v. Hughes Aircraft Co.*, 58 F.3d 454, 458 (9th Cir. 1995).

Here, Plaintiff demands that the Court convert this Motion to Dismiss to a motion for summary judgment based upon two exhibits attached to the Motion. The first is a copy of the complaint in related patent litigation pending in the U.S. District Court for the Eastern District of Texas. (*See* Opposition, at 7.) This complaint is a public record, and Plaintiff cannot "reasonably question" its validity. Given that the Patent Action demonstrates how Switch is attempting to classify the same factual allegations as patent infringement in that case and as misappropriation in this case, Switch would understandably like to exclude the Patent Action complaint from the Court's consideration of this Motion. However, the Court is free to consider the totality of the Texas complaint in its analysis and should take judicial notice of the document.

The second exhibit is the declaration of Stephen Fairfax. (*See* Opposition, at 7.) While Defendants did attach Mr. Fairfax's declaration, they did so merely to clarify the relevant factual background. Defendants do not rely upon the declaration in the Motion. In fact, they only refer to

it in one paragraph in the Statement of Facts and do not refer to it at all in their Legal Argument. Defendants do not wish the Court to rely upon it in its determination of this Motion and ask that the Court disregard it for all purposes relative to the underlying merits of the Motion.

In an attempt to convert this Motion to Dismiss into a motion for summary judgment itself, Plaintiff Switch attached exhibits to its Opposition. However, the Court should not consider these either. The first is a declaration from Samuel Castor, Switch's in-house counsel. (*See Exhibit A* to Opposition.) With the exception of verifying another exhibit, any potentially relevant testimony in that declaration is made upon information and belief. Presumably, this is because he cannot testify to the underlying facts in this case, as he was hired by Switch in March 2011, either immediately before or immediately after MTech toured the Switch facility. He has no first-hand knowledge, and his declaration provides no information that the Court needs to or should consider in its disposition of this Motion.

Switch also attaches an email exchange that "it believes clarify the facts raised in the Motion." (Opposition, at 7.) One of those emails was attached to Plaintiff's Complaint as *Exhibit 2* and may be considered by the Court without converting the Motion to a motion for summary judgment. The majority of the remaining emails demonstrate Switch, MTech, and eBay attempting to find a mutually agreeable time for MTech's visit to Switch's campus. None of the emails are relevant to the merits of this Motion and do not need to be considered by the Court.

This Court may consider the Texas complaint and all exhibits attached to Plaintiff's Complaint in its consideration of this Motion. The declarations submitted in connection with the Motion and Opposition and the email chain submitted by Plaintiff are not relevant to the disposition of this Motion and should not be relied upon by the Court.

**3.0  SWITCH HAS NOT PROPERLY PLED ITS MISAPPROPRIATION OF TRADE SECRET CLAIMS**

Defendants MTech and Stephen Fairfax challenge Plaintiff Switch's trade secret claims on two bases: (1) that any trade secret claims premised upon materials covered by the 780 and 495 patents must fail because, by definition, something that is patented cannot be a trade secret; and

(2) Defendants cannot discern what trade secrets they are accused of misappropriating in the Complaint. (*See* Motion, at 6-10.) Plaintiff's attempted explanation in its Opposition provides no additional clarity and simply argues that its vague allegations are fine because there are no heightened pleading requirements for claims for misappropriation of trade secrets.

Defendants concede that Switch is only required to plead claims for misappropriation of trade secrets pursuant to the "notice pleading" standard articulated in Rule 8. However, it is still required to meet the standard for pleading set forth in *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). It has not done so. From the Complaint, Defendants cannot discern what trade secrets they allegedly misappropriated and which alleged trade secrets have been nullified by the USPTO's issuance of patents.

Plaintiff's attempt to clarify the trade secrets it alleges Defendants misappropriated shows either that it cannot discern the difference between its trade secrets and its patents or that the majority of its trade secret claims cannot proceed because they are the subject of patents issued by the USPTO. Plaintiff provides a lengthy, vague bullet-point list of the trade secrets it alleges Defendants violated, but most of the items in that list are alleged to infringe Switch's patents in the Patent Action:

- In Paragraphs 19 and 31 of the Complaint in this case, Plaintiff alleges that Defendants misappropriated "operational routines" and "operational schedules," but in Paragraph 45 of the Patent Action, it alleges that its patented "operational schedules" have been infringed.
- In Paragraph 19 of this case, it alleges that Defendants misappropriated its "electrical designs," while in Paragraph 51 of the Patent Action, it alleges that its patented "electrical configuration" has been infringed.
- Both complaints refer to Switch's "hot aisle containment technology." (Complaint, at ¶ 19; Patent Action, at ¶ 26.)
- Both complaints refer to Switch's technology regarding cooling efficiencies that has permitted it to provide "power to all of its clients without interruption for over 15 years."

