# **<u>EXHIBIT B</u>**

Transcript of March 24, 2017 Hearing in *Abbey Dental Center v. Consumer Opinion, LLC*

1        **UNITED STATES DISTRICT COURT**
           **DISTRICT OF NEVADA**
2    **BEFORE THE HONORABLE PEGGY A. LEEN, MAGISTRATE JUDGE**

3

4  ABBEY DENTAL CENTER,      :
                  :
5     Plaintiff,      :
               :No. 2:15-cv-02069-GMN-PAL
6    vs.           :
               :
7  CONSUMER OPINION LLC,     :
               :
8     Defendant.      :
  _____:
9

10

11        **TRANSCRIPT OF MOTION HEARING**

12

13          **March 24, 2017**

14          **Las Vegas, Nevada**

15

16

17
  FTR No. 3B/20170324 @ 9:03 a.m.
18

19

20  Transcribed by:   Donna Davidson, CCR, RDR, CRR
            (775) 329-0132
21            dodavidson@att.net

22

23

24

25  (Proceedings recorded by electronic sound recording,
  transcript produced by mechanical stenography and computer.)

TRANSCRIBED FROM DIGITAL RECORDING

1                    A P P E A R A N C E S

2

3    FOR THE PLAINTIFF:

4    Ismail Amin
     THE AMIN LAW GROUP NEVADA, LTD.
5    3960 Howard Hughes Parkway
     Suite 500
6    Las Vegas, Nevada 89109
     (702) 990-3583
7    Fax: (702) 993-3501
     iamin@aminlawgroup.com
8

9
     FOR THE DEFENDANT:
10
     Marc J. Randazza
11   Alex J. Shepard
     RANDAZZA LEGAL GROUP
12   4035 South El Capitan Way
     Las Vegas, Nevada 89147
13   (702) 420-2001
     Fax: (305) 437-7662
14   mjr@randazza.com
     ajs@randazza.com
15

16

17

18

19

20

21

22

23

24

25

TRANSCRIBED FROM DIGITAL RECORDING

1             LAS VEGAS, NEVADA, MARCH 24, 2017, 9:03 A.M.

2                              --oOo--

3                 P R O C E E D I N G S

4

5             COURTROOM ADMINISTRATOR:  All rise.

6             THE COURT:  Good morning.  Please be seated.

7             COURTROOM ADMINISTRATOR:  Your Honor, we are now

8    calling the motion hearing in the matter of Abbey Dental

9    Center versus Consumer Opinion, LLC.  The case number is

10   2:15-cv-2069-GMN-PAL.

11            Beginning with plaintiff's counsel, counsel,

12   please state your names for the record.

13            MR. AMIN:  Good morning, Your Honor.  Ismail

14   Amin on behalf of plaintiff.

15            MR. RANDAZZA:  Good morning, Your Honor.  Marc

16   J. Randazza and Alex Shepard on behalf of the defense.

17            THE COURT:  All right.  This is on calendar on

18   the defendant's motion to stay the case until a ruling on

19   the motion to dismiss that raises the Anti-SLAPP provisions

20   of NRS 41.660.

21            Both sides agree to the legal standard the Court

22   is supposed to apply and that the discovery stay and

23   provisions of the Nevada statute are not binding on this

24   Court and in fact should not be applied if inconsistent

25   with or colliding with the Federal Rules of Civil

─── TRANSCRIBED FROM DIGITAL RECORDING ───

1    Procedure.

2            So I have read your moving and responsive

3    papers.  But this is your opportunity to be heard.

4            Mr. Randazza.

5            MR. RANDAZZA:  Thank you, Your Honor.  May I

6    approach?

7            THE COURT:  Please.

8            MR. RANDAZZA:  May it please the Court.

9            Your Honor, correct, I wish that I could rely

10   upon 41.660's mandatory stay of the case as if we were in

11   state court.  I can see that argued frequently in federal

12   court, and I wistfully say if only it were so.

