**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| SWITCH LTD., | ) |
|                Plaintiff, | ) Case No.: 2:17-cv-02651-GMN-VCF |
| vs. | ) |
| | ) **ORDER** |
| STEPHEN FAIRFAX, *et al.*, | ) |
|                Defendants. | ) |

Pending before the Court is the Motion to Dismiss, (ECF No. 8), filed by Defendants Stephen Fairfax ("Fairfax") and MTechnology (collectively "Defendants"). Plaintiff Switch Ltd. ("Plaintiff") filed a Response, (ECF No. 16), and Defendants filed a Reply, (ECF No. 18). Also pending before the Court is Plaintiff's Motion for Preliminary Injunction. (ECF No. 7). Defendants filed a Response, (ECF No. 12), and Plaintiff filed a Reply, (ECF No. 19). For the reasons discussed herein, Defendants' Motion to Dismiss is **GRANTED in part** and **DENIED in part**. Additionally, Plaintiff's Motion for Preliminary Injunction is **DENIED without prejudice**.

**I.     BACKGROUND**

This action arises from Plaintiff's allegations that Defendants misappropriated its trade secrets to the benefit of a competitor. (Compl., Ex. 1 to Pet. of Removal, ECF No. 1-1). Plaintiff is a limited liability company in Nevada that designs, builds, and operates data centers. (*Id.* ¶ 6). According to Plaintiff, its unique designs have allowed it to become known as "one of the best in the industry at building and operating data center technology ecosystems." (*Id.* ¶ 15). Specifically, Plaintiff asserts that its novel approach allows its data centers to operate "more efficiently than their competitors" and "solve one of the biggest threats to data center efficiency: containing, channeling, and cooling server heat." (*Id.* ¶ 20). Plaintiff attributes this

competitive advantage in the industry to its numerous patents, patent-pending technology, and trade secrets. (*See id.* ¶¶ 5–27).

On or about May 2011, Plaintiff alleges that Fairfax, who served as the President of MTechnology, was given an in-depth tour of Plaintiff's facilities and "special access to all of [Plaintiff's] designs." (*Id.* ¶¶ 12, 28–29). The purpose of this "rare access" was to allow Fairfax to conduct an audit of Plaintiff's technologies and provide an "independent and trusted assessment" to a mutual customer. (*Id.* ¶ 30). As part of the audit, Plaintiff claims that Fairfax had access to extremely sensitive trade secret information, and therefore Plaintiff required Fairfax to sign a Non-Disclosure Agreement (the "2011 NDA"). (*Id.* ¶¶ 31, 32). Under the 2011 NDA, Fairfax and MTechnology allegedly agreed to "not disclose or use any of [Plaintiff's] Confidential Information . . . including trade secret information." (*Id.* ¶ 33).

In August 2015, Plaintiff again permitted Fairfax to conduct a review of Plaintiff's technology at the request of the same mutual customer. (*Id.* ¶ 41). The purpose of this renewed request was to have Fairfax evaluate "new evolutions in [Plaintiff's] trade secret protected and patent-pending technologies." (*Id.*). Plaintiff again required Fairfax to execute a second Non-Disclosure Agreement (the "2015 NDA"), which allegedly prohibited Fairfax from disclosing trade secrets. (*Id.*).

Around or before 2015, Plaintiff claims that Fairfax began speaking with Aligned Data Centers ("Aligned"), which is a provider of data center services in Phoenix, AZ and a competitor with Plaintiff. (*See id.* ¶¶ 47–53). After entering discussions, Plaintiff asserts that Fairfax agreed to design Aligned's data centers. (*Id.* ¶ 55). In November 2015, Aligned allegedly opened a new data center in Texas based on Fairfax's design. (*Id.* ¶ 45). According to Plaintiff, "it is apparent that [Fairfax] improperly used [Plaintiff's] Confidential Information to influence the design and makeup of the Aligned Data Centers." (*Id.* ¶ 57). In particular, Plaintiff notes similarities between the physical infrastructure and layout, cooling designs,

electrical configuration, interplay of various component parts, and overall operations of the data center. (*Id.*). Plaintiff alleges that Aligned has opened, and will continue to open, additional data centers based on this design. (*See id.* ¶¶ 47–49).

