Samuel Castor (11532)
Anne-Marie Birk (12330)
SWITCH, LTD.
7135 South Decatur Blvd.
Las Vegas, Nevada 89118
Telephone: (702) 444-4111
sam@switch.com
abirk@switch.com

Mark A. Hutchison (4639)
Jacob A. Reynolds (10199)
Piers R. Tueller (14633)
HUTCHISON & STEFFEN, PLLC
Peccole Professional Park
10080 West Alta Drive, Suite 200
Las Vegas, Nevada 89145
Telephone: (702) 385-2500
Fax: (702) 385-2086
mhutchison@hutchlegal.com
jreynolds@hutchlegal.com
ptueller@hutchlegal.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| SWITCH, LTD., a Nevada limited liability company, | CASE NO. 2:17-cv-02651-GMN-EJY |
| Plaintiff, | **SWITCH, LTD.'S RESPONSE TO DEFENDANTS' REQUEST FOR A PRETRIAL CONFERENCE AND SUBMISSION OF PROPOSED PROTECTIVE ORDER** |
| vs. | |
| STEPHEN FAIRFAX; MTECHNOLOGY; and DOES 1 through 10; ROE ENTITIES 11 through 20, inclusive, | |
| Defendants. | |

Pursuant to LR 16-2, a pretrial conference can "expedite disposition of any case, particularly one that is complex or in which there has been delay." Plaintiff Switch, Ltd. ("Switch"), welcomes and appreciates such judicial intervention and intended itself to seek this Court's intervention given Defendants' protracted delays and unfortunate gamesmanship in this

1

case.  The concerns raised by Defendants in their Request distract from the dispute between the parties and hijack the meet-and-confer process Switch began in August 2018.  Rather than address Defendants' failure to produce *any* discovery in response to Switch's discovery requests, Defendants now hide behind an attempt to secure a protective order.

The parties had agreed on all but one final protective order provision prior to Defendants filing their Request.  Switch believed the parties had finally resolved the issue by agreeing to Defendant's final suggested revision to the draft protective order.  *See* Exhibit 1.  Thus Defendants' Request appears to be another vehicle to further delay the discovery process and to attempt to discredit Switch with the Court.  Consequently, the Court should approve Switch's proposed protective order.

Furthermore, because Defendants circumvented the direct party-to-party negotiation process and further delayed discovery, Defendants should be ordered to reimburse Switch's attorneys' fees and costs incurred in responding to Defendants' unnecessary and improper Request.

## 1.     Defendants' Failed to Comply with the Meet-and-Confer Requirements of LR 16-2 and 26-7(c).

It is well established in this District that prior to seeking court intervention parties must meet and confer.  *See* LR 26-7(c) (Discovery motions will not be considered unless the movant (1) has made a good faith effort to meet and confer as defined in LR IA 1-3(f)[1] before filing the motion); *see also ShuffleMaster, Inc. v. Progressive Games, Inc.*, 170 F.R.D. 166, 171 (D. Nev. 1996) (parties must personally engage in two-way communication to meaningfully discuss the discovery dispute in a genuine effort to avoid judicial intervention).  Defendants are correct that the parties were negotiating a protective order on August 23, 2019 and August 29, 2019.  However, these negotiations came after more than one year of discussion and effort to obtain

---

[1] LR IA 1-3(f) Meet and Confer. Whenever used in these rules, to "meet and confer" means to communicate directly and discuss in good faith the issues required under the particular rule or court order. This requirement is reciprocal and applies to all participants. Unless these rules or a court order provide otherwise, this requirement may only be satisfied through direct dialogue and discussion in a face-to-face meeting, telephone conference, or video conference. The exchange of written, electronic, or voice-mail communications does not satisfy this requirement.

material electronic evidence from the Defendants.  To date Defendants have been unwilling to produce *any* electronic evidence or written discovery.

Generally Switch prefers open dialogue – not hurried court intervention – to find solutions and resolve conflict.  Switch first met with Defendants to discuss e-discovery issues on August 28, 2018.  *See* Declaration of Sam Castor ¶ 3, attached as Exhibit 2.  As discovery can be time-consuming and contentious process, Switch's in-house counsel Sam Castor and Anne-Marie Birk made the effort to travel to Boston Massachusetts to meet with Defendants to determine if accelerated e-discovery could be negotiated.  *Id.*  In exchange for what Switch understood would be accelerated and unfettered access to Defendants' electronic data, Switch offered to pay for a third-party vendor to conduct the e-discovery collection of documents in this case.  *Id.* at ¶ 4.  Defendants specifically agreed to the expedited discovery.  *Id.* at ¶ 5.  However, after abnormal obstacles and significant delays, Switch finally confronted Mr. Fairfax's abuse of Switch's good faith offer and efforts on July 19, 2019.  *Id.* at ¶ 6.  At this point in time, Defendants' counsel had not asked for or scheduled a meet and confer about a protective order.  *Id.* at ¶ 7.  Nevertheless, when Defendants effectively ignored Switch's concerns as to lack of production of e-discovery and written discovery and instead raised the issue of a protective order, Switch agreed to engage in the process of negotiating a protective order.  *Id.* at ¶ 8.  Switch was patient and engaged in the negotiations, zealously advocating for its position but willing to compromise.  *Id.*  After contentious, yet productive communications, Defendants preemptively avoided any effort to definitively finalize negotiations of the one outstanding and disputed term in the protective order.  Instead, Defendant rushed to the Court to file their Request.  *Id.* a ¶ 9.

