Marc J. Randazza (NV Bar No. 12265)
Ronald D. Green (NV Bar No. 7360)
Alex J. Shepard (NV Bar No. 13582)
**RANDAZZA LEGAL GROUP, PLLC**
4035 S. El Capitan Way
Las Vegas, NV 89147
Telephone: 702-420-2001
Facsimile: 305-437-7662
ecf@randazza.com

*Attorneys for Defendants,*
*Stephen Fairfax and MTechnology*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| SWITCH, LTD.,<br>a Nevada limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>STEPHEN FAIRFAX; MTECHNOLOGY;<br>DOES 1 through 10; and ROE ENTITIES 11<br>through 20, inclusive,<br><br>Defendants. | Case No.: 2:17-cv-02651-GMN-EJY<br><br>**REPLY IN SUPPORT OF DEFENDANT'S REQUEST FOR A PRETRIAL CONFERENCE AND SUBMISSION OF PROPOSED PROTECTIVE ORDER** |

## 1.0    Introduction

Plaintiff Switch, Ltd. ("Switch") filed this case nearly two years ago. For the first several months after they were served, Defendants MTechnology ("MTech") and Stephen Fairfax struggled to understand why Switch demonstrated little interest in litigating this case. For example, while Defendants removed this case on October 12, 2017, Switch did not even request an early case conference until May 10, 2018, nearly seven months after removal. Moreover, while this is a case for the alleged misappropriation of trade secrets, Switch has refused to identify the trade secrets

- 1 -
**Reply in Support of Defendant's Request for a Pretrial Conference
and Submission of Proposed Protective Order**
2:17-cv-02651-GMN-EJY

Defendants allegedly misappropriated, despite repeatedly promising Defendants that they would do so.  Ironically, Switch now complains of delay.

As the case currently stands, Defendants remain unsure of what Switch specifically alleges that they did. Switch's failure to provide any information regarding what it is specifically accusing Defendants of doing makes it impossible for Defendants to engage in discovery. For example, the expert disclosure deadline is currently set for October 10, 2019, and Defendants are trying to locate an expert despite having little idea what their expert will need to testify to. The case cannot continue to proceed like this, and Defendants request that the Court either enter the protective order submitted by Defendants MTech and Stephen Fairfax and/or conduct a pretrial conference at its earliest possible opportunity.

In its Response, Switch makes baseless accusations of Defendants' supposed delay. It supports those accusations with material misrepresentations in an attempt to convince the Court to sanction Defendants. As discussed below, Defendants MTech and Mr. Fairfax feel that Switch's conduct is sanctionable, as its misrepresentations to this Court were intentional.[1] However, Defendants will not request sanctions at this time and merely ask that this Court adopt the protective order that they submitted so that this case can finally move forward.

**2.0     MTech and Stephen Fairfax fulfilled any meet and confer requirements**

Switch accuses Defendants of refusing to abide by meet and confer requirements in an attempt to have this Court sanction Defendants. Switch's demand for sanctions is absurd. Switch knew that Defendants would be submitting their proposed protective order after the parties' final phone conference. In fact, Switch was the party that suggested the parties submit competing protective orders. Switch accuses Defendants of acting in bad faith to provide cover for its attempt to have this Court bless its desire to abuse process through the language in its proposed protective order.

---

[1] Switch's Response appears to have been signed by Mark Hutchison of the Hutchison & Steffan law firm. Defendants do not impute the misrepresentations made in the Response to Mr. Hutchison, who only appeared in the case on the day that the Response was filed. Moreover, Defense counsel knows Mr. Hutchison personally and knows him to be an honest and capable attorney. It appears that he merely believed the facts as conveyed by his client.

- 2 -
**Reply in Support of Defendant's Request for a Pretrial Conference
and Submission of Proposed Protective Order**
2:17-cv-02651-GMN-EJY

RANDAZZA | LEGAL GROUP

In their Request for an Early Case Conference, Defendants informed the Court that Defendants met and conferred with Switch prior to filing so that the Court would know that Defendants attempted to resolve the dispute amicably before troubling the Court. However, Defendants do not believe that this Court's meet and confer rules are applicable to the filed Request. LR 16-2 provides that any party can request a pretrial conference at any time to expedite disposition of the case. It does not demand that the parties engage in a formal meet and confer process.

