# **EXHIBIT K**

February 1, 2019 Letter from Ronald Green to Christopher Austin



Ronald D. Green
*Partner*
Licensed in NV

1 February 2019

<u>Via Email Only</u>

F. Christopher Austin
WEIDE & MILLER, LTD.
<caustin@weidemiller.com>

      *Re:*      *MTechnology adv. Switch Ltd. | eDiscovery Understandings*

Dear Chris:

Both MTechnology ("MTech") and Switch believe that conducting informal electronic discovery is in the best interests of the parties and at least somewhat likely to dispose of the current litigation. However, it seems that the parties still have a few areas of disagreement regarding how electronic discovery should proceed. Therefore, we thought it useful to draft a memorandum of understanding regarding the conditions that MTech and Stephen Fairfax are willing to work under. Please note that these are not new conditions. In fact, many – if not most – of them were contained in my first correspondence to you regarding electronic discovery.

1.      **MTech will not allow Epiq to enter its premises to collect information from MTech until the parties have agreed upon a list of keywords.** This has been a condition of MTech's from the very beginning. The first conversation about eDiscovery that you and I had was on September 12, 2018. During that conversation, I informed you that we needed an approved list of keywords before Epiq could commence imaging. I do not believe that you took any issue with my proposal on that date.

Subsequently, on October 2, 2018, you asked me whether Epiq could conduct imaging at MTech's location between October 8 and 12, 2018. On October 9, 2018, I responded by informing you that we would not permit Epiq to perform any imaging until the parties had an approved list of keywords.

Since those conversations, we never changed our position. Moreover, when you and I talked on January 11, 2019, you informed me that you and Switch were nearly done with a draft list of keywords for our review and approval. As of the date of this letter, we still have no draft list of keywords. We will not allow imaging to commence until we have reviewed and approved of your proposed keywords, as Epiq's search should revolve around those keywords.

2.      **Epiq will conduct its search at MTech's headquarters.** While I do not think that this remains a point of contention, at one point, Switch insisted that Epiq be given permission to physically remove MTech's computers and servers from MTech's location. We will not permit this. In the event that Epiq wishes to remove anything from MTech's headquarters, we would require a specific explanation as to why the items need to be removed, a precise description of the material to be removed, a strict protocol for security for the



removed items, conditions for the destruction of any copies made of the materials, and a firm return date.

**3.     Switch will provide MTech with a list of the trade secrets that MTech and Mr. Fairfax allegedly misappropriated.** It is my understanding that Switch agreed to do this when it met with Mr. Fairfax and Mr. Randazza on August 28, 2018. Moreover, my letters to you dated October 9, 2018 and October 23, 2018 clearly stated that MTech expected Switch to provide this information when a list of keywords was agreed upon. We need to know what Switch believes MTech and Mr. Fairfax did wrong to ensure that this case is dismissed if Switch does not find incriminating evidence against them.

**4.     Communication with Epiq will primarily be done by you and me.** Again, we do not think that this is an area of contention at this point, but Switch's in-house counsel and other employees are to have no direct contact with Epiq. However, Mr. Fairfax is permitted to have a telephone call with Epiq regarding logistics. Otherwise, you and I are the people that should be speaking and corresponding with Epiq.

**5.     Initial review of the imaged documents will be conducted by you and me.** You and I will perform initial review of the imaged documents. If you identify any that are potentially problematic for Switch or that you think might support Switch's claims, you will discuss them first with me and give my clients an opportunity to explain the document prior to Switch seeing any potentially problematic documents.

**6.     Switch will agree not to use the documents for any purpose whatsoever aside from as an opportunity to dismiss its claims in this lawsuit with prejudice.** I do not believe that this requirement should be controversial. In the alternative, we would need to enter into a protective order. My clients cannot allow Switch to use any imaged documents for any purpose other than evaluating the merits of Switch's allegations so as to make a determination regarding dismissal of the action with prejudice. Moreover, in the event that this informal electronic discovery does not result in the dismissal of this case, Switch will not be permitted to retain any copies of any documents obtained through electronic discovery until the parties have entered a mutually agreeable protective order.

**7.     MTech must review and approve the contract between Epiq and Weide & Miller.** Again, I am fairly certain that this is not an issue of contention. However, imaging cannot commence until we have reviewed and approved Epiq's agreement with your firm.

//

//

//

//

//



Please feel free to contact me with any questions or other comments. Otherwise, please sign to indicate your agreement with this basic proposal.

Sincerely,

Ronald D. Green

AGREED AND APPROVED:

_____
F. Christopher Austin