**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| SWITCH, LTD., a Nevada limited liability company,<br><br>      Plaintiff,<br><br>vs.<br><br>STEPHEN FAIRFAX; MTECHNOLOGY, INC.;<br>DOES 1 through 10; and ROE ENTITIES 11 through 20, inclusive,<br><br>      Defendants. | Case No.: 2:17-cv-02651-GMN-EJY<br><br>**DECLARATION OF STEVEN BAUER IN SUPPORT OF DEFENDANTS' REPLY IN SUPPORT OF REQUEST FOR A PRETRIAL CONFERENCE** |

I, STEVEN BAUER, declare:

1. I am a partner at the law firm Proskauer Rose LLP and am Chair of its Patent Practice Group and Co-Chair of its Intellectual Property Group.

2. I am over the age of 18 and I make the statements in this declaration pursuant to my own first-hand knowledge and would be competent to testify to the statements made therein.

3. I hosted a meeting in my firm's Boston offices on August 28, 2018.

4. The meeting was attended by Stephen Fairfax, his counsel Marc Randazza, and in-house counsel for Switch Sam Castor and Anne-Marie Birk.

5. Mr. Castor and Ms. Birk arrived shortly before the scheduled 10:00 a.m. start time. They began the meeting by stating that it needed to be short because they had a flight at noon.

6. Mr. Castor and Ms. Birk repeated their allegations that Mr. Fairfax and his firm, MTechnology, Inc. (MTech) had learned trade secrets during a tour of a Switch data center in 2011.  Mr. Fairfax explained to them what work he had done for Switch, how little information he had obtained from it, and how nothing he had learned from Switch could possibly have been used.

7. Mr. Castor and Ms. Birk suggested that they in fact had no evidence of trade secret misuse, but were suspicious and wanted Mr. Fairfax to prove his non-use.  When Mr. Castor and Ms. Birk proposed to conduct informal e-discovery to possibly settle the case, I joined the discussion.  I have substantial experience with e-discovery and trade secret and intellectual property cases, and my firm has an e-discovery department.

8. I suggested to Mr. Castor and Ms. Birk that the normal process in a trade secret case was for the plaintiff first to identify the trade secrets and thus narrow the case. When Mr. Castor and Ms. Birk said they would not do that, we discussed that informal discovery was not helpful if they couldn't define the scope of the case and any e-discovery search.

9. After more discussion, we then discussed a process which would include selecting an independent forensic exam firm, defining search parameters to limit the scope of the search to documents relevant to this matter, and having a review process that would assure non-relevant documents were not produced to Switch.

10. There was a quid pro quo – Mr. Fairfax would agree to this process if Switch agreed that if it found no "trade secret" documents, it would dismiss the case, but if it found any documents it believed included trade secrets, it would specifically identify them so that the case would be appropriately narrowed.

11. The parties all agreed to this proposal in concept and the meeting ended with expectations this would work.  I have not participated in the discussions since and don't know more about how the process broke down.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on: <u>September 23, 2019</u>

<u>/s/, by permission</u>
Steven Bauer