Marc J. Randazza (NV Bar No. 12265)
Ronald D. Green (NV Bar No. 7360)
Alex J. Shepard (NV Bar No. 13582)
**RANDAZZA LEGAL GROUP, PLLC**
2764 Lake Sahara Drive, Suite 109
Las Vegas, NV 89117
Telephone: 702-420-2001
ecf@randazza.com

Attorneys for Defendants
Stephen Fairfax and MTechnology

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| SWITCH, LTD., a Nevada limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>STEPHEN FAIRFAX; MTECHNOLOGY; DOES 1 through 10; and ROE ENTITIES 11 through 20, inclusive,<br><br>Defendants. | Case No.: 2:17-cv-02651-GMN-EJY<br><br>**OPPOSITION TO PLAINTIFF SWITCH, LTD'S MOTION TO EXTEND DEADLINES FOR DISCLOSURE OF EXPERTS AND EXPERT REPORTS** |

**1.0   INTRODUCTION**

The exchange of expert witness reports is, by design, a simultaneous exchange. However, Plaintiff Switch, Ltd. ("Switch") is, once again, game-playing by claiming that it essentially could not meet the deadline and blaming its failure solely on Defendants. Changing the deadline, at this point, would materially prejudice Defendants Stephen Fairfax and MTechnology ("MTech"). Even if it would not, Switch has failed to articulate any reasonable basis for the relief requested – much less the "good cause" required, at this point. The motion should be denied.

Switch's in-house attorneys have been actively litigating this case since the date it was filed. In fact, both of them signed the Complaint, and they drafted the operative scheduling order which

provided that expert disclosures were due by October 10, 2019. Defendants timely produced their expert's report while Switch refused to do so and asked for an extension late in the day on the date disclosures were due.

It is difficult to ascertain what motivates Switch, but in this case, the most likely reason is that Switch wanted to have the advantage of Defendants' expert report in hand, before writing its own. Another possibility is simply that Switch forgot about a deadline that its own in-house counsel selected and memorialized in the current Scheduling Order. However, Switch's stated rationale is absolutely false – where it claims that it suddenly decided a few hours before the production of expert reports was due that it was premature to produce an expert.

Switch must show "excusable neglect." There is none. Even if there would be no material prejudice to Defendants, the motion should be denied. However, Switch's gamesmanship, if approved of by the Court, will cause Defendants to suffer irreparable prejudice. Switch has made its bed – it can lie in it, and it can still provide a rebuttal expert. But, its deadline for the disclosure of its chief expert should not be extended.

## 2.0   FACTUAL BACKGROUND

On June 25, 2019, Switch sent a draft scheduling order and protective order to Defendants. (*See* Declaration of Ronald D. Green ["Green Decl."], attached as **Exhibit** 1, at ¶¶ 7-8 & Exhibits B-C.[1]) On June 26, 2019, the parties submitted a Stipulated Amended Discovery Plan and Scheduling Order (ECF No. 44). The following day, Defendants served their responses to Switch's requests for

---

[1] Switch tries to blame its refusal to provide an expert report on the lack of a protective order in this case. However, the draft protective order Switch initially provided, stated that the parties to the case could only use confidential material "in connection with this Action only for prosecuting, defending, or attempting to settle this Action." (Green Decl. at ¶ 8 & Exhibit C.) Switch subsequently changed its mind and decided it wanted to use information it uncovered during discovery to gather information about its competitors. (*See, generally*, ECF No. 48; ECF No. 53 at 3-5, 11-12.) Switch's refusal to accept the language that *it originally proposed* is the only reason there is not a protective order in this case. (*See* Green Decl. at ¶ 10.)

production of documents,[2] in which they noted numerous times that a protective order was needed.[3] (*See* ECF No. 55-1.)  Switch apparently did not believe this should affect the schedule it proposed, and it said nothing as the Court entered the stipulated scheduling order on July 1, 2019.  (*See* ECF No. 45.)  Though signed by counsel for all parties, counsel for Switch drafted and filed the proposed scheduling order.  It specifies that "[t]he disclosure of experts and expert reports shall occur on or before **October 10, 2019**."  (ECF No. 45 at 2) (emphasis in original.)

