Mark A. Hutchison (4639)
Jacob A. Reynolds (10199)
Piers R. Tueller (14633)
HUTCHISON & STEFFEN, PLLC
Peccole Professional Park
10080 West Alta Drive, Suite 200
Las Vegas, Nevada 89145
Telephone: (702) 385-2500
Fax: (702) 385-2086
mhutchison@hutchlegal.com
jreynolds@hutchlegal.com
ptueller@hutchlegal.com

Samuel Castor (11532)
Anne-Marie Birk (12330)
SWITCH, LTD.
7135 South Decatur Blvd.
Las Vegas, Nevada 89118
Telephone: (702) 444-4111
sam@switch.com
abirk@switch.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| SWITCH, LTD., a Nevada limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>STEPHEN FAIRFAX; MTECHNOLOGY; and DOES 1 through 10; ROE ENTITIES 11 through 20, inclusive,<br><br>Defendants. | CASE NO. 2:17-cv-02651-GMN-EJY<br><br>**REPLY IN SUPPORT OF SWITCH, LTD.'S MOTION TO EXTEND DEADLINES FOR DISCLOSURE OF EXPERTS AND EXPERT REPORTS**<br><br>**(FIRST REQUEST)** |

///

///

///

///

1

## 1. Reply.

It is therefore undisputed:

- Defendants have not produced a single document during the long two-years period of discovery in this case;

- Switch has produced several hundred pages of documents in both its initial disclosures, supplemental disclosures, and in discovery responses; and

- Switch's underlying request for an extension of the deadline, was filed in advance of the disclosure deadline, and months before the close of fact discovery in this case is scheduled to close.

Defendants have no reason, *none* for why they have failed to identify a single discoverable document in this case in their initial disclosures. Defendants have no reason, *none*, for why they have failed to supplement their initial disclosures. In fact Defendants blame Switch for their lack of document production and all issues regarding the lack of a protective order on Switch. That is the crux of the opposition, i.e. it is *Plaintiff's* fault that have Defendants never produced documents.

Now Defendants act as if it is entirely unreasonable to suggest that Plaintiff should have to produce an expert report in a trade secret misappropriation case without a single disclosure or document production from Defendants, despite the fact that discovery requests were due months ago and since initial disclosures were due over one year ago on June 24, 2018.[1] Gamesmanship should not carry the day here. The Court should simply continue the discovery deadlines after fact discovery has closed to negate Defendants' strategy of continuing to withhold documents.

Defendants highlight the fact that this lawsuit has been ongoing for over two years. However, Defendants fail to accept their part in any issues or delays in this case. That is to say, in spite of Switch's own document production – thereby allowing Defendants the ability to review and prepare its own expert report – Defendants have not produced any documents.[2] The lack of mutual disclosure of documents is the definition of prejudicial behavior on Defendants' part. The recent addition of Hutchison & Steffen, PLLC as litigation counsel supports Switch's request for

---

[1] *See* Dkt. 45 and 31, Section 2 Pre-Discovery Disclosures; *see also*, Declaration of Piers R. Tueller, attached as Exhibit 1 at ¶3.
[2] Tueller Declaration at ¶4.

2

an extension of the deadlines to disclose experts and expert reports until after fact discovery to prevent further gamesmanship.

As stated by Switch in its underlying Motion, this is the first time that either party in this case has requested that discovery deadlines be moved independently of the other dates included in the scheduling order. However, all discovery dates have been moved twice in the past upon a stipulation by the parties to the same. They have also been moved once following Switch's unopposed motion to extend discovery deadlines. Switch would ask the Court to consequently grant its Motion and extend the relevant discovery deadlines.

**A.  Defendant's complete failure to disclose documents constitutes good cause to extend deadlines, or a negative inference.**

The purpose of the litigation/discovery process is the flush-out all issues, talk to all relevant parties and witnesses, and review all relevant documents in order to determine the precise conflict to address and/or for the parties to determine if an amicable settlement can be reached.[3] These tasks require time and often necessitate the amending of deadlines and scheduling in accordance with Fed. R. Civ. P. 16. The "good cause" standard has been specifically chosen over other more burdensome standards.[4] Defendants' complete failure to produce a single document materially affects Switch's ability to produce an expert report.

