SAMUEL CASTOR, ESQ.
Nevada Bar No. 11532
ANNE-MARIE BIRK, ESQ.
Nevada Bar No. 12330
**SWITCH, LTD.**
7135 South Decatur Blvd.
Las Vegas, Nevada 89118
Telephone: (702) 444-4111
policy@switch.com

MARK A. HUTCHISON
Nevada Bar No. 4639
JACOB A. REYNOLDS
Nevada Bar No. 10199
PIERS R. TUELLER
Nevada Bar No. 14633
**HUTCHISON & STEFFEN, PLLC**
Peccole Professional Park
10080 West Alta Drive, Suite 200
Las Vegas, Nevada 89145
Telephone: (702) 385-2500
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| SWITCH, LTD., a Nevada limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>STEPHEN FAIRFAX; MTECHNOLOGY; and DOES 1 through 10; ROE ENTITIES 11 through 20, inclusive,<br><br>Defendants. | CASE NO.:   2:17-cv-02651-GMN-EJY<br><br>**PLAINTIFF'S MOTION TO COMPEL THIRD-PARTY JONES LANG LASALLE TO PROVIDE REQUESTED DOCUMENTS** |

COMES NOW Plaintiff, SWITCH, LTD., by and through its attorneys of record, Samuel Castor, Esq., and Anne-Marie Birk, Esq., moves to compel third-party Jones Lang LaSalle (hereinafter "JLL") to provide documents in response to the subpoena. In the alternative, Switch moves for an order to show cause why JLL should not be held in contempt for its failure to comply with a subpoena. Switch also moves for an award of the fees and costs associated with bringing this

1

motion.

Counsel did meet and confer with Counsel for JLL on October 25, 2019, and JLL confirmed that no documents would be provided with in response to the Switch subpoena. Switch confirmed with Counsel for JLL that Switch would be filing this Motion to Compel based on its failure to provide documents. *See* Decl. of Sam Castor, **Exhibit 1**.

**1.    Factual background.**

Switch filed a complaint generally alleging that Defendant Fairfax misappropriated trade secrets learned about Switch for the benefit of Defendant and a third-party national competitor, Aligned Data Centers. (ECF No. 1-1 at 4:18-28). This misappropriation was made possible as Defendant Fairfax inspected the Switch facility and designs, in 2011 and 2015 while conducting a risk assessment for Switch's customers. (*Id.* at 12:20-21, 31).  To conduct this inspection, Mr. Fairfax entered into Nondisclosure Agreements with Switch. *See* **Exhibit 2**.

Despite the Nondisclosure Agreements, Defendants provided Switch's trade secrets to third parties, including Aligned, Aligned Energy[1], and Inertech ("one of Aligned's companies"), who used this information in designing their own data centers with Fairfax's help. (*Id.* at 4:24-5:20, 16:1).  As a result of Defendant Fairfax misappropriation of trade secrets, Switch lost several large clients to Aligned Data Centers.

JLL is a global real estate services firm dealing with data centers. *See* Declaration of Sam Castor, attached as **Exhibit 1**. JLL has offices nationally, including two offices in Las Vegas and regularly transacts business within Clark County. *Id.* at ¶5; *see* Printout of JLL's website, attached as **Exhibit 3**. Through its own research and business dealings, Switch has discovered that JLL has relationships with Defendants and third-party entities discussed in this case, and is financially interested in luring customers away from Switch with Switch's own technology. **Exhibit 1**.

JLL has provided services to eBay, the Switch customer that Fairfax conducted a risk assessment for, regarding eBay's data centers. **Exhibit 1**; *see also* Printout of JLL Data Center Solution's website, attached as **Exhibit 4**. Mark Bauer, National Director at JLL, serves as a broker to Rich Reyher, who formerly served as Chief Engineer at eBay and oversaw construction of one of

---

[1] "Upon information and belief, Aligned is the parent company of Aligned Energy." (ECF No. 1-1 at 15:18-19).

their data centers. **Exhibit 1**; s*ee also* Printout of 7x24 Exchange's website, attached as **Exhibit 5**. Rich Reyher is currently Senior Director of Global Data Center Services of PayPal, who is also a customer of Switch. **Exhibit 1**; **Exhibit 5**.

JLL has also provided services to Aligned. **Exhibit 1**; *see also* Aligned Data Center's brochure, attached as **Exhibit 6**; *see also* Aligned Energy's brochure, attached as **Exhibit 7**. JLL has helped Aligned find customers for its data centers, including the data center in Phoenix, Arizona. **Exhibit 1**; **Exhibit 6**; **Exhibit 7**.

