Exhibit 2



## NONDISCLOSURE AGREEMENT

THIS NONDISCLOSURE AGREEMENT (this "Agreement") is entered into and effective as of the date of the last signature below (the "Effective Date"), between Switch Communications L.L.C. ("Switch") and the person or entity identified below ("Recipient").

**1. Confidential Information.** "Confidential Information" means all information disclosed or made available by Switch to Recipient, including (i) business plans, financial reports, financial data, employee data, customer lists, forecasts, strategies, and all other business information; and (ii) software or firmware code, data center designs, product designs and/or specifications, algorithms, computer programs, inventions, unpublished patent applications, manufacturing or other technical or scientific know-how, specifications, technical drawings, building plans, diagrams, schematics, technology, processes, and any other trade secrets, discoveries, ideas, concepts, know-how, techniques, materials, formulae, compositions, information, data, results, plans, surveys and/or reports of a technical nature. Confidential Information may be that of Switch or of third parties to whom Switch has an obligation to treat the disclosed information as confidential. Confidential Information also includes copies, notes, abstracts and other tangible embodiments made by Recipient that are based on or contain any of such information, as well as the existence and progress of the Purpose (described in Section 2).

**2. Purpose.** Recipient may only use the Confidential Information of Switch solely for the limited purpose of evaluating a potential business opportunity between the parties (the "Purpose").

**3. Protection of Confidential Information.** Recipient acknowledges that the Confidential Information is a valuable and unique asset of Switch and agrees to the following:

(a) Recipient: (i) will not disclose the Confidential Information to any third party; (ii) will not disclose the Confidential Information to its employees unless the employees have a need to know the Confidential Information for the Purpose and is contractually bound to maintain such Confidential Information in confidence on terms at least as restrictive as this Agreement; (iii) will use the Confidential Information solely for the Purpose and will not use it for any third party's benefit; and (iv) will use the same degree of care to protect the Confidential Information from unauthorized use or disclosure as Recipient would use to protect Recipient's own information of a similar nature, but in no event with less than reasonable care. Any failure by the employees, officers, directors, of Recipient and its affiliated companies to fulfill those confidentiality obligations assumed by them pursuant to this Section 3 will constitute a breach by Recipient of its obligations under this Agreement.

(b) Recipient's obligations under this Agreement with respect to particular information do not apply to the extent that: (i) Switch authorizes Recipient in writing to disclose such information; (ii) Recipient knows such information prior to the time of disclosure by Switch, free of any obligation to keep it confidential, as evidenced by written records; (iii) such information is or becomes generally known in the relevant industry without fault of Recipient; (iv) employees of Recipient independently develop such information without access to or use of the Confidential Information, as evidenced by written records; or (v) Recipient rightfully obtains such information from a third party who has the right to disclose it without violation of any confidentiality obligations. However, even if certain information is already known, Switch's use of such information (including the fact of Switch's use and the manner and results of use) may not be known and thus would be considered to be Confidential Information.

(c) If Recipient is subject to judicial or governmental proceedings requiring disclosure of Confidential Information, then, prior to any such disclosure, Recipient will provide Switch with reasonable prior written notice and will obtain, or provide Switch with an opportunity to obtain, a protective order or confidential treatment of the Confidential Information.

**4. Return of Confidential Information.** All Confidential Information furnished under this Agreement remains the property of Switch and will be returned to Switch or destroyed upon Switch's request including all copies thereof. Within 30 days of receiving such a request from Switch, Recipient will comply with the request and provide a written certification, signed by an officer, of such compliance.

**5. No License or Warranty.** No license under any patents, copyrights, mask work rights, trademarks or other proprietary rights is granted by Switch under this Agreement. ALL INFORMATION IS PROVIDED "AS IS", WITHOUT ANY EXPRESS OR IMPLIED WARRANTIES, INCLUDING BUT NOT LIMITED TO A WARRANTY THAT IT IS ACCURATE OR COMPLETE OR A WARRANTY AGAINST INFRINGEMENT.

