1  WILLIAM R. URGA (SBN 1195)
   wru@juwlaw.com
2  **JOLLEY URGA WOODBURY & HOLTHUS**
   330 S. Rampart Boulevard, Suite 380
3  Las Vegas, Nevada  89145
   Telephone:     (702) 699-7500
4  Facsimile:     (702) 699-7555

5  MICHAEL A. BERTA (*pro hac vice* forthcoming)
   michael.berta@arnoldporter.com
6  JOSEPH FARRIS (*pro hac vice* forthcoming)
   joseph.farris@arnoldporter.com
7  **ARNOLD & PORTER KAYE SCHOLER LLP**
   Three Embarcadero Center, 10th Floor
8  San Francisco, California  94111
   Telephone:     (415) 471-3100
9  Facsimile:     (415) 471-3400

10
   *Attorneys for Third Party*
11 *JONES LANG LASALLE, INC.*

12

13                **UNITED STATES DISTRICT COURT**

14                    **DISTRICT OF NEVADA**

15

16 SWITCH, LTD., a Nevada limited liability       Case No. 2:17-cv-02651-GMN-EJY
   company,
17                                                **JONES LANGE LASALLE, INC.'S**
             Plaintiff,                           **OPPOSITION TO PLAINTIFF SWITCH,**
18                                                **LTD.'S MOTION TO COMPEL THIRD**
        vs.                                       **PARTY JONES LANG LASALLE TO**
19                                                **PROVIDE REQUESTED DOCUMENTS**
   STEPHEN FAIRFAX; MTECHNOLOGY;
20 and DOES 1 through 10; ROE ENTITIES 11
   through 20, inclusive,
21
             Defendants.
22

23

24

25

26

27

28

**TABLE OF CONTENTS**

Page

I.     INTRODUCTION .................................................................................................. 1

II.    BACKGROUND .................................................................................................. 2

    A.    Switch's 2017 Patent Lawsuit Against MTechnology and Aligned Data Centers ............................................................................................ 2

    B.    The Present Case: Switch's Trade Secret Lawsuit Against Fairfax/MTechnology ................................................................................ 3

    C.    Third Party Jones Lang LaSalle .............................................................. 5

    D.    The Subpoena and Motion to Compel .................................................... 5

III.    ARGUMENT ...................................................................................................... 7

    A.    The Subpoena Violates Rules 45 and 26 Because It Seeks To Use the Discovery Process for the Improper Purpose of Developing New Claims Against Third Parties. ................................................................. 7

    B.    The Subpoena Violates Rules 45 and 26 Because It Imposes an Undue Burden on JLL By Seeking Information That Is Not Proportional to the Needs of the Case. ............................................................................ 9

    C.    Switch Has Failed to Show That It First Sought The Information It Needs From Defendants. .......................................................................... 13

    D.    The Subpoena Seeks The Production of the Confidential and Trade Secret Information of JLL and Its Customers to a Competitor Without Substantial Need. ................................................................................... 14

    E.    Switch Improperly Designated The District Of Nevada As The Place Of Compliance on the Subpoena. ........................................................... 16

IV.    CONCLUSION ................................................................................................... 17

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Acosta v. Wellfleet Commc'ns, LLC*,
   No. 2:16-cv-02353-GMN-GWF, 2017 WL 5180425 (D. Nev. Nov. 8, 2017) ........................... 12

*Ademiluyi v. Phillips*,
   No. 2:14-cv-00507-MMD, 2014 WL 7012493 (D. Nev. Dec. 12, 2014) ................................. 7, 8

*Beaver Cty. Employees' Ret. Fund v. Tile Shop Holdings, Inc.*,
   No. 16-mc-80076-JSC, 2016 WL 7212308 (N.D. Cal. Dec. 13, 2016) ........................................ 8

*Casun Invest, A.G. v. Ponder*,
   No. 2:16-cv-2925-JCM-GWF, 2019 WL 2358390 (D. Nev. June 4, 2019) ........................... 9, 12

*Compaq Computer Corp. v. Packard Bell Elecs. Inc.*,
   163 F.R.D. 329 (N.D. Cal. 1995) ............................................................................................... 9

*Dart Indus. Co. v. Westwood Chem. Co.*,
   649 F.2d 646 (9th Cir.1980) ...................................................................................................... 9

*Diamond State Ins. Co. v. Rebel Oil Co.*,
   157 F.R.D. 691 (D. Nev. 1994) ................................................................................................ 14

*Dominguez v. Corp. of Gonzaga Univ. (Gonzaga Univ.)*,
   No. 2:17-cv-00286-SAB, 2018 WL 3338181 (E.D. Wash. Apr. 19, 2018) ............................. 7, 8

*FTC v. AMG Servs., Inc.*,
   291 F.R.D. 544 (D. Nev. 2013) .................................................................................................. 9

*Hickman v. Mead*,
   No. 2:18-cv-00404-GMN-NJK, 2019 WL 3837784 (D. Nev. Aug. 14, 2019) .................... 13, 15

*Laxalt v. McClatchy*,
   116 F.R.D. 455 (D. Nev. 1986) .................................................................................................. 9

*Mattel, Inc. v. Walking Mountain Prods.*,
   353 F.3d 792 (9th Cir. 2003) ................................................................................................... 15

*McCall v. State Farm Mut. Auto. Ins. Co.*,
   No. 2:16-cv-01058-JAD-GWF, 2017 WL 3174914 (D. Nev. July 26, 2017) ........................... 13

*Micro Motion, Inc. v. Kane Steel Co.*,
   894 F.2d 1318 (Fed. Cir. 1990) ................................................................................................. 7

*Monte H. Greenawalt Revocable Tr. v. Brown*,
   No. 2:12-cv-01983-LRH, 2013 WL 6844760 (D. Nev. Dec. 19, 2013) ............................. 7, 8, 9

*Moon v. SCP Pool Corp.*,
    232 F.R.D. 633 (C.D. Cal. 2005) ............................................................................... 12

