SAMUEL CASTOR, ESQ.
Nevada Bar No. 11532
ANNE-MARIE BIRK, ESQ.
Nevada Bar No. 12330
**SWITCH, LTD.**
7135 South Decatur Blvd.
Las Vegas, Nevada 89118
Telephone: (702) 444-4111
policy@switch.com

MARK A. HUTCHISON
Nevada Bar No. 4639
JACOB A. REYNOLDS
Nevada Bar No. 10199
PIERS R. TUELLER
Nevada Bar No. 14633
**HUTCHISON & STEFFEN, PLLC**
Peccole Professional Park
10080 West Alta Drive, Suite 200
Las Vegas, Nevada 89145
Telephone: (702) 385-2500
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| SWITCH, LTD., a Nevada limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>STEPHEN FAIRFAX; MTECHNOLOGY; and DOES 1 through 10; ROE ENTITIES 11 through 20, inclusive,<br><br>Defendants. | CASE NO. 2:17-cv-02651-GMN-EJY<br><br>**REPLY IN SUPPORT OF SWITCH, LTD.'S MOTION TO COMPEL THIRD-PARTY JONES LANG LASALLE TO PROVIDE REQUESTED DOCUMENTS** |

Plaintiff Switch, Ltd., by and through counsel of record, hereby file their reply in support of their motion to compel third-party Jones Lang LaSalle (hereinafter "JLL") to provide documents requested in response to the subpoena.

///

///

1

# MEMORANDUM OF POINTS AND AUTHORTIIES

## I. INTRODUCTION

Switch is the operator of several data centers and is a colocation services provider. The technology and designs specific to the datacenter industry derive independent economic value in that they are trade secrets, which offer unparalleled economic value and reduce the overall cost of a customer's ownership of hundreds of billions of dollars of computer equipment as uniquely offered by Switch. Switch has over 500 patented and patent pending designs, and historically filed its pending patents in an unpublished format to preserve their trade secret status. These confidential, trade secret, and design features are unique to Switch, provide millions of dollars of energy and utility savings, and as such are constantly physically and electronically guarded, hidden from public, under 24/7 security monitoring, and disclosed only to those who sign Non-Disclosure Agreements to maintain confidentiality.

Defendants signed Plaintiff's Non-Disclosure Agreement and toured Switch's facilities, including confidential design features Plaintiff maintained as trade secrets. As alleged in Plaintiff's Complaint, Defendants misappropriated, are misappropriating, and/or are likely to misappropriate Switch's confidential, trade secret information. Defendants have resisted discovery requests from Plaintiff for information relevant to resolve its claims against Defendants. Plaintiffs now seek discovery from third-party JLL who works as a broker for data center users. Switch has a good faith believe that JLL has regular correspondence with Defendants and their mutual clients (e.g. Uber, PayPal, Aligned). Despite this clear factual nexus, JLL has argued and continues to insist that it should not be required to produce *any* documents to Plaintiff.

Now after over a year of discovery, Switch has produced approximately 2,013 pages of documents and has produced thousands more for on-site inspection consistent with the Protective Order. (SWITCH 000001-002013). Conversely, Defendants have produced approximately 40 documents comprising 173 pages (MTECH000001-MTECH000173). Defendants' continue to resist production and clearly have resisted adequately producing documents under Fed. R. Civ. P. 26 and 34. As such, Plaintiff subpoenaed documents from third party, JLL as follows:

///

2

**DOCUMENTS REQUESTED**
1. All communications with any employee, officer, or representative of **MTechnology**, including **Stephen Fairfax**, including but not limited to, emails to or from addressees ending with the address "@mtechnology.net") from January 1, 2011 to present, regarding Switch.
2. All communications with any employee, officer, or representative of **Inertech** from January 1, 2011 to present, regarding **Switch**.
3. All communications with any employee, officer, or representative of **Uber** from January 1, 2011 to present, regarding **Switch**.
4. All communications with any employee, officer, or representative of **eBay** from January 1, 2011 to present, regarding **Switch**.
5. All communications with any employee, officer, or representative of **PayPal** from January 1, 2011 to present, regarding **Switch**.
6. All communications with any employee, officer, or representative of **Aligned** from January 1, 2011 to present, regarding **Switch**.
7. All communications with any employee, officer, or representative of **Aligned Energy** from January 1, 2011 to present, regarding **Switch**.

As set forth above, each of the requests were narrowed as to time (2011 to the present) and did not seek *all* communications, but rather only sought the communications regarding Plaintiff Switch. Likewise, on October 30, 2019 (see **Exhibit 1**), Plaintiff's counsel Mr. Castor offered to discuss potential search terms regarding the documents requested.

