SAMUEL CASTOR, ESQ.
Nevada Bar No. 11532
ANNE-MARIE BIRK, ESQ.
Nevada Bar No. 12330
**SWITCH, LTD.**
7135 South Decatur Blvd.
Las Vegas, Nevada 89118
Telephone: (702) 444-4111
policy@switch.com

MARK A. HUTCHISON
Nevada Bar No. 4639
JACOB A. REYNOLDS
Nevada Bar No. 10199
PIERS R. TUELLER
Nevada Bar No. 14633
**HUTCHISON & STEFFEN, PLLC**
Peccole Professional Park
10080 West Alta Drive, Suite 200
Las Vegas, Nevada 89145
Telephone: (702) 385-2500
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| SWITCH, LTD., a Nevada limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>STEPHEN FAIRFAX; MTECHNOLOGY; and DOES 1 through 10; ROE ENTITIES 11 through 20, inclusive,<br><br>Defendants. | CASE NO. 2:17-cv-02651-GMN-EJY<br><br>**REPLY IN SUPPORT OF SWITCH, LTD.'S MOTION TO COMPEL THIRD-PARTY JONES LANG LASALLE TO PROVIDE REQUESTED DOCUMENTS IN RESPONSE TO OPPOSITION FILED BY THIRD-PARTY JONES LANG LASALLE** |

Plaintiff Switch, Ltd., by and through counsel of record, hereby files its reply in support of its motion to compel third-party Jones Lang LaSalle (hereinafter "JLL") in response to opposition filed by Jones Lang LaSalle (Dkt. #71) to provide documents requested in response to the subpoena.

///

///

1

## MEMORANDUM OF POINTS AND AUTHORTIIES

### I. BACKGROUND

Plaintiff seeks discovery from third-party JLL who works as a broker for data center users and operators, including those services by Defendant, like Aligned Data Centers. Given the shared clients, Switch has a good faith belief that JLL has regular correspondence with Defendants and their mutual clients (e.g. Uber, PayPal, and Aligned). Despite this clear factual nexus, JLL has argued and continues to insist that it should not be required to produce *any* documents to Plaintiff.

After over a year of discovery, Switch has produced approximately 2,013 pages of documents and has produced thousands more for on-site inspection consistent with the Protective Order. (SWITCH 000001-002013). Conversely, Defendants have produced approximately 40 documents comprising 173 pages (MTECH000001-MTECH000173). In the course of discovery, Plaintiff subpoenaed documents from third party, JLL. Each of the requests were narrowed as to time (2011 to the present) and did not seek *all* communications, but rather only sought the communications regarding Plaintiff Switch between certain entities to ensure the requests were not overly broad. Likewise, on October 30, 2019 (see **Exhibit 1**), Plaintiff's counsel Mr. Castor offered to discuss potential search terms regarding the documents requested.

Despite repeatedly extending the response deadline and offering to limit the scope of the subpoena even further, JLL simply refused to provide *any* documents, propose any search terms, or suggest any response other than improper and boilerplate objections. Specifically, JLL refused to respond to the subpoena because it asserted Switch could "obtain the information from another party" and as noted in October 30, 2019 email (**Exhibit 1**). Plaintiff was concerned as such flat refusal to produce any document in response to such narrowly tailored requests suggests JLL is worried about providing data that exposes its partner, Steven Fairfax.

Through various meet and confer conferences, Plaintiff's counsel attempted to address each of the concerns with JLL, but JLL still provided no substantive response. Addressing the objection that the requests were "not reasonably limited in time" Mr. Castor noted, each of the requests used the date range "January 1, 2011 to the present. . . a reasonable date range . . . less than ten years." *See* **Exhibit 1**. Likewise, "the facts at issue arose in early 2011 and again in 2015 and again in 2018"

2

justifying this search window. Mr. Castor further noted given the factual nexus between JLL and Defendants, communications "between your client and Fairfax, and the other witnesses in this case are presumably ongoing." *Id.* And that the request is reasonable because "this matter involves hundreds of millions of dollars of contracts and intellectual property. As such, we are entitled to this widow, as it is 'proportional to the needs of the case'" *Id.*

Mr. Castor also noted that the requests had similarly been sought from Defendants, and the requests of JLL were even more narrowed in subject matter as necessarily between JLL and specific third parties, and could be subject to a protective order and labeled as "Confidential Attorneys Eyes Only" under the protective order filed in this case. *Id.* JLL's only response was a refusal to provide any documents. JLL has continued to refuse to provide *any* documents, claiming Switch is engaged in a fishing expedition and its subpoena is not narrowly tailored.

