Exhibit 2

1  SAMUEL CASTOR, ESQ.
   Nevada Bar No. 11532
2  sam@switch.com
   ANNE-MARIE BIRK, ESQ.
3  Nevada Bar No. 12330
   abirk@switch.com
4  **SWITCH, LTD.**
   7135 South Decatur Blvd.
5  Las Vegas, Nevada 89118
   Telephone: (702) 444-4111
6  *Attorneys for Plaintiff*

7

8              **UNITED STATES DISTRICT COURT**

9                   **DISTRICT OF NEVADA**

10  SWITCH, LTD., a Nevada limited liability      CASE NO.:     2:17-cv-02651-GMN-VCF
    company,
11                                                 **PLAINTIFF'S FIRST SET OF**
                                                   **INTERROGATORIES TO**
12                      Plaintiff,                 **DEFENDANT, STEPHEN FAIRFAX**

13  vs.

14  STEPHEN FAIRFAX; MTECHNOLOGY; and
    DOES 1 through 10; ROE ENTITIES 11 through
15  20, inclusive,

16                      Defendants.

17

18  TO:    STEPHEN FAIRFAX, Defendant; and

19  TO:    RANDAZZA LEGAL GROUP, PLLC, Defendant's attorneys:

20          Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff, SWITCH,

21  LTD. ("Plaintiff"), by and through its counsel of record, hereby submit its First Set of Interrogatories

22  to Defendant, Stephen Fairfax. The following definitions and instructions apply to, and are deemed

23  incorporated in, each of the requests set forth.

24                        **GENERAL DEFINITIONS**

25          A.    The terms "you" and/or "your" means Stephen Fairfax, any and all predecessors-in-

26  interest, employees, agents, representatives, attorneys, or other persons or entities acting or

27  purporting to act for, on behalf of, or with, any or all of them.

28  ///

                                    1

B.      The term "Switch" means Switch, Ltd., and any and all predecessors-in-interest, and all of its past or present principals, members, employees, agents, representatives, attorneys, or other persons or entities acting or purporting to act for, on behalf of, or with, any or all of them. This term shall be inclusive of all Switch facilities located in Las Vegas, Reno, Atlanta, and Grand Rapids.

C.      The term "MTechnology" means MTechnology, and any and all predecessors-in-interest, and all of its past or present principals, members, employees, agents, representatives, attorneys, or other persons or entities acting or purporting to act for, on behalf of, or with, any or all of them.

D.      The term "Aligned" means Aligned Data Centers, LLC, and any and all predecessors-in-interest, and all of its past or present principals, members, employees, agents, representatives, attorneys, or other persons or entities acting or purporting to act for, on behalf of, or with, any or all of them.

E.      The term "Aligned Energy" means Aligned Energy Holdings, LP, and any and all predecessors-in-interest, and all of its past or present principals, members, employees, agents, representatives, attorneys, or other persons or entities acting or purporting to act for, on behalf of, or with, any or all of them.

F.      The term "Inertech" means Inertech, LLC, and any and all predecessors-in-interest, and all of its past or present principals, members, employees, agents, representatives, attorneys, or other persons or entities acting or purporting to act for, on behalf of, or with, any or all of them.

G.      The term "Uber" means Uber Technologies, Inc., Uber ATC, and any and all predecessors-in-interest, and all of its past or present principals, members, employees, agents, representatives, attorneys, or other persons or entities acting or purporting to act for, on behalf of, or with, any or all of them.

H.      The term "eBay" means eBay, and any and all predecessors-in-interest, and all of its past or present principals, members, employees, agents, representatives, attorneys, or other persons or entities acting or purporting to act for, on behalf of, or with, any or all of them.

I.      The term "PayPal" means PayPal, and any and all predecessors-in-interest, and all of its past or present principals, members, employees, agents, representatives, attorneys, or other

persons or entities acting or purporting to act for, on behalf of, or with, any or all of them.

J.     The term "Jones Lang LaSalle" means Jones Lang LaSalle Incorporated, JLL, and any and all predecessors-in-interest, and all of its past or present principals, members, employees, agents, representatives, attorneys, or other persons or entities acting or purporting to act for, on behalf of, or with, any or all of them.

K.     The term "person(s)" means natural persons, corporations, partnerships, limited liability companies, joint ventures, and any other entity recognized by law of whatever type, whatever form, and however nominated.

L.     The term "document" includes, but is not limited to, all written, printed, recorded or graphic matter, photographic matter, sound reproductions or other retrievable data (whether recorded, taped, or coded electrostatically, electromagnetically, digitally or otherwise) and any other data compilation from which information can be obtained or translated, if necessary, by the respondent into reasonably useable form from whatever source derived and however and by whomever prepared, produced, disseminated or made; without limiting the generality of the foregoing, the word "documents" includes correspondence, memoranda, email, facsimiles, reports, transcripts, notes, diaries, calendars, notebooks, minutes, diagrams, illustrations, photograph, telegram, written analysis, computer printouts, diskettes, CD-ROMS, hard drives, drawings, graphs, charts, videotapes, artwork, agreement, contract, memoranda made of any telephone communication or face-to-face oral meeting or conversation, and exemplars and any other writings of any nature whatsoever, whether or not divulged to other parties. The term further includes the original, any copy, and any draft versions thereof.

M.     The term "communication," and its plural or any synonym thereof, means any dissemination of information or transmission of a statement from one person to another, or in the presence of another, whether by written, oral, or electronic means or by action or conduct and shall include, but is not limited to, every discussion, conversation, conference, meeting, interview, memorandum, telephone call, and/or visit. The timeframe in question is January 1, 2011 to the present, and if questions arise as to scope for a particular Interrogatory, this timeframe should be applied unless stated otherwise.

3

## **INSTRUCTIONS**

1.      Each interrogatory calls not only for information known to you, but also for information available to you through reasonable investigation of your records and inquiry of your representatives, agents, members, and/or employees.

2.      Each interrogatory should be construed independently. No interrogatory should be construed by reference to any other interrogatory if doing so limits the scope of the response to such interrogatory.

3.      Where an interrogatory calls for a response in more than one part, each part should be separate so that the response is clearly understandable.

4.      If you cannot respond to any interrogatory in. full and complete detail, after exercising due diligence to secure the information to do so, you are to so state, respond to the extent possible, specify why you cannot respond to the remainder, and state whatever information or knowledge you have concerning the remaining portion and the facts upon which you base your response.

5.      If you object to an interrogatory, either in whole or in part, please set forth fully each and every objection, describing generally any information withheld and set forth the exact ground upon which you rely with such specificity as will permit the court to determine the legal sufficiency of your objection or position upon a motion to compel.

6.      The singular form of a word shall be interpreted as plural and the plural form of a word shall be interpreted as singular, whenever appropriate, in order to bring within the scope of these interrogatories any information or documents which might otherwise be considered beyond their scope.

7.      In responding to these interrogatories, provide all information available to you at the time the responses are made, including information in the possession of attorneys, officers, directors, employees, accountants, as well as any other agent of any sort and whether present or past.

8.      These interrogatories shall be deemed continuing in nature, requiring supplemental responses to each of these interrogatories with any further information you or your attorneys obtain between the time you serve your initial responses hereto and the time of trial.

///

## **INTERROGATORIES**

**INTERROGATORY NO. 1:**

Please identify any and all trade secret or confidential information and/or documents you accessed or acquired during your visits at and/or audits of Switch data center facilities from January 1, 2011 to present.

**INTERROGATORY NO. 2:**

Please identify the trade secret or confidential information and/or documents still in your possession following your visits at and/or audits of Switch data center facilities from January 1, 2011 to present.

**INTERROGATORY NO. 3:**

To the extent that you contend you did not share any of Switch's patent-pending technologies, technologies, inventions, trade secrets, and confidential information, with Aligned, Inertech, or any other data center or person, explain the basis of that contention.

**INTERROGATORY NO. 4:**

As to each and every denial of each allegation in Plaintiff's Complaint, state in specific and complete detail each and every fact or item of information known to you which in any way supports your denial of the allegation. This interrogatory seeks information as to each specific fact or fact known to you which you contend in any way denies an allegation against you.

**INTERROGATORY NO. 5:**

Describe all facts, circumstances, and information concerning your relationships with Aligned, Inertech, Paypal, Uber, eBay, and Jones Lang LaSalle, including the start date of those relationships, and the identity of any persons with involvement in, or personal knowledge of, the relationship.

**INTERROGATORY NO. 6:**

Describe all facts, circumstances, and information concerning any communications, including meetings, telephone calls, texts, or instant messages you have had with Aligned, Inertech, Paypal, Uber, eBay, and Jones Lang LaSalle, between January 1, 2011 to present, regarding your audit/tour

of Switch, and the identity of any persons with involvement in, or personal knowledge of, those conversations.

**INTERROGATORY NO. 7:**

Have you individually, or on behalf of MTechnology, received or intend to receive compensation and/or benefits from Aligned, Inertech, Paypal, Uber, eBay, and/or Jones Lang LaSalle? If so, please identify the nature, amount, date or expected date, and provider of each such source of compensation and/or benefit.

**INTERROGATORY NO. 8:**

Identify with specificity all designs and design options you offered (including facility designs, customer pods, number and size of ladder racks, existence or non-existence of ceiling grids, number and location of e-sync units, etc.) to Aligned and Inertech, from January 1, 2011 to present.

**INTERROGATORY NO. 9:**

Please state the names of all data center facilities for which you have evaluated or designed data center, cooling, power, and/or resiliency designs from January 1, 2011 to present.

**INTERROGATORY NO. 10:**

Identify all persons, including but not limited to, MTechnology's officers, directors, agents, and employees, both present and former, who are most knowledgeable concerning the development, design, production, sales, marketing, advertising, and promotion of products provided to Aligned and Inertech, from January 1, 2011 to present.

///
///
///
///
///
///
///
///
///

1   **<u>INTERROGATORY NO. 11</u>:**

2          Identify all computers and data storage devices, including but not limited to, desktop

3   computers, laptop computers, external hard drivers, flash or thumb drivers, and cellular devices in

4   your possession and/or control, from January 1, 2011 to the present.

5          DATED this 29th day of October, 2019.

6                                          **SWITCH, LTD.**

7

8                                          ___/s/:  Samuel Castor_____

9                                          SAMUEL CASTOR, ESQ.
                                           Nevada Bar No. 11532

10                                         ANNE-MARIE BIRK, ESQ.
                                           Nevada Bar No. 12330

11                                         7135 South Decatur Blvd.
                                           Las Vegas, Nevada 89118

12                                         *Attorneys for Plaintiff*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF SERVICE**

Pursuant to F.R.C.P. 5(b), I hereby certify that on this 29th day of October, 2019, I served a true and correct copy of the above document, entitled **PLAINTIFF'S FIRST SET OF INTERROGATORIES TO DEFENDANT, STEPHEN FAIRFAX**, to all parties, who are deemed to have consented to electronic service via their email, and via United States first-class mail, postage prepaid, as follows:

Marc J. Randazza, Esq.
Ronald D. Green, Esq.
Alex J. Shepard, Esq.
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, NV 89117
ecf@randazza.com
mjr@randazza.com
rdg@randazza.com
ajs@randazza.com
*Attorneys for Defendants*

_/s/: Tanya Paonessa_
An agent of SWITCH, LTD.

SAMUEL CASTOR, ESQ.
Nevada Bar No. 11532
sam@switch.com
ANNE-MARIE BIRK, ESQ.
Nevada Bar No. 12330
abirk@switch.com
**SWITCH, LTD.**
7135 South Decatur Blvd.
Las Vegas, Nevada 89118
Telephone: (702) 444-4111
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| SWITCH, LTD., a Nevada limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>STEPHEN FAIRFAX; MTECHNOLOGY; and DOES 1 through 10; ROE ENTITIES 11 through 20, inclusive,<br><br>Defendants. | CASE NO.:   2:17-cv-02651-GMN-VCF<br><br>**PLAINTIFF'S FIRST SET OF INTERROGATORIES TO DEFENDANT, MTECHNOLOGY** |

TO:    MTECHNOLOGY, Defendant; and

TO:    RANDAZZA LEGAL GROUP, PLLC, Defendant's attorneys:

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff, SWITCH, LTD. ("Plaintiff"), by and through its counsel of record, hereby submit its First Set of Interrogatories to Defendant, MTechnology. The following definitions and instructions apply to, and are deemed incorporated in, each of the requests set forth.

## <u>GENERAL DEFINITIONS</u>

A.    The terms "you" and/or "your" means Stephen Fairfax, any and all predecessors-in-interest, employees, agents, representatives, attorneys, or other persons or entities acting or purporting to act for, on behalf of, or with, any or all of them.

