MICHAEL A. BERTA (admitted *pro hac vice*)
michael.berta@arnoldporter.com
JOSEPH FARRIS (admitted *pro hac vice*)
joseph.farris@arnoldporter.com
**ARNOLD & PORTER KAYE SCHOLER LLP**
Three Embarcadero Center, 10th Floor
San Francisco, California 94111
Telephone: (415) 471-3100
Facsimile: (415) 471-3400

WILLIAM R. URGA (SBN 1195)
wru@juwlaw.com
**JOLLEY URGA WOODBURY & HOLTHUS**
330 S. Rampart Boulevard, Suite 380
Las Vegas, Nevada 89145
Telephone: (702) 699-7500
Facsimile: (702) 699-7555

*Attorneys for Third Parties*
**ALIGNED DATA CENTERS, LLC; and**
**ALIGNED ENERGY HOLDINGS, LP**

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| SWITCH, LTD., a Nevada limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>STEPHEN FAIRFAX; MTECHNOLOGY; and DOES 1 through 10; ROE ENTITIES 11 through 20, inclusive,<br><br>Defendants. | Case No. 2:17-cv-02651-GMN-EJY<br><br>**MOTION FOR PROTECTIVE ORDER BY ALIGNED DATA CENTERS, LLC AND ALIGNED ENERGY HOLDINGS, LP REGARDING SUBPOENA FOR DEPOSITION OF JAKOB CARNEMARK**<br><br>**ORAL ARGUMENT REQUESTED** |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION AND SUMMARY OF MOTION ........................................................ 1

II. FACTUAL BACKGROUND .............................................................................................. 3

    A. Switch's 2017 Patent Lawsuit Against MTechnology and Aligned Data Centers ............................................................................................... 3

    B. The Present Case: Switch's Trade Secret Lawsuit Against Fairfax/ MTechnology ........................................................................................... 3

    C. The Carnemark Subpoena and Efforts to Meet and Confer ................................... 4

III. ARGUMENT ....................................................................................................................... 6

    A. Legal Standards - Rule 26 and Rule 45 .................................................................. 6

    B. A Protective Order Preventing Switch's In-House Counsel From Taking the Deposition and Establishing Protections for the Testimony and Transcript Is Necessary. ................................................................................ 7

    C. A Protective Ordering Limiting the Scope of the Deposition Is Necessary ................................................................................................. 10

    D. Aligned Is Entitled To An Awarded Of Its Attorneys' Fees................................ 11

IV. CONCLUSION .................................................................................................................. 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ademiluyi v. Phillips*,
    No. 2:14-cv-00507-MMD, 2014 WL 7012493 (D. Nev. Dec. 12, 2014) ...................................... 6

*Adobe Systems, Inc. v. Davachi*,
    No. C 10–03575 SC (LB), 2011 WL 2610170 (N.D. Cal. July 1, 2011) ....................................... 8

*Basile v. Novak*,
    No. 2:19-CV-00429-JAD-BNW, 2020 WL 1529569 (D. Nev. Mar. 31, 2020) .......................... 10

*Brown Bag Software v. Symantec Corp.*,
    960 F.2d 1465 (9th Cir. 1992) ............................................................................................. 2, 7, 8

*G.K. Las Vegas Ltd. Partnership v. Simon Property Grp.*,
    No. 2:04–cv–01199–DAE–GWF., 2007 WL 119148 (D. Nev. Jan. 9, 2007) ............................. 10

*Intel Corp. v. VIA Techs., Inc.*,
    198 F.R.D. 525 (N.D. Cal. 2000) ................................................................................................ 9

*Monte H. Greenawalt Revocable Tr. v. Brown*,
    No. 2:12-cv-01983-LRH, 2013 WL 6844760, at *3 (D. Nev. Dec. 19, 2013) ............................. 6

*Pinterest, Inc. v. Pintrips, Inc.*,
    No. 13-CV-04608-RS (KAW), 2014 WL 5364263 (N.D. Cal. Oct. 21, 2014) ........................... 8

*Sci. Games Corp. v. AGS LLC*,
    No. 2:17-cv-00343-JAD-NJK, 2017 WL 3013251 (D. Nev. July 13, 2017) .............................. 11