- (Complaint, at ¶ 23; Patent Action, at ¶ 32.)  In this Complaint, that technology is alleged to be a trade secret but not in the Patent Action.
- In this case, Switch allegedly has a trade secret allowing it to "achieve a best monthly power average usage effectiveness below 1.1 PUE." However, that same technology is not alleged to be a trade secret in the Texas Action. (Complaint, at ¶ 24; Patent Action, at ¶ 31.)
- In this case, Switch's methodology to "deploy up to 50 kilowatts of power per cabinet" is a trade secret, but not in the Patent Action. (Complaint, at ¶¶ 25-26; Patent Action, at ¶ 29.)
- Similarly, here, its methodology to deliver "10-times the amount of power … without overheating" is a trade secret.  It is not in the Patent Action. (Complaint, at ¶ 27; Patent Action, at ¶ 30.)
- In this case, its system to provide "100% power delivery and steady temperature control" is a trade secret.  (Complaint, at ¶ 27.)  In the Patent Action, its systems to provide "maximum power delivery and steady temperature and humidity control" are not trade secrets.  (Patent Action, at ¶ 30.)
- In this action, its "documentation, plans, schematics, and blueprints" are covered by trade secret law.  (Complaint, at ¶ 31.)  In the Patent Action, they are protected by patent law. (Patent Action, at ¶ 45.)
- The same information allegedly protected by trade secret law in Paragraphs 42 and 57 of the Complaint is covered by patent law in Paragraph 55 of the Texas Action.

In addition to most of the misappropriation allegations in this case being the duplicate of patent infringement allegations in the Texas Action, many of the allegations that Switch insists meet the notice pleading standard in Opposition are so vague and broad that any reasonable person would find them meaningless.  For instance, in the Opposition, Switch states that alleging that Defendants misappropriated "all of Switch's designs," "patent pending claims that were unpublished during the pendency of the patent application process," and "operations of the data center unique to Switch"

1 meet the notice pleading standard.  Defendants have no idea what they allegedly misappropriated
2 based upon those allegations or why they are not already covered by patents granted by the USPTO.
3 (Opposition, at 3, 9-10.)  It does not even make logical sense that "all of Switch's designs" are trade
4 secrets given that the company has obtained several patents from the USPTO.

5 Moreover, Plaintiff fails to even address that two of the three patents alleged to have been
6 infringed in the Patent Action were issued before Defendants' alleged misappropriation of trade
7 secrets occurred.  Given that the allegations in both pending cases are largely identical, Plaintiff
8 should have made some effort in its Complaint and its Opposition to explain how it can
9 simultaneously use the same operative facts for a patent infringement claim and misappropriation of
10 trade secret claims.  It did not.

11 At the very least, the notice pleading standard requires Switch to provide enough information
12 to allow Defendants and this Court to determine why Defendants are being sued.  *See Iqbal*, 556 U.S.
13 at 678.  The Complaint does not do so.  The Complaint does not comply with Rule 8 of the Federal
14 Rules of Civil Procedure and should be dismissed pursuant to Rule 12(b)(6).

## 4.0  MR. FAIRFAX IS NOT A PARTY TO THE CONTRACTS AT ISSUE

There are two parties to the NDAs at issue in this action – Plaintiff Switch and Defendant MTech.  A non-party to a contract cannot be sued for breach of that contract.  The Court must dismiss Stephen Fairfax from the First, Second, and Third Claims for Relief.  (*See* Motion, at 12-14.)  Plaintiff Switch espouses two theories for the proposition that Mr. Fairfax is liable for its contract-based claims.  The first is that he signed the 2011 and 2015 NDAs on behalf of Defendant MTech and himself.  This is a legal impossibility.  The second is that he is an intended beneficiary of the NDAs and thus liable for any breach.  This is unsupported by case law or common sense.