13           Therefore, I must simply ask that this Court

14   apply Rules 116 and 37 in order to give effect to the

15   Anti-SLAPP statute.  And --

16           THE COURT:  And what about Rule 56(d)?

17           MR. RANDAZZA:  Yes, Your Honor.  I'm -- if we'd

18   like to jump right to that --

19           THE COURT:  That's quite all right.  Go ahead.

20   I don't mean to interfere with your argument.

21           But the real question I have is whether or not

22   Rule 56(d) collides with a stay in this circumstance of

23   which the opposition to the motion for summary judgment

24   articulates, with some specificity, what discovery is

25   necessary according to the plaintiffs in order to decide

TRANSCRIBED FROM DIGITAL RECORDING

1    the summary judgment motion on the merits.

2            MR. RANDAZZA:  Okay.  I do agree that 56(d)

3    should be -- if 56(d) is invoked properly and the standards

4    are met, I believe that a Rule 56(d) motion would function

5    the same as a 41.660(4) motion in state court to allow

6    specific targeted discovery.

7            However, the standard that has to be met there,

8    I don't think we're -- I don't think we're even close.

9    There is the mention of Rule 56(d).  I believe it must be

10   made by separate motion.

11           But even if we are to excuse that, it must set

12   forth the specific facts it hopes to elicit from further

13   discovery.

14           We don't have that.  We simply have nebulous

15   discussions of we need more discovery on certain issues.

16   It must show that those facts sought -- exist and show that

17   the sought after facts are essential to oppose summary

18   judgment.

19           Now, what we see in this opposition -- and the

20   place to raise 56(d) is properly in an opposition to a

21   motion for summary judgment.

22           And what they should have done, if they want to

23   invoke that, is say:  We simply cannot oppose that at this

24   time because we need this discovery in order to do so.

25           Nevertheless, in their opposition they do state,

TRANSCRIBED FROM DIGITAL RECORDING

1    ECF 37 at page 17:  We don't need any further discovery

2    because the *Sleekcraft* -- excuse me, the *Sleekcraft* factors

3    favor us.

4          I think this is one place where we have as a

5    matter of law fundamental disagreement.  The *Sleekcraft*

6    factors do not apply when you have a nominative fair use

7    case like this one.

8          So what they're asking for is all kinds of

9    discovery on that, including, if I'm not mistaken, a very

10   generous helping of expert witness testimony.

11         Now, this case was filed, I believe, 14 months

12   ago, maybe even longer.  If they need expert reports, they

13   have had more than a year to prepare them.  If they need

14   expert studies, they need surveys, they need statisticians,

15   that isn't a discovery issue.  They don't need that from

16   us, they need that on their own.

17         And if they have not yet produced that, they

18   have not yet created that, I don't see why that becomes the

19   defendant's problem in an Anti-SLAPP case.

20         Now, they also ask for -- or at least mentions,

21   without meeting these three standards, that they want

22   factors for nominative fair use; but they don't explain any

23   facts that Abbey means to oppose the motion for summary

24   judgment, why it hasn't gotten them from third parties, and

25   those factors can be resolved on the current record.

TRANSCRIBED FROM DIGITAL RECORDING

1          To claim that likelihood of confusion factors

2    are relative to nominative fair use is simply incorrect.

3          And the use here that they're complaining about

4    under the Lanham Act is we have a consumer review website.

5          Now, if you were to have a consumer review of a

6    company without mentioning the name of that company, that

7    would be a very ineffective consumer review.  It would

8    simply be:  We know of this dental clinic in Henderson that

9    we don't like, but we can't tell you what it is because it

10   might infringe on their trademark.

11          And I don't mean to be irreverent in trying to

12   say that, but I don't know how else to wrap my head around

13   it.

14          And as this very court, Judge Leen said in

15   Newmont versus Little Busy (phonetic) -- I'm sorry, I

16   don't -- I haven't got that citation memorized, but she

17   stated very clearly how important consumer reviews are.

18          Could you imagine that any consumer reviewed

19   product or company would simply say it's likely to confuse

20   consumers, if they look at this website, they're going to

21   think it comes from us?  It's simply an absurd argument.

22          We now look at nominative fair use.  Do we need

23   to mention the name of a product in order to review it?  I

24   think that goes without citation or saying that we need to.