On September 12, 2017, Plaintiff initiated this action in state court. (Compl., Ex. 1 to Pet. of Removal). Defendants subsequently removed the action to this Court on October 12, 2017. (Pet. of Removal, ECF No. 1). In the Complaint, Plaintiff alleges causes of action for: (1) Breach of Contract; (2) Breach of Implied Covenant of Good Faith and Fair Dealing; (3) Tortious Breach of Implied Covenant of Good Faith and Fair Dealing; (4) Unjust Enrichment; (5) Conversion; (6) Misappropriation of Trade Secrets under 18 U.S.C. § 1836; (7) Misappropriation of Trade Secrets under N.R.S. 600A; and (8) Misappropriation of Licensable Commercial Properties. (*See* Compl., Ex. 1 to Pet. of Removal). Defendants filed their Motion to Dismiss on November 2, 2017. (ECF No. 8).

## II. <u>LEGAL STANDARD</u>

### A) Motion to Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedure mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted. *See North Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the Court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).

The Court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden*

*State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a violation is *plausible*, not just possible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555) (emphasis added). In order to survive a motion to dismiss, a complaint must allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion . . . . However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citations omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *See* Fed. R. Civ. P. 12(d); *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

If the court grants a motion to dismiss, it must then decide whether to grant leave to amend. Pursuant to Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed,

undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Generally, leave to amend is only denied when it is clear that the deficiencies of the complaint cannot be cured by amendment. *See DeSoto v. Yellow Freight Sys., Inc*., 957 F.2d 655, 658 (9th Cir. 1992).

**B) Preliminary Injunction**

Preliminary injunctions are governed by Rule 65 of the Federal Rules of Civil Procedure, which provides that a "court may issue a preliminary injunction only on notice to the adverse party." Fed. R. Civ. P. 65(a)(1). In general, injunctive relief is an extraordinary remedy that is awarded only upon a clear showing that the moving party is entitled to that relief. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). A plaintiff seeking a preliminary injunction "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20. In certain circumstances, "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest.*"* *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134 (9th Cir. 2011). "[C]ourts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Amoco Production Co. v. Village of Gambell, AK*, 480 U.S. 531, 542 (1987).

**III. DISCUSSION**

**1. Motion to Dismiss**

In the instant Motion to Dismiss, Defendants advance three separate arguments: (1) Plaintiff's misappropriation claims are premised on the same allegations as a separate patent action and therefore fail to state a claim; (2) Plaintiff's tort claims are subsumed by the

misappropriation claims; and (3) Plaintiff's contract claims do not apply to Fairfax in his individual capacity. (*See* Mot. to Dismiss, ECF No. 8). The Court addresses these arguments in turn.

### A. *Misappropriation Claims*

Defendants argue that the Court should dismiss Plaintiff's misappropriation claims because a related patent case filed in the Eastern District of Texas encompasses the same alleged conduct by Defendants. (Mot. to Dismiss 6:21–24). According to Defendants, Plaintiff cannot show that this conduct "simultaneously constitutes contributory patent infringement and misappropriation of trade secrets," as such an assertion is a "legal impossibility." (*Id.*). In response, Plaintiff asserts that "Defendants assume incorrectly that [Plaintiff's] misappropriation of trade secrets claims are exclusively based on information set forth in published patent claims . . . ." (Pl.'s Resp 7:18–21, ECF No. 16). Additionally, Plaintiff notes that many of the alleged improper disclosures occurred before the associated patents were published. (*See id.* 8:2–11).