However, the parties were still in negotiations.  Thus, Defendants never satisfied their meet-and-confer legal obligations prior to filing their Request.  *Id.* at ¶ 10.

**A.    Defendants Have Intentionally Delayed Production of All Evidence in this Case and Abused Switch's Good Faith Efforts to Expedite Discovery.**

On March 7, 2019 Christopher Austin, representing Switch, and Ron Green, representing Defendants, sent a joint letter to Casey Hanson, an Opentext representative regarding discovery efforts and document production.  *See* Exhibit 3.   In this letter Switch

"agreed to cover the computer forensic costs" to determine if Defendant MTechnology's ("MTech") data included any Switch trade secrets. *Id.* To that end, and in an effort to resolve the parties' dispute, the parties "agreed to stay the litigation until May 24th." *Id.*

On March 22, 2019, after several discussions with Opentext regarding data capture and assessment, Mr. Green stated, "we can move forward." *Id.* at March 22, 2019 10:45 AM. On March 26, 2019, Mr. Green provided Opentext with the "relevant information… need[ed] for collection" from MTech. *Id.* at March 26, 2019 1:55 PM. On April 5, 2019 Opentext asked Mr. Green to set up a call with MTech so they could "scop[e] the full extent of the collections effort and ideally get something scheduled and on the books." *Id.* at April 5, 2019 8:29 AM. Mr. Green responded that he would "talk to Steve Fairfax about his availability and get back to [Opentext]." *Id.* at April 5, 2019 1:01 PM.   It appears that Mr. Fairfax never provided *any* assistance or response to the discovery effort. *See Id.*[2]

On July 19, 2019, frustrated by the protracted delays caused by Mr. Fairfax, Switch sent a meet-and-confer letter to Defendants' counsel flagging inappropriate objections, and a complete lack of production of any documents in response to outstanding discovery requests. *See* Exhibit 4. Finally, in a July 24, 2019 letter – and notwithstanding a previously demonstrated willingness to provide documents – Defendants' counsel informed Switch that Defendants did not intend to produce any documents or written discovery until a protective order had been entered by the Court. *See* Exhibit 5. Moreover, a protective order draft had been revised and sent back to Switch for discussion. *Id.*

However, Defendants continued to delay and the parties did not speak substantively until August 29, 2019. Attempting to be efficient and cooperative, Switch agreed to compromise on all the issues raised by Defendant concerning the protective order, except for Section 7.1.

Defendants' proposed Section 7.1 reads in relevant part:

---

[2] The communications underscore repeated delays by the Defendants:  "Steve did tell me that he is traveling this week and unable to discuss."  Ex. 2 at April 10, 2019 10:42 AM; "I am unable to answer any of those questions. However, I am forwarding them to [Steve Fairfax]."  Ex. 2 at April 12, 2019 7:36 PM.; "I spoke with Steve today. He's still traveling but can discuss early next week."  Ex. 2 at April 16, 2019 6:39 PM.

> **Basic Principles**. A Receiving Party may use Protected Material disclosed or produced by another Party or by a Non-Party in connection with this Action only for prosecuting, defending, or attempting to settle this Action. Protected Material is **only** permitted to be used in this Action in furtherance of a Party's claims or defenses and may not be used for any other purpose whatsoever, including but not limited to, in other litigation, to compete with the other Party or any third party, to damage a Party's relationships with any third party to this Action, or to gain a competitive advantage over the other Party to this Action or any third party.

Switch's proposed language offered on August 23, 2019, reads in relevant part:

> **Basic Principles**. A Receiving Party may use Protected Material disclosed or produced by another Party or by a Non-Party in connection with this Action only for prosecuting, defending, or attempting to settle this Action, ***and related facts in other matters or actions, as necessitated or required by law (e.g. facts or claims related to Switch's claims against Aligned Data Centers and its affiliated entities, or others infringing Switch's intellectual property).***

(Emphasis added on differing language.)