However, if there are meet and confer requirements at issue here, MTech and Mr. Fairfax undoubtedly satisfied them by engaging in numerous telephone conferences and exchanging numerous emails with Switch's in-house counsel. When Defendants submitted their Request for Pretrial Conference (Doc. # 48) on September 3, 2019, Plaintiff Switch knew that they would be doing so and, in fact, had invited Defendants to do so mere days earlier. Defendants felt they needed to submit the Request in order to move this matter forward. During each meet and confer conference, it became increasingly clear that Switch knew that the Court would not approve a Protective Order that allowed it to take discovery in this case for the primary purpose of gaining information about its competitors, causing it to ask for increasingly pointless meet and confer conferences to avoid explaining its wishes to the Court. (*See* Declaration of Ronald Green, at ¶ 3; Declaration of Marc Randazza, at ¶¶ 6-7.)

The parties' first meet and confer conference was scheduled for 1:30 p.m. on July 30, 2019. (*See* July 29-31, 2019 Email Exchange between Piers Tueller, Ronald Green, and Sam Castor, attached hereto as **Exhibit A**.) Switch stated that it would be submitting its proposed Protective Order to the Court later that week if the meet and confer conference was unproductive. (*See id.*) However, Switch blew off that meet and confer, subsequently stating that it was unavailable even though Switch proposed the date and the time of the call. (*See id.*)

On July 31, 2019, Defense counsel spoke with Mr. Tueller. (*See* Declaration of Ronald Green, at ¶ 4.)  But, that call did not result in a resolution of the issues.

- 3 -
**Reply in Support of Defendant's Request for a Pretrial Conference**
**and Submission of Proposed Protective Order**
2:17-cv-02651-GMN-EJY

On August 9, 2019, Defendants provided Switch with proposed Protective Order revisions. Two weeks later, on Friday, August 23, 2019, Switch proposed additional revisions, demanded a meet and confer conference, and stated that it would submit its proposed Protective Order to the Court if Defendants did not agree with Switch's revisions by Monday, August 26, 2019. (*See* August 23, 2019 Email from Sam Castor to Ronald Green, attached as **Exhibit B**.)  Those revisions were largely targeting the ability to discover Switch's competitors' trade secrets.  The clear abuse of process made it legally and ethically impossible for the Defense to agree.

On August 23, 2019, the parties again conferred. (*See* Declaration of Ronald Green, at ¶ 5.) Defendants did not agree to Switch's proposed language, yet Switch did not submit its proposed Protective Order to the Court the following Monday as it had promised it would if MTech did not capitulate. (*See id.*) Thereafter, on August 26, 2019, Defense counsel provided Defendants' final proposal for language for a Stipulated Protective Order. (*See* August 26-27 Email Exchange Between Ronald Green and Sam Castor, attached as **Exhibit C.**) On August 27, 2019, Sam Castor proposed one final meet and confer conference to "find mutually acceptable language." (*See id.*) His email stated that, if the final meet and confer conference was unsuccessful, the parties would file separate proposed Protective Orders. (*See id.*)

On August 29, 2019, the parties conducted yet another conference. (*See* Declaration of Ronald Green, at ¶ 6; Declaration of Marc Randazza, at ¶ 7.) However, Mr. Castor did not attempt to "find mutually acceptable language." (*See* Declaration of Ronald Green, at ¶ 6; Declaration of Marc Randazza, at ¶ 7.) Instead, he simply demanded that Defendants accept Switch's draft of the Protective Order. (*See* Declaration of Ronald Green, at ¶ 6; Declaration of Marc Randazza, at ¶ 7.) Defendants would not accede to his demands and filed their Request for Pretrial Conference and Proposed Protective Order on September 3, 2019.  Given the number of times and the length of time that the parties debated this issue, it was clear that it was time for outside help.

After Defendants filed the Request, Sam Castor sent yet another demand for an additional meet and confer conference that inexplicably accused Defendants of "stalling." (*See* September 3, 2019

- 4 -
**Reply in Support of Defendant's Request for a Pretrial Conference
and Submission of Proposed Protective Order**
2:17-cv-02651-GMN-EJY

Email from Sam Castor to Ronald Green, attached as **Exhibit D**.) On September 4, 2019, Defense counsel wrote a letter to Mr. Castor, explaining why none of his proposals had been acceptable to Defendants. (*See* September 4, 2019 Letter from Marc Randazza to Sam Castor, attached as **Exhibit E**.)