Contrary to its position, Switch did not first retain the law firm of Hutchison & Steffen in September 2019.  Rather, that firm has been working on this case for Switch since, at the latest, July 22, 2019.  (*See* Green Decl. at ¶ 11 and Exhibit D.)  Switch's in-house counsel even informed Mr. Green in July 2019 that Switch retained Hutchison & Steffen to assist Switch with discovery issues.  (*See id.* at ¶ 12.)  Mr. Green spoke with Attorney Piers Tueller in July 2019 to discuss discovery issues, and Mr. Tueller told Mr. Green that the parties needed to resolve their issues regarding the protective order before discussing issues related to document production.  (*See id.* at ¶ 13.)

Defendants have already explained the state of discussions regarding a protective order, which resulted in Defendants filing the pending request for a pretrial conference.  (*See, generally*, ECF No. 48; ECF No. 53 at 3-5, 11-12.)  Notably, in the Introduction to Defendants' reply in support of its request, filed on Defendants specifically mentioned "the expert discovery deadline is currently set for October 10, 2019, and Defendants are trying to locate an expert despite having little idea what their expert will need to testify to."  (*See* ECF No. 53 at 2.)  Nevertheless, the Defendants managed and obeyed the deadlines set forth in the scheduling order.

By late morning on October 10, 2019, counsel for Switch had not yet provided a draft interim status report that was due that day, and Ronald Green reminded Switch's counsel that the

---

[2] Switch falsely states that it propounded discovery in March 2018.  As Defendants have repeatedly informed Switch, it never propounded discovery in March 2018.  (*See* ECF No. 26 at 2-3; *see also* ECF No. 53 at 6 n.2.)

[3] Notably, Switch also objected to nearly every single document request propounded by Defendants on the basis that they could not produce documents until the entry of a protective order.

status report was due on that date. (*See* Green Decl. at ¶ 14 and Exhibit E.) Shortly afterward, Switch's counsel called Mr. Green to discuss the status report but did not mention the expert disclosure deadline. (*See* Green Decl. at ¶ 15.) Around 3:30 p.m. on October 10, Switch's counsel called Mr. Green and claimed that Switch had just now, for the first time, realized that expert disclosures were due that day. (*See id.* at ¶ 16.)

Plaintiff's explanation is not credible. Thus far, six lawyers have made appearances for Switch in this case, and it strains credulity to believe that none of them were aware of the expert disclosure deadline. It additionally strains credulity to believe that none of those lawyers read the Introduction to Defendants' Reply in Support of Request for a Pretrial Conference, which was filed a mere 16 days prior to the expert disclosure deadline. If Plaintiff's counsel was unaware of the deadline, then the prejudice should inure to *their* client, not to Defendants.

In that initial October 10, 2019 call, Switch's counsel did not inform counsel for Defendants that Switch was requesting an extension due to the state of discovery and the lack of a protective order. (*See id.* at ¶¶ 24-25.) This was a post-hoc misrepresentation to the Court.

On October 10, 2019, Defendants disclosed the expert witness they had retained for this case, per the scheduling order, and his report, despite the difficulty in doing so created by Switch's continued refusal to identify what trade secrets it claims Defendants misappropriated. (*See id.* at ¶ 26; *see also* Defendants' Expert Witness Disclosure, attached as **Exhibit 2**.) About six and one-half hours later, Switch filed this instant Motion.

**3.0   LEGAL STANDARD**

LR 26-4 provides that a motion to extend a deadline set forth in a discovery plan must be supported by a showing of good cause and filed no later than **21 days before** the expiration of the deadline. Any request made within 21 days of the deadline must be supported by a showing of good cause. "Good cause" for purposes of this Rule is the same as the standard governing modification of scheduling orders under Fed. R. Civ. P. 16(b)(4). *See Caballero v. Bodega Latina Corp.*, 2017 U.S. Dist. LEXIS 115072, *3 (D. Nev. July 21, 2017). "Good cause" exists only where the schedule "cannot reasonably be met despite the diligence of the party seeking the extension." *Johnson v.*

*Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). If the moving party "was not diligent, the inquiry should end." *Id.* Switch admits that, due to the untimely nature of its Motion, it must show that its "failure to act was the result of excusable neglect." LR 26-4.[4]

## 4.0 ARGUMENT

### 4.1 Switch's Neglect is Not Excusable

Switch, for the majority of its Motion, tries to make it sound as though it fully intended to meet the expert disclosure deadline but was unable to despite its best efforts. In reality, Switch appears to have deliberately been sitting on its hands so that it could first see the report of Defendants' expert witness before choosing its own expert. On the phone, Switch's counsel claimed that it simply forgot about the deadline altogether and made no efforts whatsoever to locate or retain an expert prior to the deadline, but that claim strains credulity as well.