Switch has been requesting Defendants' documents for months but to no avail.[5] Defendants not producing responsive documents is good cause for Switch's request to the Court and establishes that it would be unreasonable to require Switch to be held to the discovery deadline.[6] Defendants' Opposition lacks *any* legal authority to show that its absence of document production does not establish good cause to continue the deadlines, or that its wholesale failure to produce documents is anything but prejudicial to Plaintiff's case.

---

[3] *See Hickman v. Taylor*, 329 U.S. 495, 507 (1947) (Recognizing that discovery procedures are intended to equalize the parties' knowledge of the facts underlying the controversy); *see also,* Holtzoff, *A Judge Looks at the Rules*, in 1957 FEDERAL RULES OF CIVIL PROCEDURE AND TITLE 28 U.S. CODE JUDICIARY AND JUDICIAL PROCEDURE 9-11; Ragland, Discovery Before Trial 260 (1932) (The discovery devices may serve to define the crucial issues within by pinpointing the contentions toward which each party is marshalling his strongest proof. Clear delineation of the issues will enable counsel to present evidence more efficiently, which should assist the judge and jury in understanding the basic questions involved).
[4] Fed. R. Civ. P. 16 Advisory Committee Notes 1983 Amendment Subdivision (b).
[5] *See* Dkt. 55, Exhibit 3 at ¶¶6-9.
[6] *Derosa v. Blood Sys., Inc.*, No. 2:13-CV-0137-JCM-NJK, 2013 WL 3975764, at *1 (D. Nev. Aug. 1, 2013) (internal citations omitted).

3

Defendants' reliance on *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) only serves to support Switch's position. Unlike some rules of civil procedure that focus on a party's bad faith and the prejudice to the opposing party, here the applicable "good cause" standard considers the diligence of the party seeking the extension.[7] A district court may modify a pretrial schedule "if it cannot reasonably be met despite the diligence of the party seeking the extension."[8] The focus of the inquiry is upon the moving party's reasons for seeking modification.[9] In *Johnson*, the moving party, Johnson, was woefully deficient in his litigating his case.[10] Johnson had sought to amend his complaint to include the proper defendant.[11] The district court found that Johnson had previously received both an answer to the complaint and responses to interrogatories that indicated any theory of liability would fail against the named defendant, Mammoth Recreations.[12] Moreover, Mammoth Recreations' counsel had also sent a letter to Johnson explicitly offering to stipulate to a substitution of the "proper defendant" – Mammoth Mountain Ski Area, Inc.[13] Even after receiving all this information from Mammoth Recreations, Johnson did not file a timely motion to amend the complaint, but waited until four months *after* the cut-off date to amend the pleadings had expired.[14] The district court *obviously* denied Johnson's motion.[15] It is hard to see how this case supports Defendants' Opposition.

Now although the facts in *Johnson* did not rise to the level of good cause, here Switch's actions stand in stark contrast to Johnson's and epitomize good cause. Again, Switch has not received any documents from Defendants, but additionally – as seen from both parties briefs – the parties' discussions regarding discovery responses has been ongoing for many months and recently resulted in Defendants filing a request for a pretrial conference.[16] The parties are clearly actively pursuing their cases and are attempting to address the issues. Moreover, Switch timely filed its request for an extension prior to expiration of the October 10, 2019 deadline.

---

[7] *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).
[8] *Id*. (Internal citations omitted).
[9] *Id*.
[10] *Id*.
[11] *Id*.
[12] *Id.*
[13] *Id*.
[14] *Id*. at 610.
[15] *Id*.
[16] Tueller Declaration at ¶5; *see also*, Dkt. 52, at Exhibits 2, 3, 4, and 5.

4

Switch's situation is more analogous to that addressed in *Drummer v. Alpha Team Constr.*, No. 218CV01251RFBNJK, 2019 WL 2518446, at *2 (D. Nev. June 17, 2019) wherein Magistrate Judge Koppe found that good cause existed to modify deadlines because the plaintiff did not receive documents from the defendant concerning the relevant issues until six months after the cut-off deadline.[17] Because Defendants have not produced any documents it is unreasonable for Switch to be required to disclose experts and expert reports to support its claims. The lack of produced documents would result in an incomplete evaluation of the issues and make preparation of a comprehensive report by Switch's experts impossible. Therefore the relevant deadline "cannot reasonably be met." This being the case, good cause exists to grant Switch's Motion, and Switch respectfully requests the same.