Uber is a customer at Aligned's Phoenix, Arizona data center. **Exhibit 1**; s*ee also* Printout of Aligned Energy's website, attached as **Exhibit 7**. Aligned's Phoenix, Arizona data center is listed by JLL and is one of the data centers at issue in this case, as Switch believes the data center incorporates Switch's trade secrets that were misappropriated by Defendants. **Exhibit 1**. JLL's advertising for the Phoenix, Arizona data center includes a quote from Fairfax regarding the center's cooling and power generation platforms.  It is Switch's position that Aligned Data Centers have implemented Switch's trade secrets in the design of their data centers **Exhibit 1**; **Exhibit 7**.

JLL's connections in the data enter industry make it very likely that JLL has information that is relevant to this case. **Exhibit 1**. JLL has actively attempted to persuade Switch's customers and relocate with Switch's national competitors. JLL has a materially aligned financial relationship with Fairfax and the entities that gained access to Switch's trade secrets through Fairfax. JLL's communications with any of these entities relating to Switch likely contain information regarding Switch's claims and Defendants' defenses in this case.

As part of discovery in this matter and in order to obtain information regarding Defendant's actions in misappropriating Switch's trade secrets and selling those secrets, JLL was served with a subpoena on July 24, 2019. *See* **Exhibit 8**. The subpoena served requested communications between JLL and the following entities: MTechnology, Stephen Fairfax, Inertech, Uber, eBay, PayPal, Aligned, and Aligned Energy. Each of these requests were specifically narrowed to only include information regarding Switch. *Id.*

As detailed above, the communications sought by Switch are based on financial interest connections JLL has between the seven entities, the facts of this case, and JLL:

3

1. MTechnology and Fairfax are Defendants in this case. JLL has helped market data centers designed by Fairfax, including the Phoenix, Arizona data center at issue in this case.

2. Inertech is one of Aligned's companies. Aligned used Fairfax's services in designing its data centers, which JLL helped market.

3. Uber is a customer at Aligned's Phoenix, Arizona data center, which JLL helped market.

4. eBay retained Fairfax to tour Switch's facility, where Fairfax was able to obtain Switch's trade secrets. JLL's National Director serves a broker to eBay's former Chief Engineer.

5. PayPal is a customer of Switch. Its Senior Director of Global Data Center Services is the same former Chief Engineer of eBay (Rich Reyher) that uses JLL's National Director as a broker.

6. Aligned used Fairfax's services in designing its data centers, which JLL helped market.

7. Aligned is the parent company of Aligned Energy.

On September 19, 2019[2] JLL objected to the *subpoena duces tecum*. These objection to each request was identical and non-specific:

> Incorporating herein and reasserting the General Objections above, JLL objects to this Request on the grounds that it seeks discovery that is properly obtained from the parties to this action. JLL objects to this Request on the grounds that it expressly calls for the production of confidential and trade secret information, it is not reasonably limited in time or in subject matter, and, for that reason, is unduly burdensome. JLL is willing to meet and confer regarding this request.

**Exhibit 9**.

Based on these objections, JLL refused to provide any documents.

In response to JLL's objections, Switch affirmed to JLL that the *subpoena duces tecum* was "a reasonable discovery exercise to evaluate what we view as a clear nexus between JLL, Fairfax and Aligned." *See* Email chain between Switch and JLL, **Exhibit 10**. Switch's offered to explore search terms and hit results to promote efficiency for both sides. *Id.* Though Switch followed up with JLL twice, JLL did not respond to this offer. **Exhibit 1**; **Exhibit 10**.

---

[2] It should be noted that Counsel for Switch provided JLL with an extension to produce the documents as in house counsel for JLL, Helen Arnold, indicated that she was getting married and needed the extension.

Switch has also provided a copy of this Motion to JLL on February 12, 2020.

**2. Certification under LR II 26-7(c).**

As required by LR IA 1-3(f) and LR 26-7(c), Switch has made a good faith effort to meet and confer prior to filing this motion through numerous email and telephone conferences. The time, place, manner, and participants to these communications are detailed in the emails attached in **Exhibit 10** and in the Declaration attached as **Exhibit 1**. Specifically on October 25, 2019 Sam Castor and Piers Tueller on behalf of Switch as well as Michael Berta and Joseph Farris on behalf of JLL conducted an in depth Meet and Confer but were unable to reach a resolution. JLL's counsel was provided with a copy of this motion on March 13, 2020. *See* **Exhibit 1**.