**6. No Inducement or Commitment.** Switch will determine in Switch's sole discretion the information to

be disclosed to Recipient. Neither the disclosure nor access to Confidential Information under this Agreement constitutes an inducement or commitment to enter into any business relationship. If the parties desire to pursue business opportunities together, the parties will execute separate written agreement(s).

**7. Term and Termination.** This Agreement will be effective from the Effective Date and will continue until written notice of termination is provided by either party to the other. All provisions of this Agreement relating to Confidential Information disclosed pursuant to this Agreement prior to termination will survive.

**8. Assignment and Binding Effect.** Recipient may not assign this Agreement by operation of law or otherwise without Switch's prior written consent. Any assignment in violation of this Agreement will be void. This Agreement benefits and binds the parties to this Agreement and their respective successors and permitted assigns.

**9. Jurisdiction & Venue.** This Agreement will be governed by and construed in accordance with the laws of the State of Nevada, exclusive of its choice of law principles. The state and federal courts located in Clark County, Nevada have exclusive jurisdiction and venue over any dispute arising out of or relating to this Agreement. Each party consents to the personal jurisdiction and venue of these courts.

**10. Entire Agreement.** This Agreement is the entire understanding, and supersedes any and all prior and contemporaneous agreements (oral or written), between the parties regarding this Agreement's subject matter. This Agreement will not be modified, and no provision will be waived, except in a writing signed by both parties. A party's failure to require performance will not affect the party's right to require such performance at any later time. If any part of this Agreement is unenforceable, the rest will remain in effect. This Agreement may be executed in counterparts.

**11. General.** Recipient will comply with any and all applicable export control laws, rules and regulations. Any notice under this Agreement, if sent to the party entitled to such notice at the address set forth below, will be deemed to have been provided upon receipt.

SWITCH COMMUNICATIONS GROUP L.L.C.:

By: _____
Name: _____
Title: _____
Date: _____
Address: _____
_____

Recipient:

By: _Stephen Fairfax_
Name: _STEPHEN FAIRFAX_
Title: _PRESIDENT, MTECHNOLOGY, INC._
Date: _5/4/2011_
Address: _2 CENTRAL ST_
_FRAMINGHAM, MA 01773_

NDA-081215-866



## NON-DISCLOSURE AGREEMENT

THIS NONDISCLOSURE AGREEMENT (this "Agreement") is entered into and effective as of the date of the last signature below (the "Effective Date"), between Switch and the person or entity identified below ("Recipient").

**1. Confidential Information.** "Confidential Information" means all information disclosed or made available by Switch to Recipient, including (i) business plans, financial reports, financial data, employee data, customer lists, forecasts, strategies, and all other business information; and (ii) software or firmware code, data center designs, product designs and/or specifications, algorithms, computer programs, inventions, unpublished patent applications, manufacturing or other technical or scientific know-how, specifications, technical drawings, building plans, diagrams, schematics, technology, processes, and any other trade secrets, discoveries, ideas, concepts, know-how, techniques, materials, formulae, compositions, information, data, results, plans, surveys and/or reports of a technical nature. Confidential Information may be that of Switch or of third parties to whom Switch has an obligation to treat the disclosed information as confidential. Confidential Information also includes copies, notes, abstracts and other tangible embodiments made by Recipient that are based on or contain any of such information, as well as the existence and progress of the Purpose (described in Section 2).

**2. Purpose.** Recipient may only use the Confidential Information of Switch solely for the limited purpose of evaluating a potential business opportunity with Switch (the "Purpose") and for no other purpose.

**3. Protection of Confidential Information.** Recipient acknowledges that the Confidential Information is a valuable and unique asset of Switch and agrees to the following:

(a) Recipient: (i) will not disclose the Confidential Information to any third party; (ii) will not disclose the Confidential Information to its employees unless the employees have a need to know the Confidential Information for the Purpose and are contractually bound to maintain such Confidential Information in confidence on terms at least as restrictive as this Agreement; (iii) will use the Confidential Information solely for the Purpose and will not use it for any third party's benefit; and (iv) will use the same degree of care to protect the Confidential Information from unauthorized use or disclosure as Recipient would use to protect Recipient's own information of a similar nature, but in no event with less than reasonable care. Any failure by the employees, officers, directors, of Recipient and its affiliated companies to fulfill those confidentiality obligations assumed by them pursuant to this Section 3 will constitute a breach by Recipient of its obligations under this Agreement.