*NML Capital Ltd. v. Republic of Argentina*,
    No. 2:14-cv-492-RFB-VCF, 2014 WL 3898021 (D. Nev. Aug. 11, 2014) ................................. 16

*Regents of Univ. of Cal. v. Kohne*,
    166 F.R.D. 463 (S.D. Cal. 1996) ............................................................................... 16

*Sci. Games Corp. v. AGS LLC*,
    No. 2:17-cv-00343-JAD-NJK, 2017 WL 3013251 (D. Nev. July 13, 2017) ............................ 15

*SEC v. Schooler*,
    No. 3:16-cv-00517-MMD-WGC, 2016 WL 6821079 (D. Nev. Nov. 17, 2016) ...................... 13

*Switch Commc'ns Grp. v. Ballard*,
    No. 2:11-cv-00285-KJD-GWF, 2012 WL 2342929 (D. Nev. June 19, 2012) .......................... 12

*Upjohn Co. v. Hygieia Biological Labs.*,
    151 F.R.D. 355 (E.D. Cal. 1993) ............................................................................... 15

*USSC Holdings Corp. v. TK Prods., LLC*,
    No. 3:16-cv-00398-RCJ-WGC, 2017 WL 7725266 (D. Nev. Jan. 26, 2017) .......................... 16

## <u>Court Rules</u>

Fed. R. Civ. P.
    26 ...................................................................................................................... *passim*
    26(b) ....................................................................................................................... 9
    26(b)(1) .............................................................................................................. 7, 12
    26(b)(1) advisory committee's note—2000 amendment .............................................. 7
    45 ...................................................................................................................... *passim*
    45 advisory committee's note—1991 amendment ..................................................... 16
    45(c) ..................................................................................................................... 16
    45(c)(1) .................................................................................................................. 16
    45(c)(2)(A) .............................................................................................................. 6

1

## I.    INTRODUCTION

2

3       While non-Party Jones Lange LaSalle, Inc. ("JLL Inc.") understands that discovery, in

4 general, is permissible for relevant information, this Motion to Compel should be denied.  Rule 45

5 and Rule 26 impose limitations to prevent discovery for improper purposes or which is not

6 proportional to the needs of the case.  And the discovery requested from JLL Inc., which is distantly

7 connected to this case only because it offers professional real estate services—not data center

8 technical design services—to *another* third party (Aligned Data Centers), is not being sought for a

9 proper purpose and is not justified by the facts at issue in this case.

10      Plaintiff Switch, Ltd.'s ("Switch") admitted purpose in issuing the subpoena is to exploit the

11 discovery process to develop new claims against third parties under the guise of a trade secret claim

12 that has nothing to do with JLL Inc., which has never even had professional relationship with the

13 Defendants.  This point was made best by counsel for Mr. Fairfax, who revealed that Switch's

14 counsel "said on two separate occasions that Switch needed discovery in this case to 'substantiate'

15 its 'anticipated claims' [] against Aligned."  ECF No. 48, at 4.  And it was confirmed again during

16 the meet and confer process where counsel for Switch admitted that it was seeking to develop

17 claims for "contributory patent infringement" related to a now-dismissed patent lawsuit between the

18 parties.  Indeed, this dispute does not exist in a vacuum and this confirms it is part of what appears

19 to be a long-running campaign by Switch to access competitor information and disrupt competition

20 in the market for data center contracts.

21      Nor does Switch's speculation that it could possibly find relevant information in JLL Inc.'s

22 files excuse its improper purpose, especially where there are no facts suggesting that discovery from

23 JLL Inc. is proportional to the needs of the case, and where Switch has failed to show that it has

24 been unable to obtain necessary discovery from Defendants over the two-plus years this case has

25 been pending.  As discussed below, Switch's trade secret claim appears to be questionable, at

26 best.  But even if it does have a claim, vague allegation about trade secrets arising out of a 2011

27 and/or 2015 tour of a facility by Defendants provides Switch with zero basis to seek access to

28 highly confidential current business information about third party JLL Inc.'s customer

relationships.  These customers include JLL Inc.'s longstanding clients relationships that pre-date

the allegations in this case (eBay and PayPal), clients that have business connections to both JLL Inc. and Switch (eBay, PayPal, and Uber), and clients that compete directly with Switch (Aligned and its related corporations).  These issues are compounded because this current competitor and customer confidential information would be put in the hands of in-house "policy" personnel at Switch with direct involvement in the negotiation of commercial contracts.

For all these reasons, and also for the additional reason that Switch failed to correct its Subpoena to name the proper party or to designate the proper place of compliance for JLL, Inc. as an Illinois-based corporation, the Motion to Compel should be denied.

## II.    BACKGROUND

### A.    Switch's 2017 Patent Lawsuit Against MTechnology and Aligned Data Centers

In August 2017, Switch filed a lawsuit in the Eastern District of Texas asserting claims for patent infringement against defendants MTechnology, Inc. ("MTechnology") and Aligned Data Centers, LLC ("Aligned").  Declaration of Michael Berta ("Berta Decl."), **Exh. A**, Plaintiff's Complaint for Patent Infringement in Case No. 2:17-cv-00574 (E.D. Tex.) (the "Patent Action").

There, Switch alleged that MTechnology's President Stephen Fairfax was "given wide access to Switch's data center facility in 2011 and in early 2015."  *Id.* ¶ 2.  Apparently, this "wide access" was a tour and inspection of the facility and "several hours" conversing with Switch's CEO.  *Id.* ¶ 3.  Switch further claimed that in 2013, Aligned hired Fairfax/MTechnology, who then assisted Aligned with deploying "technology" in its data centers that allegedly "mirrors" Switch's.  *Id.* ¶ 5.  Based on these allegations, Switch asserted that the defendants had infringed three patents:

- U.S. Patent No. 8,072,780 ("Integrated Wiring System and Thermal Shield Support Apparatus for a Data Center"), issued on December 6, 2011;

- U.S. Patent No. 8,180,495 ("Air Handling Control System for a Data Center"), issued on May 15, 2012; and,

- U.S. Patent No. 9,622,389 ("Electronic Equipment Data Center and Server Co-Location Facility Configurations and Method of Using the Same"), issued on April 11, 2017.