Despite repeatedly extending the response deadline, JLL simply refused to provide any documents, propose any search terms, or suggest any response other than improper and boilerplate objections. Specifically, JLL refused to respond to the subpoena because it asserted Switch could "obtain the information from another party" and as noted in October 30, 2019 email (**Exhibit 1**).

Plaintiff's counsel addressed each of the concerns. JLL provided no substantive response. Addressing the objection that the requests were "not reasonably limited in time" Mr. Castor noted, each of the requests used the date range "January 1, 2011 to the present. . . a reasonable date range . . . less than ten years." *See* **Exhibit 1**. Likewise, "the facts at issue arose in early 2011 and again in 2015 and again in 2018" justifying this search window. Mr. Castor further noted communications "between your client and Fairfax, and the other witnesses in this case are presumably ongoing." *Id.* And that the request is reasonable because "this matter involves hundreds of millions of dollars of contracts and intellectual property. As such, we are entitled to this widow, as it is 'proportional to the needs of the case'" *Id.*

///

Mr. Castor also noted that the requests were narrowed in subject matter as necessarily between Switch and another party, and could be subject to a protective order and labeled as "Confidential Attorneys Eyes Only." *Id.* JLL's only response was a <u>flat</u> refusal to provide any documents. JLL has continued to refuse to provide <u>any</u> documents, claiming Switch is engaged in a fishing expedition and its subpoena is not narrowly tailored. And now, most curiously, Defendants have also filed an opposition to a subpoena claiming Switch's subpoena is simply a fishing exercise.

## II.     LEGAL ARGUMENT

### A. The Facts of this Case Justify the Relevance, Importance, and Proper Proportionality of Switch's Third-Party Subpoena to JLL.

Federal Rule of Civil Procedure 26 governs discovery and states, in relevant part:

> Unless otherwise limited by court order, the scope of discovery is as follows: *Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action,* the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1) (emphasis added). As such, the appropriateness of discovery is considered for <u>relevance, importance, and proportional</u>. Likewise, Local Rule 1-1 (b) requires attorneys and litigants to consider the means for reducing costs. See LR 1-1 (2019).

Here, Switch's third-party subpoena complies with Rule 26 and LR 1-1 because the subpoena seeks relevant information that is important and tailored in a way that is proportional to the case. Specifically, Switch is seeking information from third-party JLL, to support its trade secret infringement claims against Defendants. The requests do not seek *all* communications but rather just communications between JLL and Defendants, about Switch. Likewise, the subpoena to JLL similarly seeks information sought of Defendants, as Switch is trying to gain additional data regarding (and cross check the substance and scope of) Defendant's production to Switch.

Since at least 2011 to the present, JLL and Defendants have worked together, in concert, for various entities including (Uber, eBay, Paypal, and Aligned and its affiliates Inertech and Aligned Energy). In 2011, eBay retained MTech to evaluate Switch's Las Vegas "NAP" facility, causing Switch

to give Mr. Fairfax (as MTech's President) a tour of Switch's facility and access to Switch's designs. (*See* Fairfax Declaration, Dkt. #68-1 at ¶14.) Defendants also analyzed Aligned's data center located in Plano, Texas. (*See* Fairfax Declaration, Dkt. #68-1 at ¶11). Aligned later opened its data center located in Phoenix, Arizona. Mr. Fairfax (on behalf of MTech) toured Aligned's Phoenix facility. (*See* Fairfax Declaration, Dkt. #68-1 at ¶12.) During that tour, he noted significant design change from Aligned's Plano facility that would have material effects on the reliability of the data center. (*See id.*) JLL published an advertisement attributing a quote to Defendant Fairfax describing Aligned's Phoenix, Arizona data center as having "One of the most reliable cooling & power generation platforms ever studied." (*See* Fairfax Declaration, Dkt. #68-1 at ¶9.)[1].

Likewise, JLL has promoted Defendant as an industry expert with unique knowledge. (*See* Fairfax Declaration, Dkt. #68-1 at ¶9.). Working for Uber, eBay and Paypal, both Defendants and JLL have evaluated Switch and its data center designs and shared their consulting advice with prospective customers Uber, eBay and Paypal. Switch has a more than reasonable belief that Switch's trade secret and patent pending designs, inspected by Defendants, were discussed with JLL. Switch also believes these details were discussed in violation of the breach of its agreements with Defendants, to secure strategic advantage in luring Uber, eBay, and Paypal away from Switch and to competitive providers in other parts of the United States.

The factual nexus is clear. JLL and Defendants have interactions and relevant discoverable data that undergirds the heart of the breach of contract, and trade secret claims in this case. And, Switch's subpoena is reasonably proportionate given the millions of dollars at stake in this case. Defendants rush to aid JLL to prevent <u>any</u> discovery, supports this theory. Therefore, the Motion to Compel should be granted.