**II.     LEGAL ARGUMENT**

   **A.     The Discovery Sought is Relevant and Likely to Lead to the Discovery of Admissible Evidence**

In their Opposition to Switch's Motion to Compel, JLL claims that the discovery sought by Switch is sought for an improper purpose. This is simply false. In an attempt to avoid complying with a subpoena, JLL attempts to assign motives to Switch that do not exist by taking comments out of context and attempting to confuse the issue. The law in this area is simple and clear.

Federal Rule of Civil Procedure 26(b) "allows discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Kormos v. Sportsstuff, Inc.*, 2007 WL 2571969, at *1 (E.D. Mich. Sept. 4, 2007) (Majzoub, Maj. J.). In resolving this discovery dispute, "[t]he Court is guided by the strong, overarching policy of allowing *liberal* discovery." *Id* (emphasis added). Although JLL attempts to apply a diversion tactic by quoting statements made out of context, the clear issue remains whether Switch is entitled to the discovery. Here, the requested documents are reasonably calculated to lead to the discovery of admissible evidence and are not sought for an improper purpose because Switch is simply seeking discovery from a third party witness in this case to cross reference the data provided by JLL with the

3

1  data provided (or not provided) by Defendants. These materials will be used for further discovery,
2  depositions, and motion practice, and facilitate proper adjudication of this matter on the merits.

3  Under Federal Rule of Civil Procedure 26(g), by signing a discovery request, "an attorney or
4  party certifies that to the best of the person's knowledge, information, and belief formed after a
5  reasonable inquiry…it is…not interposed for any improper purpose, such as to harass, cause
6  unnecessary delay, or needlessly increase the cost of litigation." Switch did not subpoena JLL to
7  harass, cause unnecessary delay, or to needlessly increase the cost of litigation. Switch is not merely
8  using the current action to build a future case against JLL – rather Switch's goal is discovery of all
9  relevant facts to assist the trier of fact.

10  Switch reasonably believes that JLL has information that is relevant to the current case as
11  described above. And the factual nexus is obvious. To wit, JLL published an advertisement quoting
12  Defendant Fairfax describing Aligned's Phoenix, Arizona data center as having "One of the most
13  reliable cooling & power generation platforms ever studied." (*See* Fairfax Declaration, Dkt. #68-1 at
14  ¶9.) Defendant Fairfax now denies that he ever said or wrote the words quoted and attributed to him
15  by JLL. (*See* Fairfax Declaration, Dkt. #68-1 at ¶10.) Switch is entitled to "obtain discovery regarding
16  any non-privilege matter that is relevant" to its claims including this factual dissonance. See Federal
17  Rule of Civil Procedure 26(b). And Switch is entitled to evaluate similar surrounding facts. As such,
18  the Court should disregard JLL's diversion strategy and the Motion to Compel should be granted.

19  **B.    The Discovery Sought is Narrowly Tailored and does not Impose an Undue Burden on JLL**
20

21  Switch's third-party subpoena complies with Rule 26 and LR 1-1 because the subpoena seeks
22  relevant information that is important and tailored in a way that is proportional to the case. At no
23  time does JLL explain that the production itself is in any way unduly burdensome. A "party opposing
24  discovery has the burden of showing that it is irrelevant, overly broad, or unduly burdensome."
25  *McCall v. State Farm Mut. Auto. Ins. Co.,* Case No.: 2:16-cv-01058-JAD-GWF, 8 (D. Nev. Jul. 26, 2017)
26  (*citing Graham v. Casey's General Stores*, 206 F.R.D. 251, 253-4 (S.D.Ind. 2000); *Fosbre v. Las Vegas Sands
27  Corp.*, 2016 WL 54202, at *4 (D.Nev. Jan. 5, 2016); *Izzo v. Wal-Mart Stores, Inc.*, 2016 WL 593532, at
28  *2 (D.Nev. Feb. 11, 2016).