///

1

B.     The term "Switch" means Switch, Ltd., and any and all predecessors-in-interest, and all of its past or present principals, members, employees, agents, representatives, attorneys, or other persons or entities acting or purporting to act for, on behalf of, or with, any or all of them. This term shall be inclusive of all Switch facilities located in Las Vegas, Reno, Atlanta, and Grand Rapids.

C.     The term "MTechnology" means MTechnology, and any and all predecessors-in-interest, and all of its past or present principals, members, employees, agents, representatives, attorneys, or other persons or entities acting or purporting to act for, on behalf of, or with, any or all of them.

D.     The term "Aligned" means Aligned Data Centers, LLC, and any and all predecessors-in-interest, and all of its past or present principals, members, employees, agents, representatives, attorneys, or other persons or entities acting or purporting to act for, on behalf of, or with, any or all of them.

E.     The term "Aligned Energy" means Aligned Energy Holdings, LP, and any and all predecessors-in-interest, and all of its past or present principals, members, employees, agents, representatives, attorneys, or other persons or entities acting or purporting to act for, on behalf of, or with, any or all of them.

F.     The term "Inertech" means Inertech, LLC, and any and all predecessors-in-interest, and all of its past or present principals, members, employees, agents, representatives, attorneys, or other persons or entities acting or purporting to act for, on behalf of, or with, any or all of them.

G.     The term "Uber" means Uber Technologies, Inc., Uber ATC, and any and all predecessors-in-interest, and all of its past or present principals, members, employees, agents, representatives, attorneys, or other persons or entities acting or purporting to act for, on behalf of, or with, any or all of them.

H.     The term "eBay" means eBay, and any and all predecessors-in-interest, and all of its past or present principals, members, employees, agents, representatives, attorneys, or other persons or entities acting or purporting to act for, on behalf of, or with, any or all of them.

I.     The term "PayPal" means PayPal, and any and all predecessors-in-interest, and all of its past or present principals, members, employees, agents, representatives, attorneys, or other

2

persons or entities acting or purporting to act for, on behalf of, or with, any or all of them.

J.    The term "Jones Lang LaSalle" means Jones Lang LaSalle Incorporated, JLL, and any and all predecessors-in-interest, and all of its past or present principals, members, employees, agents, representatives, attorneys, or other persons or entities acting or purporting to act for, on behalf of, or with, any or all of them.

K.    The term "person(s)" means natural persons, corporations, partnerships, limited liability companies, joint ventures, and any other entity recognized by law of whatever type, whatever form, and however nominated.

L.    The term "document" includes, but is not limited to, all written, printed, recorded or graphic matter, photographic matter, sound reproductions or other retrievable data (whether recorded, taped, or coded electrostatically, electromagnetically, digitally or otherwise) and any other data compilation from which information can be obtained or translated, if necessary, by the respondent into reasonably useable form from whatever source derived and however and by whomever prepared, produced, disseminated or made; without limiting the generality of the foregoing, the word "documents" includes correspondence, memoranda, email, facsimiles, reports, transcripts, notes, diaries, calendars, notebooks, minutes, diagrams, illustrations, photograph, telegram, written analysis, computer printouts, diskettes, CD-ROMS, hard drives, drawings, graphs, charts, videotapes, artwork, agreement, contract, memoranda made of any telephone communication or face-to-face oral meeting or conversation, and exemplars and any other writings of any nature whatsoever, whether or not divulged to other parties. The term further includes the original, any copy, and any draft versions thereof.

M.    The term "communication," and its plural or any synonym thereof, means any dissemination of information or transmission of a statement from one person to another, or in the presence of another, whether by written, oral, or electronic means or by action or conduct and shall include, but is not limited to, every discussion, conversation, conference, meeting, interview, memorandum, telephone call, and/or visit. The timeframe in question is January 1, 2011 to the present, and if questions arise as to scope for a particular Interrogatory, this timeframe should be applied unless stated otherwise.

## INSTRUCTIONS

1.      Each interrogatory calls not only for information known to you, but also for information available to you through reasonable investigation of your records and inquiry of your representatives, agents, members, and/or employees.

2.      Each interrogatory should be construed independently. No interrogatory should be construed by reference to any other interrogatory if doing so limits the scope of the response to such interrogatory.

3.      Where an interrogatory calls for a response in more than one part, each part should be separate so that the response is clearly understandable.

4.      If you cannot respond to any interrogatory in. full and complete detail, after exercising due diligence to secure the information to do so, you are to so state, respond to the extent possible, specify why you cannot respond to the remainder, and state whatever information or knowledge you have concerning the remaining portion and the facts upon which you base your response.

5.      If you object to an interrogatory, either in whole or in part, please set forth fully each and every objection, describing generally any information withheld and set forth the exact ground upon which you rely with such specificity as will permit the court to determine the legal sufficiency of your objection or position upon a motion to compel.

6.      The singular form of a word shall be interpreted as plural and the plural form of a word shall be interpreted as singular, whenever appropriate, in order to bring within the scope of these interrogatories any information or documents which might otherwise be considered beyond their scope.

7.      In responding to these interrogatories, provide all information available to you at the time the responses are made, including information in the possession of attorneys, officers, directors, employees, accountants, as well as any other agent of any sort and whether present or past.

8.      These interrogatories shall be deemed continuing in nature, requiring supplemental responses to each of these interrogatories with any further information you or your attorneys obtain between the time you serve your initial responses hereto and the time of trial.

///

4

**INTERROGATORIES**

**INTERROGATORY NO. 1:**

As to each and every denial of each allegation in Plaintiff's Complaint, state in specific and complete detail each and every fact or item of information known to you which in any way supports your denial of the allegation. This interrogatory seeks information as to each specific fact or fact known to you which you contend in any way denies an allegation against you.

**INTERROGATORY NO. 2:**

Describe all facts, circumstances, and information concerning your relationships with Aligned, Inertech, Paypal, Uber, eBay, and Jones Lang LaSalle, including the start date of those relationships, and the identity of any persons with involvement in, or personal knowledge of, the relationship.

**INTERROGATORY NO. 3:**

Describe all facts, circumstances, and information concerning any communications, including meetings, telephone calls, texts, or instant messages you have had with Aligned, Inertech, Paypal, Uber, eBay, and Jones Lang LaSalle, between January 1, 2011 to present, regarding your audit/tour of Switch, and the identity of any persons with involvement in, or personal knowledge of, those conversations.

**INTERROGATORY NO. 4:**

Identify with specificity all designs and design options you offered (including facility designs, customer pods, number and size of ladder racks, existence or non-existence of ceiling grids, number and location of e-sync units, etc.) to Aligned and Inertech, from January 1, 2011 to present.

**INTERROGATORY NO. 5:**

Please state the names of all data center facilities for which you have provided designs from January 1, 2011 to present.

**INTERROGATORY NO. 6:**

Identify all computers and data storage devices, including but not limited to, desktop computers, laptop computers, external hard drivers, flash or thumb drivers, and cellular devices in your possession from January 1, 2011 to the present.

**INTERROGATORY NO. 7:**

Please identify any and all of the Professional Engineers who designed, signed, and/or sealed the plans and specifications for each of Aligned's data centers.

**INTERROGATORY NO. 8:**

With regard to your expert Julian Y. Rachman, PE's report dated October 10, 2019, please identify whether the image on Page 12 of the report is a digital rendering or a photograph.

**INTERROGATORY NO. 9:**

With regard to your expert Julian Y. Rachman, PE's report dated October 10, 2019, please identify where the image on Page 12 originated from.

**INTERROGATORY NO. 10:**

With regard to your expert Julian Y. Rachman, PE's report dated October 10, 2019, please identify the location of the data center floor depicted on Page 12 of the report.

**INTERROGATORY NO. 11:**

With regard to your expert Julian Y. Rachman, PE's report dated October 10, 2019, please identify the owner of the data center depicted on Page 12 of the report.

**INTERROGATORY NO. 12:**

With regard to your expert Julian Y. Rachman, PE's report dated October 10, 2019, please identify the operator of the data center depicted on Page 12 of the report.

**INTERROGATORY NO. 13:**

With regard to your expert Julian Y. Rachman, PE's report dated October 10, 2019, please identify who the "recognized manufacturer" is providing the design depicted on Page 12 of the report.

///
///
///
///
///
///

6

**INTERROGATORY NO. 14:**

Identify the amount nature, initial date of any and all financial interest (such as but not limited to stock, equity, units, or profit interests) you have in any of the following entities: Aligned, InterTech, Aligned Energy, or any other entity affiliated with any of the foregoing.

DATED this 29th day of October, 2019.

SWITCH, LTD.

_/s/: Samuel Castor_

SAMUEL CASTOR, ESQ.
Nevada Bar No. 11532
ANNE-MARIE BIRK, ESQ.
Nevada Bar No. 12330
7135 South Decatur Blvd.
Las Vegas, Nevada 89118
*Attorneys for Plaintiff*

7

**CERTIFICATE OF SERVICE**

Pursuant to F.R.C.P. 5(b), I hereby certify that on this 29th day of October, 2019, I served a true and correct copy of the above document, entitled **PLAINTIFF'S FIRST SET OF INTERROGATORIES TO DEFENDANT, MTECHNOLOGY**, to all parties, who are deemed to have consented to electronic service via their email, and via United States first-class mail, postage prepaid, as follows:

Marc J. Randazza, Esq.
Ronald D. Green, Esq.
Alex J. Shepard, Esq.
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, NV 89117
ecf@randazza.com
mjr@randazza.com
rdg@randazza.com
ajs@randazza.com
*Attorneys for Defendants*

_/s/: Tanya Paonessa_
An agent of SWITCH, LTD.

8

SAMUEL CASTOR, ESQ.
Nevada Bar No. 11532
sam@switch.com
ANNE-MARIE BIRK, ESQ.
Nevada Bar No. 12330
abirk@switch.com
**SWITCH, LTD.**
7135 South Decatur Blvd.
Las Vegas, Nevada 89118
Telephone: (702) 444-4111
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| SWITCH, LTD., a Nevada limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>STEPHEN FAIRFAX; MTECHNOLOGY; and DOES 1 through 10; ROE ENTITIES 11 through 20, inclusive,<br><br>Defendants. | CASE NO.:    2:17-cv-02651-GMN-VCF<br><br>**PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION TO DEFENDANT, STEPHEN FAIRFAX** |

TO:     STEPHEN FAIRFAX, Defendant; and

TO:     RANDAZZA LEGAL GROUP, PLLC, Defendant's attorneys:

Pursuant to Rule 36 of the Federal Rules of Civil Procedure, Plaintiff SWITCH, LTD. ("SWITCH"), by and through its counsel of record, submits its First Set of Requests for Admissions to Defendant, Stephen Fairfax ("FAIRFAX").

The following definitions and instructions apply to, and are deemed incorporated in, each of the requests set forth.

## **GENERAL DEFINITIONS**

A.     The terms "you" and/or "your" means Stephen Fairfax, any and all predecessors-in-interest, employees, agents, representatives, attorneys, or other persons or entities acting or purporting to act for, on behalf of, or with, any or all of them.

1

B.     The term "Switch" means Switch, Ltd., and any and all predecessors-in-interest, and all of its past or present principals, members, employees, agents, representatives, attorneys, or other persons or entities acting or purporting to act for, on behalf of, or with, any or all of them.

C.     The term "MTechnology" means MTechnology, and any and all predecessors-in-interest, and all of its past or present principals, members, employees, agents, representatives, attorneys, or other persons or entities acting or purporting to act for, on behalf of, or with, any or all of them.

D.     The term "Aligned" means Aligned Data Centers, LLC, and any and all predecessors-in-interest, and all of its past or present principals, members, employees, agents, representatives, attorneys, or other persons or entities acting or purporting to act for, on behalf of, or with, any or all of them.

E.     The term "Aligned Energy" means Aligned Energy Holdings, LP, and any and all predecessors-in-interest, and all of its past or present principals, members, employees, agents, representatives, attorneys, or other persons or entities acting or purporting to act for, on behalf of, or with, any or all of them.

F.     The term "Inertech" means Inertech, LLC, and any and all predecessors-in-interest, and all of its past or present principals, members, employees, agents, representatives, attorneys, or other persons or entities acting or purporting to act for, on behalf of, or with, any or all of them.

G.     The term "Uber" means Uber Technologies, Inc., Uber ATC, and any and all predecessors-in-interest, and all of its past or present principals, members, employees, agents, representatives, attorneys, or other persons or entities acting or purporting to act for, on behalf of, or with, any or all of them.