*Sonix Tech. Co. Ltd v. Yoshida*,
    No. 12CV380-CAB (DHB), 2014 WL 11878353 (S.D. Cal. June 30, 2014) ............................... 9

*Switch, Ltd. v. Uptime Institute, LLC, et al.*,
    No. 2:19-cv-00631-GMN-NJK (D. Nev.) .................................................................................... 5

*U.S. Steel Corp. v. United States*,
    730 F.2d 1465 (Fed. Cir. 1984) ................................................................................................... 7

**Court Rules**

Fed. R. Civ. P.
    26 ...................................................................................................................................... 1, 6, 12
    26(b)(1) ..................................................................................................................................... 6, 7
    26(c) ............................................................................................................................................. 11
    26(c)(iii) ........................................................................................................................................ 7
    26(c)(7) .......................................................................................................................................... 7

37 ........................................................................................................................................ 12
  37(a) ................................................................................................................................. 1
  37(a)(5)(A) ..................................................................................................................... 11
  45 ............................................................................................................................ 1, 6, 12
  45(d) ................................................................................................................................. 1
  45(d)(1) ........................................................................................................................... 11
  45(d)(3) ........................................................................................................................... 10

Local Rule 78-1 ................................................................................................................... 1

Nev. R. Prof'l Conduct 3.7 ............................................................................................... 12

Third Parties Aligned Data Centers, LLC and Aligned Energy Holdings, LP (together, "Aligned") hereby move this Court, pursuant to Federal Rules of Civil Procedure 26 and 45, for the issuance of a protective order concerning Plaintiff Switch, Ltd.'s ("Switch") Subpoena To Testify at Deposition in Civil Action directed at Mr. Jakob Carnemark ("Subpoena").

Aligned is not seeking to prevent the deposition from occurring. Instead, to protect Aligned's competitively sensitive information, Aligned is asking that the Court order that the deposition examination be taken by outside counsel, rather than Switch's in-house attorney, and that the Court limit the scope of questioning to matters reasonably related to the facts of Aligned's relationship and work with Defendants Stephen Fairfax and MTechnology, rather than current Aligned competitive information.[1]

Because Aligned believes that these restrictions should have been agreed to, especially where Aligned is a third party, Aligned further seeks an award of its attorneys' fees in connection with this Motion under Fed. R. Civ. P. 37(a) and Fed. R. Civ. P. 45(d). In support of this Motion, Aligned, through its counsel, provides the following Memorandum of Points and Authorities and submits the Declarations of Joseph Farris and David W. Robinson. Pursuant to Local Rule 78-1, Aligned requests that it be permitted to offer oral argument in support of the Motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION AND SUMMARY OF MOTION**

Switch served a Subpoena for the deposition of Mr. Jakob Carnemark. Mr. Carnemark is one of the co-founders of Aligned, a data center infrastructure technology company that is a third party in this case. Mr. Carnemark has served in various roles at Aligned over the years including as its Chief Executive Officer from 2013 to September 2017, and Chief Technology Officer from October 2017 to January 2019, and he has been on the Board of Directors since Aligned's inception. Over the years, Mr. Carnemark has had access to substantially all of Aligned's most competitively sensitive information—including its business and intellectual property strategy, information about its current and prospective customer relationships and strategy, pricing information, and data center

---

[1] In the alternative to entering a protective order under Rule 26, Aligned requests that the Court modify the Subpoena pursuant to Rule 45.

1 technical design and operation information.

2      As Aligned has made clear to Switch, Aligned is willing to provide Mr. Carnemark for a
3 deposition. But, Aligned has asked that the deposition proceed on conditions that will protect
4 Aligned from the disclosure of its confidential information and trade secrets to internal Switch
5 personnel, where Switch is a direct—and aggressive—competitor of Aligned. Aligned believes that
6 the specific accommodations it has requested are reasonable and necessary, but Switch has refused
7 to grant them, which has forced Aligned to file this motion.