### 4.1  Mr. Fairfax is not a signatory to the NDAs.

A corporate officer is not liable for an alleged breach of contract unless he signs as both a corporate representative and as an individual.  "Thus, if individual liability of an officer is intended, **the officer would sign twice – once as a representative and once as an individual**." *Bonnant v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 467 Fed. Appx. 4, 11, 2012 U.S. App. LEXIS 5034, *19 (2d

Cir. 2012) (emphasis added); *see also Keels v. Turner*, 262 S.E. 2d 845, (N.C. App. 1980) (holding that "where individual responsibility is demanded, the nearly universal practice is that the officer signs twice – once as an officer and again as an individual") (*quoting* 19 Am. Jur. 2d Corporations § 1343); *McCarthy v. Azure*, 22 F.3d 351, 360, 1994 U.S. App. LEXIS 8993, *28 (1st Cir. 1994); *Salzman Sign Co. v. Beck*, 176 N.E. 2d 74, 76 (N.Y. App. 1961).

Here, Mr. Fairfax only signed each NDA once, as the President of MTech. To the extent that Switch attempts to argue any ambiguity regarding whether Mr. Fairfax was signing on behalf of himself or MTech, that ambiguity is resolved by the word "by," which indicates that Mr. Fairfax signed the NDAs in his capacity as an officer of MTech. *See Walker v. Walker Enters.*, 532 N.W. 2d 324, (Neb. 1995) (holding that the defendants signed an agreement on behalf of a corporation as evidenced by "the term 'by' appearing before their signatures, which indicates that they are acting on behalf of another person or entity"); *Duart v. Gugliuzza*, 2014 Conn. Super. LEXIS 2623, *15 (Conn. Super. Oct. 14, 2014) (finding that the word "by" before a signature on a contract indicated "that he was not signing it in his individual capacity but in a representative capacity"); *Delta Air Lines, Inc. v. Wilson*, 210 So. 2d 761, 762 (Fla. App. 1968).[3] Switch cannot maintain breach of contract and related claims against an individual who signed on behalf of a corporation.

### 4.2     Mr. Fairfax cannot be contractually liable as an intended beneficiary

Switch next advances the novel theory that Mr. Fairfax is personally liable for any alleged breaches of the NDAs because he was an "intended beneficiary" of the agreements. An "intended beneficiary," or "third party beneficiary," to a contract is not a party to an agreement but may benefit

---

[3]  Some of these cases also note that the name of the contracting organization is above the signature, further indicating that the signatory was not signing on his own behalf. In this case, the 2011 NDA does not have MTech's name above Mr. Fairfax's signature. However, the word "by" is present, as is the clear indication that Mr. Fairfax signed the NDA in his capacity as "President, MTechnology, Inc." (*See* Exhibit 1 to Complaint.) It is unambiguous that Mr. Fairfax signed the NDA on behalf of MTech and not himself. To the extent that the Court believes that there is any ambiguity, it must resolve that ambiguity in favor of Defendants because Switch drafted the NDA. *See Anuvi, LLC v. G.L. Dragon, LLC*, 163 P.3d 405, 407 (Nev. 2007) (holding that ambiguities in a contract are construed against the drafter).

from the agreement or have enforceable rights in it.  (*See* Definition of *third party beneficiary*, Black's Law Dictionary, attached as **Exhibit 4**.)

      While a third-party beneficiary may have **rights** under an agreement, as a non-party to the agreement, he cannot have **obligations** under it.  Defendants would love to cite authority for this proposition, but conferring contract liability on a non-party is so contrary to American jurisprudence that little, if any, analysis exists.  However, both the Restatement of Contracts and case law clearly did not contemplate that beneficiaries to a contract could be liable for breach of contract, as both only discuss a beneficiary's ability to enforce the contract.  *See Martinez v. Bank of Am. Nat'l Ass'n*, No. 3:10-cv-00287-RCJ-RAM, 2010 U.S. Dist. LEXIS 113378, at 25 (D. Nev. Oct. 20, 2010); *citing Escobedo v. Countrywide Home Loans, Inc.,* No. 09cv1557 BTM(BLM), 2009 U.S. Dist. LEXIS 117017 (S.D. Cal. Dec. 15, 2009); *also citing* Restatement (Second) of Contracts § 302.

      Switch cites two cases that it claims hold intended beneficiaries liable for breach of contract.  Neither case stands for that proposition.  The first case Plaintiff Switch relies upon is *All Energy Corp. v. Energetix, LLC*, 985 F. Supp. 2d 974, 991-992, 2012 U.S. Dist. LEXIS 189576 (S.D. Iowa 2012).  Switch is not the first plaintiff to attempt to use this non-binding case for the proposition that a court can bind a non-party to a contract.  The Appellate Court of Illinois explained the inapplicability of that case to the present situation earlier this year:

> The Appleton plaintiffs rely on *All Energy Corp. v. Energetix, LLC*, 985 F. Supp. 2d 974 (S.D. Iowa 2012), for the proposition that a nonparty to a contract can nonetheless be bound by it.  In *All Energy*, All Energy Corporation and "Energetix" entered into a nondisclosure agreement.  *All Energy*, 985 F. Supp. 2d at 987.  One Miller, who was an agent for two different Energetix entities, signed the agreement but failed to specify which entity was intended to be bound.  *All Energy*, 985 F. Supp. 2d at 987.  Under those circumstances, the court found an ambiguity and held that both Energetix entities were bound.  *All Energy*, 985 F. Supp. 2d at 987.  Here, there was no ambiguity, nor do the Appleton plaintiffs suggest one.  Consequently, *All Energy* is inapposite.