25          There are other -- the other factors that he

TRANSCRIBED FROM DIGITAL RECORDING

1   said while invoking 56(d) without meeting the standards, it

2   doesn't explain, for example, how a reviewed company's name

3   in a URL affects nominative fair use.

4           Now, this was a claim that they added to their

5   amended complaint for cybersquatting under 15 U.S.C.

6   1125(d).  That is very easily dispensed of as a matter of

7   law because despite the fact that I -- I actually

8   personally like my friend's argument that I believe that

9   subdomains should have been covered under the Anti-SLAPP

10  statute.  I fully agree with that as a gentlemanly matter.

11          However, I have, unfortunately, had that

12  argument thrown away against me because the legislative

13  history of the statute and the statute itself in

14  interpreting decisions have all said that subdomains are

15  very clearly not covered under 1125(d).

16          I don't know why Congress debated that very

17  specific issue.  It was a very -- perhaps it was because of

18  how early in the development of the Internet that they were

19  passing the cybersquatting act.  Perhaps had they an

20  opportunity to amend it today, they might change that fact

21  because it would be very easy to circumvent the

22  cybersquatting laws in order to do that.

23          But unfortunately we are stuck with not what I

24  wish the law was and not what he wishes the law was but

25  what the law is.  And we discussed that, I think,

1    thoroughly but briefly in our Anti-SLAPP motion simply

2    because there isn't a complicated discussion about that.

3            So the next 56(d) or purported 56(d) discovery

4    they want, like I said, is consumer surveys.  I don't see

5    how a consumer survey relates to any nominative fair use

6    factor.  They have not explained how those facts exist, how

7    it is essential to oppose summary judgment, or what

8    specific facts they want.  They simply want to conduct

9    consumer surveys.

10           Well, they're free to do that.  And they have

11   been free to do that for the past 14 months.  And I don't

12   have those consumer surveys.  I mean, my client doesn't

13   have those consumer surveys.  My client can't be compelled

14   to conduct them.  So what is it that they're really asking

15   for?

16           They also wish to -- they say they need to

17   retain a statistician to perform, and I quote, "Technical

18   analysis of the degree and extent of the defendant's use of

19   the plaintiff's trademark via domain use."

20           Again, this doesn't explain how this relates to

21   any factor that they need in order to oppose.  It doesn't

22   explain any of these three factors that you need under

23   56(d).

24           And, again,  what's -- nothing is stopping them

25   at this point, and nothing has been in their way for the

TRANSCRIBED FROM DIGITAL RECORDING

1    past 14 months.

2              They have also stated that they need documents

3    from us, and they have stated in their moving papers that

4    we have provided none.

5              We have shown in the record that we have

6    provided hundreds of pages of documents.  And in fact in

7    order to ensure that there was no question about that,

8    we've placed them all in the record at ECF 35-20 and ECF

9    35-21.

10             The responses with objections are ECF 35-22 and

11   34-4.

12             Now they say that they are insufficient, but

13   they haven't explained how or filed a motion to compel nor

14   even met and conferred with us on a motion to compel.

15             As far as presenting a 30(b)(6) witness for

16   deposition, we did this.  We offered Mr. Podolsky as the

17   witness starting in late December.  We scheduled his

18   deposition.  Mr. Podolsky made travel arrangements.  He was

19   on his way.

20             And then on the Saturday before the deposition,

21   they unilaterally cancelled the deposition despite our

22   insistence that it go forward.  Not that we believe that

23   anything in that deposition would be relevant under the

24   Rule 56(d) factors.

25             However, we did not wish to appear

1    uncooperative.  We did not wish to have -- to give them any

2    additional arguments that this case should be -- continue

3    to be aggressively litigated in the face of an Anti-SLAPP

4    motion, ergo we offered him.

5            They decided at the last minute -- now, they

6    have said it is because it was due to settlement

7    discussions ongoing.  I do not wish to violate Rule 408,

8    but I will tell you that that is not the reason that this

9    was cancelled.  And my client continued to insist that it

10   go forward.