Defendants are correct that information disclosed in the public domain cannot give rise to a claim based on trade secrets. *See Stutz Motor Car of Am., Inc. v. Reebok Int'l, Ltd.*, 909 F. Supp. 1353, 1359 (C.D. Cal. 1995) ("It is well established that disclosure of a trade secret in a patent places the information comprising the secret into the public domain."). Here, however, Plaintiff has sufficiently alleged that Defendants have misappropriated information outside the patent disclosures. While Defendants assert a factual dispute as to the overlap between Plaintiff's misappropriation and patent claims, such an argument is improperly raised at this stage in the litigation. The Court therefore rejects Defendants' argument as premature. *See Kaplan*, 792 F.2d at 898.

To the extent Defendants argue that Plaintiff must allege its misappropriation claims with greater particularity, the Court disagrees. In order to state a claim for misappropriation

under NRS 600A, a plaintiff must allege: (1) a valuable trade secret; (2) misappropriation of the trade secret through use, disclosure, or nondisclosure of use of the trade secret; and (3) that the misappropriation was made in breach of an express or implied contract or by a party with a duty not to disclose. *Frantz v. Johnson*, 999 P.2d 351, 358 (Nev. 2000). A claim for misappropriation under the Defend Trade Secrets Act ("DTSA") has substantially similar elements. *See* 18 U.S.C. § 1836; *see also Physician's Surrogacy, Inc. v. German*, 2018 WL 638229, at *4 (S.D. Cal. Jan. 31, 2018).

Here, the Complaint alleges that Defendants obtained numerous trade secrets during Fairfax's multiple tours of Plaintiff's facility. These alleged trade secrets go to specific aspects of Plaintiff's data centers, including electrical and mechanical lines, operational routines, electrical designs, cooling and power redundancy designs, and infrastructure layouts. (*See, e.g.,* Compl. ¶¶ 11, 19, 23, 42). Furthermore, the Complaint alleges that Fairfax misappropriated these trade secrets by incorporating them into Aligned's data center design. (*See id.* ¶¶ 56–65). This misappropriation allegedly occurred in violation of two nondisclosure agreements. (*See id.* ¶¶ 32, 41). The Court therefore finds that Plaintiff has sufficiently pled its misappropriation claims.

### B. Tort Claims

Defendants argue that the Court should dismiss each of Plaintiff's tort claims because the claims are superseded by Plaintiff's Nevada misappropriation claim. (*See* Mot. to Dismiss 10:13–12:18). N.R.S. 600A provides that "this chapter displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret." In its Response, Plaintiff concedes that the fourth, fifth, and eighth causes of action are subsumed by its claim under NRS 600A. (Pl.'s Resp 2:14–17). Accordingly, the Court dismisses Plaintiff's fourth, fifth, and eighth causes of action with prejudice.

*C. Contractual Claims*

Defendants argue that the Court should dismiss Plaintiff's contractual claims against Fairfax because he is not a party to either of the two at-issue nondisclosure agreements. (*See* Mot. to Dismiss 12:19–13:4). According to Defendants, Fairfax only signed the agreements in his official capacity as president of Mtechnology. (*Id.* 14:1–7). In turn, Plaintiff argues that "[i]t was always expressly stated and understood by [Plaintiff] and Fairfax that Fairfax and [Mtechnology] would both be bound by the NDA since both were visiting the data center." (Pl.'s Resp 11:22–24). Additionally, Plaintiff asserts that nowhere on the agreements does Fairfax indicate that he "was expressly excluding himself from being bound by the terms of the agreement." (*Id.* 11:8–11).