Switch's proposed language was a good-faith effort to address Defendants' concerns while also attempting to manage Switch's understanding and concerns regarding legal precedent directing acceptable venues for patent infringement cases articulated by the United States Supreme Court in *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 137 S. Ct. 1514 (2017).

During the August 29th meet-and-confer conference, the parties discussed these concerns and the disputed language of the protective order. Defendants' counsel suggested that although they did not agree with Switch's proposed language, Switch could issue a subpoena in any separate lawsuit to obtain access to the relevant documents. *See Castor Decl.* ¶ 11, Exhibit 2. Switch's believes this solution, offered by Defendants, would likely have resolved the dispute between the parties over the one source of the parties' disagreement over the protective-order language. *Id.* at ¶12.

While discussing the protective order terms, both parties raised the possibility of filing separate protective orders, but continued to work together as they were still making progress and compromising. *Id.* at ¶13. Nevertheless, on September 3, 2019, Defendants choose to preemptively, prematurely, and unilaterally terminate the parties' final negotiations over the one remaining term in the proposed protective order. Then, with little warning, Defendant's submitted their Request to the Court.

5

The move was so unexpected, that prior to seeing the filed Request, Sam Castor, Switch's Deputy General Counsel, communicated with Defense counsel a few minutes after the Request was filed, stating "7.1 is the *only* hang up... I suggest we add language that says that you will preserve a copy of all information searched and produced, for subpoena in other matters related to this matter; *consistent with Marc Randazza's suggestion*." Exhibit 1 (emphasis added). The following day, Mr. Randazza sent a letter stating,

> "After we filed our Request for Pre-Trial Conference yesterday, you sent an email inquiring as to whether MTechnology ("MTech") and Stephen Fairfax would agree to include language in the Protective Order stating that they would "preserve a copy of all information searched and produced, for subpoena in other matters related to this matter." *Ron and I have discussed your email with our clients. We cannot accept it.*"

Exhibit 6 (emphasis added).

It is hard to understand why Mr. Fairfax and his counsel would renege on their own proposal to simply preserve the evidence. One could reasonably infer that the evidence may be unhelpful to Defendants' cause. There is no rational basis to object to the proposed subpoena language in Section 7.1 offered by Switch.

To cast aspersions against Switch and to deflect attention from Defendant's lack of production of any electronic evidence, documents, or written discovery for over a year despite outstanding discovery requests, Defendants *now* assert Switch is using discovery to conduct "industrial espionage" as an "abuse of process." This hyperbole ignores the facts. Switch was clear back in August of 2018, when Switch met with Mr. Fairfax and his counsel, that Switch was pursuing this lawsuit independent of the lawsuit in Texas; *and* that the information would be relevant in the Texas lawsuit because of the *TC Heartland* case. This lawsuit is about breach of contract and trade secret misappropriation. The Texas lawsuit was about patents. These subjects were openly discussed in Switch's first meeting with Mr. Fairfax. Mr. Fairfax raised no concern then (over a year ago) about industrial espionage or abuse of process. Any concerns raised now are merely diversionary tactics to avoid focus on Mr. Fairfax's complete lack of production of any electronic evidence, documents, or written discovery in this case. *See* Castor Decl. ¶ 14, Exhibit 2.

If Switch is guilty of anything, it is that Switch has been reasonable and professional far longer than justified by Defendant's unprofessionalism and dilatory actions in this case. The

facts show Switch's positon was justifiable, discussed by the parties and is, in fact, reasonable. Thus, Switch asks that the Court accept its version of Section 7.1, as highlighted in its proposed protective order attached as Exhibit 7.  Alternatively, Switch is willing to accept a modified version of the protective order, as originally proposed by Defendants, which requires Defendants to retain a copy of the materials produced so they can be subpoenaed at a later date.

## 2. Defendants' Premature and Ill-Motivate Filing of its Request for a Pretrial Conference Requires an Award of Switch's Attorneys' Fees and Costs.

The law provides multiple avenues by which a Court may grant relief to a party and punish litigants for misusing the judicial system to frustrate the purpose of the rules and to deter others from similar abuse of process.

First, the Court has inherent power to issue sanctions to curb waste. "Federal courts, in the exercise of their equitable powers, may award attorneys' fees when the interests of justice so require." *Hall v. Cole*, 412 U.S. 1, 4-5 (1973).  Attorneys' fees are appropriate where a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. Masco, Inc.*, 501 U.S. 32, 45-46 (1991).  Imposing sanctions under such circumstances serves two important purposes: to vindicate judicial authority, and to make the prevailing party whole for expenses caused by its opponent's obstinacy. *See Id.* at 46.