Defendants do not believe that they were required to meet and confer with Switch prior to requesting a pretrial conference. In the spirit of courtesy, they engaged in numerous conversations with Switch prior to filing. Immediately prior to their final meet and confer conference, Switch stated that the parties would file separate proposed Protective Orders if they could not reach agreement. Now, Switch has the gall to demand that this Court sanction Defendants for doing just that. There is no basis for imposing sanctions on Defendants. Defendants negotiated the language of the protective order with Switch until they realized that the negotiations were futile. Despite numerous attempts and a final impasse, the parties were unable to resolve this issue without Court intervention.

If this Court does enter Switch's protective order draft, Defendants will, of course, abide by that order. However, it deviates significantly from what parties are typically permitted to do with highly confidential information, and appears to be Switch's attempt to ask this Court for permission to abuse process. Therefore, Defendants could not voluntarily agree to its language. However, resisting Switch's attempts to fundamentally alter the provisions of typical protective orders is hardly a basis for sanctions. In fact, it is quite bizarre that a party is seeking sanctions because the other party would not agree to ask the Court for permission to commit abuse of process.

**3.0     Switch misrepresents the parties' attempts to engage in informal e-discovery**

Switch devotes a substantial portion of its Response to the parties' attempts to engage in informal electronic discovery. Its purpose for doing so is to accuse Defendants of using e-discovery to delay this case. Switch is not being honest with this Court.

The parties did meet in Boston, Massachusetts on August 28, 2018 at 10:00 a.m. (*See* Declaration of Stephen Fairfax, at ¶ 9; Declaration of Marc Randazza, at ¶ 3; Declaration of Steven Bauer, at ¶¶ 4-5.) Specifically, Stephen Fairfax, accompanied by his attorney in this case, Marc

- 5 -
**Reply in Support of Defendant's Request for a Pretrial Conference
and Submission of Proposed Protective Order**
2:17-cv-02651-GMN-EJY

RANDAZZA | LEGAL GROUP

Randazza, and his Boston patent counsel, Stephen Bauer, met with Sam Castor and Anne-Marie Birk, in-house counsel for Switch. Switch chose the time for the meeting and proposed it as an informal mediation.  Nevertheless, despite this meeting including four attorneys, two from each side, Switch's in-house counsel arrived and stated that the meeting would be short as they had a 12:00 p.m. flight back to Las Vegas. (*See* Declaration of Stephen Fairfax, at ¶ 10; Declaration of Marc Randazza, at ¶ 3; Declaration of Steven Bauer, at ¶ 5.)

Needless to say, this "mediation" was doomed *ab initio.*

The meeting consisted largely of Switch baselessly accusing MTech and Mr. Fairfax of ringleading a massive nationwide conspiracy to steal Switch's intellectual property.  While Switch refused to identify the allegedly misappropriated trade secrets at the meeting, the parties did agree to discuss an electronic discovery protocol that might assist them in settling the case without litigation. (*See* Declaration of Stephen Fairfax, at ¶ 13; Declaration of Marc Randazza, at ¶ 4; Declaration of Steven Bauer, at ¶¶ 6-11.)

In its Response, Switch indicates that the Boston meeting and subsequent discussions regarding e-discovery were directly linked to the discovery period in this case. That is a clear misrepresentation. Discovery in this case was stayed by the Court, along with all other deadlines, on February 1, 2019. Prior to that date, none of the parties took any discovery in this case.[2] Rather, the parties had spent the preceding five months attempting to agree upon an e-discovery protocol outside of this Court's purview.

The parties' discussions regarding e-discovery were specifically related to their attempts to settle this case. (*See* July 23, 2018 Email Exchange between Christopher Austin and Ronald Green,

---

[2] Switch apparently attempted to serve Requests for Production upon Mr. Fairfax and MTech in or around March of 2018. However, discovery had not yet commenced at that time, and Defendants never received it, as Switch attempted to serve those Requests to an email address that did not exist. Defendants discuss this in detail in their Reply in Support of Motion for Temporary Stay of Discovery (Doc. # 26). At one point, Switch did acknowledge that it failed to serve discovery upon Defendants in March of 2018. (*See* November 8-13, 2018 Email Exchange between Christopher Austin and Ronald Green, attached hereto as **Exhibit F**.) Despite this acknowledgement, Switch has reversed itself multiple times and incorrectly claimed that discovery was served in March of 2018. (*See* May 22, 2019 Email from Anne-Marie Birk to Ronald Green, attached hereto as **Exhibit G**; May 23, 2019 Letter from Ronald Green to Anne-Marie Birk, attached hereto as **Exhibit H**.)