But in either scenario, this is not excusable neglect. A court should consider 4 factors in deciding whether a party's neglect is excusable: "(1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith." *Derosa v. Blood Sys.*, 2013 U.S. Dist. LEXIS 108235, *4 (D. Nev. Aug. 1, 2013) (citing *Bateman v. U.S. Postal Service*, 231 F.3d 1220, 1223-24 (9th Cir. 2000). The most significant consideration here is that Defendants would be severely prejudiced if the Court were to grant Switch's Motion and adopt its proposed scheduling order.

#### 4.1.1 Defendants would be prejudiced

Defendants have already retained and disclosed their expert witness and his report. Now Switch, which claims that it has not even started to look for one, asks for an additional four months to retain an expert with the benefit of knowing what Defendants' expert will testify to. This is

---

[4] LR IA 6-1 additionally requires that the moving party identify how many times a subject deadline has been extended by the Court. Switch misleadingly states in the caption of its Motion that this is its first request, when it later admits that the Court has moved numerous discovery deadlines, including the deadlines for expert discovery, multiple times in this case at the request of Switch or both parties. (*See* ECF No. 55 at 6.)

significantly more time than the parties are given under the current scheduling order or Switch's proposed discovery schedule in its Motion to secure rebuttal expert witnesses (accepting, *arguendo*, the false premise that selecting a rebuttal expert is the same as selecting an expert witness). In effect, Switch requests 150 days to secure a rebuttal expert witness and 120 days to secure its own expert, knowing precisely what findings it needs to contest, but only giving Defendants 30 days to obtain a rebuttal expert. Switch's proposal is an obviously one-sided discovery schedule that unfairly benefits Switch, and which Switch proposed after knowing well ahead of time that Defendants planned to retain an expert and even after Defendants disclosed their expert.

Aside from this asymmetry, the proposed extension would significantly delay resolution of the case and create a two-step discovery process (fact discovery followed by expert discovery) which none of the parties discussed or agreed to previously. Fundamentally changing the nature of proceedings would potentially invalidate Defendants' litigation strategy in light of the accepted scheduling order, and would cause Defendants to incur an additional four months of attorneys' fees during one of the most expensive phases of litigation. The prejudice to Defendants is obvious.

But even if Defendants were not prejudiced, this would not make Switch's neglect excusable. It does not "'make a difference that no harm to the [Defendants] has been shown.' Indeed, '[t]he world 'excusable' would be read out of the rule if inexcusable neglect were transmuted into excusable neglect by a mere absence of harm." *Wystrach v. Ciachurski*, 2005 U.S. Dist. LEXIS 51766, *4 (D. Ariz. July 11, 2005).

Switch either cynically decided to hold back until the last minute, in the hopes that it would be able to have Defendants' expert report in hand while drafting its own, or all of the *three* firms representing Switch all forgot about it. (The three "firms" are Switch's in-house legal department, Hutchinson & Steffen, and Weide & Miller). Everything else in Switch's Motion is a false pretext which, even if true, would not justify the requested extension of time. As Switch admits, it must show there is good cause for its request, and that its failure to timely request an extension was due to excusable neglect. It can do neither.

### 4.1.2    The proposed delay is significant

LR 26-4 specifies that Switch should have filed its Motion three weeks before the expert disclosure deadline, not a few minutes before it expired.  While this is not the most significant delay courts have dealt with in finding a lack of excusable neglect, the Court should keep in mind that Switch was not doing anything for the three weeks from when it should have filed its Motion to when Switch actually did file it.  Switch was not hurriedly trying to meet the deadline, only discovering at the last minute they would not be able to do so; they chose to wait for Defendants to comply with the deadline and then feigned ignorance.  This factor does not weigh in favor of a finding of excusable neglect.

### 4.1.3    There is no valid reason for Switch's delay

Even assuming Switch's counsel was being honest when it told Defendants' counsel that three separate law firms forgot to calendar the expert disclosure deadline, courts have repeatedly emphasized that merely forgetting about a deadline or forgetting to calendar it does not constitute excusable neglect.  The court in *LaNier v. United States*, 2017 U.S. Dist. LEXIS 34839, *15-16 (S.D. Cal. Mar. 10, 2017) found that "the reason for the delay, that Plaintiff forgot about the deadline set in the Court's scheduling order, was completely within the reasonable control of Plaintiff" and did not show excusable neglect.  This Court in *Salley v. Truckee Meadows Water Auth.*, 2013 U.S. Dist. LEXIS 155661, *6 (D. Nev. Oct. 29, 2013) aptly noted that "counsel's unexplained failure to calendar does not amount to excusable neglect . . . [collecting cases] . . . Were the Court to find that such conduct constituted 'excusable neglect,' the standard would be rendered meaningless.  Indeed, counsel could always aver that he or she inadvertently forgot about the relevant deadline, and, in most cases, it would be extremely difficult to refute such allegations."