**B.    Disregarding Defendant's biased conjecture concerning Switch's actions, the totality of the facts establishes excusable neglect.**

If the Court determines that the appropriate standard is "excusable neglect" then Plaintiff meets that standard as well.

Considering all factors, the timing of Switch filing its Motion is excusable because the affect on Defendants is minimal. Additionally, Defendants' lack of document production and Switch's recent retention of counsel further establishes a valid reason for the delay. There is no dispute between the parties that determining "whether neglect is excusable is an equitable one that depends on *at least* four factors: (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith."[18] The Court should consider all factors, as no single factor is dispositive.[19]

**First**, if granted, Switch's Motion will cause no prejudice to Defendants. Switch has produced hundreds of documents through both its own disclosures and in response to Defendants' discovery requests. Defendants have thus been able to evaluate and analyze these documents, provide them to their expert, and consequently serve an expert report. Even if Defendants' expert did not rely upon Switch's documents – as Defendants claim – Defendants at least had the

---

[17] *Drummer v. Alpha Team Constr.*, No. 218CV01251RFBNJK, 2019 WL 2518446, at *2 (D. Nev. June 17, 2019).
[18] *Derosa*, No. 2:13-CV-0137-JCM-NJK, 2013 WL 3975764, at *1. (Emphasis added).
[19] *See Id.*

opportunity to ascertain that information for themselves through an independent review and analysis. Switch has not had that chance.

Moreover, Defendants would not be prejudiced because the rebuttal expert deadline is still outstanding and would be moved if the Court granted the Motion. Accordingly, Defendants would get the same opportunity to rebut Switch's expert and even depose the experts should they choose. Notably, Defendants have in fact not allowed depositions to be scheduled. In a phone call on October 11, 2019 Switch's counsel discussed noticing depositions with Ronald Green, counsel for Defendants.[20] In a follow-up email to formally memorialize that phone conversation, Switch's counsel again asked for dates that each Defendant would be available for their depositions.[21] To date, no response has been received to that communication.[22] Defendants spend a significant amount of their Opposition arguing for equality of treatment however they themselves are equal partners in this litigation and are beholden to the same joint case matters including discovery responses, initial disclosures, and allowing depositions to be noticed. It is easy to unilaterally don the white hat and claim the moral high ground, however Defendants' actions have not been wholly virtuous and it is disingenuous for them to assert that Switch is "game-playing" or has some nefarious motive when Defendants refuse to produce a single document.

Switch is not asking this Court for relief that solely benefits itself. An extension of discovery deadlines – while indeed accommodating for Switch – will allow ***all*** relevant documents to be produced and reviewed. Each side will still have been able to adequately prepare their experts and to rebut the others' experts. There is no prejudice in that scenario. As Defendants proffer no additional argument, this lack of prejudice establishes the excusable neglect to grant Switch's Motion.

**Second**, Defendants have improperly informed the Court that Switch missed the deadline to file its Motion. Pursuant to LR 26-4 – as cited by Defendants – Switch may file its Motion up until the deadline

---

[20] Tueller Declaration at ¶6.
[21] *See* October 11, 2019 Email to Ronald Green, attached herein as Exhibit 1.
[22] Tueller Declaration at ¶7.

As stated in the Motion, it is undisputed that Defendants discovery responses state that they will not produce a single document until a protective order has been entered. This hardline posture effectively halts this lawsuit. However, both parties have since submitted proposed protective orders to the Court and are awaiting an order regarding the same. Switch is prepared to abide by the Court's decision and eagerly anticipates the Court's decision and Defendants' subsequent production of documents. This is applicable to the present Motion because any delay from Switch's request is nominal as there is this previous submission of protective orders that will need to be resolved prior to the production of documents. Therefore the timing of Switch's Motion will have a minimal delay and for the reasons stated supports a finding of excusable neglect.