**3. Legal Discussion.**

"Third-party discovery is subject to the overriding limitation of relevance established in Rule 26(b)(1)." *Scientific Games Corporation v. AGS LLC*, 2017 WL 3013251, at *2 (D. Nev., 2017). Switch "may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Though the Court must take proportionality into account, "relevance remains broad in scope." *Riverport Ins. Co. v. State Farm Fire & Cas. Co.*, No. 2:18-cv-00330-GMN-NJK, 2018 WL 6435883, at *2 (D. Nev. Dec. 6, 2018). "In the context of a motion to compel, the party resisting discovery carries the heavy burden of showing why discovery should be denied." *Eruchalu v. U.S. Bank, Nat. Ass'n,* No. 2:12-CV-1264-RFB-VCF, 2014 WL 4546800, at *1 (D. Nev. Sept. 12, 2014) (citing *Blankenship v. Hearst Corp.,* 519 F.2d 418, 429 (9th Cir.1975)).

**A.    This Court is the proper venue for this Motion to Compel.**

Under Federal Rule of Civil Procedure 45(c)(2), "A subpoena may command: (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person." "At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection." Fed. R. Civ. P. 45(d)(2)(B)(i).

///

JLL has two offices in Las Vegas and regularly transacts business within Clark County. **Exhibit 1**; **Exhibit 3**. The subpoena requested production to take place at counsel for Switch's office within Las Vegas. **Exhibit 8**. Therefore, this motion to compel is properly brought before this Court.

### B. Switch's discovery requests to JLL are proportional to the needs of the case.

JLL asserts that its communications with MTechnology, including Stephen Fairfax, regarding Switch are "properly obtained from the parties to this action." **Exhibit 9**. "[T]he court must limit the frequency or extent of discovery … if it determines that…the discovery sought…can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C).

Discovery from Defendants has proceeded slowly in this case. The Court recently issued a Stipulated Amended Discovery Plan and Scheduling Order to address a "discovery impasse" the parties were able to address with a contemporaneously filed protective order. (ECF No. 65 at 2). Defendants have yet to engage in meaningful production of documents, as the parties are scheduled to respond to outstanding discovery requests on December 20, 2019. (*Id.* at 4). Therefore, it is currently impossible to determine what documents Defendants have and will be able to produce.

Even should Defendants have some communications sent to JLL regarding Switch from the relevant timeframe, it is not clear that JLL's records would have the exact same communications. *See Diamond State Ins. Co. v. Rebel Oil Co.*, 157 F.R.D. 691, 697 (D. Nev. 1994) ("documents actually maintained in the files of each entity may not be identical"). Communications can be lost or deleted by one individual or entity and saved by another. Switch should be permitted to retrieve communications from both Defendants and JLL to compare the results and ensure their completeness and accuracy.

In addition, JLL's objections and subsequent communications with Switch have failed to establish that JLL will be significantly burdened by responding to Switch's subpoena duces tecum. It should be a relatively straightforward matter for JLL to search for communications from a certain source or domain and filter their results by whether the communication relates to Switch. JLL has not explained how searching for these communications will be burdensome. "[C]onclusory and speculative statements of harm, inconvenience, and expense…do not justify quashing [a] subpoena[].

*Playstudios, Inc. v. Centerboard Advisors, Inc.*, No. 2:18-cv-1423-JCM-NJK, 2019 WL 6493926, at *5 (D. Nev. Dec. 3, 2019). The communications sought be Switch are relevant to determine what JLL told customers and business associates regarding Switch during the period when Defendants, who have associated with JLL, were misappropriating Switch's trade secrets. Therefore, JLL should be compelled to produce the documents sought in the subpoena duces tecum.

### C. The subpoena does not expressly call for production of confidential and trade secret information.

"To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires: (i) disclosing a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 45(d)(3)(B). "A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must…describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." Fed. R. Civ. P. 45(e)(2).

JLL asserts that each request with in the subpoena "expressly calls for the production of confidential and trade secret information." **Exhibit 9**. However, the requests simply ask for communications with various entities—the requests say nothing about confidential or trade secret information. **Exhibit 8**. In addition, JLL does not describe the documents it seeks to withhold *at all*, much less in a manner that enables Switch to assess JLL's claim. In fact, to the extent these communications between JLL and these parties contain trade secret information that also references Switch, such material would be relevant to this action, and merit the very discovery sought. Therefore, JLL should be compelled to produce the documents sought in the subpoena duces tecum.