(b) Recipient's obligations under this Agreement with respect to particular information does not apply to the extent that: (i) Switch authorizes Recipient in writing to disclose such information; (ii) such information is or becomes generally known in the relevant industry without fault of Recipient; or (iii) employees of Recipient independently develop such information without access to or use of the Confidential Information, as evidenced by written records. However, even if certain information is already known, Switch's use of such information (including the fact of Switch's use and the manner and results of use) may not be known and thus would be considered to be Confidential Information.

(c) If Recipient is subject to judicial or governmental proceedings requiring disclosure of Confidential Information, then, prior to any such disclosure, Recipient will provide Switch with reasonable prior written notice and will obtain, or provide Switch with an opportunity to obtain, a protective order or confidential treatment of the Confidential Information.

**4. Return of Confidential Information.** All Confidential Information furnished under this Agreement remains the property of Switch and will be returned to Switch or destroyed upon Switch's request including all copies thereof. Within 30 days after receiving such a request from Switch, Recipient will comply with the request and provide a written certification, signed by an officer, of such compliance.

**5. No License or Warranty.** No license under any patents, copyrights, trademarks or other proprietary rights is granted by Switch under this Agreement. ALL INFORMATION IS PROVIDED "AS IS", WITHOUT ANY EXPRESS OR IMPLIED WARRANTIES, INCLUDING BUT NOT LIMITED TO A WARRANTY THAT IT IS ACCURATE OR COMPLETE OR A WARRANTY AGAINST INFRINGEMENT.

**6. No Inducement or Commitment.** Switch will determine, in Switch's sole discretion, the information to be disclosed to Recipient. Neither the disclosure nor access to Confidential Information under this Agreement constitutes an inducement or commitment to enter into any business relationship. If the parties desire to pursue business opportunities together, the parties will execute separate written agreement(s).

**7. Term and Termination.** This Agreement will be effective from the Effective Date and will continue until written notice of termination is provided by either party to the other. All provisions of this Agreement relating to Confidential Information disclosed pursuant to this Agreement prior to termination will survive.

**8. Assignment and Binding Effect.** Recipient may not assign this Agreement by operation of law or otherwise without Switch's prior written consent. Any assignment in violation of this Agreement will be void. This Agreement benefits and binds the parties to this Agreement and their respective successors and permitted assigns.

**9. Jurisdiction & Venue.** This Agreement will be governed by and construed in accordance with the laws of the State of Nevada, exclusive of its choice of law principles. The state and federal courts located in Clark County, Nevada have exclusive jurisdiction and venue over any dispute arising out of or relating to this Agreement. Each party consents to the personal jurisdiction and venue of these courts.

**10. Entire Agreement.** This Agreement is the entire understanding, and supersedes any and all prior and contemporaneous agreements (oral or written), between the parties regarding this Agreement's subject matter. This Agreement will not be modified, and no provision will be waived, except in a writing signed by both parties. A party's failure to require performance will not affect the party's right to require such performance at any later time. If any part of this Agreement is unenforceable, the rest will remain in effect. This Agreement may be executed in counterparts.

**11. General.** Recipient will comply with any and all applicable export control laws, rules and regulations. Any notice under this Agreement, if sent to the party entitled to such notice at the address set forth below, will be deemed to have been provided upon receipt.

SWITCH:

By: _[signature]_
Title: EVP of Construction
Date: 08.06.15
Address: 7386 Lindell Rd, LV, NV, 89139

MTechnology, Inc.
RECIPIENT

By: Stephen Fairfax
   *Digitally signed by Stephen Fairfax*
   *DN: cn=Stephen Fairfax, o, ou,*
   *email=fairfax@mtechnology.net, c=US*
   *Date: 2015.08.12 16:00:20 -04'00'*
Title: Stephen Fairfax, President
Date: 08-12-2015
Address: 2 Central St.
         Saxonville, MA 01701