1   Apparently, Switch's belief that Fairfax "encouraged" Aligned to use Switch's patented

2   technology was based solely on perceived similarities in the design of Aligned's data centers that

3   Switch claimed to discern from publicly available materials, such as photos and videos on

4   Aligned's website.  *Id.* ¶ 53.

5      On August 16, 2017, Aligned filed counterclaims against Switch, seeking to invalidate

6   Switch's patents and asserting separate claims for violations of the Lanham Act, tortious

7   interference, and business disparagement.  Berta Decl., **Exh. B** (Aligned's Answer and

8   Counterclaims in the Patent Action).  These claims were based in part on Aligned's allegation that

9   Switch had, in effect, admitted—in a letter sent days before the lawsuit was filed—that its

10   infringement claim was baseless, yet at the same time was in the marketplace telling Aligned's

11   customers that Aligned did in fact infringe Switch's patents.  *Id.* ¶¶ 21-28.  Aligned also set forth

12   detailed allegations rebutting Switch's vague claims that it had discerned similarities between the

13   data centers.  *Id.* ¶¶ 41-44.  On July 9, 2018, pursuant to the parties' joint motion, all of the claims

14   and counterclaims were dismissed with prejudice.  Berta Decl., **Exh. C** (Joint Motion to Dismiss).

15
16     **B.**    **The Present Case: Switch's Trade Secret Lawsuit Against**
      **Fairfax/MTechnology**

17      On September 15, 2017, just weeks after filing the Patent Action, Switch initiated the

18   present case by filing a Complaint against Defendants MTechnology and its President Stephen

19   Fairfax in Clark County District Court.  Switch did not provide notice of its action to the

20   Defendants, and thus obtained a temporary restraining order ("TRO"), but Switch's ill-gotten order

21   was vacated when, in October 2017, Defendants removed the case to this Court.  ECF No. 1.

22      In contrast to the Patent Action, in which Switch was represented by outside counsel, in the

23   present case, Switch is represented only by its own in-house counsel, Sam Castor, who is its

24   "Executive Vice President of Policy."  Berta Decl., **Exh. D** (Castor's LinkedIn profile).  By Mr.

25   Castor's own admission, he has a wide-ranging role at Switch that is not limited to handling

26   litigation matters.  Rather, he "assists Switch in all things legal, including energy sustainability,

27   contract negotiation, intellectual property litigation and prosecution, protection and licensing,

28   telecom, power and air quality regulatory compliance, human resource policy, strategy, legislative

policy, complete commercial transactions, and litigation." *Id.* He claims to have "negotiated several hundreds of telecom, power, and colocation deals and multi-million a month contracts with Fortune 100 companies." *Id.*

Though the legal claims are different, the factual allegations in this action rest on the same transactions as the Patent Action; that is, Fairfax's same "technical audit of Switch's data center facilities in 2011 and again in early 2015." ECF No. 1 ("Nature of the Action"). These two visits to Switch's data center were apparently at the behest of Switch's customer, eBay. *Id.*, Ex. 2. Although Switch makes the conclusory allegation that Fairfax provided confidential information to Switch's "director competitors, Aligned and Inertech," Switch did not file any trade secret claims or seek a TRO without notice against those third parties. *Id.* And, again, the only support for its assertion about those parties was Switch's claimed identification of similarities in data center designs based on pictures and videos publicly posted on Aligned's website—rather than any direct evidence that Fairfax or MTechnology actually provided some specific information to Inertech or Aligned.

Since this lawsuit was filed in 2017, little to nothing has happened. According to the docket in this case, in September 2019 (around two years after the suit was first filed), Defendants filed a Request for a Pretrial Conference and Submission of Protective Order, in which they expressed "concerns regarding Switch's use of documents obtained in discovery" because "the majority of the documents Plaintiff Switch is requesting in this litigation are sensitive documents containing the trade secrets and detailed design information of [Switch's] biggest competitors." Berta Decl., **Exh**. **E** at 2. Fairfax explained that these concerns were based on explicit statements by Switch:

> Switch has already informed Plaintiffs and their counsel that it intends to use discovery in this case for the improper purpose of "patent litigation" against at least one of those competitors. The rest of the information about other competitors appears to be an attempt to use the discovery process in lieu of industrial espionage.

*Id.* In support, counsel for Fairfax submitted a Declaration averring that Switch's in-house counsel Sam Castor had "said on two separate occasions that Switch needed discovery in this case to 'substantiate' its anticipated claims against Aligned Data Centers, one of Switch's primary competitors." Berta Decl., **Exh**. **F**, ¶ 6. Further, counsel for Fairfax stated that Mr. Castor had

attempted to justify this by misrepresenting that the Patent Action against Aligned Data Centers had been dismissed without prejudice, when in fact it had been dismissed <u>with</u> prejudice.  *Id.*, ¶ 7.

### C.   Third Party Jones Lang LaSalle

JLL Inc. is a professional services firm that specializes in real estate and investment management, organized under the laws of Maryland and Illinois, with its headquarters in Chicago, Illinois.  Declaration of Helen Arnold ("Arnold Decl."), ¶ 3.  JLL Inc. is the parent company of Jones Lange LaSalle Americas, Inc. ("JLL Americas") (collectively with JLL, Inc., "JLL").  *Id.* at ¶ 5.  JLL Americas is a corporation organized under the laws of Maryland, with its headquarters in Chicago, Illinois.  *Id.* at ¶ 6.  JLL Americas is registered as a foreign corporation in Nevada, with three offices in the state (two in the Las Vegas area and one in Reno), and has employees that are located there.  *Id.* at ¶ 7.  Unlike its subsidiary, JLL Inc. is not registered to do business in Nevada as a foreign corporation and has no offices or employees in Nevada.  *Id.* at ¶ 4.