///

---

[1] Switch notes that Mr. Fairfax's declaration (e.g. Par. 24) discusses settlement conversations between the parties, which are incorrectly characterized and regardless or substance, prohibited from use as evidence. As such, Switch asks the Court to disregard this evidence and if necessary, reserves the right to file a separate motion to strike Mr. Fairfax's declaration. Switch also notes that Mr. Fairfax's declaration claims he's never designed a data center, when the Complaint in this matter contains video evidence of him giving a testimonial that he designed the Aligned Data Center and had a "seat at the table" at the "blank page stage." *See* Complaint, Dkt. #1-1, pg. 5, lines 2-13.

**B. JLL's Attacks on Switch's Motive Are Misplaced as Documents Requested by Plaintiff Are Relevant to Prove Its Claim Against Defendants.**

In its Response to Plaintiff's Motion to Compel JLL to Produce Documents, Defendant speculates about Switch's motives for obtaining the requested documents. Switch is pursuing the requested documents to prove its case against Defendants. The discovery is not for an improper purpose. Nor is there any proof of ill motive. This is not a "fishing expedition", but rather a reasonable discovery exercise to fully understand the clear nexus between JLL, Defendant and Aligned as Switch pursues its claims against Defendants.

Under Federal Rule of Civil Procedure 26(g), by signing a discovery request, "an attorney or party certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry…it is…not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Switch did not subpoena JLL to harass, cause unnecessary delay, or to needlessly increase the cost of litigation. Switch is not merely using the current action to build a future case against JLL.

Switch reasonably believes that JLL has information that is relevant to the current case as described above. To wit, JLL published an advertisement attributing a quote to Defendant Fairfax describing Aligned's Phoenix, Arizona data center as having "One of the most reliable cooling & power generation platforms ever studied." (*See* Fairfax Declaration, Dkt. #68-1 at ¶9.) Defendant Fairfax now denies that he ever said or wrote the words quoted and attributed to him by JLL. (*See* Fairfax Declaration, Dkt. #68-1 at ¶10.) Switch is entitled to "obtain discovery regarding any non-privilege matter that is relevant" to its claims. And per Rule 26, "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable."

Switch believes the information is not only discoverable, but admissible. The united front of silence maintained by Defendants and JLL is most troubling and cause for alarm.

Switch notes that JLL's discovery is important now more than ever, as Defendants have also continued to stonewall Switch's requests for production. (*See* **Exhibit 2**). It is clear that both JLL and Defendants are attempting to simply prevent *any* evidence from being discovered in this matter. Switch can only speculate as to the motive for this stonewalling technique. While Switch appreciates

6

it can bring a motion for negative inference or adverse inference as it prepares for trial, Switch prays the Court grant its Motion to Compel and ensure that the discovery sought is allowed, so the parties can conclude discovery and seek resolution of this case through settlement discussion or further litigation.

Plaintiff has offered to add JLL to the protective order and JLL should be compelled to produce the documents sought in the subpoena duces tecum. But JLL has remained insistent, no discovery will be provided.

### III.   CONCLUSION

An order to compel third-party Jones Lang LaSalle to provide requested documents is warranted based on the clear factual nexus between JLL and Defendants and Switch. Switch's request is reasonably tailored, designed to secure discoverable and relevant information, and is proportionate to the material nature of this case (millions of dollars in potential damages). In light of the foregoing, Plaintiffs respectfully request that this Court enter an order compelling Jones Lang LaSalle to provide requested documents in response to Switch's subpoena duces tecum.

DATED this 10th day of April, 2020.

**SWITCH, LTD.**

　　/s/: *Samuel Castor*
SAMUEL CASTOR, ESQ.
Nevada Bar No. 11532
ANNE-MARIE BIRK, ESQ.
Nevada Bar No. 12330
7135 South Decatur Blvd.
Las Vegas, Nevada 89118

MARK A. HUTCHISON
Nevada Bar No. 4639
JACOB A. REYNOLDS
Nevada Bar No. 10199
PIERS R. TUELLER
Nevada Bar No. 14633
**HUTCHISON & STEFFEN, PLLC**
Peccole Professional Park
10080 West Alta Drive, Suite 200
Las Vegas, Nevada 89145
*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

Pursuant to F.R.C.P. 5(b), I hereby certify that on this 10th day of April, 2020, I served a true and correct copy of the above document, entitled **REPLY IN SUPPORT OF SWITCH, LTD.'S MOTION TO COMPEL THIRD-PARTY JONES LANG LASALLE TO PROVIDE REQUESTED DOCUMENTS**, via the Court's electronic filing/service system (CM/ECF) to all parties on the current service list.

                                        /s/: *Tanya Paonessa*
                                      An agent of SWITCH, LTD.