4

1    JLL's Opposition, objections, and communications fail to meet this burden. Although they
2  make much of case law claiming that Switch's subpoena requests themselves are inherently unduly
3  burdensome, by pointing to *Greenawalt Revocable Tr. v. Brown*, No. 2:12-cv-01983-LRH, 2013 WL
4  6844760, at *3 (D. Nev. Dec. 19, 2013). *See* Opp. Pg. 8, Ln. 9 their reliance is misplaced. It is true,
5  the court held "[d]iscovery requests seeking irrelevant information are inherently undue and
6  burdensome.") (citing *Compaq Computer Corp. v. Packard Bell Elecs. Inc.*, 163 F.R.D. 329, 335–36 (N.D.
7  Cal. 1995) ("Obviously, if the sought-after documents are not relevant nor calculated to lead to the
8  discovery of admissible evidence, then any burden whatsoever imposed upon [the non-party] would
9  be by definition 'undue.'") (emphasis omitted)). Here the matter is not unduly burdensome because
10 Switch is seeking relevant information that is reasonably calculated to lead to the discovery of
11 admissible evidence. Switch seeks information regarding the factual nexus between the various parties.
12 These requests are narrowly tailored to address only communications regarding Switch during the
13 relevant time period. To facilitate rapid discovery and preserve judicial economy, Switch offered to
14 facilitate even narrower search terms to accommodate JLL and JLL simply refused.

15   Given the narrow tailoring of the subpoena, it should be a relatively straightforward matter
16 for JLL to search for communications between Uber, eBay, Paypal, and Aligned and its affiliates
17 Inertech and Aligned Energy from 2010 to 2020 and filter their results by whether the communication
18 relates to Switch. JLL has not explained how searching for these communications will be burdensome.
19 "[C]onclusory and speculative statements of harm, inconvenience, and expense…do not justify
20 quashing [a] subpoena[]. *Playstudios, Inc. v. Centerboard Advisors, Inc.*, No. 2:18-cv-1423-JCM-NJK, 2019
21 WL 6493926, at *5 (D. Nev. Dec. 3, 2019). The communications sought be Switch are relevant to
22 determine what JLL told customers and business associates regarding Switch during the period when
23 Defendants, who have clear factual nexus with JLL, were misappropriating Switch's trade secrets.
24 Therefore, JLL should be compelled to produce the documents sought in the subpoena duces tecum.

25   Alternatively, JLL attempts to argue that the production would only produce irrelevant
26 documents. This, again, is not accurate. Switch is seeking information from third-party JLL, to
27 support its trade secret infringement claims against Defendants. The requests do not seek *all*
28 communications but rather just communications between JLL and Defendants, about Switch with

5

1  specific third parties (Uber, eBay, Paypal, and Aligned and its affiliates Inertech and Aligned Energy). Likewise, the subpoena to JLL similarly seeks information sought of Defendants, as Switch is trying to gain additional data regarding (and cross check the substance and scope of) Defendant's production to Switch.

Since at least 2011 to the present, JLL and Defendants have worked together, in concert, for various entities including (Uber, eBay, Paypal, and Aligned and its affiliates Inertech and Aligned Energy). In 2011, eBay retained MTech to evaluate Switch's Las Vegas "NAP" facility, causing Switch to give Mr. Fairfax (as MTech's President) a tour of Switch's facility and access to Switch's designs. (*See* Fairfax Declaration, Dkt. #68-1 at ¶14.) Defendants also analyzed Aligned's data center located in Plano, Texas. (*See* Fairfax Declaration, Dkt. #68-1 at ¶11). Aligned later opened its data center located in Phoenix, Arizona. Mr. Fairfax (on behalf of MTech) toured Aligned's Phoenix facility. (*See* Fairfax Declaration, Dkt. #68-1 at ¶12.) During that tour, he noted significant design change from Aligned's Plano facility that would have material effects on the reliability of the data center. (*See id.*) JLL published an advertisement attributing a quote to Defendant Fairfax describing Aligned's Phoenix, Arizona data center as having "One of the most reliable cooling & power generation platforms ever studied." (*See* Fairfax Declaration, Dkt. #68-1 at ¶9.)[1].