H.     The term "eBay" means eBay, and any and all predecessors-in-interest, and all of its past or present principals, members, employees, agents, representatives, attorneys, or other persons or entities acting or purporting to act for, on behalf of, or with, any or all of them.

I.     The term "PayPal" means PayPal, and any and all predecessors-in-interest, and all of its past or present principals, members, employees, agents, representatives, attorneys, or other persons or entities acting or purporting to act for, on behalf of, or with, any or all of them.

J.      The term "Jones Lang LaSalle" means Jones Lang LaSalle Incorporated, JLL, and any and all predecessors-in-interest, and all of its past or present principals, members, employees, agents, representatives, attorneys, or other persons or entities acting or purporting to act for, on behalf of, or with, any or all of them.

K.      The term "person(s)" means natural persons, corporations, partnerships, limited liability companies, joint ventures, and any other entity recognized by law of whatever type, whatever form, and however nominated.

L.      The term "document" includes, but is not limited to, all written, printed, recorded or graphic matter, photographic matter, sound reproductions or other retrievable data (whether recorded, taped, or coded electrostatically, electromagnetically, digitally or otherwise) and any other data compilation from which information can be obtained or translated, if necessary, by the respondent into reasonably useable form from whatever source derived and however and by whomever prepared, produced, disseminated or made; without limiting the generality of the foregoing, the word "documents" includes correspondence, memoranda, email, facsimiles, reports, transcripts, notes, diaries, calendars, notebooks, minutes, diagrams, illustrations, photograph, telegram, written analysis, computer printouts, diskettes, CD-ROMS, hard drives, drawings, graphs, charts, videotapes, artwork, agreement, contract, memoranda made of any telephone communication or face-to-face oral meeting or conversation, and exemplars and any other writings of any nature whatsoever, whether or not divulged to other parties. The term further includes the original, any copy, and any draft versions thereof.

M.      The term "communication," and its plural or any synonym thereof, means any dissemination of information or transmission of a statement from one person to another, or in the presence of another, whether by written, oral, or electronic means or by action or conduct and shall include, but is not limited to, every discussion, conversation, conference, meeting, interview, memorandum, telephone call, and/or visit. The timeframe in question is January 1, 2011 to the present, and if questions arise as to scope for a particular Request, this time frame should be applied unless stated otherwise.

///

3

# **INSTRUCTIONS**

1.      Each request should be construed independently. No request should be construed by reference to any other request if the result is a limitation of the scope of the response to such request.

2.      Where a request calls for a response in more than one part, each part should be separate so that the response is clearly understandable.

3.      If you cannot respond to any request in full and complete detail, after exerc1smg due diligence to secure the information to do so, you are to so state, respond to the extent possible, specify why you cannot respond to the remainder, and state whatever information or knowledge you have concerning the remaining portion and the facts upon which you base your response.

4.      If you object to a request, either m whole or in part, or if the documentation regarding the request is withheld on the grounds of privilege or otherwise, please set forth fully each and every objection, describing generally the document withheld and set forth the exact ground upon which you rely with such specificity as will permit the court to determine the legal sufficiency of your objection or position upon a motion to compel.

5.      The singular form of a word shall be interpreted as plural and the plural form of a word shall be interpreted as singular, whenever appropriate, in order to bring within the scope of these requests any information or documents which might otherwise be considered beyond their scope.

6.      The reference to any specific individual in these Requests shall be construed as that specific individual, any and all predecessors-in-interest, all of its past or present principals, members, employees, agents, representatives, attorneys, or other persons or entities acting or purporting to act for, on behalf of, or with, that specifically named individual.

7.      In responding to these requests, you are to furnish all information in your possession, custody, or control at the time the responses are made, including information in the possession of attorneys, officers, directors, employees, accountants, as well as any other agent of any sort and whether present or past.

///

///

4

8.     These requests shall be deemed continuing in nature so as to require supplemental responses to each of these requests with any further information you or your attorneys obtain between the times you serve your initial responses until the time of trial.

**REQUESTS FOR ADMISSIONS**

**REQUEST NO. 1:**

Admit that you have failed to preserve Aligned's business data from before 2015.

**REQUEST NO. 2:**

Admit that you have failed to preserve your cell phone records from before 2015.

**REQUEST NO. 3:**

Admit that you have deleted Aligned's data from before 2015.

**REQUEST NO. 4:**

Admit that you have disposed of computers, devices, or hard drives containing Aligned's data from 2011 to the present.

**REQUEST NO. 5:**

Admit that you spoke in support of Aligned's designs on Aligned's YouTube channel at least twice from 2011 to the present.

**REQUEST NO. 6:**

Admit that you spoke in support of Aligned's designs on Aligned's YouTube channel at least twice, from 2011 to the present.

**REQUEST NO. 7:**

Admit that you appear in the YouTube video posted on November 4, 2015, by Aligned Energy available at: https://www.youtube.com/watch?v=KZRwktOCvdo.

**REQUEST NO. 8:**

Admit that you approved the content of what you said in the YouTube video posted on November 4, 2015, by Aligned Energy available at:

https://www.youtube.com/watch?v=KZRwktOCvdo.

///

///

**REQUEST NO. 9:**

Admit that you have not issued a correction to your statements in the YouTube video posted on November 4, 2015, by Aligned Energy available at:

https://www.youtube.com/watch?v=KZRwktOCvdo, but instead issued a blog a year later ratifying those statements, in the post entitled "Steve Fairfax on Reliability-focused Data Center Design" available at: https://www.alignedenergy.com/post/steve-fairfax-on-reliability-focused-data-center-design/.

**REQUEST NO. 10:**

Admit that you approved of the content on the post entitled "Steve Fairfax on Reliability-focused Data Center Design" available at: https://www.alignedenergy.com/post/steve-fairfax-on-reliability-focused-data-center-design/.

**REQUEST NO. 11:**

Admit that since the instigation of this lawsuit you have not asked Aligned to take down the post entitled "Steve Fairfax on Reliability-focused Data Center Design" available at: https://www.alignedenergy.com/post/steve-fairfax-on-reliability-focused-data-center-design/.

**REQUEST NO. 12:**

Admit that in the post entitled "Steve Fairfax on Reliability-focused Data Center Design" available at: https://www.alignedenergy.com/post/steve-fairfax-on-reliability-focused-data-center-design/, you are quoted as saying "Instead of building the facility and asking us what the reliability was, they told us their reliability target and gave us a seat at the table to participate in the design process in order to make sure that they achieved that goal."

**REQUEST NO. 13:**

Admit that you have not corrected the statements in the post entitled "Steve Fairfax on Reliability-focused Data Center Design" available at: https://www.alignedenergy.com/post/steve-fairfax-on-reliability-focused-data-center-design/

**REQUEST NO. 14:**

Admit that you wrote the content of what you said in the YouTube video posted on November 4, 2015 by Aligned Energy available at:

1    https://www.youtube.com/watch?v=KZRwktOCvdo.

2    **REQUEST NO. 15:**

3    Admit that your support of Aligned data center designs was referenced in an article created

4    by Data Center Frontier entitled "Aligned Data Centers Seeks to Solve the Capacity Challenge"

5    available at: https://datacenterfrontier.com/aligned-data-centers-capacity-challenge/

6    **REQUEST NO. 16:**

7    Admit that the following image of Aligned posted with the article created by Data Center

8    Frontier entitled "Aligned Data Centers Seeks to Solve the Capacity Challenge" available at:

9    https://datacenterfrontier.com/aligned-data-centers-capacity-challenge/ shows hot and cold aisle

10   containment technologies being used by Aligned.



19   **REQUEST NO. 17:**

20   Admit that prior to touring Switch you had never seen Switch's version of hot and cold aisle

21   containment technology.

22   **REQUEST NO. 18:**

23   Admit that you told Rob Roy that Switch's data center technology was the most advanced

24   you had ever seen.

25   **REQUEST NO. 19:**

26   Admit that you told Rob Roy that MTechnology had no interest in designing data centers.

27   **REQUEST NO. 10:**

28   Admit that you promoted Aligned data center on your website after January 1, 2014.

**REQUEST NO. 21:**

Admit that you exchanged data center design documents with Aligned between January 1, 2012 and the present.

**REQUEST NO. 22:**

Admit that you evaluated the reliability of data center design documents for Aligned between January 1, 2012 and the present.

**REQUEST NO. 23:**

Admit that you evaluated the reliability of data center design documents for Switch between January 1, 2012 and the present.

**REQUEST NO. 24:**

Admit that you inspected Switch's electrical one-line diagrams when evaluating Switch.

**REQUEST NO. 25:**

Admit that you inspected Switch's as-built diagrams when evaluating Switch.

**REQUEST NO. 26:**

Admit that you shared your professional opinions regarding Switch's data center design on or around May 4, 2011.

**REQUEST NO. 27:**

Admit that you signed a Nondisclosure Agreement with Switch on May 4, 2011.

**REQUEST NO. 28:**

Admit that you signed a Nondisclosure Agreement with Switch on August 12, 2015.

**REQUEST NO. 29:**

Admit that you knew Switch had patent pending designs for its data centers, at least as early as the time you toured Switch in 2011.

**REQUEST NO. 30:**

Admit that you were told Switch had patented and/or patent pending designs in 2015, for its data centers.

///

///

8

**REQUEST NO. 31:**

Admit that you were retained as a consultant by Aligned to assist with their data center designs, at least as early as January 1, 2016.

**REQUEST NO. 32:**

Admit that Aligned paid you to evaluate the reliability of data center designs at some time after you toured Switch's data center facilities in 2011.

**REQUEST NO. 33:**

Admit that you collaborated with Aligned on their data center designs.

**REQUEST NO. 34:**

Admit that you analyzed Aligned Energy's cooling designs.

**REQUEST NO. 35:**

Admit that you said Aligned "approached you while the paper was literally still blank" to help with their data center.

**REQUEST NO. 36:**

Admit that you participated in the design of an Aligned data center.

**REQUEST NO. 37:**

Admit that you said you were invited to "have a seat at the table" in designing a data center for Aligned.

**REQUEST NO. 38:**

Admit that since 2011, you have designed at least one data center system.

**REQUEST NO. 39:**

Admit that you were hired to conduct a data center analysis of Switch's data centers in 2011 and again in 2015.

**REQUEST NO. 40:**

Admit that you know and/or have had communication(s) with Dean Nelson.

**REQUEST NO. 41:**

Admit that you know and/or have had communication(s) with Richard Reyher.

///

9

**REQUEST NO. 42:**

    Admit that you know and/or have had communication(s) with Mark Bauer.

**REQUEST NO. 43:**

    Admit that you know and/or have had communication(s) with Theresa Gardner.

**REQUEST NO. 44:**

    Admit that you know and/or have had communication(s) with Carter Robinson.

**REQUEST NO. 45:**

    Admit that you know and/or have had communication(s) with Marew Klokkenja.

**REQUEST NO. 46:**

    Admit that you know and/or have had communication(s) with Bret Davis.

**REQUEST NO. 47:**

    Admit that you know and/or have had communication(s) with Mike Lewis.

**REQUEST NO. 48:**

    Admit that you know and/or have had communication(s) with Mazen Rawashdeh.

**REQUEST NO. 49:**

    Admit that you know and/or have had communication(s) with Thomas Price.

**REQUEST NO. 50:**

    Admit that you know and/or have had communication(s) with Paul Santana.

**REQUEST NO. 51:**

    Admit that you know and/or have had communication(s) with Stephen Harlett.

**REQUEST NO. 52:**

    Admit that you know and/or have had communication(s) with Seth Feldman.

**REQUEST NO. 53:**

    Admit that you know and/or have had communication(s) with Devin Wenig.

**REQUEST NO. 54:**

    Admit that you know and/or have had communication(s) with Jakob Carnemark.

**REQUEST NO. 55:**

    Admit that you know and/or have had communication(s) with Andrew Schaap.

**REQUEST NO. 56:**

Admit that you know and/or have had communication(s) with Stephen Smith.

**REQUEST NO. 57:**

Admit that you know and/or have had communication(s) with Rajendran Avadaiappan.

**REQUEST NO. 58:**

Admit that you were hired to do work for Uber, in the last four (4) years.

**REQUEST NO. 59:**

Admit that in the last ten (10) years, you have been hired by eBay to evaluate at least one data center for Aligned.

**REQUEST NO. 60:**

Admit that in the last ten (10) years, you have been hired by PayPal to evaluate at least one Aligned data center.