8      First, Aligned seeks a protective order requiring that Switch use outside counsel to take the
9 deposition, and to limit disclosure of the testimony and transcript until Aligned has an opportunity
10 to designate appropriate portions of the transcript as "Outside Attorneys' Eyes Only" under the
11 terms and conditions set forth in Aligned's concurrently-filed Proposed Order. This order is
12 necessary because **Switch has taken the position that, in order to save money, its Executive**
13 **Vice President of Policy, Mr. Sam Castor, must take the deposition personally** and have full
14 access to the transcript. But Mr. Castor is not merely an in-house litigator; he is a company
15 executive that is involved in various kinds of "competitive decision making" at Switch, including
16 the negotiation of commercial transactions, regulatory compliance, sustainability, intellectual
17 property licensing, and much more, just based on his own accounts of his responsibilities. Under
18 Ninth Circuit law, Mr. Castor should therefore not have access to the trade secrets and confidential
19 information of Aligned via the deposition of Mr. Carnemark. *Brown Bag Software v. Symantec*
20 *Corp.*, 960 F.2d 1465 (9th Cir. 1992).

21      Second, Aligned seeks an order limiting the scope of the deposition and the questions that
22 may be asked to matters that are reasonably related to the facts concerning Aligned's relationship
23 with Defendants Stephen Fairfax and MTechnology. This is the subject matter that is proportional
24 to the needs of this case and Switch's allegations that Defendant Fairfax accessed Switch trade
25 secrets during a visit or visits to its data centers nearly 10 years ago—in 2011 and/or 2013—and
26 then somehow disclosed them to Aligned. To be clear, Aligned does not believe that Switch has a
27 good faith basis to seek a deposition from it at all, having already tried to sue Aligned for patent
28 infringement in a now-dismissed case related to the same allegations. Nonetheless, Aligned told

1  Switch that it would not object to a deposition as long as it was of reasonable scope and not a
2  fishing expedition into competitive information. Switch will not agree to any such limits.
3        Aligned believes these matters could have and should have been resolved via the meet and
4  confer process. Accordingly, in addition to seeking a protective order, Aligned also respectfully
5  requests that the court award it is attorneys' fees and costs in connection with this Motion.

6  **II.    FACTUAL BACKGROUND**

7      **A.    Switch's 2017 Patent Lawsuit Against MTechnology and Aligned Data Centers**

8        In August 2017, Switch filed a lawsuit in the Eastern District of Texas asserting claims for
9  patent infringement against defendants MTechnology, Inc. ("MTechnology") and Aligned Data
10 Centers, LLC. Declaration of Joseph Farris ("Farris Decl."), **Exh. A**, Plaintiff's Complaint for
11 Patent Infringement in Case No. 2:17-cv-00574 (E.D. Tex.) (the "Patent Action").
12       There, Switch alleged that MTechnology's President Stephen Fairfax was "given wide
13 access to Switch's data center facility in 2011 and in early 2015." *Id.* ¶ 2. Apparently, this "wide
14 access" was a 2011 tour and inspection of the facility and "several hours" conversing with Switch's
15 CEO. *Id.* ¶ 3. However, according to Fairfax, no facility tour, "wide access" or hours-long
16 conversation ever took place after 2011 despite Switch's claim of access in 2015. ECF No. 68-1,
17 ¶¶ 11, 19-20 (Declaration of Stephen Fairfax In Response to Plaintiff's Motion to Compel Third-
18 Party Jones Lange LaSalle to Provide Requested Documents). Switch further claimed that in 2013,
19 Aligned hired Fairfax/MTechnology, who then assisted Aligned with deploying "technology" in its
20 data center in Plano, Texas that allegedly "mirrors" Switch's. *Id.* ¶ 5. Switch thus asserted that the
21 defendants had infringed three patents based solely on perceived similarities in the 2015 design of
22 Aligned's data centers that Switch claimed to discern from publicly available materials, such as
23 photos and videos on Aligned's website. *Id.* ¶ 53.
24       On July 9, 2018, pursuant to the parties' joint motion, all of the claims and counterclaims
25 were dismissed with prejudice. Farris Decl., **Exh. C** (Joint Motion to Dismiss).