*Appleton Lodging, LLC v. SEF Appleton, LLC*, 2016 IL App (2d) 160452-U, at *P36 (Ill. App. Jan. 18, 2017).

      *All Energy* does not stand for the proposition that a non-party to a contract can breach that contract.  Because the non-party does not stand in privity with the parties to the contract, that

proposition cannot be legally supported. Mr. Fairfax cannot be liable for breach of contract or related claims.

Switch additionally cites *Guardian Constr. Co. v. Tetra Tech Richardson, Inc.*, 583 A.2d 1378 (Del. Super. Ct. 1990) and argues that the court in that case allowed a party to a contract to sue a nonparty for breach of contract because the "benefit conferred by the agreement [to the nonparty was] a material part of the agreement's purpose." (Opposition, at 12.) Plaintiff misrepresents the court's holding. The court actually held that "privity of contract is not an indispensable prerequisite to the recovery of economic damages **in negligence cases such as this which fall within the parameters of § 552 of Restatement (Second) of Torts**." *Guardian Constr. Co.*, 583 A.2d at 1386 (emphasis added).

The court in the *Guardian Constr. Co.* case held that the plaintiff could assert **tort claims** against a nonparty to the underlying contract. It did not allow the plaintiff to assert **contract claims** against the nonparty. Even if Stephen Fairfax was an intended beneficiary of the NDAs, Switch could not sue him for breach of contract. Permitting it to do so would be contrary to hundreds of years of American jurisprudence. Mr. Fairfax must be dismissed from the breach of contract and related claims.

**5.0    PLAINTIFF'S REQUEST FOR LEAVE TO AMEND SHOULD NOT BE GRANTED**

While motions to amend are to be granted in most cases, they should not be granted if they would cause undue prejudice to the opposing party or be futile. *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). While Plaintiff's Opposition is not styled as a motion to amend, Switch concludes with a brief request that the Court permit it to amend its claims rather than dismiss them. Switch summarily concludes that "the requested amendments are not without merit or futile" but makes no effort to demonstrate the accuracy of that conclusion. (Opposition, at 13.)

Switch's request for leave to amend should not be summarily granted. Should it wish to amend its Complaint, it should file proper briefing with the Court demonstrating how it intends to cure the fatal defects in its misappropriation claims (the Sixth, Seventh, and Eighth Claims for Relief).

Namely, Switch should be required to demonstrate how the misappropriation claims in this case are separate and distinct from the claims against Aligned in the Patent Action, and Defendants should be permitted to respond.  If the Court does not require that, Defendants fear that they will be back in front of this Court on another Motion to Dismiss pursuant to Rule 12(b)(6).

Switch should not be permitted to amend its contract claims (the First, Second, and Third Claims for Relief) as to Mr. Fairfax.  He did not sign the NDAs, and a non-party to a contract cannot be held liable for breach of contract.  Thus, there are no additional facts that Switch could allege that would cure the fatal defects in those claims as to Mr. Fairfax.

**6.0    CONCLUSION**

For all of the reasons stated herein, Defendants MTech and Stephen Fairfax request that Plaintiff's Complaint be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) and that the Court not summarily grant Plaintiff's request for leave to amend.

Dated: December 12, 2017.        Respectfully submitted,

/s/ Ronald D. Green
Marc J. Randazza (NV Bar No. 12265)
Ronald D. Green (NV Bar No. 7360)
Alex J. Shepard (NV Bar No. 13582)
**RANDAZZA LEGAL GROUP, PLLC**
4035 S. El Capitan Way
Las Vegas, NV 89147

*Attorneys for Defendants*
*Stephen Fairfax and MTechnology, Inc.*

Case No. 2:17-cv-02651-GMN-VCF

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on December 12, 2017, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I further certify that a true and correct copy of the foregoing document being served via transmission of Notices of Electronic Filing generated by CM/ECF.

Respectfully Submitted,

/s/ Try Bothell

Employee,
Randazza Legal Group, PLLC