11           So what we really have here now is a request

12   that you take into account while I do not -- I cannot claim

13   that the Anti-SLAPP statute compels the result, I ask that

14   Your Honor look to the rules that we have before us:

15   Rule 1 that says that cases should be dealt with

16   efficiently; Rule 16 gives you the authority, of course;

17   Rule 37 as amended, and I think wisely, that discovery

18   should be proportional to the needs of the case.

19           We had a fully briefed, fully backed up

20   Anti-SLAPP motion which they attempted to defeat with an

21   amended complaint.

22           We then promptly filed a new one, which now they

23   wish to extend through additional very nebulous discovery.

24           And if they wanted to oppose the Anti-SLAPP

25   motion/motion for summary judgment on the grounds that we

1   cannot properly oppose this without these specific things

2   meeting those three factors under 56(d), that would have

3   been proper.

4          Even at this point if they wish to file a 56(d)

5   motion stating with specificity that way, not simply laying

6   out, you know, we need to drag the net as wide as we can in

7   order to make this case even more expensive.

8          My client is a well-known website, but

9   surprisingly a small company that cannot very well afford

10  to be dragged through this with months of discovery.

11         Now, I wish also for something that I think -- I

12  regret that we didn't put in our papers, but I don't think

13  anybody is going to object to me raising it now, is that,

14  if I'm not mistaken, if my math's not off, we have 68 days

15  left in discovery in this case as it stands.

16         In the event Your Honor does grant our motion

17  and in 10 days Judge Navarro decides the motion against us,

18  I don't wish for them to lose those 10 days.  Now, we can

19  say on the record now that we will stipulate to extending

20  those 10 days if this Court is willing to allow the parties

21  to do that.

22         If this case takes -- if Judge Navarro does not

23  have the opportunity to do this until next November, we're

24  okay with that.  We would just simply say that if it's

25  denied, then we would have full run for 68 more days.

1        What I am trying to do in this case is resolve

2    it efficiently.  And given that we believe, quite firmly,

3    that the Anti-SLAPP motion will be resolved in our favor, I

4    think this does not only benefit the defendant in the case,

5    as would be obvious, but if we do prevail, this is a case

6    where there are mandatory attorney's fees; therefore, I

7    would like to file a request for as few fees as possible,

8    not as many as possible.

9        So if they have absolutely no fear of losing the

10   motion, then I suppose that their logic in opposing our

11   position here makes sense.

12       But if there is the possibility that they are

13   going to lose the motion, I think it would benefit them as

14   well to let the impact of that loss be as minimal as

15   possible.

16            THE COURT:  Thank you.

17            Mr. Amin?

18            MR. RANDAZZA:  Thank you, Your Honor.

19            MR. AMIN:  Thank you, Your Honor.  Good morning.

20       Without belaboring the oppositions that have

21   been filed to the motion for summary judgment and the

22   motion to dismiss, just highlighting some of the reasons

23   why discovery should be permitted to move forward, I think

24   the Court was correct and articulated it well as it relates

25   to the *Rogers v. Home Shopping Network* case and the

TRANSCRIBED FROM DIGITAL RECORDING

1    colliding aspects of Rule 56(d) and the Anti-SLAPP statute.

2              THE COURT:  So the question is did you comply

3    with Rule 56(d) in opposing the motion for summary

4    judgment?

5              MR. AMIN:  Respectfully, Your Honor, we believe

6    we did.

7              And paragraph 51 of my declaration sets forth

8    some very specific --

9              THE COURT:  Paragraph 51 of the opposition to

10   the motion for summary judgment?

11             MR. AMIN:  Yes, Your Honor.  It's actually

12   paragraph 51 of my declaration in support of the

13   oppositions to both motions.

14             And it set forth very specific requests that we

15   needed to have satisfied.  And mind you that those requests

16   address both the *Sleekcraft* factors and the *New Kids on the*

17   *Block* factor, which -- factors, which relate to nominative

18   fair use.

19             There's another procedural problem with

20   plaintiff's -- excuse me, defense -- defendant's argument.

21             Assuming the Anti-SLAPP motion is granted in its

22   entirety, there still remains three claims that are subject

23   to disposition, vis-à-vis the motion for summary judgment.