As a general rule, there must be privity of contract between a plaintiff and defendant in order to render the defendant liable under an agreement. *Bernard v. Rockhill Dev. Co.*, 734 P.2d 1238, 1240 (Nev. 1987); *White Pine Cty. Bank v. Sadler*, 6 P. 941, 943 (Nev. 1885). In cases involving a corporate officer as a signatory to an agreement, courts look to the intent of the parties to determine whether the officer is liable in a personal capacity. *See Trident Const. Corp. v. W. Elec., Inc.*, 776 P.2d 1239, 1242 (Nev. 1989); *see also Trump v. Eighth Judicial Dist. Court of State of Nev. In & For Cty. of Clark*, 857 P.2d 740, 747 (Nev. 1993) (analyzing individual liability based on the manner in which the contract was signed and personal relationship between the parties). Absent an unambiguous expression to be bound or not be bound by an agreement, courts may use extrinsic evidence to determine the parties' intent. *See Moldan v. First National Bank of Miami,* 174 So.2d 780, 781 (Fla.Ct.App.1965), *cited with approval by Trump*, 857 P.2d at 747; *see also Butler v. Lovoll*, 620 P.2d 1251, 1253 (Nev. 1980).

In this case, both nondisclosure agreements state on the top of their respective title pages that the contract is "entered into and effective . . . between [Plaintiff] and the person or entity

identified below ('recipient')." (NDAs at 28, 36, Ex. 1 to Pet. of Removal). With respect to the 2015 NDA, the final page of the agreement explicitly lists Mtechnology as the "recipient." (*Id.* at 37). Accordingly, although Fairfax's name and title are included below the recipient line, it is clear based on the terms of the contract that only Plaintiff and Mtechnology are bound to the agreement. With respect to the 2011 NDA, however, the "recipient" line is left blank. (*Id.* at 29). Underneath the blank recipient line lies Fairfax's signature, printed name, and title. (*Id.*). Absent a clearly stated recipient of the agreement, the Court finds it ambiguous whether Fairfax signed the agreement in his personal capacity or representative capacity. As resolving this question requires weighing evidence not yet in the record, the Court cannot determine whether Fairfax is personally liable at this stage in the litigation. Plaintiff's contractual claims against Fairfax in his individual capacity may therefore move forward as to the 2011 NDA.

### 2. Preliminary Injunction

In its Motion for Preliminary Injunction, Plaintiff seeks an order requiring Defendants to: (1) cease designing any data centers; (2) cease displaying promotional materials for their designs of Aligned's data centers; (3) deliver all documents, contracts, and emails exchanged between Defendants and Aligned. (Mot. Prelim. Inj. 1:26–2:6, ECF No. 7). According to Plaintiff, such relief is warranted because Plaintiff is likely to succeed on the merits, will suffer irreparable harm, and the public interest and relative hardships weigh in favor of an injunction. (*See id.* 9:18–13:26). In support of this conclusion, Plaintiff broadly asserts that Aligned's facilities and technology appear identical, and that such similarities are "not the result of coincidence but rather demonstrate clearly that [Defendants] misappropriated confidential and trade secret information." (*See id.* 10:1–12).

"[T]he burdens at the preliminary injunction stage track the burdens at trial." *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429 (2006). Thus, the burden is on Plaintiff to demonstrate that it is likely to prevail on its claims that Defendants

misappropriated trade secrets in violation of their contractual and statutory obligations.  Upon review of the briefs and accompanying exhibits, the Court finds that Plaintiff's allegations are insufficient to meet this burden.  Notably, although the exhibits provided in Plaintiff's Motion show facial similarities in Aligned's data center design, Plaintiff has failed to provide any specific evidence regarding which trade secrets Defendants allegedly misappropriated. *See Frantz*, 999 P.2d at 358.  Rather, Plaintiff merely reasserts many of the broad allegations contained within the Complaint without providing additional detail or evidentiary support.  While the Court finds these allegations sufficient to state a claim, such allegations do not demonstrate that Plaintiff is entitled to the extraordinary remedy of an injunction. *Winter*, 555 U.S. at 22.  The Court therefore denies Plaintiff's Motion for Preliminary Injunction without prejudice.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss, (ECF No. 8), is **GRANTED in part and DENIED in part**.  The Court dismisses Plaintiff's fourth, fifth, and eighth causes of action **with prejudice**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Preliminary Injunction, (ECF No. 7), is **DENIED without prejudice**.

**DATED** this __30__ day of August, 2018.

_____
Gloria M. Navarro, Chief Judge
United States District Judge