In addition, when a litigant "multiplies the proceedings in any case unreasonably and vexatiously," the Court may order counsel "to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927; *see also Thomas v. Girardi*, 611 F.3d 1027, 1060–61 (9th Cir. 2010).  Section 1927 sanctions require a showing of either recklessness or *bad faith*. *See, e.g., Mirch v. Frank*, 266 Fed. Appx. 586, 588 (9th Cir. 2008) (explaining that sanctions are appropriate when a party "acts with knowing recklessness or argues an unmeritorious claim for the purpose of harassing the opposition."). Stated otherwise, a District Court appropriately awards fees under Section 1927 when the opposing attorney multiplies the proceedings by knowingly or recklessly making frivolous arguments. *See B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1107 (9th Cir. 2002).

Here, as can be seen from the previously detailed factual recitation and timeline, the parties were negotiating the terms of a protective order. Switch was negotiating in good faith, even after the surprise filing of the Request by Defendants. The Defendants were simply not negotiating in good faith. Moreover, Defendants have engaged in protracted delay for over a year, and filed the Request to further delay this case and deflect attention from their failure to meet their own discovery obligations.

It was *Switch* that raised concerns over discovery compliance; not Defendants. And despite numerous obstacles inhibiting a joint resolution to the parties' dispute, *Switch* actively worked with Defendants to find compromise. Yet, with only one outstanding issue remaining, Defendants threatened to file their Request at 2:15 PM. Then, without awaiting a reply from Switch, Defendants filed their Request just a few hours later around 5:00 PM, that same day. Switch agreed to utilize a subpoenas process – as suggested by Defendants' own counsel – as a way to resolve the dispute at 5:15 PM, shortly after Defendants filed — unbeknownst to Switch — their Request with the Court. Although Switch was frustrated with Defendants' actions, these ongoing negotiations and dialogue between the parties shows Switch was acting in good faith and attempted to work within the Defendants' desired parameters on the language of the protective order. This timeline also underscores Defendants' desire to avoid further dialogue despite the parties' active and ongoing negotiations.

At the end of the day, *Switch simply wants what it is entitled to under the rules of discovery: Defendants' e-discovery data, documents, and written discovery.* Defendants apparently want to avoid this production – as long as possible – and are willing to force Court involvement even when Switch was willing to agree to their proposed protective order terms. Switch believes that Defendants are acting in bad faith, and avoiding production of the evidence, documents, and information Switch rightly seeks.

Defendants failed to follow the local rules and meaningfully and in good faith meet and confer prior to filing this Request, in violation of LR 16-2 and 26-7(c). Pursuant to LR IA-3(f), "[i]n addition to any sanction available under the Federal Rules of Civil Procedure, statutes, or case law, the court may impose appropriate sanctions under LR IA 11-8 for a party's failure to comply with the meet-and-confer requirement." In the absence of Defendants' Request, Switch

believes that the parties would have resolved their dispute without court intervention — the very purpose of the meet-and-confer requirement.  However, Defendants choose to ignore this requirement, act unilaterally, and send unprofessional email responses saying "all I can do is laugh at you right now" when Switch raised its concerns.  *See* Exhibit 8.

Such open disdain for the rules and negotiation process should not be ignored.  Switch's good-faith efforts to resolve and/or advance resolution of the dispute was shut down by Defendants' illicit tactics and actions.  Because of Defendants' wrongful, reckless, and bad-faith conduct, Switch has had to spend significant time and energy preparing and responding to the Request and should be compensated for its good-faith efforts to resolve the dispute without court intervention.

For the foregoing reasons, Defendants should be ordered to pay at least $5,000 to help defray a portion of the substantial costs their bad faith tactics have unfairly foisted on Switch. Moreover, the Court should adopt Switch's version of the protective order, which is attached as Exhibit 7.

Dated this 17th day of September, 2019.

HUTCHISON & STEFFEN, PLLC

Mark A. Hutchison (4639)
Jacob A. Reynolds (10199)
Piers R. Tueller (14633)
Peccole Professional Park
10080 West Alta Drive, Suite 200
Las Vegas, NV 89145

Samuel Castor (11532)
Anne-Marie Birk (12330)
SWITCH, LTD.
7135 South Decatur Blvd.
Las Vegas, Nevada 89118

*Attorneys for Plaintiff*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of September, 2019, the foregoing document entitled: **SWITCH, LTD.'S RESPONSE TO DEFENDANTS' REQUEST FOR A PRETRIAL CONFERENCE AND SUBMISSION OF PROPOSED PROTECTIVE ORDER** was served via electronic service through the United States District Court for the District of Nevada's ECF System upon each party in the case who is registered as an electronic case filing user with the Clerk.

_____/s/ Madelyn B. Carnate-Peralta_____
An employee of Hutchison & Steffen, PLLC