**Reply in Support of Defendant's Request for a Pretrial Conference
and Submission of Proposed Protective Order**
2:17-cv-02651-GMN-EJY

attached hereto as **Exhibit I**, stating that "[i]n the context of settlement discussions, … Sam [Castor] is pressing for" a meeting date in Boston.) In fact, on July 23, 2018, the parties agreed not to proceed with discovery in this case until they determined whether settlement would be possible through informal e-discovery. (*See id.*) Throughout the process, the parties were clear with each other and the Court that e-discovery discussions were inextricably intertwined with settlement and not part of ordinary discovery. (*See* Stipulation and (Proposed) Order to Stay Proceedings (Doc. # 37), at ¶ 2 (stating that "the parties are in the process of engaging in informal discovery to attempt to resolve this lawsuit"); Joint Status Report (Doc. # 42), at 1 (informing the Court that the parties are engaging "in informal electronic discovery in an effort to settle this dispute without engaging in litigation").)

Switch violated Federal Rule of Evidence 408(a) by discussing the parties' settlement efforts with the Court. Moreover, it misrepresented those discussions to this Court in order to falsely accuse Defendants of unjustifiably delaying this case. Defendants have no choice but to elaborate on those settlement discussions to negate Switch's false "contention of undue delay." FRE 408(b).

Switch is correct that it met with Defendants and their counsel on August 28, 2018 to discuss e-discovery and settlement issues. (*See* Response, at 3.) However, Switch skips ahead nearly 7 months, to March 7, 2019, as though nothing happened in the interim. (*See id.*, at 4.) While it is unnecessary to give this Court a lengthy play-by-play of the parties' settlement efforts, MTech and Mr. Fairfax believe that it would be beneficial for the Court to be aware of the timeline's greatest hits:

- In its Response, Switch misrepresents that Defendants engaged in "protracted delays and unfortunate gamesmanship" throughout the e-discovery process. (Response, at 1.) In fact, Defendants were more proactive in moving informal discovery forward than Switch. Defendants MTech and Stephen Fairfax provided Switch with 3 separate proposals intended to steer negotiations. (*See* October 9, 2018 Letter from Ronald Green to Christopher Austin and Sam Castor, attached hereto as **Exhibit J**; February 1, 2019 Letter from Ronald Green to Christopher Austin, attached hereto as **Exhibit K**; April 29, 2019 Letter from Ronald Green to Christopher Austin, attached as **Exhibit L**.) Defendants'

- 7 -
**Reply in Support of Defendant's Request for a Pretrial Conference
and Submission of Proposed Protective Order**
2:17-cv-02651-GMN-EJY

RANDAZZA | LEGAL GROUP

proposals served as the basis for the parties' negotiations regarding the e-discovery framework.

- Plaintiff's Response indicates that Defendants did not raise the issue of confidentiality or a protective order until after July 19, 2019. (*See* Response, at 3.) However, after the August 28, 2018 meeting, Defendants raised those concerns almost immediately in conversations with Plaintiff's counsel. In fact, on October 9, 2018, in a letter to Christopher Austin and Sam Castor, Defendants expressed concern that Switch had not provided an agreed upon protective order, suggested keywords for e-discovery, a list of allegedly misappropriated trade secrets, or proposed search parameters. (*See* October 9, 2018 Letter.) The letter specified that Defendants would not move forward with e-discovery absent those things. (*See id.*)

- Because it was difficult for Defendants to engage in e-discovery without knowing what Switch was specifically accusing them of doing, Defendants only agreed to allow Switch to take electronic discovery if Switch agreed to provide Defendants with a list of the trade secrets that Defendants allegedly misappropriated, which Switch agreed to do. Switch even informed the Court that it would be providing Defendants with a trade secret list "during the week of May 6, 2019." (*See* Doc. # 42, at ¶ 3.) Switch blew off that deadline and never provided Defendants with a list of the allegedly misappropriated trade secrets. (*See* May 10-14, 2019 Email Exchange between Christopher Austin and Ronald Green, attached hereto as **Exhibit M**; Declaration of Ronald Green, at ¶ 8.) Despite the identity of the allegedly misappropriated trade secrets being the key issue in this case, Switch has, to this day, refused to identify them to Defendants.