Courts give little weight to circumstances such as disorder in counsel's office in deciding whether the reason for a party's delay is justified, instead focusing on considerations such as whether the deadline in question was ambiguous.  *See Pioneer Investment Services Company v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 398 (1993).  There is no ambiguity in the expert disclosure deadline.  It

was clearly laid out in the scheduling order and *Switch proposed it*. The only reason Switch failed to meet the deadline the parties agreed to, and which Defendants met, is either they did so thinking they would seek forgiveness in order to take unfair advantage, or that Switch's counsel forgot. That is not a valid excuse and weighs mightily against a finding of excusable neglect. The more likely scenario is that Switch deliberately chose not to meet the deadline then invented a rationale so that it could gain an unfair advantage in this litigation. This is deliberately bad-faith conduct, not neglect.

### 4.1.4 Switch has not acted in good faith

Normally counsel for Defendants would assume that a party is acting in good faith in requesting an extension of discovery, but in this case that assumption is unreasonable. At every turn Switch has made misrepresentations regarding the nature of proceedings and discovery. This is thoroughly laid out in Defendants' Reply in Support of Motion for Stay of Discovery (ECF No. 26) and Reply in Support of Request for Pretrial Conference (ECF No. 53). Now Switch again makes numerous misrepresentations to the Court, this time regarding Switch's basis for seeking an extension of discovery. Switch even repeats the now-ancient misrepresentation that it served discovery on Defendants in March 2018, which Defendants have had to rebut over and over again. It is *possible* that all of Switch's attorneys simultaneously forgot to calendar a critical discovery deadline and are making this request in good faith, but at this point the Court should not simply assume this. The much more likely explanation for Switch's conduct is that it chose to wait for Defendants to disclose their expert and then chose to request a months-long extension that would give them an advantage.

### 4.2 There is No Good Cause to Grant the Requested Extension

"The Court is charged with securing 'the just, speedy, and inexpensive determination of every action and proceeding. Delay frustrates this command." *Caballero*, 2017 U.S. Dist. LEXIS 115072 at *3 (quoting Fed. R. Civ. P. 1). The Ninth Circuit has noted that a case management order "is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Johnson*, 975 F.2d at 607-09 (9th Cir. 1992). Yet Switch cavalierly disobeyed a scheduling order *that it drafted itself.*

Switch's alleged "good cause" for its untimely motion is either that it desired to obtain a strategic advantage over Defendants or its in house and outside counsel all simply forgot about the expert disclosure deadline.[5] Neither reason demonstrates good cause.

Switch has been represented by its in-house counsel for the entirety of this suit, and its in-house counsel drafted the current Scheduling Order. Switch's in-house attorneys are still counsel of record for Switch and have been actively involved throughout the entirety of this litigation. Switch cannot claim that Switch's counsel was somehow unaware of this deadline; they stipulated to this deadline over three months ago. Counsel's explanation for their ignorance of the deadline is not convincing, either. They claim to be new to the case, but that is untrue. At least as early as July 22, 2019, Switch retained them to represent it in this matter, specifically to assist in discovery. (*See* Green Decl. at ¶¶ 11-12.) Though the firm did not file a notice of appearance until September 17, 2019 (*see* ECF No. 50), it was elbows-deep in discussing discovery issues with counsel for Defendants for nearly two months prior to this formal appearance. (*See* Green Decl. at ¶¶ 11-13; *see also* ECF No. 53-26 at ¶¶ 4, 6.)[6] It is not plausible that counsel failed to review the operative scheduling order or confer with their co-counsel regarding discovery deadlines at any point between late July and now. Even if everyone collectively was asleep at the switch, forgetting to calendar a deadline does not constitute good cause. *See Wei v. Hawaii*, 763 F.2d 370, 372 (9th Cir. 1985).

---

[5] Switch claims in its Motion it could not retain an expert due to Defendants not producing any documents. This is false, as Defendants managed to retain an expert despite Switch **still** refusing to even disclose what it's supposed trade secrets are. It is as if we are in an injury case, and years down the road in litigation, the plaintiff still refuses to tell anyone where it hurts.
Furthermore, Switch knew of both the expert disclosure deadline and Defendants' basis for not disclosing documents more than 3 months prior to the deadline. Its decision to wait until the last possible minute to seek an extension of time belies any claim that this was not a calculated decision.