**Third**, as addressed in the Motion, if the Court needs further reason to extend deadlines given Defendants' failure to produce a single document, Hutchison & Steffen, PLLC only recently appeared in this matter and has been attempting to gather and review all relevant pleadings, documents, and correspondence.[23] Defendants' pervasive denigration of Switch's prior counsel in their pleadings notwithstanding, Defendants have essentially argued against the timing of Switch retention of new counsel from two conflicting positions. On one hand, in Defendant's Opposition it states that Hutchison & Steffen has been Switch's counsel since July.[24] However, on the other hand, Defendants' Request for Pretrial Conference previously argued that Hutchison & Steffen had not been retained in this matter, but was assisting in a limited capacity.[25] Thus it appears that Defendants themselves were either unsure of Hutchison & Steffens' role in this lawsuit or are attempting to get multiple bites out of the apple. To a degree it is understandable that Defendants are confused. However, this is Switch's point and would argue that Defendants – and more importantly the Court – recognize and appreciate the issues new counsel faced when entering this case. Defendants' duplicitous argument does not support their position that Switch's counsel has not acted with excusable neglect, but instead shows the confusion that justifies Switch's delay in filing its Motion.

---

[23] Tueller Declaration at ¶8.
[24] *See* Dkt. 57, at page 9:9-11.
[25] *See* Dkt. 48, at fn 1.

7

Although Switch's discovery of the impending expert disclosure deadline was clearly unfortunate timing, immediate action was taken and Switch's counsel immediately broached the issue with Defendants' counsel in an attempt to address the issue.[26] Mr. Green informed Mr. Tueller that any extension would have to be approved by Defendants who would conveniently not be available until the next day – after the deadline had expired.[27] Delaying the filing of the Motion further was not an option and Switch was forced to immediately proceed without waiting for Defendants' response – who ultimately rejected Switch's request to extend the discovery deadlines.[28]

Switch's reasons for the delay in filing are valid and are based on clear issues that all parties can appreciate. The Court, in its discretion, should find that Switch's reasons constitute excusable neglect.

**Fourth**, Switch's Motion, timely filed, is a testament to Switch's good faith efforts. Defendants spend the majority of their opposition: vilifying Switch's efforts to obtain discovery, ignoring their own lack of document production, and bemoaning the specific time that the Motion was filed. These arguments do not undermine Switch's good faith petition. Regardless of the timing of this Motion or the change in counsel, Defendants' claim their pending Request for pretrial conference and the proposed protective order submissions continue to act as a total constraint on discovery. It is unintelligible how the Court's failure to rule on Defendants' proposed protective order submission should justify Defendants in taking the position that it does not have to produce a single document before the expert disclosure deadline. It is incredible, literally, that Defendants can ascribe the desire to have *some* documents before preparing an expert report to some nefarious intent. Defendants seem to have forgotten that each party is allowed rebuttal experts to contest the findings of the other's expert. That deadline has not passed, and has been expressly requested to be continued.

Ultimately, in considering each and every factor, Switch's conduct and delay in filing the Motion can reasonable be considered excusable neglect. Consequently, under either standard, Switch has met its burden and the Court should grant the Motion.

---

[26] *See* Dkt. 55, Exhibit 3 at ¶¶9-10.
[27] *Id*. at ¶¶11, 13; *see also* Tueller Declaration at ¶9.
[28] Tueller Declaration at ¶10.

8

## 2. Conclusion.

The Motion should be granted and the deadlines should be extended as follows, so that expert disclosures occur after fact discovery:

|  | **Current** | **Proposed** |
|---|---|---|
| Completion of Discovery | 12/9/19 | Unchanged |
| Initial expert disclosures | 10/10/19 | 2/7/20 |
| Rebuttal expert disclosures | 11/8/19 | 3/6/20 |
| Parties to file dispositive motions | 1/8/20 | 5/5/20 |

HUTCHISON & STEFFEN, PLLC

*/s/ Piers R. Tueller*

---

Mark A. Hutchison (4639)
Jacob A. Reynolds (10199)
Piers R. Tueller (14633)
Peccole Professional Park
10080 West Alta Drive, Suite 200
Las Vegas, NV 89145

Samuel Castor (11532)
Anne-Marie Birk (12330)
SWITCH, LTD.
7135 South Decatur Blvd.
Las Vegas, Nevada 89118

*Attorneys for Plaintiff*

# CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of October, 2019, the foregoing document entitled: **REPLY IN SUPPORT OF SWITCH, LTD.'S MOTION TO EXTEND DEADLINES FOR DISCLOSURE OF EXPERTS AND EXPERT REPORTS (First Request)** was served via electronic service through the United States District Court for the District of Nevada's ECF System upon each party in the case who is registered as an electronic case filing user with the Clerk.