### D. The subpoena is reasonably limited in time and subject matter and does not pose an undue burden.

"A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). "[T]he objecting party must provide specific facts that indicate the nature and extent of the burden." *Scientific Games Corporation v. AGS LLC*, 2017 WL 3013251, at *2 (D. Nev., 2017).

JLL asserts that each request within the subpoena "is not reasonably limited in time or in subject matter, and, for that reason, is unduly burdensome." **Exhibit 9**. However, the requests are reasonably limited in time and subject matter. The requests seek communications from 2011 to the present. **Exhibit 8**. This entire time period is relevant to the case—Fairfax toured Switch's facility in 2011 and at least one data center at issue opened in 2017. (ECF No. 1-1 at 12:20-21, 19:10-12). Additionally, JLL has continued to use Mr. Fairfax's reputation (and knowledge) to sell Aligned's data centers and does so today. Based on the recent opening of the data center and JLL's on-going relationship with the entities at issue, it is clear that relevant communications, injury, and misappropriation are still being made.

In addition, Switch only seeks production of communications specifically dealing with Switch, further limiting the scope of production. Finally, JLL does not provide specific facts that indicate the nature and extent of its burden. Switch stated that it is willing to discuss search terms and hit results to address JLL's burden concerns, but JLL failed to respond to Switch's offer and continues to resist ANY production to date. **Exhibit 1**; **Exhibit 10**. Therefore, JLL should be compelled to produce the documents sought in the *subpoena duces tecum*.

**E.**     **The discovery is not for an improper purpose.**

JLL asserts that Request Nos. 2-7 in the subpoena "appear[] to be for an improper purpose and [are] improper under Rule 45 and 26." **Exhibit 9**. JLL does not clarify what Switch's allegedly improper purpose is, though it seems JLL is concerned that Switch is only seeking information that will enable Switch to sue JLL in a subsequent case. **Exhibit 10**.

Under Federal Rule of Civil Procedure 26(g), by signing a discovery request, "an attorney or party certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry…it is…not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Switch did not subpoena JLL to harass, cause unnecessary delay, or to needlessly increase the cost of litigation. Switch is not merely using the current action to attempt to build a future case against JLL. Switch reasonably believes that JLL has information that is relevant to the current case as described above. Therefore, JLL should be compelled to produce the documents sought in the subpoena duces tecum.

8

**4.     Conclusion.**

Given JLL's absolute refusal to provide any materials in response to the subpoena, despite Switch's narrow tailoring of the subpoena, and repeated efforts to accommodate JLL's concerns, the Court should grant Switch's motion to compel and order JLL to produce documents in response to Switch's subpoena duces tecum.

DATED this 20th day of March, 2020.

**SWITCH, LTD.**


 /s/: Samuel Castor
SAMUEL CASTOR, ESQ.
Nevada Bar No. 11532
ANNE-MARIE BIRK, ESQ.
Nevada Bar No. 12330
7135 South Decatur Blvd.
Las Vegas, Nevada 89118

MARK A. HUTCHISON
Nevada Bar No. 4639
JACOB A. REYNOLDS
Nevada Bar No. 10199
PIERS R. TUELLER
Nevada Bar No. 14633
**HUTCHISON & STEFFEN, PLLC**
Peccole Professional Park
10080 West Alta Drive, Suite 200
Las Vegas, Nevada 89145
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

Pursuant to F.R.C.P. 5(b), I hereby certify that on this 20th day of March, 2020, I served a true and correct copy of the above document, entitled **PLAINTIFF'S MOTION TO COMPEL THIRD-PARTY JONES LANG LASALLE TO PROVIDE REQUESTED DOCUMENTS**, via the Court's electronic filing/service system (CM/ECF) to all parties on the current service list.

Marc J. Randazza, Esq.
Ronald D. Green, Esq.
Alex J. Shepard, Esq.
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, NV 89117
ecf@randazza.com
mjr@randazza.com
rdg@randazza.com
ajs@randazza.com
*Attorneys for Defendants*

I further certify that a true and correct copy of the aforementioned document was served via electronic mail to the following:

Michael A. Berta, Esq.
Joseph Farris, Esq.
Arnold & Porter Kaye Scholer LLP
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111-4024
Michael.berta@arnoldporter.com
Joseph.farris@arnoldporter.com
*Attorneys for Non-Party*
*Jones Lang LaSalle Incorporated*

　　　　　　　　　　　　　　　　　　　　/s/: *Tanya Paonessa*
　　　　　　　　　　　　　　　　　　　　An agent of SWITCH, LTD.

10