### D.   The Subpoena and Motion to Compel

On July 19, 2019, Switch served the subpoena on JLL Inc., from which this Motion arises (the "Subpoena").  Pursuant to the agreement of the parties, JLL Inc. served objections on Switch on September 19, 2019.  Berta Decl., **Exh. G** (JLL Inc.'s Objections and Responses to Subpoena).  Among JLL Inc.'s objections were: (1) that the Subpoena was served for an improper purposes; (2) that it sought irrelevant information and was overburdensome; (3) that it sought information that Switch should have sought from parties to the action; and, (4) that it called for the production of confidential and trade secret information.

In October and November 2019, JLL Inc. and Switch met and conferred, and JLL Inc. explained the bases of its objections in more detail—in a process that ***counsel for Switch has now misrepresented in his Declaration***.  Specifically, Mr. Castor states, accurately, that on October 30, 2019, he sent an email to follow up on the parties' telephonic meet and confer.  ECF No. 66-1 (Castor Decl., ¶ 21).  However, Mr. Castor then declares, falsely, that "JLL did not respond" (*Id.* ¶ 27), and in support of that attaches Exhibit 10, which ends with a November 4, 2019 email from Mr. Castor to counsel for JLL Inc. asking for a response.  Mr. Castor omits from this Exhibit 10— and his Declaration entirely—that at 3:47pm on November 4, 2019, in direct response to this same

email chain, counsel for JLL Inc. sent him a lengthy email in response.  Berta Decl., ¶ 10, **Exh. H**.  Mr. Castor's statement that "JLL did not respond" is therefore false.

In that concealed November 4, 2019 email, counsel for JLL Inc. reiterated to Mr. Castor what it had told him on the phone—that JLL Inc. had a number of objections and was particularly concerned about Switch's expressly-stated improper purpose for issuing the subpoena, as reflected in Fairfax's filings and the Declaration of its counsel, discussed above.  Berta Decl., ¶ 10.  In fact, during that phone call, Mr. Castor confirmed that the purpose of the discovery was to develop evidence to determine if JLL Inc. was liable for "contributory patent infringement."  *Id.*, ¶ 9.  JLL Inc. was expecting a response from Switch to address the substance of its objections and/or a proposal to narrow the document requests in the subpoena.  It never received one.  *Id.*, ¶ 11.  In fact, following that exchange, *Switch* ceased all communications with JLL Inc. on the matter for over four months.  *Id.*

Then, without warning, after close of business on March 13, 2020, Switch sent JLL Inc. a terse email with a draft of this Motion stating that it would be filing the Motion the coming Wednesday.[1]  On March 18, 2020, counsel for JLL Inc. sent a letter to Switch explaining that Switch had failed to respond to JLL Inc.'s last communication and request to substantiate its Subpoena or to narrow the scope of the requests.  Berta Decl., **Exh. I**.  JLL Inc. invited Switch to do so again at that time.  *Id.*  In response, Switch again offered a take-it or leave-it deal:  produce all documents requested by the Subpoena or it would file the Motion.  *Id.*, **Exh. J**.

Finally, during the parties' efforts to meet and confer about this Motion, JLL Inc. advised Switch that the Subpoena had improperly designated Nevada as the location for compliance, which violates Fed. R. Civ. P. 45(c)(2)(A) due to JLL Inc.'s location in Chicago, Illinois.  *Id.*, **Exh. I**.  In response, Switch claimed to have "sufficient evidence of JLL Inc.'s activity in Nevada" and proceeded to file this Motion in Nevada.  *Id.*, **Exh. J**.  It is now clear that the evidence Switch

---

[1] Switch's Motion *again* misrepresents facts about the meet and confer where it states that "Switch has also provided a copy of this Motion to JLL on February 12, 2020."  Mot. at 5:1.  In reality, Switch did not provide a draft until March 13, 2020.  JLL ***expressly alerted*** Switch to this false statement in the draft Motion in JLL's Letter of March 18, 2020, but Switch still failed to correct it before filing the Motion.  Berta Decl., **Exh. I**.

1    claimed to have of JLL Inc.'s business activity in Nevada amounted only to screenshots from JLL's

2    website showing the address of offices that JLL Americas maintained in Nevada.

3    **III.    ARGUMENT**

4          **A.    The Subpoena Violates Rules 45 and 26 Because It Seeks To Use the Discovery
               Process for the Improper Purpose of Developing New Claims Against Third
5              Parties.**

6          There is direct evidence that Switch served the Subpoena on JLL Inc. for the purpose of

7    developing claims against at least JLL and Aligned.  This alone provides a sufficient basis to deny

8    Switch's Motion to Compel.

9          Under both Rule 45 and Rule 26, the "scope of discovery" is limited to matters "relevant to

10   any party's claim or defense" and must be "proportional to the needs of the case."  Fed. R. Civ. P.

11   26(b)(1); *Ademiluyi v. Phillips*, No. 2:14-cv-00507-MMD, 2014 WL 7012493, at *2 (D. Nev. Dec.

12   12, 2014).  The Advisory Committee has expressly stated that this rule was crafted so that discovery

13   would be limited to the claims identified in the pleadings:  "The rule change [for Fed. R. Civ. P.

14   26(b)(1)] signals to the court that it has the authority to confine discovery to the claims and defenses

15   asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to

16   develop new claims or defenses that are not already identified in the pleadings."  Fed. R. Civ. P.

17   26(b)(1) advisory committee's note—2000 amendment; *Ademiluyi*, 2014 WL 7012493, at *3 ("In

18   further clarifying this rule, the Advisory Committee has declared that it 'intends . . . the parties and

19   the court [to] focus on the actual claims and defenses involved in the action' . . . ."); *Monte H.*

20   *Greenawalt Revocable Tr. v. Brown*, No. 2:12-cv-01983-LRH, 2013 WL 6844760, at *3 (D. Nev.