Likewise, JLL has promoted Defendant as an industry expert with unique knowledge. (*See* Fairfax Declaration, Dkt. #68-1 at ¶9.). Working for Uber, eBay and Paypal, both Defendants and JLL have evaluated Switch and its data center designs and shared their consulting advice with prospective customers Uber, eBay and Paypal. Switch has a more than reasonable belief that Switch's trade secret and patent pending designs, inspected by Defendants, were discussed with JLL. Switch also believes these details were discussed in violation of the breach of its agreements with Defendants,

---

[1] Switch notes that Mr. Fairfax's declaration (e.g. Par. 24) discusses settlement conversations between the parties, which are incorrectly characterized and regardless or substance, prohibited from use as evidence. As such, Switch asks the Court to disregard this evidence and if necessary, reserves the right to file a separate motion to strike Mr. Fairfax's declaration. Switch also notes that Mr. Fairfax's declaration claims he's never designed a data center, when the Complaint in this matter contains video evidence of him giving a testimonial that he designed the Aligned Data Center and had a "seat at the table" at the "blank page stage." *See* Complaint, Dkt. #1-1, pg. 5, lines 2-13.

6

to secure strategic advantage in luring Uber, eBay, and Paypal away from Switch and to competitive providers in other parts of the United States.

The factual nexus is clear and justifies discovery. JLL and Defendants have had regular interactions which created relevant discoverable data that undergirds the heart of the breach of contract, and trade secret claims in this case. Defendant worked for Aligned, eBay, Paypal and Uber. JLL worked for Aligned, eBay, Paypal, and Uber. Switch's subpoena is reasonably proportionate given the millions of dollars at stake in this case given that nexus. Defendants rush to aid JLL to prevent *any* discovery regarding this nexus, supports this theory. Therefore, discovery is reasonably calculated to lead to the discovery of admissible evidence, and the Motion to Compel should be granted.

### C. Although not required, Switch did Seek the Same (and much more) Information from Plaintiff.

JLL devotes an entire quarter of its defense to the fact that it should not be required to produce the documents sought because Plaintiff has yet to seek the information from Defendants. First, this is patently false. Switch has issued three hundred sixteen (316) discovery requests via twenty five (25) interrogatories, one hundred ninety-seven (197) requests for admission, and ninety four (94) requests for production to both Defendants, Stephen Fairfax and MTechnologies. (The various requests are attached hereto as **Exhibit 2**.) Although Switch has produced thousands of pages of documents in this action, including hundreds of pages of its most sensitive and confidential highly technical designs to document the trade secrets misappropriated by Defendants, Defendants have only produced 40 documents comprising 173 pages (MTECH000001-MTECH000173), largely reproducing the very documents Plaintiffs produced in their initial disclosures.

In addition the standard asserted by JLL is mischaracterized. While it is true that the case cited disapproves of "duplicate requests for production of documents to which the opposing party has already objected, thereby forcing the party to once again object" in a manner that extends discovery (*see McCall v. State Farm Mut. Auto. Ins. Co.*, No. 2:16-cv-01058-JAD-GWF, 2017 WL 3174914, at *6) (D. Nev. July 26, 2017) this has to do with skirting a party's objections through additional discovery propounded on *that* party to avoid those objections. It does not prohibit seeking

7

discovery from a third party during normal discovery, noting that "[a]lthough a court may restrict discovery from non-parties on this basis, *it is not required to do so.*" *McCall v. State Farm Mut. Auto. Ins. Co.,* Case No.: 2:16-cv-01058-JAD-GWF, 9 (D. Nev. Jul. 26, 2017) (citing *Compass North Industries LLC v. Taylor*, 2014 WL 2779175, at *2 (D.Ariz. June 19, 2014)). In other words, the analysis in this case is irrelevant to the facts at play as suggested by JLL.

Here, the requests are not designed to circumvent Defendant's objections because the parties are working through their respective discovery objections and both sides are supplementing their respective productions. Moreover, Switch's requests simply seek information from JLL not to circumvent any unnamed objections but to cross reference the production by Defendants to facilitate discovery before depositions as discovery is ongoing in this case. Therefore, *McCall* should not be applied in this case.

Finally, Defendants' failure to produce any documents does not release JLL from the obligation to respond to the subpoena. Rather, the concerted effort to avoid *any* production in this matter seems to underscore the reason for discovery – as it appears quite clear that both Defendants and JLL are acting in concert to prevent exposure of their collaborative efforts to misappropriate Switch's trade secrets. And, even if JLL and Defendants produce same communications regarding Switch, it is highly unlikely that JLL's records would be identical given the ability for parties to forward emails, add internal commentary, or waive privilege when sharing or discussing discoverable data matters with others.