**REQUEST NO. 61:**

Admit that in the last ten (10) years, you have been hired by Uber to evaluate at least one Aligned data center.

**REQUEST NO. 62:**

Admit that in the last ten (10) years you have been hired by eBay to evaluate at least one of Switch's data centers.

**REQUEST NO. 63:**

Admit that in the last ten (10) years you have been hired by PayPal to evaluate Switch's data center designs.

**REQUEST NO. 64:**

Admit that in the last four (4) years you have been hired by Uber to evaluate Switch's data center design.

**REQUEST NO. 65:**

Admit that Mark Bauer (either directly or indirectly) has made payments to MTechnology.

**REQUEST NO. 66:**

Admit that Mark Bauer (either directly or indirectly) has made payments to you personally.

**REQUEST NO. 67:**

Admit that Richard Reyher (either directly or indirectly) has made payments to MTechnology.

**REQUEST NO. 68:**

Admit that Richard Rehyer (either directly or indirectly) has made payments to you personally.

**REQUEST NO. 69:**

Admit that eBay (either directly or indirectly) has made payments to MTechnology.

**REQUEST NO. 70:**

Admit that Uber (either directly or indirectly) has made payments to MTechnology.

**REQUEST NO. 71:**

Admit that Jones Lang LaSalle (either directly or indirectly) has made payments to MTechnology.

**REQUEST NO. 72:**

Admit that in the last seven (7) years, you received calls on your cell phone from individuals working for Aligned.

**REQUEST NO. 73:**

Admit that in the last seven (7) years, you have sent to or received emails from individuals working for Aligned.

**REQUEST NO. 74:**

Admit that in the last seven (7) years, you have sent to or received text messages from individuals working for Aligned.

**REQUEST NO. 75:**

Admit that, in the last seven years, you have had meals and/or drinks with at least one individual working for Aligned.

**REQUEST NO. 76:**

Admit that, in the last seven years, you have received at least one gift from an individual working for Aligned.

///

///

**REQUEST NO. 77:**

Admit that, in the last seven years, that you received calls on your cell phone from at least one individual working for Uber.

**REQUEST NO. 78:**

Admit that, in the last seven years, you sent to or received emails from at least one individual working for Uber.

**REQUEST NO. 79:**

Admit that, in the last seven years, you sent to or received text messages from at least one individual working for Uber.

**REQUEST NO. 80:**

Admit that, in the last seven years, you have had meals/drinks with at least one individual working for Uber.

**REQUEST NO. 81:**

Admit that, in the last seven years, you have received at least one gift from with at least one individual working for Uber.

**REQUEST NO. 82:**

Admit that, in the last seven years, you received calls on your cell phone from at least one individual working for Jones Lang LaSalle.

**REQUEST NO. 83:**

Admit that, in the last seven years, you have sent to or received emails from at least one individual working for Jones Lang LaSalle.

**REQUEST NO. 84:**

Admit that, in the last seven years, you have sent to or received text messages from at least one individual working for Jones Lang LaSalle.

**REQUEST NO. 85:**

Admit that, in the last seven years, you have had meals and/or drinks with at least one individual working for Jones Lang LaSalle.

///

**REQUEST NO. 86:**

Admit that, in the last seven years, you have received at least one gift from at least one individual working for Jones Lang LaSalle.

**REQUEST NO. 87:**

Admit that, in the last seven years, you received calls on your cell phone from at least one individual working for eBay.

**REQUEST NO. 88:**

Admit that, in the last seven years, you have sent to or received emails from at least one individual(s) working for eBay.

**REQUEST NO. 89:**

Admit that, in the last seven years, you have sent to or received text messages from at least one individual(s) working for eBay.

**REQUEST NO. 90:**

Admit that, in the last seven years, you have had drinks and/or a meal with at least one individual(s) working for eBay.

**REQUEST NO. 91:**

Admit that you have received at least one gift from with at least one individual(s) working for eBay.

**REQUEST NO. 92:**

Admit that in the last ten years you either intentionally or inadvertently emulated at least one of Switch's data center designs in data center designs you reviewed.

**REQUEST NO. 93:**

Admit that you knew and know Switch's data center designs were and are confidential.

**REQUEST NO. 94:**

Admit that you either intentionally or unintentionally misappropriated Switch's trade secrets.

**REQUEST NO. 95:**

Admit that you told Rob Roy that Switch's designs were among the best in the world, if not the best.

**REQUEST NO. 96:**

Admit that you told Rob Roy that you had never seen anything like Switch's data center.

**REQUEST NO. 97:**

Admit that you either intentionally or unintentionally shared Switch's designs with Aligned.

**REQUEST NO. 98:**

Admit that the design of Aligned's facility in Dallas is more reliable than the design in Phoenix.

**REQUEST NO. 99:**

Admit that the design of Aligned's facility in Phoenix is more reliable than the design in Dallas.

**REQUEST NO. 100:**

Admit that you participated in the design of the Aligned data center in Phoenix.

**REQUEST NO. 101:**

Admit that you participated in the design of the Aligned data center in Dallas.

**REQUEST NO. 102:**

Admit that the Aligned Dallas Data Center designs were not created by Jacob Carnemark alone.

**REQUEST NO. 103:**

Admit that the Aligned Phoenix Data Center designs were not created by Jacob Carnemark alone.

**REQUEST NO. 104:**

Admit that you discussed the Aligned Dallas Data Center designs with Jacob Carnemark.

**REQUEST NO. 105:**

Admit that you discussed the Phoenix Dallas Data Center designs with Jacob Carnemark.

**REQUEST NO. 106:**

Admit that you provided design specifications for at least one of Aligned's data centers.

**REQUEST NO. 107:**

Admit that you analyzed Inertech designs.

**REQUEST NO. 108**:

Admit that Plaintiff and Aligned are competitors.

**REQUEST NO. 109**:

Admit that Plaintiff and Inertech are competitors.

**REQUEST NO. 110**:

Admit that you had access to Plaintiff's confidential information during your visits to Switch data center facilities during 2011 and 2015.

**REQUEST NO. 111**:

Admit that you told Mike Lewis, of eBay, that Switch was "an interesting site, unusual architecture, especially the cooling system."

DATED this 29th day of October, 2019.

SWITCH, LTD.


_/s/: Samuel Castor_
SAMUEL CASTOR, ESQ.
Nevada Bar No. 11532
ANNE-MARIE BIRK, ESQ.
Nevada Bar No. 12330
7135 South Decatur Blvd.
Las Vegas, Nevada 89118
*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

Pursuant to F.R.C.P. 5(b), I hereby certify that on this 29th day of October, 2019, I served a true and correct copy of the above document, entitled **PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION TO DEFENDANT, STEPHEN FAIRFAX**, to all parties, who are deemed to have consented to electronic service via their email, and via United States first-class mail, postage prepaid, as follows:

Marc J. Randazza, Esq.
Ronald D. Green, Esq.
Alex J. Shepard, Esq.
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, NV 89117
ecf@randazza.com
mjr@randazza.com
rdg@randazza.com
ajs@randazza.com
*Attorneys for Defendants*

_/s/: Tanya Paonessa_
An agent of SWITCH, LTD.

17

SAMUEL CASTOR, ESQ.
Nevada Bar No. 11532
ANNE-MARIE BIRK, ESQ.
Nevada Bar No. 12330
**SWITCH, LTD.**
7135 South Decatur Blvd.
Las Vegas, Nevada 89118
Telephone: (702) 444-4111
policy@switch.com

MARK A. HUTCHSION
Nevada Bar No. 4639
JACOB A. REYNOLDS
Nevada Bar No. 10199
PIERS R. TUELLER
Nevada Bar No. 14633
**HUTCHISON & STEFFEN, PLLC**
Peccole Professional Park
10080 West Alta Drive, Suite 200
Las Vegas, Nevada 89145
Telephone: (702) 385-2500
*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| SWITCH, LTD., a Nevada limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>STEPHEN FAIRFAX; MTECHNOLOGY; and DOES 1 through 10; ROE ENTITIES 11 through 20, inclusive,<br><br>Defendants. | CASE NO.:   2:17-cv-02651-GMN-VCF<br><br>**PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION TO DEFENDANT, MTECHNOLOGY** |

TO:     MTECHNOLOGY Defendant; and

TO:     RANDAZZA LEGAL GROUP, PLLC, Defendant's attorneys:

Pursuant to Rule 36 of the Federal Rules of Civil Procedure, Plaintiff SWITCH, LTD. ("SWITCH"), by and through its counsel of record, submits its First Set of Requests for Admissions to Defendant, MTechnology ("MTECHNOLOGY").

1

The following definitions and instructions apply to, and are deemed incorporated in, each of the requests set forth.

## **GENERAL DEFINITIONS**

A.      The terms "you" and/or "your" means MTechnology as a domestic corporation, MTechnology by and through its President/Director Stephen Fairfax, MTechnology by and through its Treasurer/Secretary/Clerk Katherine Poole, including any and all MTechnology's predecessors-in-interest, all of its past or present principals, members, employees, agents, representatives, attorneys, or other persons or entities acting or purporting to act for, on behalf of, or with, any or all of them.

B.      The term "Stephen Fairfax" means means Stephen Fairfax, individually, or in his capacity as President/Director for MTechnology, including any and all predecessors-in-interest, employees, agents, representatives, attorneys, or other persons or entities acting or purporting to act for, on behalf of, or with, any or all of them.

C.      The term "Switch" means Switch, Ltd., and any and all predecessors-in-interest, and all of its past or present principals, members, employees, agents, representatives, attorneys, or other persons or entities acting or purporting to act for, on behalf of, or with, any or all of them.

D.      The term "Aligned" means Aligned Data Centers, LLC, and any and all predecessors-in-interest, and all of its past or present principals, members, employees, agents, representatives, attorneys, or other persons or entities acting or purporting to act for, on behalf of, or with, any or all of them.

E.      The term "Aligned Energy" means Aligned Energy Holdings, LP, and any and all predecessors-in-interest, and all of its past or present principals, members, employees, agents, representatives, attorneys, or other persons or entities acting or purporting to act for, on behalf of, or with, any or all of them.

F.      The term "Inertech" means Inertech, LLC, and any and all predecessors-in-interest, and all of its past or present principals, members, employees, agents, representatives, attorneys, or other persons or entities acting or purporting to act for, on behalf of, or with, any or all of them.

///

2

G.      The term "Uber" means Uber Technologies, Inc., Uber ATC, and any and all predecessors-in-interest, and all of its past or present principals, members, employees, agents, representatives, attorneys, or other persons or entities acting or purporting to act for, on behalf of, or with, any or all of them.

H.      The term "eBay" means eBay, and any and all predecessors-in-interest, and all of its past or present principals, members, employees, agents, representatives, attorneys, or other persons or entities acting or purporting to act for, on behalf of, or with, any or all of them.

I.      The term "PayPal" means PayPal, and any and all predecessors-in-interest, and all of its past or present principals, members, employees, agents, representatives, attorneys, or other persons or entities acting or purporting to act for, on behalf of, or with, any or all of them.

J.      The term "Jones Lang LaSalle" means Jones Lang LaSalle Incorporated, JLL, and any and all predecessors-in-interest, and all of its past or present principals, members, employees, agents, representatives, attorneys, or other persons or entities acting or purporting to act for, on behalf of, or with, any or all of them.

K.      The term "person(s)" means natural persons, corporations, partnerships, limited liability companies, joint ventures, and any other entity recognized by law of whatever type, whatever form, and however nominated.

L.      The term "document" includes, but is not limited to, all written, printed, recorded or graphic matter, photographic matter, sound reproductions or other retrievable data (whether recorded, taped, or coded electrostatically, electromagnetically, digitally or otherwise) and any other data compilation from which information can be obtained or translated, if necessary, by the respondent into reasonably useable form from whatever source derived and however and by whomever prepared, produced, disseminated or made; without limiting the generality of the foregoing, the word "documents" includes correspondence, memoranda, email, facsimiles, reports, transcripts, notes, diaries, calendars, notebooks, minutes, diagrams, illustrations, photograph, telegram, written analysis, computer printouts, diskettes, CD-ROMS, hard drives, white paper, drawings, plans, blueprints, graphs, charts, videotapes, artwork, agreement, contract, memoranda made of any telephone communication or face-to-face oral meeting or conversation, and exemplars

and any other writings of any nature whatsoever, whether or not divulged to other parties. The term further includes the original, any copy, and any draft versions thereof.