26     **B.    The Present Case: Switch's Trade Secret Lawsuit Against Fairfax/ MTechnology**

27       On September 15, 2017, just weeks after filing the Patent Action, Switch initiated the
28 present case by filing a Complaint against Defendants MTechnology and its President Stephen

1  Fairfax in Clark County District Court.  Switch did not provide notice of its action to the
2  Defendants and thus obtained a temporary restraining order ("TRO"), but Switch's ill-gotten order
3  was vacated when, in October 2017, Defendants removed the case to this Court.  ECF No. 1.
4    Since this lawsuit was filed in 2017, little to nothing has happened.  In September 2019
5  (around two years after the suit was first filed), Defendants filed a Request for a Pretrial Conference
6  and Submission of Protective Order, in which they noted that they had "yet to learn precisely what
7  trade secrets were misappropriated" (ECF No. 48 at 4:12-16) and expressed "concerns regarding
8  Switch's use of documents obtained in discovery" because "the majority of the documents Plaintiff
9  Switch is requesting in this litigation are sensitive documents containing the trade secrets and
10 detailed design information of [Switch's] biggest competitors."  *Id.* at 2:5-23.  Fairfax explained
11 that these concerns were based on explicit statements by Switch:

> Switch has already informed Defendants and their counsel that it intends to use discovery in this case for the improper purpose of "patent litigation" against at least one of those competitors.  The rest of the information about other competitors appears to be an attempt to use the discovery process in lieu of industrial espionage.

*Id.*  In support, counsel for Fairfax submitted a Declaration averring that Switch's in-house counsel Sam Castor had "said on two separate occasions that Switch needed discovery in this case to 'substantiate' its anticipated claims against Aligned Data Centers" and misrepresented that the Patent Action had been dismissed without prejudice.  ECF No. 48-2 at ¶¶ 6-7.

**C.   The Carnemark Subpoena and Efforts to Meet and Confer**

On or around June 29, 2020, Switch served a Subpoena To Testify at Deposition in Civil Action directed at Mr. Carnemark and setting a deposition on July 21, 2020 in Dallas, Texas.  Farris Decl., **Exh. C-1**.  On July 9, 2020, Aligned provided responses and objections to the Subpoena in a letter to counsel for Switch.  Farris Decl., **Exh. D**.[2]  Before filing this Motion, Aligned met and conferred in good faith concerning its objections to the Subpoena via email and two telephone conferences about Aligned's objections.  Farris Decl., ¶¶ 4-11, **Exh E-1, E-2, E-3** (Email chains

---

[2] Pursuant to agreement, Switch has since served three "Amended Notices of Deposition" to allow the parties time to meet and confer concerning the Subpoena and deposition.  Farris Decl., ¶ 4, **Exhs. C-2, C-3, and C-4**.  The most recent Amended Notice set the deposition for September 23, 2020 via Zoom.

1   reflecting the meet and confer process). While the parties were able to resolve Aligned's objection

2   to an in-person deposition and have agreed that the deposition could be conducted via Zoom remote

3   conferencing technology, they have not been able to reach agreement on Aligned's other objections.

4   *Id.*

5         During the first telephone conference, Mr. Castor stated that he was entitled to take the

6   deposition because Switch had a "right to choose its counsel" and because Switch would suffer an

7   undue burden as a result of the attorneys' fees if it were to use outside counsel. Farris Decl., ¶ 7.

8   Mr. Castor further stated that Switch had previously obtained court orders allowing him to take

9   depositions as in-house counsel in similar cases. Farris Decl. ¶ 8. Counsel for Aligned requested

10  that Switch provide copies of any such court orders. *Id*. In response, Switch provided an

11  opposition brief that it had filed in *Switch, Ltd. v. Uptime Institute, LLC, et al.*, No. 2:19-cv-00631-

12  GMN-NJK (D. Nev.) (the "Switch-Uptime Action"). Farris Decl., ¶8, **Exh. F-2**. There too, Switch

13  had sought to have Mr. Castor take and defend depositions, and the defendants also moved for

14  protective order on the grounds that Mr. Castor should not take the deposition. Farris Decl., **Exh.**

15  **F-1** (Defendants' Motion to Exclude Plaintiff's Inside Counsel Sam Castor from Taking and

16  Defending Depositions) & **Exh. F-3** (Defendants' Reply). Upon reviewing the docket of the

17  Switch-Uptime Action, counsel for Aligned noted that the court had never issued any order on the

18  motion, and that Switch had subsequently dismissed its claims. *Id.*, ¶ 9. Counsel for Aligned wrote

19  to Switch to again ask if Switch had actually obtained any court orders allowing him to take

20  depositions, as he had represented. *Id.*, Exh. E-1 (Farris email of 8/3/2020). This time, Mr. Castor

21  purported to clarify his earlier representation, stating: "We've always resolved it before final order

22  because the case law is clear; to save the other side the cost/embarrassment of a final order." *Id.*

23  (Castor email of 8/3/2020). To date, Switch has provided no such orders or authority to Aligned.