24              Those three claims clearly -- there is no

25   discovery stay mechanism afforded outside of Your Honor's

TRANSCRIBED FROM DIGITAL RECORDING

1    ruling or order.  And those three claims are federal

2    trademark infringement, false designation of origin, and

3    cybersquatting.  Those were not addressed in the Anti-SLAPP

4    motion.

5              Now, cutting to the comments made by counsel

6    this morning, we disagree that this is a case about

7    nominative fair use.  We believe this is a likelihood of

8    confusion case.

9              We believe that the appropriate standard --

10             THE COURT:  It's confusing to list your client

11   as the entity that the consumer review site is reviewing?

12             MR. AMIN:  Your Honor, assuming it is a consumer

13   review site.  Assuming it's a consumer review site, it's

14   not only the source or the way the advertising occurred,

15   it's how the advertising occurred.

16             And in this particular case you have a trademark

17   that shows up as the very first literal element on a

18   domain.  So it will say Abbey Dental/thisconsumer.com.

19   There have been multiple variations of that.

20             Effectively what this does is it redirects

21   consumers to their website.  That is not protected speech.

22   That is not defamation.  It's not subject to the Anti-SLAPP

23   statute or the scheme of that statute.

24             And even assuming that nominative fair use is at

25   issue, that in and of itself requires factual discovery.

1     There -- you can't simply say, oh, well, we're a consumer

2     based website that simply operates to allow consumers to

3     post opinions.

4             Without getting into why this particular website

5     has a legitimacy verification program, has a business

6     solutions program, makes significant revenues from

7     advertising dollars, invites businesses to participate in

8     these programs for fees, exorbitant fees -- and the process

9     is opaque.  We've documented it, I think, fairly well in

10    our oppositions.

11            So to say this is a nominative fair use case is

12    frankly disingenuous.  And there is a lot of discovery that

13    should happen in that regard.

14            And one of the specific factors -- and it's the

15    *New Kids on the Block* case that discusses the defense of

16    nominative fair use.  One of the specific factors, Your

17    Honor, is, well, did the defendant only use as much of the

18    mark as reasonably necessary?  Did the defendant cross the

19    line in using the mark?

20            We believe this is a case where the defendant

21    did cross the line.  We believe that those three *New Kids*

22    *on the Block* factors require discovery, and a minimal

23    amount of discovery at the very least.

24            And given the fact that the *TradeBay* case

25    imposes the burden upon the moving party, we don't believe

TRANSCRIBED FROM DIGITAL RECORDING

1    that burden has been met.

2             I won't comment on the issues surrounding the

3    deposition other than what's in my declaration.  I take my

4    oath to this Court and the penalty of perjury very

5    seriously.  And I will defer to that.

6             And insofar as the documents that were filed,

7    discovery responses that were filed by the defense, I will

8    represent to the Court, as set forth in my declaration,

9    those were never received by my office until they were

10   actually filed.

11            And frankly, I -- I double checked myself three

12   times yesterday, and I did not see them in our files.

13            And having said that, Your Honor, I would submit

14   on the papers.

15            THE COURT:  Thank you.

16            MR. AMIN:  Thank you.

17            THE COURT:  Briefly in rebuttal, Mr. Randazza.

18            MR. RANDAZZA:  Yes.  Your Honor, I'll simply

19   address the question of discovery required for the meeting

20   the *New Kids on the Block* factor.  It seems the only factor

21   here is did the defendant use too much of the mark.

22            I don't know what discovery they're going to ask

23   us for that would provide that.  That is a matter of law, I

24   believe, for the Court to decide.

25            As far as these claims that we are not really a

TRANSCRIBED FROM DIGITAL RECORDING

1    consumer review website, that is, I think, something that

2    can also be decided as a matter of law.  And if not,

3    perhaps my client -- this is not the first time my client

4    has been sued under these precise theories.

5            There was a case in the Southern District of New

6    York, *Ascentive versus Opinion Corp.*, and one in the Middle

7    District of Florida, *Roca Labs versus Opinion Corp.*, where

8    both of those courts found that we were.  So nothing has

9    changed since then.