- The parties could not move forward with e-discovery until Switch provided Defendants with a list of keywords that it wanted searched. This was initially discussed at the August 28, 2018 meeting. (*See* Declaration of Stephen Fairfax, at ¶ 13.) Switch did not provide a proposed list of keywords for nearly 8 months. (*See* April 12, 2019 Email and Attachment

- 8 -
**Reply in Support of Defendant's Request for a Pretrial Conference
and Submission of Proposed Protective Order**
2:17-cv-02651-GMN-EJY

from Christopher Austin to Ronald Green, attached hereto as **Exhibit N**.)[3]  Yet Switch claims Defendants have engaged in sanctionable delay.

- The keyword list Plaintiffs provided was incomplete and nonsensical. Defendants sent Switch correspondence to inquire as to what nearly every aspect of it was intended to mean. (*See* April 18, 2019 Email Exchange and Attachment between Ronald Green and Christopher Austin, attached hereto as **Exhibit O**.) During a subsequent telephone call, Switch's outside counsel admitted that Switch's in-house lawyers were not focused on this matter and had not reviewed the keyword list prior to its transmission to Defendants. (*See* Declaration of Ronald Green, at ¶ 9.)

- On April 25, 2019, Defendants asked Switch for a new list of keywords that had been approved by Switch's in-house counsel and were assured that Switch would send it shortly. (*See* April 24-25, 2019 Email Exchange between Ronald Green and Christopher Austin, attached as **Exhibit P**.) Switch never transmitted another list of keywords to Defendants. (*See* Declaration of Ronald Green, at ¶ 9.)

- Prior to retaining OpenText to assist the parties in e-discovery, the parties retained Epiq, an e-discovery provider suggested by and often used by Switch. During a call between Defendant Stephen Fairfax and Epiq in February of 2019, after months of negotiations, Epiq relayed to Mr. Fairfax that it intended to allow Switch's "in-house search team" to review Defendants' documents in derogation of the parties' agreement and to likely store Defendants' sensitive business information, which included highly confidential information about some of Switch's main competitors, on a server owned by Switch. (*See* February 19, 2019 Email from Ronald Green to Christopher Austin, attached as **Exhibit Q**.) This required the parties to essentially start the e-discovery process over again with OpenText, another e-discovery provider.

---

[3] On April 12, 2019, Switch also promised to provide Defendants with "a list of misappropriated trade secrets shortly." As stated, none was ever provided.

**Reply in Support of Defendant's Request for a Pretrial Conference**
**and Submission of Proposed Protective Order**
2:17-cv-02651-GMN-EJY

- While the parties were negotiating with the parameters of e-discovery, on more than one occasion, Defendants inquired as to why Switch was not moving the discussions forward. (*See* December 13, 2018 Email from Ronald Green to Christopher Austin, attached as **Exhibit R**; December 18, 2018 Email Exchange between Ronald Green and Christopher Austin, attached as **Exhibit S**; December 27, 2018 Email from Ronald Green to Christopher Austin, attached hereto as **Exhibit T**; January 24-25, 2019 Email Exchange between Ronald Green and Christopher Austin, attached hereto as **Exhibit U**.)

Switch's Response skips over nearly the entire e-discovery negotiation period and recommences with OpenText asking to speak with Defendant Stephen Fairfax on April 5, 2019 to discuss logistics and the anticipated volume of data collection. (*See* Response, at 4.) Shortly thereafter, Defendants informed Switch and OpenText that they could not intelligently discuss those issues without a list of keywords and the allegedly misappropriated trade secrets. (*See* Declaration of Ronald Green, at ¶ 10.)

As noted above, Switch provided Defendants with an incomprehensible list of keywords on April 12, 2019 and never provided Defendants with the list of allegedly misappropriated trade secrets. As such, the call between Mr. Fairfax and OpenText did not occur. However, contrary to Switch's allegation that "Mr. Fairfax never provided any assistance or response to the discovery effort," Defendants continued to move e-discovery forward as much as they could without a workable list of keywords or a list of trade secrets.

For example, OpenText transmitted a list of questions to Defendants on April 12, 2019, which Defendants' counsel answered on a subsequent call between Switch's counsel, Defendants' counsel, and OpenText. (*See* April 12, 2019 Email from OpenText to Ronald Green, attached hereto as **Exhibit V**; Declaration of Ronald Green, at ¶ 10.) Defendants additionally continued to move forward with proposing revisions to and finalizing the parties' contract with OpenText. (*See* April 24-25 Email Exchange, **Exhibit P**.) Switch abruptly terminated the process in an email from Switch's in-house counsel, Anne-Marie Birk, dated May 22, 2019. (*See* May 22, 2019 Email, **Exhibit G**.)