[6] Even if new counsel had no knowledge of this case prior to filing their notice of appearance, they still had 23 days to familiarize themselves with the scheduling order. That is more than enough time to learn when expert disclosures are due. In fact, examination of pending deadlines should be one of the first thing an attorney should do when he enters existing litigation.

Switch's purported ignorance of the expert deadline is not credible. Without saying anything about how Defendants' lack of production[7] (due to Switch not agreeing with protective order language *it originally proposed*) would affect expert discovery, Switch waited until after Defendants disclosed their expert witness to seek an extension of this deadline. The requested extension asks for an additional four months to retain an expert, and an additional five months to retain a rebuttal expert. It is unbelievable that all of Switch's attorneys just happened to forget to calendar a deadline and then, at the last second, asked for a new scheduling order that would reward their purported ignorance with the majority of a full discovery period to obtain expert witnesses after Defendants already disclosed theirs.

There is also no suggestion that Switch has been diligent in attempting to retain an expert witness. It is completely silent in its Motion on what efforts it has taken to retain an expert or even identify potential experts. It even tacitly admits it has taken no such efforts by stating "[i]mmediately upon identifying the impending expert disclosure deadline and recognizing Defendants' lack of documentary production, Switch's counsel immediately made this motion." (ECF No. 55 at 10.) Switch filed its Motion at 11:58 p.m. on October 10, 2019, almost literally the last minute, and its counsel claim that they were unaware of the deadline and the state of discovery until the expert disclosure deadline. This is not a case where Switch was blindsided by an ambiguous deadline or timely tried to seek an extension once it became apparent there would be issues with retaining an expert. Rather, it wasn't doing anything at all regarding expert discovery.

Switch argues that its alleged diligence in pursuing discovery, evidenced by attaching some documents to its initial disclosures[8] and later supplementing them, shows good cause. But none of these actions have anything to do with attempting to retain an expert witness, and Switch has

---

[7] This is due to Switch disagreeing with language in the protective order that *it originally proposed* so that it could gain an advantage against its non-party competitors via discovery. *See* ECF Nos. 53 at 3-5, 11-12; 53-2 to 53-6.)

[8] Switch has not produced any documents responsive to Defendants' requests for production of documents, also citing the lack of a protective order as its basis for refusing to do so.

apparently done nothing to identify or retain one. The documents Switch produced largely did not assist Defendants in retaining an expert, either, as these documents are either irrelevant to the issue of whether Defendants misappropriated Switch's trade secrets or consist of publicly available documents such as patent applications and registrations. (*See* Green Decl. at ¶ 27.)[9]

MTech faced significant difficulty in retaining an expert witness who could competently provide a report on the salient issues in this case due to Switch refusing to disclose what trade secrets it claims MTech misappropriated. (*See id.* at ¶ 26.) Switch would face no such difficulty in retaining an expert because it already has this information. Yet MTech met the deadline it agreed to, while Switch did not. The Court should not reward Switch for its lack of diligence, whether due to gamesmanship or ignorance.

**5.0    CONCLUSION**

For the foregoing reasons, the Court should deny Switch's Motion and deem the expert disclosure deadline to have passed on October 10, 2019, as the parties already agreed.

Dated: October 15, 2019.        Respectfully submitted,

/s/ Marc J. Randazza
Marc J. Randazza (NV Bar No. 12265)
Ronald D. Green (NV Bar No. 7360)
Alex J. Shepard (NV Bar No. 13582)
**RANDAZZA LEGAL GROUP, PLLC**
2764 Lake Sahara Drive, Suite 109
Las Vegas, NV 89117

Attorneys for Defendants
Stephen Fairfax and MTechnology

---

[9] Defendants' expert witness only reviewed the operative complaint in this matter and Switch's patents in drafting his expert report. (*See* **Exhibit 2** at Expert Report p. 2.) The majority of documents Switch produced thus had no bearing on Defendants' ability to retain an expert.

Case No. 2:17-cv-02651-GMN-EJY

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 15, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I further certify that a true and correct copy of the foregoing document is being served via transmission of Notices of Electronic Filing generated by CM/ECF.

Respectfully Submitted,

/s/ Crystal Sabala
Employee,
Randazza Legal Group, PLLC