                                     */s/ Bobbie Benitez*
                                An employee of Hutchison & Steffen, PLLC

**INTENTIONALLY LEFT BLANK
EXHIBIT PAGE ONLY**

# EXHIBIT 1



**Archived:** Tuesday, October 22, 2019 5:20:59 PM
**From:** Piers R. Tueller
**Sent:** Friday, October 11, 2019 2:58:00 PM
**To:** Ron Green
**Cc:** Chad A. Harrison
**Subject:** Switch v. Fairfax
**Importance:** Normal

---

Ron –

It was good talking to you this afternoon and while we are disappointed that Defendants will not agree to move the deadline for the disclosure of expert and expert reports I appreciate you considering our request.

As discussed we would like to schedule a time to depose both Mr. Fairfax and the PMK of MTech – who it sounds like would also be Mr. Fairfax. Could you please provide some possible dates Mr. Fairfax could be available in early November?

Please feel free to let me know if you have any questions or issues that need to be addressed.

Thanks,

INTENTIONALLY LEFT BLANK
EXHIBIT PAGE ONLY

# EXHIBIT 2



Mark A. Hutchison (4639)
Jacob A. Reynolds (10199)
Piers R. Tueller (14633)
HUTCHISON & STEFFEN, PLLC
Peccole Professional Park
10080 West Alta Drive, Suite 200
Las Vegas, Nevada 89145
Telephone: (702) 385-2500
Fax: (702) 385-2086
mhutchison@hutchlegal.com
jreynolds@hutchlegal.com
ptueller@hutchlegal.com

Samuel Castor (11532)
Anne-Marie Birk (12330)
SWITCH, LTD.
7135 South Decatur Blvd.
Las Vegas, Nevada 89118
Telephone: (702) 444-4111
sam@switch.com
abirk@switch.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| SWITCH, LTD., a Nevada limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>STEPHEN FAIRFAX; MTECHNOLOGY; and DOES 1 through 10; ROE ENTITIES 11 through 20, inclusive,<br><br>Defendants. | CASE NO. 2:17-cv-02651-GMN-EJY<br><br>**DECLARATION OF PIERS R. TUELLER** |

I, Piers R. Tueller, under penalty of perjury, hereby declare as follows:

1. I am an associate at the law firm Hutchison & Steffen, PLLC and counsel for Switch in the above-referenced matter.

2. I am over the age of 18 and I make the statements in this declaration pursuant to

1

my own first-hand knowledge and would be competent to testify to the statements made therein.

3. Defendants responded to Switch's Requests for the Production of Documents on June 27, 2019.

4. In the course of this litigation Switch has produced documents through its disclosures and in response to discovery requests. Conversely Defendants have not produced any documents.

5. Because Switch has not received any documents from Defendants, both parties have engaged in discussions regarding Defendants' discovery responses for many months which recently resulted in Defendants filing a request for a pretrial conference

6. In addition to document production the parties have discussed noticing depositions. In a phone call on October 11, 2019 I discussed noticing the depositions of both Defendants with Ronald Green, Defendants' counsel.

7. After that phone call I sent a follow-up email to Mr. Green to formally memorialize our phone conversation and to again ask for available dates to set the Defendants' depositions. I have never received a response to that communication.

8. As has been stated in the Motion, Hutchison & Steffen, PLLC has only recently appeared in this matter and has been attempting to gather and review all relevant pleadings, documents, and correspondence

9. On October 10, 2019 – the expert disclosure deadline – I called Mr. Green to meet and confer on the deadline to disclose experts and expert reports. Because of the time difference Mr. Green stated that he would be unable obtain approval from his client's until the next day – after the deadline had expired.

10. Because October 10, 2019 was the deadline, Switch could not delay filing a motion to extend the deadlines and Switch immediately proceed without waiting for Defendants' response – who ultimately rejected Switch's request to extend the discovery

2

deadlines

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 22nd day of October, 2019.

                                                */s/ Piers R. Tueller*
                                                Piers R. Tueller, Esq.