21   Dec. 19, 2013) ("The Advisory Committee Notes to the 2000 Amendments to Rule 26(b)(1)

22   explain, 'the parties have no entitlement to discovery to develop new claims or defenses that are not

23   already identified in the pleadings.'  This prevents litigants from engaging in 'fishing expeditions'

24   that may expose the defendant to claims not previously asserted in the plaintiff's complaint."); *see*

25   *also Dominguez v. Corp. of Gonzaga Univ. (Gonzaga Univ.)*, No. 2:17-cv-00286-SAB, 2018 WL

26   3338181, at *2 (E.D. Wash. Apr. 19, 2018) ("[I]t is improper to use discovery in search of a factual

27   predicate to support a future complaint.") (citing *Micro Motion, Inc. v. Kane Steel Co.,* 894 F.2d

28   1318, 1327 (Fed. Cir. 1990) ("The discovery rules are designed to assist a party to prove a claim it

1    reasonably believes to be viable without discovery, not to find out if it has any basis for a claim."

2    (emphasis omitted)).

3          Following these principles, Courts in this district and Circuit have refused to enforce

4    subpoenas where the discovery sought was for the purpose of developing new claims against non-

5    parties.  *Ademiluyi*, 2014 WL 7012493, at *3 (denying motion to compel compliance with subpoena

6    where "none of plaintiff's causes of action are connected to Plaintiff's assertions against [the

7    subpoenaed party]" and there were "other far less burdensome, less intrusive, and more convenient

8    methods are available to Plaintiff to obtain the information she seeks in support of her claims in her

9    amended complaint."); *Greenawalt*, 2013 WL 6844760, at *3-4 (granting protective order

10   preventing discovery of financial records of third parties because Plaintiff's bare "suspicion" that

11   the third parties may have "unlawfully" withdrawn funds from a trust had no bearing on his actual

12   asserted claims for breach of contract and an accounting against the trust); *Dominguez*, 2018 WL

13   3338181, at *2 (granting motion to quash subpoena on basis that it was "improper for Plaintiff to

14   use discovery to uncover alleged evidence of bad faith where there is no objective basis to support

15   such allegations."); *Beaver Cty. Employees' Ret. Fund v. Tile Shop Holdings, Inc.*, No. 16-mc-

16   80076-JSC, 2016 WL 7212308, at *4 (N.D. Cal. Dec. 13, 2016) (granting sanctions following

17   denial of motion to compel enforcement with subpoena that was an "attempt to fish around to see if

18   there was a basis to bring a libel case against [third party]" because it was issued "for an improper

19   purpose").

20         In this case, Switch has openly admitted that its purpose in issuing the Subpoena was to

21   develop possible claims against JLL Inc. and other third parties named in the Subpoena.  Counsel

22   for Fairfax has submitted a sworn declaration confirming that Switch's in-house counsel Sam

23   Castor "said on two separate occasions that Switch needed discovery in this case to 'substantiate' its

24   anticipated claims against Aligned Data Centers, one of Switch's primary competitors."  Berta

25   Decl., **Exh. F**, ¶6.  Doubling down, during the meet and confer process for this Motion, Mr. Castor

26   again stated to JLL Inc. that the purpose of the subpoena was to develop evidence of "contributory

27   patent infringement."  Berta Decl. ¶ 9.  This blatant effort to identify *only new third parties* to sue

28   for patent infringement is especially improper here, where Switch knows that it could not possibly

1   add claims for patent infringement against the Defendants in this action (Fairfax and MTechnology)

2   because it *already sued them* for patent infringement and dismissed those claims with *prejudice*.

3   Switch's subpoena is therefore a direct violation of the discovery rules and its Motion to Compel

4   should be denied on that basis alone.

5       **B.      The Subpoena Violates Rules 45 and 26 Because It Imposes an Undue Burden
            on JLL By Seeking Information That Is Not Proportional to the Needs of the
6            Case.**

7           Faced with clear evidence of its improper purpose, Switch attempts to salvage the Subpoena

8   by claiming that it "is not ***merely*** using the current action to build a future case against JLL"

9   because it also "believes that JLL has information relevant to the current case."  Mot. at 8:25-27

10  (emphasis added).  But Switch fails to show any factual or evidentiary basis for that "belief" other

11  than pure speculation about information JLL might theoretically have because it has customers and

12  connections in the data center industry.  Such unsupported conjecture does not meet Rule 26's

13  requirements of proportionality in discovery, and imposes an undue burden on JLL Inc. as a third

14  party to this action.

15          By definition, issuing a subpoena seeking irrelevant information imposes an undue burden.

16  *Greenawalt*, 2013 WL 6844760, at *3 ("Discovery requests seeking irrelevant information are

17  inherently undue and burdensome.") (citing  *Compaq Computer Corp. v. Packard Bell Elecs.*

18  *Inc.,* 163 F.R.D. 329, 335–36 (N.D. Cal. 1995) ("Obviously, if the sought-after documents are not

19  relevant nor calculated to lead to the discovery of admissible evidence, then any burden whatsoever

20  imposed upon [the non-party] would be by definition 'undue.'") (emphasis omitted)).  And,

21  "[w]hile the scope of relevancy is broader for discovery purposes, discovery permissible from

22  nonparties is narrower than that permissible from parties to the action."  *FTC v. AMG Servs., Inc.*,

23  291 F.R.D. 544, 553 (D. Nev. 2013) (citing *Dart Indus. Co. v. Westwood Chem. Co.,* 649 F.2d 646,

24  649–50 (9th Cir.1980) (broader restrictions on discovery appropriate to protect nonparties); *Laxalt*

25  *v. McClatchy,* 116 F.R.D. 455, 458 (D. Nev. 1986) ("The standards for non-party discovery . . .