Likewise, Communications can be lost or deleted by one individual or entity and saved by another. *See Diamond State Ins. Co. v. Rebel Oil Co.*, 157 F.R.D. 691, 697 (D. Nev. 1994) ("documents actually maintained in the files of each entity may not be identical"). While JLL valiantly attempts to distinguish *Diamond State*, their attempts are not persuasive. The fact that *Diamond State* deals with an insurance carrier and its broker does not change the policy or the issues underlying the ruling. At no point does the *Diamond State* court limit its ruling to insurance carriers and its brokers. Switch should be permitted to retrieve communications from both Defendants and JLL to compare the results and ensure their completeness and accuracy. JLL should not be permitted to use Defendants' failure to produce documents as a smokescreen to entirely avoid any discovery.

**D.    JLL has not Demonstrated any Confidentiality or Trade Secret Information.**

"To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires: (i) disclosing a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 45(d)(3)(B). "A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must…**describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.**" Fed. R. Civ. P. 45(e)(2). (Emphasis added)

Under this rule, the party seeking to avoid disclosure must first establish that the information is a trade secret and then demonstrate that the disclosure might be harmful. Other than a blanket claim, JLL has done nothing to demonstrate the existence of trade secret information.

To the extent that there are trade secret documents to be disclosed, there is a strong protective order in place this matter. Protective orders are sufficient safeguards to allow the disclosure of trade secret information (shielded by attorneys' eyes-only protections to avoid abuse or misappropriation) and JLL does not attempt to argue otherwise. In fact, to the extent these communications between JLL and these parties contain trade secret information that also references Switch, such material would be relevant to this action, and merit the very discovery sought.

While JLL unjustifiably attempts to taint Mr. Castor by stating that he is a party to the protective order, Mr. Castor is an attorney in good standing in the state of Nevada and has done nothing to lead JLL to suppose that he would ever disclose trade secret information. Mr. Castor is a member of Switch Legal and the head of the litigation division. Such *ad hominem* attacks are unbecoming of legal professionals. As such this Court should disregard any claim related to Mr. Castor or the accusations that he will somehow violate the protective order, his Rule 11 professional obligations or do some inappropriate act with the discoverable information sought. Plaintiff has repeatedly offered to add JLL to the protective order and JLL should be compelled to produce the documents sought in the subpoena duces tecum.

///

Perhaps most compelling is that JLL not only is stonewalling Switch's requests, but engaged in the same stonewalling with the Court. Despite several meet and confer discussions, extensive efforts by Switch to preserve judicial economy, offers to add JLL to the protective Order, Switch's offer to consider search terms even more narrow than the already narrowly tailored request, and an impressive **153 page** Opposition to the Motion to Compel (including exhibits), JLL does not even do this Court the courtesy of describing the documents it seeks to withhold. JLL's absolute avoidance tactic should be viewed for what it is, a desire to avoid producing evidence that will inculpate its partner, Stephen Fairfax, and perhaps itself. Therefore, in the interest of enabling accurate factual discovery, JLL should be compelled to produce the documents sought in the subpoena duces tecum.

### E. Nevada was Properly Designated as the Location for Compliance with the Subpoena.

Lastly, JLL attempts to avoid any production by decrying the jurisdictional reach of this Court by pointing to California law. Namely, JLL asserts that "[t]he territorial scope of the court's subpoena power is only limited by Rule 45(c), which governs the place of compliance. Rule 45(c) limits where a subpoena may order compliance to protect a subpoenaed person by reducing the burden of complying with the subpoena." *NML Capital Ltd. v. Republic of Argentina*, No. 2:14-cv-492-RFB-VCF, 2014 WL 3898021, at *10 (D. Nev. Aug. 11, 2014) (citing *Regents of Univ. of Cal. v. Kohne*, 166 F.R.D. 463, 464 (S.D. Cal. 1996) (citing Fed. R. Civ. P. 45 advisory committee's note—1991 amendment)). Accordingly, although a subpoena may be served anywhere in the world on a "national or resident of the United States," it may only compel compliance within the state or within 100 miles of where "the person resides, is employed, or regularly transacts business in person." *NML Capital*, 2014 WL 3898021, at *10 (citing Fed. R. Civ. P. 45(c)(1)).