M.     The term "communication," and its plural or any synonym thereof, means any dissemination of information or transmission of a statement from one person to another, or in the presence of another, whether by written, oral, or electronic means or by action or conduct and shall include, but is not limited to, every discussion, conversation, conference, meeting, interview, memorandum, telephone call, and/or visit. The timeframe in question is January 1, 2011 to the present, and if questions arise as to scope for a particular Request, this time frame should be applied unless stated otherwise.

N.     "Referring to", "Relating to", "Refer to" and "Relate to" shall mean constituting, comprising, concerning, regarding, mentioning, containing, setting forth, showing, disclosing, describing, explaining, negating, bearing upon, touching upon, affecting, summarizing, evidencing, discussing, or pertaining to, either directly or indirectly, in whole or in part, the subject matter about which an Interrogatory is being made, and should be given the broadest possible scope consistent with the Federal Rules of Civil Procedure.

## **INSTRUCTIONS**

1.     Each request should be construed independently. No request should be construed by reference to any other request if the result is a limitation of the scope of the response to such request.

2.     Where a request calls for a response in more than one part, each part should be separate so that the response is clearly understandable.

3.     If you cannot respond to any request in full and complete detail, after exerc1smg due diligence to secure the information to do so, you are to so state, respond to the extent possible, specify why you cannot respond to the remainder, and state whatever information or knowledge you have concerning the remaining portion and the facts upon which you base your response.

4.     If you object to a request, either m whole or in part, or if the documentation regarding the request is withheld on the grounds of privilege or otherwise, please set forth fully each and every objection, describing generally the document withheld and set forth the exact ground upon which

you rely with such specificity as will permit the court to determine the legal sufficiency of your objection or position upon a motion to compel.

5.     The singular form of a word shall be interpreted as plural and the plural form of a word shall be interpreted as singular, whenever appropriate, in order to bring within the scope of these requests any information or documents which might otherwise be considered beyond their scope.

6.     The reference to any specific individual in these Requests shall be construed as that specific individual, any and all predecessors-in-interest, all of its past or present principals, members, employees, agents, representatives, attorneys, or other persons or entities acting or purporting to act for, on behalf of, or with, that specifically named individual.

7.     In responding to these requests, you are to furnish all information in your possession, custody, or control at the time the responses are made, including information in the possession of attorneys, officers, directors, employees, accountants, as well as any other agent of any sort and whether present or past.

8.     These requests shall be deemed continuing in nature so as to require supplemental responses to each of these requests with any further information you or your attorneys obtain between the times you serve your initial responses until the time of trial.

## **REQUESTS FOR ADMISSIONS**

**REQUEST NO. 1:**

Admit that you have failed to preserve all documents within your possession related to your business consultation and/or work performed with Aligned from before 2015.

**REQUEST NO. 2:**

Admit that you have deleted documents within your possession related to your business consultation and/or work performed with Aligned from before 2015.

**REQUEST NO. 3:**

Admit that you have disposed of computers, devices, or hard drives containing any and all documents within your possession related to your consultation and/or work performed with Aligned from 2011 to the present.

**REQUEST NO. 4:**

Admit that you spoke about Aligned's cooling system designs on Aligned's YouTube channel stating, "[o]ur engagement with Aligned Energy began with a detailed analysis of the cooling system solution provided by Inertech, which in addition to being very energy efficient, scored very high on reliability, about .25% chance of failure per year for a single system, equivalent to about onnce failure in every 400 years."

**REQUEST NO. 5:**

Admit that you spoke about Aligned's designs on Aligned's YouTube channel stating, "Aligned Energy and Power Secure are creating a new business model for data centers."

**REQUEST NO. 6:**

Admit that you appear in the YouTube video posted on November 4, 2015, by Aligned Energy available at: https://www.youtube.com/watch?v=KZRwktOCvdo.

**REQUEST NO. 7:**

Admit that you authorized the content of your statements made in the YouTube video prior to posting of the video on November 4, 2015, by Aligned Energy available at:

https://www.youtube.com/watch?v=KZRwktOCvdo.

**REQUEST NO. 8:**

Admit that you have not issued a correction to your statements made in the YouTube video posted on November 4, 2015, by Aligned Energy available at:

https://www.youtube.com/watch?v=KZRwktOCvdo.

**REQUEST NO. 9:**

Admit that Aligned issued a blog post entitled, "Steve Fairfax on Reliability-focused Data Center Design," (available at: https://www.alignedenergy.com/post/steve-fairfax-on-reliability-focused-data-center-design/) on your behalf on December 2, 2015, ratifying your statements made previously in the YouTube video posted on November 3, 2015, by Aligned Energy available at: https://www.youtube.com/watch?v=KZRwktOCvdo.

///

///

6

**REQUEST NO. 10:**

Admit that you wrote and/or approved the content of your statements made within the December 2, 2015 blog post entitled "Steve Fairfax on Reliability-focused Data Center Design" available at: https://www.alignedenergy.com/post/steve-fairfax-on-reliability-focused-data-center-design/.

**REQUEST NO. 11:**

Admit that since the instigation of this lawsuit you have not asked Aligned to take down the December 2, 2015 blog post entitled "Steve Fairfax on Reliability-focused Data Center Design" available at: https://www.alignedenergy.com/post/steve-fairfax-on-reliability-focused-data-center-design/.

**REQUEST NO. 12:**

Admit that in Aligned's blog post on December 2, 2015, entitled "Steve Fairfax on Reliability-focused Data Center Design" available at: https://www.alignedenergy.com/post/steve-fairfax-on-reliability-focused-data-center-design/, you are quoted as saying "Instead of building the facility and asking us what the reliability was, they told us their reliability target and gave us a seat at the table to participate in the design process in order to make sure that they achieved that goal."

**REQUEST NO. 13:**

Admit that you have not corrected any of the statements you made contained within Aligned's blog post on December 2, 2015, entitled "Steve Fairfax on Reliability-focused Data Center Design" available at: https://www.alignedenergy.com/post/steve-fairfax-on-reliability-focused-data-center-design/

**REQUEST NO. 14:**

Admit that your support of and/or compliments to Aligned data center designs were referenced in a November 5, 2015 article created by Data Center Frontier entitled "Aligned Data Centers Seeks to Solve the Capacity Challenge," available at: https://datacenterfrontier.com/aligned-data-centers-capacity-challenge/.

///

///

7

**REQUEST NO. 15:**

Admit that you stated, "Aligned uses the most reliable cooling platform we have ever evaluated," as quoted in Data Center Frontier's article entitled, "Aligned Data Centers Seek to Solve the Capacity Challenge," available at https://datacenterfrontier.com/aligned-data-centers-capacity-challenge/.

**REQUEST NO. 16:**

Admit that you told Rob Roy that MTechnology had no interest in designing data centers.

**REQUEST NO. 17:**

Admit that you promoted Aligned data center on your website, after January 1, 2014.

**REQUEST NO. 18:**

Admit that you exchanged documents with Aligned relating to the design of its data center between January 1, 2012 and the present.

**REQUEST NO. 19:**

Admit that you evaluated Aligned's documents relating to the design of its data center between January 1, 2012 and the present for reliability

**REQUEST NO. 20:**

Admit that you evaluated Switch's documents relating to the design of its data centers between January 1, 2012 and the present for reliability.

**REQUEST NO. 21:**

Admit that you inspected Switch's electrical one-line diagrams when evaluating Switch before 2016.

**REQUEST NO. 22:**

Admit that you inspected Switch's as-built diagrams when evaluating Switch.

**REQUEST NO. 23:**

Admit that you signed a Nondisclosure Agreement with Switch on May 4, 2011.

**REQUEST NO. 24:**

Admit that you signed a Nondisclosure Agreement with Switch on August 12, 2015.

///

8

**REQUEST NO. 25:**

Admit that you were told by Switch in 2011 and/or 2015, that Switch's data centers had patented designs.

**REQUEST NO. 26:**

Admit that you were told by Switch in 2011 and/or 2015 that Switch's data centers had patent-pending designs.

**REQUEST NO. 27:**

Admit that you were retained as a consultant by Aligned to assist with their data center designs, at least as early as January 1, 2016.

**REQUEST NO. 28:**

Admit that Aligned paid you to evaluate the reliability of data center designs at some time after you toured Switch's data center facilities in 2011.

**REQUEST NO. 29:**

Admit that you collaborated with Aligned on their data center designs.

**REQUEST NO. 30:**

Admit that you analyzed Aligned Energy's cooling designs.

**REQUEST NO. 31:**

Admit that, on Aligned Energy's YouTube channel video published November 4, 2015, you said Aligned "approached you while the paper was literally still blank" to help with their data center.

**REQUEST NO. 32:**

Admit that you participated in the design of an Aligned data center.

**REQUEST NO. 33:**

Admit that, on Aligned Energy's YouTube channel video published November 4, 2015, you said you were invited to have "a seat at the table to participate in the design process" of a data center for Aligned.

**REQUEST NO. 34:**

Admit that since 2011, you have designed at least one data center system.

///

9

**REQUEST NO. 35:**

Admit that you were hired by a potential or current customer of Switch to conduct a data center analysis of Switch's data centers in 2011.

**REQUEST NO. 36:**

Admit that you were hired by a potential or current customer of Switch to conduct a data center analysis of Switch's data centers in 2015.

**REQUEST NO. 37:**

Admit that you know and/or have had communication(s) with Dean Nelson.

**REQUEST NO. 38:**

Admit that you know and/or have had communication(s) with Richard Reyher.

**REQUEST NO. 39:**

Admit that you know and/or have had communication(s) with Mark Bauer.

**REQUEST NO. 40:**

Admit that you know and/or have had communication(s) with Theresa Gardner.

**REQUEST NO. 41:**

Admit that you know and/or have had communication(s) with Carter Robinson.

**REQUEST NO. 42:**

Admit that you know and/or have had communication(s) with Marew Klokkenja.

**REQUEST NO. 43:**

Admit that you know and/or have had communication(s) with Bret Davis.

**REQUEST NO. 44:**

Admit that you know and/or have had communication(s) with Mike Lewis.

**REQUEST NO. 45:**

Admit that you know and/or have had communication(s) with Mazen Rawashdeh.

**REQUEST NO. 46:**

Admit that you know and/or have had communication(s) with Thomas Price.

**REQUEST NO. 47:**

Admit that you know and/or have had communication(s) with Paul Santana.

10

**REQUEST NO. 48:**

Admit that you know and/or have had communication(s) with Stephen Harlett.

**REQUEST NO. 49:**

Admit that you know and/or have had communication(s) with Seth Feldman.

**REQUEST NO. 50:**

Admit that you know and/or have had communication(s) with Devin Wenig.

**REQUEST NO. 51:**

Admit that you know and/or have had communication(s) with Jakob Carnemark.

**REQUEST NO. 52:**

Admit that you know and/or have had communication(s) with Andrew Schaap.

**REQUEST NO. 53:**

Admit that you know and/or have had communication(s) with Stephen Smith.

**REQUEST NO. 54:**

Admit that you know and/or have had communication(s) with Rajendran Avadaiappan.

**REQUEST NO. 55:**

Admit that you were hired to do work for Uber, in the last five (5) years.

**REQUEST NO. 56:**

Admit that in the last seven (7) years, you have been hired by Uber to evaluate at least one Aligned data center.

**REQUEST NO. 57:**

Admit that in the last ten (10) years you have been hired by eBay to evaluate at least one of Switch's data centers.

**REQUEST NO. 58:**

Admit that in the last four (4) years you have been hired by Uber to evaluate Switch's data center design.

**REQUEST NO. 59:**

Admit that in the last seven (7) years, you received calls on your cell phone from individuals working for Aligned.

**REQUEST NO. 60:**

Admit that in the last seven (7) years, you have sent to or received emails from individuals working for Aligned.

**REQUEST NO. 61:**

Admit that in the last seven (7) years, you have sent to or received text messages from individuals working for Aligned.

**REQUEST NO. 62:**

Admit that, in the last seven years, that you received calls on your cell phone from at least one individual working for Uber.

**REQUEST NO. 63:**

Admit that, in the last seven years, you sent to or received emails from at least one individual working for Uber.

**REQUEST NO. 64:**

Admit that, in the last seven years, you received calls on your cell phone from at least one individual working for Jones Lang LaSalle.

**REQUEST NO. 65:**

Admit that, in the last seven years, you have sent to or received emails from at least one individual working for Jones Lang LaSalle.

**REQUEST NO. 66:**

Admit that, in the last seven years, you received calls on your cell phone from at least one individual working for eBay.

**REQUEST NO. 67:**

Admit that, in the last seven years, you have sent to or received emails from at least one individual working for eBay.