24        Counsel met and conferred in a second telephone conference, in which Aligned informed

25  Switch that it disagreed with Switch's assessment of the case law, and again offered to allow the

26  deposition subject to the protections Aligned was requesting. Farris Decl., ¶ 10. As reflected in the

27

28

1  emails following that call, Switch would not agree to provide those accommodations.[3]  *Id.*, Exh. E-
2  2.  On September 8, after confirming that Mr. Castor still intended to take the deposition (now
3  noticed for September 23), Aligned notified Switch that it would be moving for a protective order.
4  *Id.*, Exh. E-3.
5        Shortly thereafter, on September 14, Switch filed a Notice of Withdrawal of Hutchinson &
6  Steffen, PLLC As Counsel (ECF No. 94), which stated that after the withdrawal, "Switch will still
7  be represented by license Nevada attorneys, Samuel Castor and Anne-Marie Birk, who are in-house
8  counsel for Switch, and have requested this withdrawal."[4]  At no point during the meet and confer
9  process, including after Aligned notified Switch that it would be moving for a protective order, did
10 Switch state that it intended to have one of its outside law firms withdraw from the case.  *Id.* ¶ 11.
11 Notwithstanding this (attempted) withdrawal, according to the docket, Switch also remains
12 represented by Christopher Austin of Weide & Miller, Ltd. as outside counsel of record.

**III.     ARGUMENT**

    **A.     Legal Standards - Rule 26 and Rule 45**

Under both Rule 45 and Rule 26, the "scope of discovery" is limited to matters "relevant to any party's claim or defense" and must be "proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1); *Ademiluyi v. Phillips*, No. 2:14-cv-00507-MMD, 2014 WL 7012493, at *2 (D. Nev. Dec. 12, 2014).  The Advisory Committee has expressly stated that this rule was crafted so that discovery would be limited to the claims identified in the pleadings:  "The rule change [for Fed. R. Civ. P. 26(b)(1)] signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings." Fed. R. Civ. P. 26(b)(1) advisory committee's note—2000 amendment; *Ademiluyi*, 2014 WL 7012493, at *3 ("In further clarifying this rule, the Advisory Committee has declared that it 'intends . . . the parties and the court [to] focus on the actual claims and defenses involved in the action' . . . ."); *Monte H.*

---

[3] In these emails, Mr. Farris inadvertently referred to Mr. Castor as Switch's "General Counsel," which is not accurate—Mr. Castor is Switch's Executive Vice President of Policy.

[4] At the time of this filing, the Court had rejected the Notice of Withdrawal as violating LR IA 11-6(b).  ECF No. 95.

1  *Greenawalt Revocable Tr. v. Brown*, No. 2:12-cv-01983-LRH, 2013 WL 6844760, at *3 (D. Nev.

2  Dec. 19, 2013) ("The Advisory Committee Notes to the 2000 Amendments to Rule 26(b)(1)

3  explain, 'the parties have no entitlement to discovery to develop new claims or defenses that are not

4  already identified in the pleadings.'  This prevents litigants from engaging in 'fishing expeditions'

5  that may expose the defendant to claims not previously asserted in the plaintiff's complaint.").

6      Upon a motion, courts may issue protective orders to "limit the frequency or extent of

7  discovery" if "the proposed discovery is outside the scope permitted by Rule 26(b)(1)."  Fed. R.

8  Civ. P. 26(c)(iii).  Additionally, "[u]pon motion by a party or by a person from whom discovery is

9  sought . . . and for good cause shown, the court in which the action is pending . . . may make any

10  order which justice requires to protect a party or person from annoyance, embarrassment,

11  oppression, or undue burden or expense, including  . . . (7) that a trade secret or other confidential

12  research, development, or commercial information not be revealed or be revealed only in a

13  designated way . . . ."  Fed. R. Civ. P. 26(c)(7).