10           Again, I don't know what -- even if my client's

11    website was something else, I don't know what it is they

12    say that it is, that doesn't make any difference.  What

13    makes a difference is, what's in the record here, is we see

14    a list of consumer reviews.  Even if every other subpage on

15    my client's website, if we can use our imagination, think

16    of it as anything else, these are consumer reviews.

17           So I don't see what discovery is going to be

18    taken that would change that.

19           And, here again, we have had an opportunity to

20    hear from Mr. Amin.  He could have argued even today:

21    Here's the fact we need.  It exists.  Here how we're going

22    to get it.  Here's how it's going to change the outcome.

23           We still haven't heard those.  And we have tried

24    mightily to get those from them.  In fact, we did so

25    informally through a series of letters.  Even, I think, on

TRANSCRIBED FROM DIGITAL RECORDING

1    our fourth or fifth attempt to elicit that, we provided an

2    example from a case where it was successful, said:  Just

3    follow this, and we will informally provide you with

4    anything that you can articulate.

5              We are still left here with, in the face of a

6    motion for summary judgment motion/Anti-SLAPP motion, the

7    real only argument is we need more discovery on these

8    issues, which are matters of law with no specificity as

9    required under 56(d).

10             Thank you, Your Honor.

11             THE COURT:  I am going to grant the motion to

12   stay in this case.  I'm not persuaded that the opposition

13   to the motion for summary judgment complied with the

14   specificity and the particularity requirements of Rule

15   56(d).

16             But, more importantly, applying the goal of

17   Rule 1 in this case, it seems that there are some very

18   serious detailed issues as a matter of law that can and

19   should be decided before the parties go out and engage in

20   broad discovery in this case, and that it would inure to

21   the benefit of both sides to delay discovery until you get

22   the district judge's decision and order on the motion for

23   summary judgment in this case.

24             If she agrees with you, Mr. Amin, that discovery

25   is needed, you're going to get the opportunity to conduct

1    the discovery.

2             If she disagrees with you that the discovery is

3    needed in order to decide matters -- some of the issues as

4    a matter of law, then you will have engaged in the

5    discovery for naught.  And that is not efficient.

6             Since the late 1970s, the Supreme Court and the

7    drafters of the Federal Rules of Civil Procedure and

8    advisory committee have been urging federal courts to take

9    a more proactive case management to rein in unnecessary

10   discovery to accomplish the goal of Rule 1.

11            At the end of 2015 the chief justice devoted his

12   year-end statement on the judiciary almost entirely on the

13   need to rein in expensive discovery, urging the lower

14   courts to do that and to proactively manage cases to

15   accomplish the goal of Rule 1 and to avoid unnecessary and

16   expensive discovery which is increasingly precluding

17   ordinary people from being able to have their cases heard

18   in federal court.

19            At any given time between 40 and 50 percent of

20   our civil cases involve an unrepresented party because

21   parties simply can't afford it.

22            And so in this case where you have a pending

23   motion which will, if not be dispositive of the case, at

24   least pare down significant issues or give you guidance

25   from the district judge and where the district judge will

1   decide whether or not you're entitled to any discovery at

2   all if you complied with your Rule 56(d) obligations, that

3   will be decided by her and not me, it makes no sense to

4   engage in expansive discovery at this point, particularly,

5   as Mr. Randazza points out, that much of the generically

6   described discovery that you say you need can be obtained

7   not from the defendant but by your own efforts; for

8   example, your statistician.

9          Certainly you're not precluded from -- you could

10  have done that before suit.  You don't need discovery in

11  order to retain your own expert or consultant.

12         So I am going to grant it for the reasons I've

13  stated.

14         And I thank you for the professionalism in which

15  you presented your respective opinions and arguments.

16  Thank you.

17         MR. RANDAZZA:  Thank you, Your Honor.

18         MR. AMIN:  Thank you, Your Honor.

19         COURTROOM ADMINISTRATOR:  All rise.

20       (The proceedings concluded at 9:29 a.m.)

21                    *    *    *

22

23

24

25

1

2            -o0o-

3      I certify that the foregoing is a correct

4      transcript from the electronic sound recording

5      of the proceedings in the above-entitled matter.

6

7      _____        4/20/17

8          Donna Davidson                     Date

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25