**Reply in Support of Defendant's Request for a Pretrial Conference
and Submission of Proposed Protective Order**
2:17-cv-02651-GMN-EJY

It is unfortunate that Switch elected to disregard the Federal Rules of Evidence in raising settlement negotiations with this Court that are irrelevant to any of the issues currently before it. Defendants regret that they were required to burden this Court with the actual facts regarding those negotiations. However, Plaintiff's allegations of Defendants' attempts to delay this case are false and should be disregarded by the Court.

**4.0    Defendants adequately explained why they could not accept Switch's language**

MTech and Mr. Fairfax adequately explained why Switch's proposed protective order language was unacceptable. Switch has informed Defendants and their counsel on multiple occasions that MTech and Mr. Fairfax are not Switch's "primary targets." (*See* Request (Doc. # 48) and exhibits thereto; Declaration of Stephen Fairfax, at ¶ 14; Declaration of Marc Randazza, at ¶ 5; Declaration of Ronald Green, at ¶ 7.) Rather, Switch's primary target is Aligned Data Centers, which is one of MTech's clients and Switch's primary competitors. (*See* Declaration of Stephen Fairfax, at ¶ 7.) Defendants cannot allow Switch to abuse this litigation to acquire the protected intellectual property of its competitors and cannot accept any protective order that gives Switch the explicit right to do so.

Switch also complains that MTech and Stephen Fairfax did not accept their proposal that the Protective Order contain language stating that Defendants "will preserve a copy of all information searched and produced, for subpoena in other matters related to this matter." (Response, at 6.) However, Mr. Randazza's September 4, 2019 letter to Mr. Castor was clear regarding why Defendants rejected that proposal. Specifically, such language could conceivably give this Court jurisdiction to decide some discovery disputes in separate litigation in another state or federal court. Moreover, the phrase "other matters related to this matter" is incredibly broad and vague and not necessarily even limited to separate litigation filed by Switch. If Switch wants Defendants to preserve documents related to separate litigation matters concerning third parties to this litigation, it can follow the necessary procedures for doing so.

Finally, Switch complains that Defendants have not yet produced any documents because a protective order is not in place. As stated, since the documents Switch wants concern the intellectual

- 11 -
**Reply in Support of Defendant's Request for a Pretrial Conference
and Submission of Proposed Protective Order**
2:17-cv-02651-GMN-EJY

property and business operations of Switch's competitors, Defendants need to limit Switch's ability to misuse those documents to the greatest extent possible. Moreover, Switch has absolutely no basis to object that Defendants will not provide documents until a protective order issues, considering that Switch objected to every single document production request issued by Defendants for the exact same reason. (*See* Plaintiff's Responses to First Set of Requests for Production of Documents, attached hereto as **Exhibit W**.)

**5.0    Conclusion**

Switch's Response is misleading and misstates the progression of the case thus far. While Defendants believe that the contents of its Response are sanctionable, as it is attempting to mislead the Court, Defendants do not request sanctions at this time.[4] Instead, they request that the Court issue the Protective Order submitted by Defendants so that this case can finally move forward.

Dated: September 24, 2019.            Respectfully submitted,

/s/ Marc J. Randazza
Marc J. Randazza (NV Bar No. 12265)
Ronald D. Green (NV Bar No. 7360)
Alex J. Shepard (NV Bar No. 13582)
**Randazza Legal Group, PLLC**
4035 S. El Capitan Way
Las Vegas, NV 89147

*Attorneys for Defendants*
*Stephen Fairfax and MTechnology*

---

[4] While MTech and Stephen Fairfax are not requesting sanctions at the moment, they reserve the right to do so in the future if Switch's conduct continues as it has thus far.

- 12 -
Reply in Support of Defendant's Request for a Pretrial Conference
and Submission of Proposed Protective Order
2:17-cv-02651-GMN-EJY

RANDAZZA | LEGAL GROUP

Case No. 2:17-cv-02651-GMN-EJY

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 24, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I further certify that the forgoing document was served via electronic service through the United States District Court for the District of Nevada's ECF System upon each party in the case who is registered as an electronic case filing user with the Clerk.

Respectfully Submitted,

/s/ Crystal C.S. Sabala
Employee,
Randazza Legal Group, PLLC

- 13 -
**Reply in Support of Defendant's Request for a Pretrial Conference
and Submission of Proposed Protective Order**
2:17-cv-02651-GMN-EJY