26  require a stronger showing of relevance than for simple party discovery.").  Moreover, "[p]ursuant

27  to the 2015 amendments to Rule 26(b), the relevance of a discovery request is no longer alone

28  sufficient to justify requiring a response from the receiving party or person.  The discovery must

also be proportional to the needs of the case." *Casun Invest, A.G. v. Ponder*, No. 2:16-cv-2925-JCM-GWF, 2019 WL 2358390, at *5 (D. Nev. June 4, 2019).

Switch's claimed bases for the discovery sought from JLL Inc. shows that the Subpoena is clearly not proportional to the needs of the case.  JLL Inc. was not a party to the Patent Action and is not a party to the present action.  JLL was not involved in providing data center design services for its client Aligned, has never had a professional relationship with Defendants MTechnology or Stephen Fairfax, and is not aware of any communications with them.  Declaration of Mark Bauer ("Bauer Decl."), ¶¶ 4, 5.  While Switch contends that a brochure for Aligned's data center that contains a quotation from Fairfax is "JLL's advertising," that is not accurate.  *Id.*  Although the brochure lists JLL Americas as a contact for potential data center tenants, the brochure was prepared by Aligned without involvement from JLL.  *Id.*  As such, it is not evidence of any connection between JLL and Fairfax.

Rather, JLL Inc.'s connections to this case are only through JLL Inc.'s customers and clients, who are also third parties in this action:

- **Aligned Data Centers / Aligned Energy (Request Nos. 6 & 7).**  Aligned first became a JLL customer in 2015 (years after the "trade secrets" were first allegedly disclosed to Fairfax), when JLL assisted Aligned with leasing, and then later purchasing, property in Phoenix, Arizona that Aligned intended to use as a data center site.  Bauer Decl., ¶ 5. JLL continues to provide Aligned with marketing services related to the Phoenix data center property, as well as other real estate matters.  *Id.*  However, JLL has never provided services to Aligned related to the design or technical implementation for any Aligned data center.  *Id.*  Switch alleges only that JLL "helped market" this data center—not that JLL had access to any trade secrets of Switch or helped with its design.

- **Inertech (Request No. 2).**  Switch alleges that Inertech is a subsidiary of Aligned. However, JLL has never done business with Inertech and/or provided real estate services to it in connection with any Inertech data center.  Bauer Decl., ¶ 6.  Further, JLL is not aware that it has had any communications with Inertech.  *Id.*

- **eBay (Request No. 4)**.  According to Switch's allegations, eBay retained Fairfax to tour Switch's facility, and JLL's National Director Mark Bauer also acted as a broker for Rich Reyher, an engineer at eBay involved with its data centers.  In other words, the allegedly relevant connection is only that JLL and Switch have both done business with eBay, which has also done business with Fairfax.  However, eBay is a longstanding JLL client, with connections to Mr. Bauer that even predate its relationship with JLL.  Bauer Decl., ¶ 7. And neither Mr. Bauer nor JLL were involved in eBay's use of colocation services offered by Switch.  *Id.*

- **PayPal (Request No. 5)**.  Switch alleges that PayPal is an Aligned customer at its Phoenix data center and on that basis seeks communications between JLL and PayPal. However, as with eBay, Mr. Bauer and JLL Inc. have a pre-existing relationship with PayPal stemming from Mr. Bauer's work for eBay.  Bauer Decl., ¶ 8.  Further, JLL is aware that PayPal uses Switch's colocation services, and JLL has been involved with those services.  *Id.*  However, JLL Inc.'s communications with its client PayPal about PayPal's use of Switch services is confidential to PayPal, and Switch has no legitimate business need for that communication.  *Id.*  Those communications have nothing to do with the Defendants Fairfax or MTechnology.  *Id.*

- **Uber (Request No. 3)**.  Uber is an Aligned customer, with facilities at its Phoenix data center, however, JLL was not involved in Uber's decision to use Aligned's colocation data center in Phoenix.  Bauer Decl., ¶ 9.  Further, JLL Inc. is not aware that it has even had any communications with Uber that in any way relate to Defendants MTechnology or Fairfax.  *Id*.

In sum, Switch has identified only superficial second- and third-degree connections between JLL and Defendant Fairfax and MTechnology (if not more attenuated than that).  From there, it leaps straight to the conclusory assertion that "JLL's connections in the data center industry make it very likely that JLL has information that is relevant to this case."  Mot. at 3.

Based on these paper thin connections, Switch has made sweeping document requests for "all communications" between JLL Inc. and these parties that touch on Switch in any way, over a

period of time spanning nearly a decade.  Such requests do not comply with Rule 26.  *Acosta v. Wellfleet Commc'ns, LLC*, No. 2:16-cv-02353-GMN-GWF, 2017 WL 5180425, at *4 (D. Nev. Nov. 8, 2017) ("The fundamental principle of amended Rule 26(b)(1) is 'that lawyers must size and shape their discovery requests to the requisites of a case.'  The pretrial process must provide parties with efficient access to what is needed to prove a claim or defense, but eliminate unnecessary and wasteful discovery.").  Further, it is well established that the need to tailor discovery requests proportionally is particularly important in trade secret cases to avoid the misuse of the discovery process.  *Switch Commc'ns Grp. v. Ballard*, No. 2:11-cv-00285-KJD-GWF, 2012 WL 2342929, at *4 (D. Nev. June 19, 2012) ("If discovery on defendant's trade secrets were automatically permitted, lawsuits might regularly be filed as 'fishing expeditions' to discover the trade secrets of a competitor . . . .").  Indeed, Switch is familiar with this requirement from that very case, which was another trade secret misappropriation action filed by Switch,[2] in which Switch moved to compel discovery responses, but its motion was denied and it was instead ordered to "provide[] a description of its alleged trade secrets with reasonable particularity."  *Id.* at *5.