Here, Nevada is the properly designated location for compliance with the subpoena because Switch subpoena is to JLL as an individual and, Vegas is clearly within 100 miles of where "the person resides, is employed, or regularly transacts business in person." JLL has an entire website page dedicated to its Las Vegas office, showcasing at least 7 employees, and regularly transacted business

dealings and sales in Las Vegas[2]. Likewise, a quick Google search shows JLL has at least three corporate offices in Las Vegas per Google Maps.[3] While it is true that some of the individuals that may have information responsive to the subpoena may not be resident in Nevada, they certainly do "regular business" in Nevada, or else why would they discuss Switch in the emails, and why would JLL go to such lengths to avoid *any* response to a subpoena?

Lastly, this objection to the subpoena was not raised by JLL until this instant motion, several months after the subpoena was propounded, and after Switch and JLL had already exchanged extensive emails on October 30, 2019, and November 4, 2019, and had several meet and confer discussions on the matter including on October 25, 2019. *See* Declaration of Sam Castor attached herewith as **Exhibit 5**, ¶3. At no time during the extensive discussions was the jurisdictional concern raised by JLL. *See id.* Rather, it was not until after JLL saw the instant motion, that they raised the objection via correspondence. *See id*, at ¶4.

As such, any value in the objection has been clearly waived during the months of meet and confer (and months of delay tactics and smokescreen discussion implemented by JLL). Thus, this last argument is a last-minute procedural ploy contrived to avoid *any* production in this matter and obfuscate facts that will undoubtedly enlighten the trier of fact and support Switch's claims. *See* Declaration of Sam Castor attached herewith as **Exhibit 5**, ¶5. Therefore, this last minute, clearly waived, objection should be deemed waived, and irrelevant to the analysis at issue in this case.

### III.  CONCLUSION

An order to compel third-party Jones Lang LaSalle to provide requested documents is warranted based on the clear factual nexus between JLL and Defendants and Switch. Switch's request is reasonably tailored, designed to secure discoverable and relevant information, and is proportionate to the material nature of this case. Likewise, JLL has failed to meet its burden to avoid discovery in

---

[2] *See* https://www.us.jll.com/en/locations/west/**las-vegas** (a copy of which is attached herewith as **Exhibit 3**).
[3] *Id. See* **Exhibit 4** which is a Google search for JLL locations in Las Vegas and shows at least 3 locations.

this matter, and given the factual nexus between the Defendants, and JLL, including similar clients at issue in this matter, the subpoena is clearly justified. In light of the foregoing, Plaintiff respectfully requests that this Court enter an order compelling Jones Lang LaSalle to provide requested documents in response to Switch's subpoena duces tecum. Likewise, Switch is willing to waive a motion for costs and fees should JLL provide the documents on or before May 15, 2020; else Switch reserves its right to seek the same

DATED this 24th day of April, 2020.

**SWITCH, LTD.**

　　　　　　　　　　　　　　　　　　/s/: *Samuel Castor*
SAMUEL CASTOR, ESQ.
Nevada Bar No. 11532
ANNE-MARIE BIRK, ESQ.
Nevada Bar No. 12330
7135 South Decatur Blvd.
Las Vegas, Nevada 89118

MARK A. HUTCHISON
Nevada Bar No. 4639
JACOB A. REYNOLDS
Nevada Bar No. 10199
PIERS R. TUELLER
Nevada Bar No. 14633
**HUTCHISON & STEFFEN, PLLC**
Peccole Professional Park
10080 West Alta Drive, Suite 200
Las Vegas, Nevada 89145
*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

Pursuant to F.R.C.P. 5(b), I hereby certify that on this 24th day of April, 2020, I served a true and correct copy of the above document, entitled **REPLY IN SUPPORT OF SWITCH, LTD.'S MOTION TO COMPEL THIRD-PARTY JONES LANG LASALLE TO PROVIDE REQUESTED DOCUMENTS IN RESPONSE TO OPPOSITION FILED BY THIRD-PARTY JONES LANG LASALLE**, via the Court's electronic filing/service system (CM/ECF) to all parties on the current service list.

                           */s/: Tanya Paonessa*
                           An agent of SWITCH, LTD.