**REQUEST NO. 68:**

Admit that in the last ten years you intentionally emulated at least one of Switch's data center designs in data center designs you reviewed.

///

**REQUEST NO. 69:**

Admit that in the last ten years you inadvertently emulated at least one of Switch's data center designs in the data center designs you reviewed.

**REQUEST NO. 70:**

Admit that you knew Switch's data center designs were confidential.

**REQUEST NO. 71:**

Admit that you know Switch's data center designs are confidential.

**REQUEST NO. 72:**

Admit that you either intentionally misappropriated Switch's trade secrets.

**REQUEST NO. 73:**

Admit that you unintentionally misappropriated Switch's trade secrets.

**REQUEST NO. 74:**

Admit that you told Rob Roy that Switch's designs were among the best in the world, if not the best.

**REQUEST NO. 75:**

Admit that you either intentionally shared Switch's designs with Aligned.

**REQUEST NO. 76:**

Admit that you unintentionally shared Switch's designs with Aligned.

**REQUEST NO. 77:**

Admit that you discussed the Aligned Dallas Data Center designs with Jacob Carnemark.

**REQUEST NO. 78:**

Admit that you discussed the Aligned Phoenix Data Center designs with Jacob Carnemark.

**REQUEST NO. 79:**

Admit that you provided design specifications for at least one of Aligned's data centers.

**REQUEST NO. 80:**

Admit that you analyzed Inertech designs in the last seven (7) years.

///

///

13

**REQUEST NO. 81:**

Admit that you had access to Plaintiff's confidential information during your visits to Switch data center facilities in 2011.

**REQUEST NO. 82:**

Admit that you had access to Plaintiff's confidential information during your visits to Switch data center facilities in 2015.

**REQUEST NO. 83:**

Admit that you told Mike Lewis, of eBay, in an email that Switch was "an interesting site, unusual architecture, especially the cooling system."

**REQUEST NO. 84:**

Admit that you were retained as a consultant by Aligned to assist with their Ashburn, Virginia data center designs.

**REQUEST NO. 85:**

Admit that you collaborated with Aligned on their Ashburn, Virginia data center designs.

///

///

///

///

///

///

///

///

///

///

///

///

///

///

14

**REQUEST NO. 86:**

Admit that you participated in the design of the Aligned data center in Ashburn, Virginia.

DATED this 6th day of February, 2020.

                                        SWITCH, LTD.


                                        _/s/:  Samuel Castor_
                                        SAMUEL CASTOR, ESQ.
                                        Nevada Bar No. 11532
                                        ANNE-MARIE BIRK, ESQ.
                                        Nevada Bar No. 12330
                                        7135 South Decatur Blvd.
                                        Las Vegas, Nevada 89118

                                        MARK A. HUTCHSION
                                        Nevada Bar No. 4639
                                        JACOB A. REYNOLDS
                                        Nevada Bar No. 10199
                                        PIERS R. TUELLER
                                        Nevada Bar No. 14633
                                        **HUTCHISON & STEFFEN, PLLC**
                                        Peccole Professional Park
                                        10080 West Alta Drive, Suite 200
                                        Las Vegas, Nevada 89145
                                        _Attorneys for Plaintiff_

## CERTIFICATE OF SERVICE

Pursuant to F.R.C.P. 5(b), I hereby certify that on this 6th day of February, 2020, I served a true and correct copy of the above document, entitled **PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION TO DEFENDANT, MTECHNOLOGY**, to all parties, who are deemed to have consented to electronic service via their email, and via United States first-class mail, postage prepaid, as follows:

Marc J. Randazza, Esq.
Ronald D. Green, Esq.
Alex J. Shepard, Esq.
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, NV 89117
ecf@randazza.com
mjr@randazza.com
rdg@randazza.com
ajs@randazza.com
*Attorneys for Defendants*


_/s/: Tanya Paonessa_
An agent of SWITCH, LTD.

16

**RFP**
F. Christopher Austin, Esq.
Nevada Bar No. 6559
*caustin@weidemiller.com*
Ryan Gile, Esq.
Nevada Bar No. 8807
*rgile@weidemiller.com*
**WEIDE & MILLER, LTD.**
10655 Park Run Drive, Suite 100
Las Vegas, NV 89144
Tel: (702) 382-4804
Fax: (702) 382-4805

Samuel Castor, Esq.
Nevada Bar No. 11532
**SWITCH, LTD.**
7135 S. Decatur Blvd.
Las Vegas, Nevada 89118

*Attorneys for Plaintiff* SWITCH, LTD.

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| SWITCH, LTD. a Nevada limited liability company,<br><br>                    Plaintiff,<br><br>vs.<br><br>STEPHEN FAIRFAX; MTECHNOLOGY; and DOES  1 through 10; ROE ENTITIES 11 through 20, inclusive,<br><br>                    Defendants. | Case No.: **2:17-cv-2651-GMN-VCF**<br><br><br>**PLAINTIFF SWITCH, LTD. FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT STEPHEN FAIRFAX** |

PROPOUNDING PARTY: Plaintiff SWITCH, LTD.

RESPONDING PARTY:  Defendant FAIRFAX

        Pursuant to Federal Rules of Civil Procedure 26 and 34, Plaintiff SWITCH, LTD.,

("SWITCH") hereby requests that Defendant Stephen Fairfax ("FAIRFAX") produce the

documents and things identified below:

## INTRODUCTORY STATEMENT

A.      Pursuant to Nevada Rule of Civil Procedure 26(e), the following **requests for production of documents and things are continuing and must be supplemented if your responses change during the course of discovery.**

B.      To the extent that any information/documentation requested by these Requests for Production is unknown to you, so state, and set forth such remaining information as is known by you.  If any estimate or approximation can reasonably be made in place of unknown information, set forth your best estimate or approximation, clearly designated as such, in place of the unknown information, and describe the basis upon which the estimate or approximation is made.

C.      The omission of any item from your responses shall be deemed a representation that the item is unknown to you.

D.      In construing these Requests to Produce, the terms "refer to" shall include any and all logical and factual connections to the subject of the discovery request as specified.

E.      Use of the term "**data**" shall include but not be limited to information regardless of form, such as documents, emails to or from business and/or personal accounts, text messages, calendar invites, notes, application data, videos, photographs, audio or visual recordings, meta data, blogs, tweets, social media postings, correspondence, designs, blue prints, schematics, opinions, assessments, analysis, etc., and all versions of the same, which are germane to the Request.

F.      Use of the term "plaintiff" or "you" shall mean STEPHEN FAIRFAX.

G.      All singular nouns are to be construed as plural and plural construed as singular.

/ / /

H.    In the event that you refuse to respond to any Request to Produce, or portion thereof, on the grounds that it is subject to an attorney-client privilege or attorney work product privilege, you are required to:

      a.    state the nature of the privilege asserted;

      b.    state the facts relied upon in support of the claim or privilege;

      c.    identify all persons having knowledge or any facts related to the claim or privilege; and

      d.    identify all events, transactions, or occurrences related to the claim of privilege.

## DOCUMENTS REQUESTED

**REQUEST NO. 1:**

Please produce complete and accurate copies of any and all DATA regarding Aligned from January 1, 2011, to the present.

**REQUEST NO. 2:**

Please produce complete and accurate copies of all agreements between FAIRFAX and Aligned.

**REQUEST NO. 3:**

Please produce complete and accurate copies of all agreements between Defendant MTECHNOLOGY and Aligned.

**REQUEST NO. 4:**

Please produce complete and accurate copies of any and all DATA related to Jones Lang LaSalle from January 1, 2011, to the present.

**REQUEST NO. 5:**

Please produce complete and accurate copies of any and all DATA related to Aligned Energy from January 1, 2011, to the present.

**REQUEST NO. 6:**

Please produce complete and accurate copies of any and all DATA related to Inertech from January 1, 2011 to the present.

**REQUEST NO. 7:**

Please produce complete and accurate copies of any and all DATA related to Uber from January 1, 2011, to the present.

**REQUEST NO. 8:**

Please produce complete and accurate copies of any and all DATA related to eBay from January 1, 2011, to the present.

**REQUEST NO. 9:**

Please produce complete and accurate copies of any and all DATA related to PayPal from January 1, 2011, to the present.

**REQUEST NO. 10:**

Please produce complete and accurate copies of any and all DATA related to Theresa Gardner from January 1, 2011, to the present.

**REQUEST NO. 11:**

Please produce complete and accurate copies of any and all DATA related to Mark Bauer from January 1, 2011, to the present.

**REQUEST NO. 12:**

Please produce complete and accurate copies of any and all DATA related to Carter Robinson from January 1, 2011, to the present.

**REQUEST NO. 13:**

Please produce complete and accurate copies of any all DATA related to Marew Klokkenja from January 1, 2011, to the present.

**REQUEST NO. 14:**

Please produce complete and accurate copies of any and all DATA related to Bret Davis from January 1, 2011, to the present.

**REQUEST NO. 15:**

Please produce complete and accurate copies of any and all DATA related to Mike Lewis from January 1, 2011, to the present.

**REQUEST NO. 16:**

Produce complete and accurate copies of any and all DATA related to Dean Nelson from January 1, 2011, to the present.

**REQUEST NO. 17:**

Produce complete and accurate copies of any and all DATA related to Mazen Rawashdeh from January 1, 2011, to the present.

**REQUEST NO. 18:**

Please produce complete and accurate copies of any and all DATA related to Thomas Price from January 1, 2011, to the present.

**REQUEST NO. 19:**

Please produce complete and accurate copies of any and all DATA related to Paul Santana from January 1, 2011, to the present.

**REQUEST NO. 20:**

Produce complete and accurate copies of any and all DATA related to Stephen Harlett from January 1, 2011, to the present.

**REQUEST NO. 21:**

Please produce complete and accurate copies of any and all DATA related to Richard Reyher from January 1, 2011, to the present.

**REQUEST NO. 22:**

Please produce complete and accurate copies of any and all DATA related to Seth Feldman from January 1, 2011, to the present.

**REQUEST NO. 23:**

Please produce complete and accurate copies of any and all DATA related to Devin Wenig from January 1, 2011, to the present.

**REQUEST NO. 24:**

Please produce complete and accurate copies of any and all DATA related to Jakob Carnemark from January 1, 2011, to the present.

**REQUEST NO. 25:**

Please produce complete and accurate copies of any and all DATA related to Andrew Schaap from January 1, 2011, to the present.

**REQUEST NO. 26:**

Please produce complete and accurate copies of any and all DATA related to Stephen Smith from January 1, 2011, to the present.

**REQUEST NO. 27:**

Please produce complete and accurate copies of any and all DATA related to Rajendran Avadaiappan from January 1, 2011, to the present.

**REQUEST NO. 28:**

Please produce complete and accurate copies of any and all video footage, including b-roll footage, YOU received and/or have in YOUR possession, with regard to the ALIGNED videos.

///

///

**REQUEST NO. 29:**

Please produce complete and accurate copies of any and all payments made to YOU by Aligned, or any Aligned employees.

**REQUEST NO. 30:**

Please produce complete and accurate copies of any and all communications regarding payments received by MTECHNOLOGY and/or YOU from Aligned or any Aligned employees.

**REQUEST NO. 31:**

Please produce complete and accurate copies of any and all bank records from 2011 to present in YOUR control reflecting financial transactions with individuals or entities affiliated with Aligned, Aligned Energy, Inertech, eBay, and/or Paypal.

**REQUEST NO. 32:**

Please produce complete and accurate copies of any and all of YOUR cell phone records evidencing communications with individuals or entities affiliated with Aligned, Aligned Energy, Inertech, eBay, and/or Paypal between yourself and from 2010 to present.

**REQUEST NO. 33:**

Please produce complete and accurate copies of any and all DATA evidencing Aligned designs created between January 1, 2011, and the present.

**REQUEST NO. 34:**

Please produce complete and accurate copies of DATA evidencing Aligned Energy designs created between January 1, 2011, and the present.

**REQUEST NO. 35:**

Please produce complete and accurate copies of DATA evidencing Inertech designs created between January 1, 2011, and the present.

**REQUEST NO. 36:**

Please produce complete and accurate copies of DATA evidencing YOUR data center designs created between January 1, 2011, and the present.

**REQUEST NO. 37:**

Please produce complete and accurate copies of any and all DATA related to Switch from January 1, 2011, to the present.

**REQUEST NO. 38:**

Please produce complete and accurate copies of any and all DATA related to Rob Roy from January 1, 2011, to the present.

**REQUEST NO. 39:**

Please produce all DATA related to your design work for Aligned.