14      **B.  A Protective Order Preventing Switch's In-House Counsel From Taking the Deposition and Establishing Protections for the Testimony and Transcript Is**

15      **Necessary.**

16      Aligned requests that the Court issue an order limiting the disclosure of its trade secrets and

17  confidential information by requiring Switch to utilize outside counsel to take the deposition and

18  establishing sufficient protections for disclosure of the testimony and transcript.  Aligned has set

19  forth the specific procedures it requests in the Proposed Order submitted concurrently herewith,

20  which supplements the existing Stipulated Protective Order (ECF No. 64) and provides Aligned

21  with the ability to review the transcript and designate certain portions under an "Outside Attorneys'

22  Eyes Only" level of protection.

23      The leading case in the Ninth Circuit on disclosure of confidential information and trade

24  secrets to in-house counsel is *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465 (9th Cir.

25  1992), in which the Court of Appeals upheld a protective order preventing in-house counsel at

26  Brown Bag Software from accessing trade secret information from Symantec elicited in discovery,

27  and requiring it to retain an independent consultant to view the trade secret information.   In that

28  case, the Ninth Circuit squarely rejected the argument that restricting in-house counsel from

accessing a competitor's trade secrets violated a party's "due process rights to select counsel and to prosecute its claims" and stated that courts should "examine factually all the risks and safeguards" to assess the risk of "inadvertent disclosure." *Id.* at 1470.  Relying on *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468, n.3 (Fed. Cir. 1984), the court further stated that counsel's involvement with "*competitive decisionmaking*" is a "crucial factor" that "counsels against disclosure." *Id.* at 1471.

*Brown Bag* also made clear that it is not necessary for the court to question the "integrity and good faith" of in-house counsel in order to limit disclosure of information to in-house because of the inherent risk posed by such disclosures:

> The magistrate had to consider, however, not only whether the documents could be locked up in cabinets, but also whether Brown Bag's counsel could lock-up trade secrets in his mind, safe from inadvertent disclosure to his employer once he had read the documents.

*Id.* at 1471.  And, in *Brown Bag*, the court found that the in-house counsel could not do that because "[k]nowledge of Symantec's trade secrets would place in-house counsel in the 'untenable position' of having to refuse his employer legal advice on a host of contract, employment, and competitive marketing decisions lest he improperly or indirectly reveal Symantec's trade secrets." *Id.*; *see also Pinterest, Inc. v. Pintrips, Inc.*, No. 13-CV-04608-RS (KAW), 2014 WL 5364263, at *2 (N.D. Cal. Oct. 21, 2014) ("The concern for inadvertent disclosure is particularly acute where the party seeking access to the information is a direct competitor.") (citing *Adobe Systems, Inc. v. Davachi,* No. C 10–03575 SC (LB), 2011 WL 2610170, at *5 (N.D. Cal. July 1, 2011)).

Here, Switch has taken the position that Mr. Castor, who is its Executive Vice President of Policy, should be permitted to depose the executive of a competitor and have full access to any trade secret information elicited in that deposition.  But Mr. Castor is quite clearly involved in "competitive decisionmaking" spanning many different areas at Switch.  By Mr. Castor's own admission, he has a wide-ranging role at Switch that is not limited to handling litigation matters. Farris Decl., **Exh. G** (Castor's LinkedIn profile).  Rather, he "assists Switch in all things legal, including energy sustainability, contract negotiation, intellectual property litigation and prosecution, protection and licensing, telecom, power and air quality regulatory compliance, human resource policy, strategy, legislative policy, complete commercial transactions, and litigation." *Id.*  He

claims to have "negotiated several hundreds of telecom, power, and colocation deals and multi-million a month contracts with Fortune 100 companies." *Id.*

Indeed, his own official biography on Switch's website indicates that while he started off at the company as Associate General Counsel in a more limited legal role, in his current role he manages intellectual property and policy matters and works on the "Sustainability Team," and now only continues to "aid the legal team . . . when needed":

> As Executive Vice President of Policy, Sam Castor, Esq., manages regulatory, intellectual property and litigation matters and policy.  As a member of the Sustainability Team, he provides legal and policy insight to ensure Switch is 100% renewably powered, world-wide, and drives thoughtful sustainability policy throughout the company's operations, energy procurement, and government and legislative policy.
>
> Sam joined the company as Vice President and Associate General Counsel, assisting Switch with transactional, telecom, legislative, regulatory and litigation matters, and **continues to aid the legal team in these matters when needed**.