Here, Switch has done nothing to proportionally tailor the requests to its trade secret allegations.  For example, Switch sued MTechnology and Aligned in the Patent Action for infringing patents that issued in 2011 and 2012; therefore, any communication about the public subject matter of those patents could not pertain to an at-issue "trade secret."  Nor could any information that *Aligned provided to Fairfax*.  As such, the requests by Switch for "all communications" with Aligned are clearly overbroad on their face and should be denied.  *See, e.g., Casun Invest*, 2019 WL 2358390, at *6 (denying motion to compel compliance with "clearly overbroad" subpoena requests seeking "all documents pertaining to or regarding in any way" subject matter because there was "no attempt to limit the requests to nonprivileged documents that are relevant to the claims or defenses in this action, and which could not otherwise be obtained from [parties]"); *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637-38 (C.D. Cal. 2005) (denying motion to

---

[2] The parties there were Switch Communications Group LLC, and Switch Business Solutions, LLC, which, upon information and belief, are separate entities affiliated with Switch, Ltd.  Switch's current in-house lawyer on this case, Sam Castor, also represented Switch as outside counsel in that case.

compel that sought "documents related to nonparty KSA's business relationship with other nonparties . . . rather than nonparty KSA's relationship with defendant.").  Further, when confronted with JLL Inc.'s objections, Switch did nothing to narrow or remedy its requests, and simply demanded full compliance—yet again failing to meet its obligations under the rules.  *See SEC v. Schooler*, No. 3:16-cv-00517-MMD-WGC, 2016 WL 6821079, at *5 (D. Nev. Nov. 17, 2016) (awarding sanctions where the party "draft[ed] an overly broad subpoena; ma[de] absolutely no effort to narrow the requested documents when confronted by objections and a charge of over breadth by opposing counsel; [but] then agreeing to narrow the requests when faced with a hearing on a motion to quash the subpoena and order to meet and confer.").

Switch failed to company with its obligations under Rule 26 in issuing the Subpoena and then dug in its position and refused to remedy it.  As a result, its Motion to Compel should now be denied.

**C.     Switch Has Failed to Show That It First Sought The Information It Needs From Defendants.**

To the extent that the Subpoena seeks information from JLL Inc. that Switch could have sought from Defendants, Switch's Subpoena and Motion to Compel are also improper because Switch has made no showing that it has been unable obtain that information from Defendants.

Switch was first obligated to seek information from Defendants before issuing the Subpoena to JLL Inc. seeking that information.  To the extent that Defendants objected to providing such discovery, Switch was not permitted to seek it from JLL Inc. instead:

> If a party has served discovery requests on the opposing party to which the latter has objected, then the requesting party should (1) attempt to resolve the discovery dispute through the meet and confer process required by Rule 37(a)(1) and Local Rule 26-7(c), and if that is unsuccessful, (2) timely file a motion to compel production of the requested documents or information.  In general, it is not proper to avoid the opposing party's objections by requesting the same documents or information through another discovery device.

*McCall v. State Farm Mut. Auto. Ins. Co.*, No. 2:16-cv-01058-JAD-GWF, 2017 WL 3174914, at *6 (D. Nev. July 26, 2017); *Hickman v. Mead*, No. 2:18-cv-00404-GMN-NJK, 2019 WL 3837784, at *2 (D. Nev. Aug. 14, 2019) ("The court also has an obligation to protect non-parties from being

burdened with subpoenas for documents that can more easily and inexpensively be obtained from the opposing party.").

Switch cites *Diamond State Insurance Co. v. Rebel Oil Co.*, 157 F.R.D. 691, 697 (D. Nev. 1994) for the proposition that seeking duplicative discovery from JLL Inc. should be permitted because "documents maintained in the files of each entity may not be identical." But that case is distinguishable because it involved litigation between an insurer (Diamond State) and a policy holder where the subpoena sought documents from the insurance agent who directly negotiated the terms of the policy at issue, and where there was evidence that the agent might have unique files due to the "the manner in which underwriting guidelines have been filed." *Id.* And, even then, in order to "limit the unnecessary production of identical information by a non-party," the court required only production of documents that had not already been produced by Diamond State. *Id.*

Switch attempts to absolve itself of the requirement to avoid duplicative discovery by protesting that "[d]iscovery from Defendants has proceeded slowly" and that the Court only "recently" issued an Order to address that "discovery impasse" (this references, ECF No. 65, which was issued over four months ago on November 19, 2019). Mot. at 6:10-12. Based on that, Switch claims that it is "impossible to determine what documents Defendants have and will be able to produce." *Id.* at 14-15. Far from justifying the Subpoena, this only further confirms that the alleged nexus of JLL to this matter remains purely speculative and that no evidence establishing such a connection has emerged. Moreover, to the extent that the parties have pursued discovery "slowly," that should not open the door to take discovery from third parties, as presumably this delay could only be due to either Switch's own lack of action or its inability to overcome well-founded objections by the Defendants.

**D.     The Subpoena Seeks The Production of the Confidential and Trade Secret Information of JLL and Its Customers to a Competitor Without Substantial Need.**

Compounding its other flaws, it is clear that the Subpoena seeks competitively sensitive confidential information and trade secrets. Switch does not have a substantial need to access that information, and JLL Inc. should not have to produce it.

Where a subpoenaed party meets th[e] initial burden of showing the information is a trade secret or confidential commercial information, 'the burden shifts to the requesting party to show a substantial need for the testimony or material that cannot be otherwise met without the undue hardship.'" *Sci. Games Corp. v. AGS LLC*, No. 2:17-cv-00343-JAD-NJK, 2017 WL 3013251, at *3-4 (D. Nev. July 13, 2017).  A "substantial need" means that the "the requested discovery is relevant and essential to a judicial determination of [the party's] case." *Id.* at *3 (citing *Upjohn Co. v. Hygieia Biological Labs.*, 151 F.R.D. 355, 358 (E.D. Cal. 1993)).  The Court must "balance the need for the trade secrets [or confidential information] against the claim of injury resulting from disclosure." *Id.*  Further, "[t]he determination of substantial need is particularly important in the context of enforcing a subpoena when discovery of a trade secret or confidential commercial information is sought from non-parties." *Id.* (citing *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 814 (9th Cir. 2003)); *see also Hickman v. Mead*, 2019 WL 3837784, at *2-3 (denying motion to compel enforcement of subpoena where issue "fail[ed] to demonstrate" how third parties confidential internal policies and procedures were relevant to claims).