**REQUEST NO. 40:**

Please produce complete and accurate copies of your analysis of Aligned's designs created between January 1, 2011, and the present.

**REQUEST NO. 41:**

Please produce complete and accurate copies of your analysis of Aligned Energy's designs created between January 1, 2011, and the present.

**REQUEST NO. 42:**

Please produce complete and accurate copies of your analysis of Inertech's designs created between January 1, 2011, and the present.

**REQUEST NO. 43:**

Please produce complete and accurate copies of all collaborations with Aligned regarding Aligned's data center designs created between January 1, 2011, and the present.

/ / /

**REQUEST NO. 44:**

Please produce all DATA related to your retention as a consultant with Aligned.

**REQUEST NO. 45:**

Please produce complete and accurate copies of all DATA regarding Aligned's data center designs created between January 1, 2011, and the present.

DATED this <u>16th</u> day of March, 2018.

**WEIDE & MILLER, LTD.**

<u>/s/ F. Christopher Austin</u>
F. Christopher Austin
caustin@weidemiller.com
Ryan Gile
rgile@weidemiller.com
Bank of Nevada Bldg., 5th Floor
7251 W. Lake Mead Blvd., Ste. 530
Las Vegas, NV 89128
*Attorneys for Plaintiff SWITCH, LTD.*

**CERTIFICATE OF SERVICE**

I hereby certify that I am an employee of Weide & Miller, Ltd. and that on March 19, 2018, I served a full, true and correct copy of the foregoing **PLAINTIFF SWITCH, LTD. FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT STEPHEN FAIRFAX** by email and regular U.S. mail, with postage duly prepaid thereon, addressed to the following:

Marc J. Randazza, Esq.
Ronald D. Green, Esq.
Alex J. Shepard, Esq.
Randazza Legal Group, PLLC
4035 S. El. Capitan Way
Las Vegas, NV 89147
702-420-2001
efc@randazza.com
*Attorneys for Defendants STEPHEN FAIRFAX and MTECHNOLOGY*

*/s/ Sally Wexler*
An employee of Weide & Miller, Ltd.

**RFP**
F. Christopher Austin, Esq.
Nevada Bar No. 6559
*caustin@weidemiller.com*
Ryan Gile, Esq.
Nevada Bar No. 8807
*rgile@weidemiller.com*
**WEIDE & MILLER, LTD.**
10655 Park Run Drive, Suite 100
Las Vegas, NV 89144
Tel: (702) 382-4804
Fax: (702) 382-4805

Samuel Castor, Esq.
Nevada Bar No. 11532
**SWITCH, LTD.**
7135 S. Decatur Blvd.
Las Vegas, Nevada 89118

*Attorneys for Plaintiff* SWITCH, LTD.

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| SWITCH, LTD. a Nevada limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>STEPHEN FAIRFAX; MTECHNOLOGY; and DOES  1 through 10; ROE ENTITIES 11 through 20, inclusive,<br><br>Defendants. | Case No.: 2:17-cv-2651-GMN-VCF<br><br>**PLAINTIFF SWITCH, LTD. FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT MTECHNOLOGY** |

PROPOUNDING PARTY: Plaintiff SWITCH, LTD.

RESPONDING PARTY:  Defendant MTECHNOLOGY

        Pursuant to Federal Rules of Civil Procedure 26 and 34, Plaintiff SWITCH, LTD.,

("SWITCH") hereby requests that Defendant MTECHNOLOGY produce the documents and

things identified below:

**INTRODUCTORY STATEMENT**

A.     Pursuant to Nevada Rule of Civil Procedure 26(e), the following **requests for production of documents and things are continuing and must be supplemented if your responses change during the course of discovery.**

B.     To the extent that any information/documentation requested by these Requests for Production is unknown to you, so state, and set forth such remaining information as is known by you.  If any estimate or approximation can reasonably be made in place of unknown information, set forth your best estimate or approximation, clearly designated as such, in place of the unknown information, and describe the basis upon which the estimate or approximation is made.

C.     The omission of any item from your responses shall be deemed a representation that the item is unknown to you.

D.     In construing these Requests to Produce, the terms "refer to" shall include any and all logical and factual connections to the subject of the discovery request as specified.

E.     Use of the term "**data**" shall include but not be limited to information regardless of form, such as documents, emails to or from business and/or personal accounts, text messages, calendar invites, notes, application data, videos, photographs, audio or visual recordings, meta data, blogs, tweets, social media postings, correspondence, designs, blue prints, schematics, opinions, assessments, analysis, etc., and all versions of the same, which are germane to the Request.

F.     Use of the term "plaintiff" or "you" shall mean MTECHNOLOGY, as an individual, member, partner, investor, managing member, agent, or principal on behalf of any company, entity, business, partner, including but not limited to MTECHNOLOGY.

/ / /

G.     All singular nouns are to be construed as plural and plural construed as singular.

H.     In the event that you refuse to respond to any Request to Produce, or portion thereof, on the grounds that it is subject to an attorney-client privilege or attorney work product privilege, you are required to:

      a.      state the nature of the privilege asserted;

      b.      state the facts relied upon in support of the claim or privilege;

      c.      identify all persons having knowledge or any facts related to the claim or privilege; and

      d.      identify all events, transactions, or occurrences related to the claim of privilege.

### DOCUMENTS REQUESTED

**REQUEST NO. 1:**

Please produce complete and accurate copies of any and all DATA regarding MTECHNOLOGY and Aligned from January 1, 2011, to the present.

**REQUEST NO. 2:**

Please produce complete and accurate copies of all agreements between MTECHNOLOGY and Aligned.

**REQUEST NO. 3:**

Please produce complete and accurate copies of all agreements between FAIRFAX and Aligned.

**REQUEST NO. 4:**

Please produce complete and accurate copies of any and all DATA related to Aligned Energy from January 1, 2011, to the present.

**REQUEST NO. 5:**

Please produce complete and accurate copies of any and all DATA related to Inertech from January 1, 2011 to the present.

**REQUEST NO. 6:**

Please produce complete and accurate copies of any and all DATA related to Uber from January 1, 2011, to the present.

**REQUEST NO. 7:**

Please produce complete and accurate copies of any and all DATA related to eBay from January 1, 2011, to the present.

**REQUEST NO. 8:**

Please produce complete and accurate copies of any and all DATA related to PayPal from January 1, 2011, to the present.

**REQUEST NO. 9:**

Please produce complete and accurate copies of any and all DATA related to Theresa Gardner from January 1, 2011, to the present.

**REQUEST NO. 10:**

Please produce complete and accurate copies of any and all DATA related to Mark Bauer from January 1, 2011, to the present.

**REQUEST NO. 11:**

Please produce complete and accurate copies of any and all DATA related to Carter Robinson from January 1, 2011, to the present.

**REQUEST NO. 12:**

Please produce complete and accurate copies of any all DATA related to Marew Klokkenja from January 1, 2011, to the present.

**REQUEST NO. 13:**

Please produce complete and accurate copies of any and all DATA related to Bret Davis from January 1, 2011, to the present.

**REQUEST NO. 14:**

Please produce complete and accurate copies of any and all DATA related to Mike Lewis from January 1, 2011, to the present.

**REQUEST NO. 15:**

Please produce complete and accurate copies of any and all DATA related to Dean Nelson from January 1, 2011, to the present.

**REQUEST NO. 16:**

Please produce complete and accurate copies of any and all DATA related to Mazen Rawashdeh from January 1, 2011, to the present.

**REQUEST NO. 17:**

Please produce complete and accurate copies of any and all DATA related to Thomas Price from January 1, 2011, to the present.

**REQUEST NO. 18:**

Please produce complete and accurate copies of any and all DATA related to Paul Santana from January 1, 2011, to the present.

**REQUEST NO. 19:**

Produce complete and accurate copies of any and all DATA related to Stephen Harlett from January 1, 2011, to the present.

**REQUEST NO. 20:**

Please produce complete and accurate copies of any and all DATA related to Richard Reyher from January 1, 2011, to the present.

**REQUEST NO. 21:**

Please produce complete and accurate copies of any and all DATA related to Seth Feldman from January 1, 2011, to the present.

**REQUEST NO. 22:**

Please produce complete and accurate copies of any and all DATA related to Devin Wenig from January 1, 2011, to the present.

**REQUEST NO. 23:**

Please produce complete and accurate copies of any and all DATA related to Jakob Carnemark from January 1, 2011, to the present.

**REQUEST NO. 24:**

Please produce complete and accurate copies of any and all DATA related to Andrew Schaap from January 1, 2011, to the present.

**REQUEST NO. 25:**

Please produce complete and accurate copies of any and all DATA related to Stephen Smith from January 1, 2011, to the present.

**REQUEST NO. 26:**

Please produce complete and accurate copies of any and all DATA related to Rajendran Avadaiappan from January 1, 2011, to the present.

**REQUEST NO. 27:**

Please produce complete and accurate copies of any and all video footage, including b-roll footage, YOU received and/or have in YOUR possession, with regard to the ALIGNED videos.

**REQUEST NO. 28:**

Please produce complete and accurate copies of any and all payments made to YOU and/or FAIRFAX by Aligned or any Aligned employees.

**REQUEST NO. 29:**

Please produce complete and accurate copies of any and all communications regarding payments received by YOU and/or FAIRFAX from Aligned or any Aligned employees.

**REQUEST NO. 30:**

Please produce complete and accurate copies of any and all bank records from 2011 to present in YOUR control reflecting financial transactions with individuals or entities affiliated with Aligned, Aligned Energy, Inertech, eBay, and/or Paypal.

**REQUEST NO. 31:**

Please produce complete and accurate copies of any and all DATA evidencing Aligned designs created between January 1, 2011, and the present.

**REQUEST NO. 32:**

Please produce complete and accurate copies of DATA evidencing Aligned Energy designs created between January 1, 2011, and the present.

**REQUEST NO. 33:**

Please produce complete and accurate copies of DATA evidencing Inertech designs created between January 1, 2011, and the present.

**REQUEST NO. 34:**

Please produce complete and accurate copies of any and all DATA related to Switch from January 1, 2011, to the present.

/ / /

**REQUEST NO. 35:**

Please produce complete and accurate copies of any and all DATA related to Rob Roy from January 1, 2011, to the present.

**REQUEST NO. 36:**

Please produce all DATA related to your design work for Aligned.

**REQUEST NO. 37:**

Please produce complete and accurate copies of your analysis of Aligned's designs created between January 1, 2011, and the present.

**REQUEST NO. 38:**

Please produce complete and accurate copies of your analysis of Aligned Energy's designs created between January 1, 2011, and the present.

**REQUEST NO. 39:**

Please produce complete and accurate copies of your analysis of Inertech's designs created between January 1, 2011, and the present.

**REQUEST NO. 40:**

Please produce complete and accurate copies of all collaborations with Aligned regarding Aligned's data center designs created between January 1, 2011, and the present.

**REQUEST NO. 41:**

Please produce all DATA related to your and/or FAIRFAX's retention as a consultant with Aligned.

/ / /

/ / /

/ / /

/ / /

1

**REQUEST NO. 42:**

2

3        Please produce complete and accurate copies of all DATA regarding Aligned's data

4    center designs created between January 1, 2011, and the present.

5        DATED this 16th day of March, 2018.

6                                            **WEIDE & MILLER, LTD.**

7

8                                            */s/ F. Christopher Austin*
                                             F. Christopher Austin
9                                            caustin@weidemiller.com
                                             Ryan Gile
10                                           rgile@weidemiller.com
                                             Bank of Nevada Bldg., 5th Floor
11                                           7251 W. Lake Mead Blvd., Ste. 530
                                             Las Vegas, NV 89128
12                                           *Attorneys for Plaintiff SWITCH, LTD.*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

    I hereby certify that I am an employee of Weide & Miller, Ltd. and that on March 19, 2018, I served a full, true and correct copy of the foregoing **PLAINTIFF SWITCH, LTD. FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT MTECHNOLOGY** by email and regular U.S. mail, with postage duly prepaid thereon, addressed to the following:

        Marc J. Randazza, Esq.
        Ronald D. Green, Esq.
        Alex J. Shepard, Esq.
        Randazza Legal Group, PLLC
        4035 S. El. Capitan Way
        Las Vegas, NV 89147
        702-420-2001
        efc@randazza.com
        *Attorneys for Defendants STEPHEN FAIRFAX and MTECHNOLOGY*

                */s/ Sally Wexler*
                An employee of Weide & Miller, Ltd.