Farris Decl., **Exh. H** (emphasis added).

Mr. Castor also appears to be in charge (or at least play a significant role in) Switch's "Data Center Patent Licensing Program." Farris Decl., **Exh. I** (2016 press release concerning new license negotiated by Switch with the company Munters in which Mr. Castor is quoted as saying: "We believe that many companies in the data center industry are using Switch's patented designs without permission and look forward to expanding Switch's licensing portfolio as we evaluated our patent enforcement and licensing options."). Courts in this Circuit have expressly found that involvement in such technology licensing matters amounts to "competitive decisionmaking" that disqualifies counsel from access to a competitor's trade secret information. *See Intel Corp. v. VIA Techs., Inc.*, 198 F.R.D. 525, 530 (N.D. Cal. 2000) (finding that in-house counsel's "involvement in licensing through litigation constitutes competitive decisionmaking, because her advice and counsel necessarily affect licensing decisions."); *Sonix Tech. Co. Ltd v. Yoshida*, No. 12CV380-CAB (DHB), 2014 WL 11878353, at *4 (S.D. Cal. June 30, 2014) ("Involvement in a party's licensing activity implicates competitive decisionmaking.").

As such, in light of the substantial risks of disclosure posed, Mr. Castor must not be allowed to access Aligned confidential information and trade secrets. This will cause no undue prejudice to Switch. At the time of this filing, Switch still had two different outside law firms working on this

case for years (notwithstanding its hasty attempt to have one of those law firms withdraw *after* getting notice that Aligned would move for a protective order).  Switch will not be prejudiced by having the outside counsel that it selected for this trade secret matter handle aspects of this case that require direct access to Aligned's trade secrets and should certainly not be permitted to access to Aligned's trade secrets by virtue of its transparent attempt to have that counsel withdraw to manufacture a "need" to use in-house counsel.

**C.     A Protective Ordering Limiting the Scope of the Deposition Is Necessary**

Subject to the protections sought above, Aligned remains willing to allow its co-founder, current Board member, and former CEO to be deposed, but also requests that the Court issue an order limiting the scope of the deposition to factual matters that are reasonably related to Aligned business relationship with Defendants Fairfax and MTechnology.

"In the context of the deposition of a nonparty, if there is a disagreement between the deposing party and the nonparty deponent about the permissible scope of questioning, either one can file a motion with the court for relief."  *Basile v. Novak*, No. 2:19-CV-00429-JAD-BNW, 2020 WL 1529569, at *2 (D. Nev. Mar. 31, 2020) (citing Fed. R. Civ. P. 45(d)(3)); *see G.K. Las Vegas Ltd. Partnership v. Simon Property Grp.*, Inc., No. 2:04–cv–01199–DAE–GWF., 2007 WL 119148 at *3-5 (D. Nev. Jan. 9, 2007) (nonparty deponent may move for a protective order where privacy interests are implicated, and does not need to comply with deposition subpoena until a court reviews the relevance and validity of the subpoena).

Switch's allegations in the case concerning Aligned's relationship with Defendants and the work Defendants did for Aligned, including how, if at all, that work related to their previous "access" to Switch, is the only proper subject of any testimony Switch should need.  This need not be a rigid limitation that hampers the depositions if the parties act in good faith.  As long as the questions are reasonably within that scope, Aligned will allow an appropriate degree of leeway for Switch to ask questions that naturally follow from any testimony provided by Mr. Carnemark concerning that relationship.

On the other hand, there is no *legitimate* reason that Switch would need freedom to conduct a further unfettered exploration into all other business matters within Mr. Carnemark's knowledge.