Switch's sweeping document requests, which seek "all communications" over nearly a decade involving JLL Inc.'s customers and other third parties in the industry, squarely put the confidential information and trade secrets of JLL Inc. and its customers at issue.  Bauer Decl., ¶ 10.  Indeed, much of that information is confidential to multiple third parties and protected under non-disclosure agreements.  *Id.*  Switch knows this, but quibbles that the requests "say nothing about confidential information or trade secrets."  Mot. at 7:16-17.  Of course, Switch could not truly believe that in good faith; its Motion is littered with evidence that it is aware that Aligned/Inertech are competitors and that eBay, PayPal, and Uber are existing or potential customers of both companies or their clients.  Clearly, Switch knows that communications among those entities are competitively sensitive as to Switch.  Bauer Decl., ¶ 10.

In some cases, concerns about confidential information and trade secrets in discovery can be mitigated by the existence of a protective order.  This is not the case here, where the Protective Order (ECF No. 64) expressly allows Sam Castor, the Executive Vice President of Policy for Switch to view all documents, even if they are designated "HIGHLY CONFIDENTIAL."  By Mr.

1    Castor's admission, he has wide-ranging responsibilities at Switch including the negotiation of

2    "hundreds" of commercial contracts for the company.  As such, disclosure of information to him

3    means that a member of Switch's executive team involved in competitive decision making has full

4    access to it.

5         Switch has failed to show that it has any basis to believe that discovery from JLL Inc. is

6    proportional to the needs of the case, and it certainly has not met its burden to show that it has a

7    substantial need for discovery of confidential and trade secret documents from JLL Inc. and other

8    third parties.  For these reasons, the Court should deny Switch's Motion.

9
     **E.      Switch Improperly Designated The District Of Nevada As The Place Of**
10   **          Compliance on the Subpoena.**

11        Finally, Switch separately violated Rule 45 by designating Las Vegas, Nevada as the place

12   for compliance with the subpoena, thereby making this the Court of enforcement for the Subpoena.

13        "The territorial scope of the court's subpoena power is only limited by Rule 45(c), which

14   governs the place of compliance.  Rule 45(c) limits where a subpoena may order compliance to

15   protect a subpoenaed person by reducing the burden of complying with the subpoena." *NML*

16   *Capital Ltd. v. Republic of Argentina*, No. 2:14-cv-492-RFB-VCF, 2014 WL 3898021, at *10 (D.

17   Nev. Aug. 11, 2014) (citing *Regents of Univ. of Cal. v. Kohne,* 166 F.R.D. 463, 464 (S.D. Cal.

18   1996) (citing Fed. R. Civ. P. 45 advisory committee's note—1991 amendment)).  Accordingly,

19   although a subpoena may be served anywhere in the world on a "national or resident of the United

20   States," it may only compel compliance within the state or within 100 miles of where "the person

21   resides, is employed, or regularly transacts business in person." *NML Capital*, 2014 WL 3898021,

22   at *10 (citing Fed. R. Civ. P. 45(c)(1)).

23        Here, the Court should also deny the Motion to Compel based on Switch's improper

24   designation of Las Vegas as the place of compliance. *See, e.g.*, *USSC Holdings Corp. v. TK Prods.*,

25   *LLC*, No. 3:16-cv-00398-RCJ-WGC, 2017 WL 7725266, at *2 (D. Nev. Jan. 26, 2017) (denying

26   motion to compel enforcement of subpoena demanding documents in part because the place of

27   compliance was improper).  Switch subpoenaed JLL Inc. to produce documents in the District of

28   Nevada, thus setting the place of compliance where JLL Inc. neither resides nor regularly transacts

1   business.  Arnold Decl. ¶¶ 3-4. While Switch contends that JLL Inc. does business in Nevada, the

2   only evidence it cites are the office locations of JLL Americas in Nevada.  ECF No. 66-1 (Castor

3   Decl. ¶ 6).  This is insufficient to show that JLL Americas' parent JLL Inc. regularly transacts

4   business, or resides, in the District of Nevada.  It was thus improper for Switch to issue a Subpoena

5   to JLL Inc. designating the place of compliance in Las Vegas.

6   **IV.     CONCLUSION**

7          Multiple years into Switch's case against Defendants, it appears that it has yet to uncover

8   any evidence substantiating its claims against Defendants and is now trying to misuse the discovery

9   process to try to develop new claims against third parties and/or as a means to access competitively

10  sensitive information for business purposes.  When JLL Inc. confronted Switch with its objections

11  on these grounds, Switch was unable to identify a proper basis for the Subpoena and also refused to

12  consider narrowing it.  For all the reasons discussed herein, the Subpoena plainly violates Rule 45

13  and 26 and the Motion to Compel should be DENIED.

14

15  Dated:  April 9, 2020.                    Respectfully submitted,

16                                            **JOLLEY URGA WOODBURY & HOLTHUS**
                                              WILLIAM R. URGA

17                                            **ARNOLD & PORTER KAYE SCHOLER LLP**
18                                            MICHAEL A. BERTA (*pro hac vice* forthcoming)
                                              JOSEPH R. FARRIS (*pro hac vice* forthcoming)
19

20                                            By:  /s/ *William R. Urga*
                                                   WILLIAM R. URGA
21

22                                            *Attorneys for Third Party*
                                              *JONES LANG LASALLE, INC.*

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of the foregoing **JONES LANGE LASALLE, INC.'S OPPOSITION TO PLAINTIFF SWITCH, LTD.'S MOTION TO COMPEL THIRD PARTY JONES LANG LASALLE TO PROVIDE REQUESTED DOCUMENTS** via the Court's CM/ECF system on April 9, 2020.

/s/ *William R. Urga*
WILLIAM R. URGA