SAMUEL CASTOR, ESQ.
Nevada Bar No. 11532
sam@switch.com
ANNE-MARIE BIRK, ESQ.
Nevada Bar No. 12330
abirk@switch.com
**SWITCH, LTD.**
7135 South Decatur Blvd.
Las Vegas, Nevada 89118
Telephone: (702) 444-4111
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| SWITCH, LTD., a Nevada limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>STEPHEN FAIRFAX; MTECHNOLOGY; and DOES 1 through 10; ROE ENTITIES 11 through 20, inclusive,<br><br>Defendants. | CASE NO.:     2:17-cv-02651-GMN-VCF<br><br>**PLAINTIFF'S SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT, MTECHNOLOGY** |

TO:     MTECHNOLOGY, Defendant; and

TO:     RANDAZZA LEGAL GROUP, PLLC, Defendant's attorneys:

        Pursuant to Federal Rules of Civil Procedure 26 and 34, Plaintiff SWITCH, LTD. ("SWITCH"), by and through its counsel of record, hereby requests that Defendant MTechnology ("MTECHNOLOGY") produce the documents and things identified below:

## INTRODUCTORY STATEMENT

        A.      Pursuant to Federal Rule of Civil Procedure 26(e), the following **requests for production of documents and things are continuing and must be supplemented if your responses change during the course of discovery.**

        B.      To the extent that any information/documentation requested by these Requests for Production is unknown to you, so state, and set forth such remaining information as is known by

1

1  you.  If any estimate or approximation can reasonably be made in place of unknown information, set

2  forth your best estimate or approximation, clearly designated as such, in place of the unknown

3  information, and describe the basis upon which the estimate or approximation is made.

4       C.     The omission of any item from your responses shall be deemed a representation that

5  the item is unknown to you.

6       D.     In construing these Requests to Produce, the terms "refer to" shall include any and

7  all logical and factual connections to the subject of the discovery request as specified.

8       E.     Use of the term "**data**" shall include but not be limited to information regardless of

9  form, such as documents, emails to or from business and/or personal accounts, text messages,

10 calendar invites, notes, application data, videos, photographs, audio or visual recordings, meta data,

11 blogs, tweets, social media postings, correspondence, designs, blue prints, schematics, opinions,

12 assessments, analysis, etc., and all versions of the same, which are germane to the Request.

13      F.     Use of the term "plaintiff" or "you" shall mean MTECHNOLOGY, its members,

14 partners, investors, managing members, agents, subsidiaries, or principals on behalf of any company,

15 entity, business, partner, including but not limited to MTECHNOLOGY.

16      G.     Use of the term "documents" refers to all written, printed, recorded or graphic

17 matter, photographic matter, sound reproductions or other retrievable data (whether recorded, taped,

18 or coded electrostatically, electromagnetically, digitally or otherwise) and any other data compilation

19 from which information can be obtained or translated, if necessary, into reasonably useable form

20 from whatever source derived and however and by whomever prepared, produced, disseminated or

21 made; without limiting the generality of the foregoing, the word "documents" includes

22 correspondence, email, memoranda, facsimiles, reports, transcripts, notes, diaries, calendars,

23 notebooks, minutes, diagrams, computer printouts, diskettes, CD-ROMS, hard drives, drawings,

24 graphs, charts, videotapes, artwork, and exemplars and any other writings of any nature whatsoever,

25 whether or not divulged to other parties.

26      H.     All singular nouns are to be construed as plural and plural construed as singular.

27 ///

28 ///

2

I.      In the event that you refuse to respond to any Request to Produce, or portion thereof, on the grounds that it is subject to an attorney-client privilege or attorney work product privilege, you are required to:

        a.      state the nature of the privilege asserted;

        b.      state the facts relied upon in support of the claim or privilege;

        c.      identify all persons having knowledge or any facts related to the claim or privilege; and

        d.      identify all events, transactions, or occurrences related to the claim of privilege.

## DOCUMENTS REQUESTED

**REQUEST NO. 43:**

Please produce Julian Rachman, PE's expert job file, including but not limited to, any and all documents, correspondence, codes and standards, invoices, articles, publications, and photographs relied upon in formulating the opinions outlined in his October 10, 2019 report.

DATED this 29th day of October, 2019.

**SWITCH, LTD.**


         /s/:  Samuel Castor
SAMUEL CASTOR, ESQ.
Nevada Bar No. 11532
ANNE-MARIE BIRK, ESQ.
Nevada Bar No. 12330
7135 South Decatur Blvd.
Las Vegas, Nevada 89118
*Attorneys for Plaintiff*

3

**<u>CERTIFICATE OF SERVICE</u>**

Pursuant to F.R.C.P. 5(b), I hereby certify that on this 29th day of October, 2019, I served a true and correct copy of the above document, entitled **PLAINTIFF'S SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT, MTECHNOLOGY**, to all parties, who are deemed to have consented to electronic service via their email, and via United States first-class mail, postage prepaid, as follows:

Marc J. Randazza, Esq.
Ronald D. Green, Esq.
Alex J. Shepard, Esq.
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, NV 89117
ecf@randazza.com
mjr@randazza.com
rdg@randazza.com
ajs@randazza.com
*Attorneys for Defendants*

_/s/: Tanya Paonessa_
An agent of SWITCH, LTD.

4

1   SAMUEL CASTOR, ESQ.
    Nevada Bar No. 11532
2   ANNE-MARIE BIRK, ESQ.
    Nevada Bar No. 12330
3   **SWITCH, LTD.**
    7135 South Decatur Blvd.
4   Las Vegas, Nevada 89118
    Telephone: (702) 444-4111
5   policy@switch.com
6
    MARK A. HUTCHSION
7   Nevada Bar No. 4639
    JACOB A. REYNOLDS
8   Nevada Bar No. 10199
    PIERS R. TUELLER
9   Nevada Bar No. 14633
10  **HUTCHISON & STEFFEN, PLLC**
    Peccole Professional Park
11  10080 West Alta Drive, Suite 200
    Las Vegas, Nevada 89145
12  Telephone: (702) 385-2500
    *Attorneys for Plaintiff*
13

14              **UNITED STATES DISTRICT COURT**

15                   **DISTRICT OF NEVADA**

16  SWITCH, LTD., a Nevada limited liability          CASE NO.:     2:17-cv-02651-GMN-VCF
    company,
17                                                    **PLAINTIFF'S THIRD SET OF**
18                            Plaintiff,              **REQUESTS FOR PRODUCTION OF**
                                                      **DOCUMENTS TO DEFENDANT,**
19  vs.                                               **MTECHNOLOGY**

20  STEPHEN FAIRFAX; MTECHNOLOGY; and
    DOES 1 through 10; ROE ENTITIES 11 through
21  20, inclusive,

22                            Defendants.

23

24  TO:     MTECHNOLOGY, Defendant; and

25  TO:     RANDAZZA LEGAL GROUP, PLLC, Defendant's attorneys:

26          Pursuant to Federal Rules of Civil Procedure 26 and 34, Plaintiff SWITCH, LTD.

27  ("SWITCH"), by and through its counsel of record, hereby requests that Defendant MTechnology

28  ("MTECHNOLOGY") produce the documents and things identified below:

                                              1

**INTRODUCTORY STATEMENT**

A.      Pursuant to Federal Rule of Civil Procedure 26(e), the following requests for production of documents and things are continuing and must be supplemented if your responses change during the course of discovery.

B.      To the extent that any information/documentation requested by these Requests for Production is unknown to you, so state, and set forth such remaining information as is known by you.  If any estimate or approximation can reasonably be made in place of unknown information, set forth your best estimate or approximation, clearly designated as such, in place of the unknown information, and describe the basis upon which the estimate or approximation is made.

C.      The omission of any item from your responses shall be deemed a representation that the item is unknown to you.

D.      In construing these Requests to Produce, the terms "refer to" shall include any and all logical and factual connections to the subject of the discovery request as specified.

E.      Use of the term "data" shall include but not be limited to information regardless of form, such as documents, emails to or from business and/or personal accounts, text messages, calendar invites, notes, application data, videos, photographs, audio or visual recordings, meta data, blogs, tweets, social media postings, correspondence, designs, blue prints, schematics, opinions, assessments, analysis, etc., and all versions of the same, which are germane to the Request.

F.      Use of the terms "you" and/or "your" means MTechnology as a domestic corporation, MTechnology by and through its President/Director Stephen Fairfax, MTechnology by and through its Treasurer/Secretary/Clerk Katherine Poole, including any and all MTechnology's predecessors-in-interest, all of its past or present principals, members, employees, agents, representatives, attorneys, or other persons or entities acting or purporting to act for, on behalf of, or with, any or all of them.

G.      Use of the term "documents" refers to all written, printed, recorded or graphic matter, photographic matter, sound reproductions or other retrievable data (whether recorded, taped, or coded electrostatically, electromagnetically, digitally or otherwise) and any other data compilation from which information can be obtained or translated, if necessary, into reasonably useable form

from whatever source derived and however and by whomever prepared, produced, disseminated or made; without limiting the generality of the foregoing, the word "documents" includes correspondence, email, memoranda, facsimiles, reports, transcripts, notes, diaries, calendars, notebooks, minutes, diagrams, computer printouts, diskettes, CD-ROMS, hard drives, drawings, graphs, charts, videotapes, artwork, and exemplars and any other writings of any nature whatsoever, whether or not divulged to other parties.

H.      All singular nouns are to be construed as plural and plural construed as singular.

I.      In the event that you refuse to respond to any Request to Produce, or portion thereof, on the grounds that it is subject to an attorney-client privilege or attorney work product privilege, you are required to:

a.      state the nature of the privilege asserted;

b.      state the facts relied upon in support of the claim or privilege;

c.      identify all persons having knowledge or any facts related to the claim or privilege; and

d.      identify all events, transactions, or occurrences related to the claim of privilege.

## DOCUMENTS REQUESTED

**REQUEST NO. 44:**

Please produce complete and accurate copies of any and all bank records from 2011 to present in YOUR possession or control reflecting financial transactions with individuals or entities employed by, representing, or affiliated with Uber.

**REQUEST NO. 45:**

Please produce complete and accurate copies of any and all bank records from 2011 to present in YOUR possession or control reflecting financial transactions with individuals or entities employed by, representing, or affiliated with Jones Lang LeSalle.

**REQUEST NO. 46:**

Please produce complete and accurate copies of all DATA relating to your retention as a consultant by Aligned to review and assist with their Ashburn, Virginia data center designs.

**REQUEST NO. 47:**

Please produce complete and accurate copies of all DATA regarding Aligned's Ashburn, Virginia data center designs in your possession, between January 1, 2011 and the present.

**REQUEST NO. 48:**

Please produce complete and accurate copies of your analysis of Aligned's Ashburn, Viriginia data center designs created between January 1, 2011 and the present.

**REQUEST NO. 49:**

Please produce all drafts of all marketing materials (e.g. video transcripts, brochures, white papers, articles, social media posts) sent to or from you or Aligned, from January 1, 2011 and the present.

DATED this 6th day of February, 2020.

SWITCH, LTD.


_/s/: Samuel Castor_
SAMUEL CASTOR, ESQ.
Nevada Bar No. 11532
ANNE-MARIE BIRK, ESQ.
Nevada Bar No. 12330
7135 South Decatur Blvd.
Las Vegas, Nevada 89118

MARK A. HUTCHSION
Nevada Bar No. 4639
JACOB A. REYNOLDS
Nevada Bar No. 10199
PIERS R. TUELLER
Nevada Bar No. 14633
**HUTCHISON & STEFFEN, PLLC**
Peccole Professional Park
10080 West Alta Drive, Suite 200
Las Vegas, Nevada 89145
_Attorneys for Plaintiff_

4

1

## **CERTIFICATE OF SERVICE**

2
        Pursuant to F.R.C.P. 5(b), I hereby certify that on this 6th day of February, 2020, I served a

3
true and correct copy of the above document, entitled **PLAINTIFF'S THIRD SET OF**

4
**REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT,**

5
**MTECHNOLOGY**, to all parties, who are deemed to have consented to electronic service via their

6
email, and via United States first-class mail, postage prepaid, as follows:

7
Marc J. Randazza, Esq.
Ronald D. Green, Esq.

8
Alex J. Shepard, Esq.
RANDAZZA LEGAL GROUP, PLLC

9
2764 Lake Sahara Drive, Suite 109
Las Vegas, NV 89117

10
ecf@randazza.com

11
mjr@randazza.com
rdg@randazza.com

12
ajs@randazza.com
*Attorneys for Defendants*

13

14

15

16
                           /s/: *Tanya Paonessa*

17
                         An agent of SWITCH, LTD.

18

19

20

21

22

23

24

25

26

27

28

5