Mr. Carnemark has substantial knowledge concerning myriad other subjects that are competitively sensitive and not related to Fairfax's work for Aligned gained over his years at the company, such as Aligned's confidential pricing information, relationships with its customers and potential customers, Aligned's business or intellectual property strategy, market intelligence, and technical aspects of other Aligned data centers that Fairfax never did any work on, as just some examples. Robinson Decl. ¶¶ 3-4. Disclosure of that information to Switch as a direct competitor would cause Aligned competitive harm. Robinson Decl. ¶ 6. Switch does not have a "substantial" need to access that information, and therefore should not be able to do so, even subject to a modified and expanded protective order with an Outside Attorneys' Eyes Only designation. *Sci. Games Corp. v. AGS LLC*, No. 2:17-cv-00343-JAD-NJK, 2017 WL 3013251, at *3-4 (D. Nev. July 13, 2017).

What's more, Aligned has good reason to be wary that Switch will in fact seek such testimony if the scope of the deposition is not limited. Switch has already made statements in this litigation indicating that it is using discovery to try to develop claims against Aligned, including claims related to "patent infringement." ECF No. 48 at 2:5-23. And, as the Court is aware, Switch has also unsuccessfully sought irrelevant discovery from Aligned's real estate advisor, Jones Lange LaSalle ("JLL"), and went so far as to explicitly seek for JLL to produce recent communications with *Aligned's customers*, such as PayPal and Uber. *See* ECF No. 93 (Minute of Proceeding Denying Switch's Motion to Compel Third Party Jones Lange LaSalle To Provide Requested Documents) (ECF No. 66). Aligned is justifiably concerned that Switch will use this deposition to seek irrelevant competitively-sensitive information if is not constrained to seeking information proportional to the needs of the case.

   **D.**  **Aligned Is Entitled To An Award Of Its Attorneys' Fees**

Under Fed. R. Civ. P. 37(a)(5)(A), if the court is required to issue "any protective order" under Rule 26(c), it must order the party whose "conduct necessitated the motion" to "pay the movant's reasonable expenses incurred in making the motion, including attorneys' fees."[5]

This is not a motion that the Court should have had to resolve. Aligned has consistently

---

[5] In addition, pursuant to Fed. R. Civ. P. 45(d)(1), Aligned is also entitled to an award of its attorneys' fees incurred as a result of bringing this motion.

1  offered to provide the deposition sought by Switch throughout the meet and confer process. It has
2  only requested that Switch provide the reasonable accommodations discussed herein. Switch
3  refused each of these accommodations and forced Aligned to file this motion to protect its interests.
4      What's more, Switch tried to move the target after meet and confer discussions had
5  completed by filing a notice of withdrawal of one of its outside law firms in an apparent attempt to
6  justify Mr. Castor taking the deposition. This is clear gamesmanship because, as Mr. Castor
7  admitted in meet and confer discussions, he would not be acting as trial counsel in this case because
8  that would violate Nevada's Professional Rules of Conduct as he is a possible witness in this matter.
9  Farris Decl., ¶ 15; *see* Nev. R. Prof'l Conduct 3.7. Thus, Switch will have to have outside counsel
10 for this case, and its effort to have outside counsel (try to) withdraw during the pendency of this
11 Motion is not in good faith.

## IV. CONCLUSION

For the reasons discussed in this motion, and the supporting Declarations of David W. Robinson and Joseph R. Farris, this Court should issue an order pursuant to Fed. R. Civ. P. 26 and/or Fed. R. Civ. P. 45, per the terms of the Proposed Order submitted concurrently herewith. Additionally, Aligned requests an award of fees in connection with this motion pursuant to Fed. R. Civ. P. 37 and Fed. R. Civ. P. 45.

Dated: September 16, 2020.  Respectfully submitted,

        **ARNOLD & PORTER KAYE SCHOLER LLP**
        MICHAEL A. BERTA (admitted *pro hac vice*)
        JOSEPH R. FARRIS (admitted *pro hac vice*)

        **JOLLEY URGA WOODBURY & HOLTHUS**
        WILLIAM R. URGA

        By:  /s/ *William R. Urga*
              WILLIAM R. URGA

        *Attorneys for Third Parties*
        **ALIGNED DATA CENTERS, LLC; and**
        **ALIGNED ENERGY HOLDINGS, LP**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of the foregoing Motion For Protective Order By Aligned Data Centers, LLC and Aligned Energy Holdings, LP Regarding SUBPOENA FOR Deposition of Jakob Carnemark via the Court's CM/ECF system on September 16, 2020.

/s/ *Linda Schone*
An Employee of JOLLEY URGA WOODBURY & HOLTHUS